# EXHIBIT A

**Phoenix Life Insurance Company**

Executive Offices:
One American Row
Hartford, CT 06102

Statutory Home Office:
10 Krey Boulevard
East Greenbush, NY 12144

**Insured** JOHN L LOEB JR

**Age & Sex** 75 MALE

**Policy Number** 97303991

**Face Amount** $10,000,000.00

**Policy Date** NOVEMBER 1, 2005

Dear Policyowner:

We agree to pay the benefits of this policy in accordance with its provisions. It is important to Us that You are satisfied with Your policy and that it meets Your insurance goals. For service or information on this policy, contact the agent who sold the policy, any of Our agency offices, Our Home Office or Our Customer Service Center.

YOU HAVE A RIGHT TO RETURN THIS POLICY. If for any reason You are not satisfied with this policy, You may return it at any time within ten days (or sixty days if this policy was issued as a replacement of another life insurance policy) after You receive it to either the agent through whom it was purchased or to Us at Our Main Administrative Office at the following address:

Phoenix Life Insurance Company
Underwriting and Issue Department
P.O. Box 8027
Boston, MA 02266-8027
Telephone (860) 403-1000

Notice given by mail and returning the policy or contract by mail are effective if postmarked, properly addressed and postage is prepaid.

If returned, the policy will be considered void from the beginning and any premium paid will be refunded to You less any partial withdrawals or any loans taken under the policy. Such payment will be made within ten days after we receive notice of cancellation and the returned policy.

Signed for Phoenix Life Insurance Company at its Executive Offices in Hartford, Connecticut.

Sincerely yours,

Phoenix Life Insurance Company

John H. Beers
Secretary

Dona D. Young
Chairman, President
and Chief Executive Officer

**FLEXIBLE PREMIUM LIFE INSURANCE POLICY**
**Death Benefit Payable if Insured Dies While the Policy is In Force**

**Nonparticipating**

# SCHEDULE PAGE

The specifications shown below are those in effect initially. They may later be changed for reasons as stated in this policy. Coverage may end if premiums paid are not enough to continue coverage.

## BASIC INFORMATION

**POLICY NUMBER:** 97303991

**POLICY DATE:** NOVEMBER 1, 2005

**FACE AMOUNT:** $10,000,000.00

**MATURITY DATE:** NOVEMBER 1, 2030 **(See Death Benefit Following Insured's Age 100 provision in Part 7.)**

**DEATH BENEFIT OPTION:** A

**OWNER:** OWNER AS STATED ON THE APPLICATION UNLESS LATER CHANGED.

**BENEFICIARY:** AS STATED ON THE APPLICATION UNLESS LATER CHANGED.

## INSURED

| INSURED | ISSUE AGE & SEX | | RISK CLASSIFICATION |
|---|---|---|---|
| JOHN L LOEB JR | 75 | MALE | NON-SMOKER |

## PREMIUMS

**ISSUE PREMIUM:** $340,808.00

SUBSEQUENT PLANNED QUARTERLY PREMIUM: $135,000.00 *

**TOTAL PREMIUM LIMIT:** GREATER OF $6,642,930.50 AND RESULT OF $1,010,143.08 MULTIPLIED BY THE NUMBER OF ELAPSED POLICY YEARS (OR FRACTION THEREOF) AFTER NOVEMBER 1, 2005

The limit may decrease when monthly charges for any rider or any other monthly charges cease, and may be exceeded if additional premium is needed to prevent policy lapse.

**PREMIUM DUE DATES:** The amount and time of premium payments following the Policy Date are flexible. Subsequent planned premiums are payable on the FIRST day of each QUARTER thereafter until the Death of the Insured, but not beyond NOVEMBER 1, 2030 .

**POLICY VALUE ** BENCHMARK AMOUNT:** $9,000,000.00 (See Part 5)

* Payment of planned premiums does not guarantee coverage until the Maturity Date. Even if all planned premiums are paid, the policy may lapse earlier than the anniversary nearest the Insured's Age 100, due to the fact that current cost of insurance and interest rates are not guaranteed, policy loans and partial withdrawals may be taken, and there may be changes in the death benefit option. (See section entitled "Grace Period and Lapse" in Part 4.) Planned premiums are the amounts the owner anticipates paying when the policy is originally issued.

** Beginning in the third Policy Year, We will credit Additional Interest each Monthly Calculation Day on unborrowed Policy Value in excess of the Policy Value Benchmark Amount. See Part 5 of this policy for more details.

# SCHEDULE PAGE

CONTINUED

POLICY NUMBER: 97303991

## POLICY CHARGES

SALES CHARGE: 10% of the first $540,000.00 of premium paid in the first policy year. 5% of any premium paid in excess of $540,000.00 in the first policy year. 5% of all premiums paid in policy years 2+.

MONTHLY DEDUCTION:* See Part 5, "Monthly Deduction". Includes cost of insurance, any rider charges, any flat extra mortality charges, and monthly service and expense charges.

MONTHLY SERVICE CHARGE: $3.50 Guaranteed not to exceed $7.00.

ISSUE CHARGE: $50.00 deductible monthly during the first Policy Year. If you surrender during the first Policy Year, any unpaid Issue Charges will be assessed to reduce the Surrender Value payable under this policy.

PARTIAL WITHDRAWAL FEE FOR EACH WITHDRAWAL: $25.00 (in addition to a partial Surrender Charge).

SURRENDER CHARGE: See table on next page.

## OTHER RATES

GUARANTEED MINIMUM INTEREST RATE: 4%.

CREDITED INTEREST RATE ON LOANED AMOUNTS (See Part 5):

Policy Years 1 – 15: Loan Interest Rate less 1.5%
Policy Years 16 and thereafter: Loan Interest Rate less 0.5%

## LIMITATIONS

MINIMUM FACE AMOUNT: $250,000

PARTIAL WITHDRAWALS: A Partial Withdrawal will not be permitted in an amount:

- less than $500.00;
- which would reduce the Surrender Value to $0.00; or
- which would reduce the face amount below $250,000.

* Additional amounts are not guaranteed. We have the right to change the amount of interest credited to the policy and the amount of cost of insurance deducted under the policy. This may require more premium to be paid than was illustrated, or the cash values may be less than those illustrated.

# SCHEDULE PAGE
(CONTINUED)

POLICY NUMBER: 97303991

## TABLE OF SURRENDER CHARGES

For an explanation of this table, see section entitled "Surrender Value" in Part 5. The charges shown in this table are stated as of the beginning of the Policy Year indicated. The charge will be level for the first 10 Policy Years and will be prorated on an annual basis beginning in Policy Year 11, unless limited by legal maximums. In all Policy Years after the 20th policy year, the Surrender Charge is zero.

| POLICY YEAR | CHARGE PER $1,000 OF FACE AMOUNT |
|---|---|
| 1 | 58.5000 |
| 2 | 58.5000 |
| 3 | 58.5000 |
| 4 | 58.5000 |
| 5 | 58.5000 |
| 6 | 58.5000 |
| 7 | 58.5000 |
| 8 | 58.5000 |
| 9 | 58.5000 |
| 10 | 56.4588 |
| 11 | 53.2841 |
| 12 | 45.8250 |
| 13 | 34.1250 |
| 14 | 22.4250 |
| 15 | 10.7250 |
| 16 | 0.0000 |
| 17 | 0.0000 |
| 18 | 0.0000 |
| 19 | 0.0000 |
| 20 | 0.0000 |
| 20+ | 0.0000 |

## SCHEDULE PAGES (CONTINUED)

POLICY NUMBER: 97303991

### TABLE OF GUARANTEED MAXIMUM COST OF INSURANCE RATES PER $1000 OF NET AMOUNT AT RISK BASED ON 1980 CSO MORTALITY TABLE

| POLICY YEAR | MONTHLY RATE | POLICY YEAR | MONTHLY RATE | POLICY YEAR | MONTHLY RATE |
|---|---|---|---|---|---|
| 01 | 4.90000 | 10 | 11.34250 | 19 | 22.63580 |
| 02 | 5.42170 | 11 | 12.43330 | 20 | 24.63750 |
| 03 | 5.97000 | 12 | 13.56670 | 21 | 27.49670 |
| 04 | 6.53920 | 13 | 14.73250 | 22 | 32.04580 |
| 05 | 7.14330 | 14 | 15.90750 | 23 | 40.01670 |
| 06 | 7.80580 | 15 | 17.10750 | 24 | 54.83170 |
| 07 | 8.54330 | 16 | 18.34920 | 25 | 83.33330 |
| 08 | 9.37670 | 17 | 19.65330 | | |
| 09 | 10.31580 | 18 | 21.06250 | | |

Basis of Calculations: 1980 Commissioner's Standard Ordinary Mortality Smoker/Nonsmoker Distinct Table for each insured's sex and risk class, age nearest birthday, and 4% effective annual interest rate.

Monthly Factor used in determining Cost of Insurance: 1.0032737 (SEE PART 5)

# SCHEDULE PAGE

(CONTINUED)

POLICY NUMBER: 97303991

## TABLE OF FACE AMOUNTS OF INSURANCE

| ISSUE DATE | FACE AMOUNT |
|---|---|
| NOVEMBER 1, 2005 | $10,000,000.00 |

## RIDERS AND RIDER BENEFITS

| RIDER DESCRIPTION | RIDER DATE OF ISSUE | COVERAGE AMOUNT | RIDER TERMINATION DATE | MONTHLY CHARGE |
|---|---|---|---|---|
| UR78 - EXCHANGE OF INSURED OPTION - EXCHANGE OPTION RIDER | 11/01/2005 | $0.00 | 11/01/2030 | $0 |

# TABLE OF CONTENTS

SCHEDULE PAGES

BRIEF SUMMARY OF MAIN PROVISIONS

PART 1: DEFINITIONS .......... 1

PART 2: GENERAL PROVISIONS .......... 2
- Effective Date of Insurance .......... 2
- Entire Contract .......... 2
- Revised Schedule Pages .......... 3
- Age .......... 3
- Misstatement of Age or Sex .......... 3
- Contestability .......... 3
- Insurability Requirements After Issue .......... 3
- Suicide Exclusion .......... 4
- Termination .......... 4
- Minimum Policy Value .......... 4

PART 3: OWNER, COLLATERAL ASSIGNMENT, BENEFICIARY .......... 4
- Owner .......... 4
- Rights of Owner .......... 4
- Collateral Assignment .......... 5
- Beneficiary .......... 5
- How to Change the Beneficiary .......... 6

PART 4: PREMIUMS .......... 6
- Payments .......... 6
- Total Premium Limit .......... 6
- Reduced Paid-Up Benefit .......... 7
- Grace Period and Lapse .......... 7
- Reinstatement .......... 7

PART 5: POLICY VALUES .......... 8
- Basis of Calculations .......... 8
- Policy Value .......... 8
- Interest Rate .......... 9
- Benchmark Additional Interest Credit .......... 9
- Monthly Deduction .......... 10
- Cost of Insurance .......... 10
- Cost of Insurance Rates .......... 11
- Surrender Value .......... 11
- Partial Withdrawals .......... 12

PART 6: POLICY LOANS .......... 12
- When Available .......... 12
- Amount Available .......... 12
- Loan Interest .......... 13
- Debt .......... 13
- Repayment .......... 14

PART 7: INSURANCE COVERAGE PROVISIONS .......... 14
- Death Proceeds .......... 14
- Interest on Insurance Proceeds .......... 14
- Death Benefit .......... 14
- Minimum Death Benefit .......... 14
- Death Benefit Following Insured's Age 100 .......... 15
- Change in Death Benefit Option .......... 15
- Request for a Decrease in Face 16

PART 8: MISCELLANEOUS PROVISIONS .......... 16
- Annual Report .......... 16
- Projection of Benefits and Values .......... 16
- Notices by Us .......... 16
- Deferment of Certain Payments .......... 16
- Claims of Creditors .......... 17
- Corrections .......... 17

PART 9: PAYMENT OPTIONS .......... 17
- Who May Elect Payments Options .......... 17
- How to Elect a Payment Option .......... 17
- What Payment Options Are Available 17
- Other Payment Options .......... 19
- Additional Interest .......... 20

PART 10: TABLE OF PAYMENT OPTION AMOUNTS 20
- Adjusted Age .......... 20
- Basis of Calculation .......... 20
- Tables for Options 3, 4 and 5 .......... 21
- Table for Option 7 .......... 22

## BRIEF SUMMARY OF MAIN PROVISIONS

This is only a summary to help You understand the basics of Your policy. The policy provisions spell out the full details of the rights and obligations of the parties to this policy. The policy provisions and not this brief summary are binding on Us. We will pay the benefits of this policy as set forth on the policy Schedule Pages.

There are two Death Benefit Options to choose from, as described in Part 7. Option A is the Face Amount. Option B is the Face Amount plus Policy Value. Under either Option, the Death Benefit must be at least the Minimum Death Benefit as described in Part 7.

The premiums You pay are added to the Policy Value after We deduct any applicable premium expense charges. We make a monthly deduction from the Policy Value to pay the cost of insurance, the cost of any additional benefit riders and certain monthly charges. We determine cost of insurance rates from time to time, with the guarantee that they will never be higher than the maximum provided on the Schedule Pages. The Policy Value is credited with interest at a current rate which We set from time to time but which will not be less per year than the Guaranteed Minimum Interest Rate shown on the Schedule Pages.

The Subsequent Planned Premium shown on the Schedule Pages is the premium You selected in Your application and is the basis for the Policy Summary delivered with this policy. However, You may generally pay premiums when and in the amount You choose provided sufficient premium is paid to maintain the policy In Force. The amount and timing of premium payments will affect the accumulation of Policy Value.

This policy gives You a number of other options. Under stated conditions, You may change the Death Benefit Option, withdraw part of the Surrender Value or surrender the policy for its full Surrender Value. The Surrender Value is based on the Policy Value, minus any applicable Surrender Charges, unpaid issue charges, loans and loan interest.

We pay the insurance proceeds, as described in Part 3, to the beneficiary when We receive due proof that the Insured's death has occurred while this policy is In Force.

We pay the Surrender Value, as described in Part 5, to You if the Insured is living on the surrender date and this policy is then In Force.

You may change the premiums and Death Benefit Option, subject to Our approval. Certain changes may require evidence of insurability.

See the policy provisions for details.

**READ YOUR POLICY CAREFULLY. IT IS A CONTRACT BETWEEN YOU AND US.**

# PART 1: DEFINITIONS

| | |
|---|---|
| **Assigns** | Any persons to whom You assign an interest in this policy if We have notice of the assignment in accordance with the provisions stated in Part 3. |
| **Death Benefit Option** | The type of Death Benefit in effect as described in Part 7. |
| **Due Proof of Death** | A certified death certificate, an order of a court of competent jurisdiction, or any other proof acceptable to Us. |
| **In Force** | The policy has not terminated or otherwise lapsed in accordance with the Grace Period and Lapse Provision in Part 4. |
| **In Writing (Written Notice) (Written Request)** | Is a written form signed by You, satisfactory to Us and received at Our Home Office or Our Main Administrative Office. |
| **Monthly Calculation Day** | The first Monthly Calculation Day is the same day as the Policy Date. Subsequent Monthly Calculation Days are the same days of each month thereafter or, if such day does not fall within a given month, the last day of that month will be the Monthly Calculation Day. |
| **Nonparticipating** | This is a nonparticipating policy which does not pay any dividends. |
| **Subsequent Planned Premium** | The premium shown on the Schedule Page, which is the premium You selected in Your application and is the basis for the Policy Summary delivered with this policy. |
| **Policy Anniversary** | The anniversary of the Policy Date. |
| **Policy Date** | The Policy Date shown on the Schedule Pages from which Policy Years and Policy Anniversaries are measured. |
| **Policy Debt** | Unpaid policy loans with accrued interest. |
| **Policy Month** | The period from one Monthly Calculation Day up to but not including the next Monthly Calculation Day. |
| **Policy Value** | The Policy Value as defined in Part 5. |
| **Policy Year** | The first Policy Year is the one-year period from the Policy Date to, but not including, the first Policy Anniversary. Each succeeding Policy Year is the one-year period from the Policy Anniversary up to but not including the next Policy Anniversary. |
| **Surrender Value** | The Surrender Value as defined in Part 5. The Surrender Value is the Policy Value on the date of surrender less any applicable surrender charge, unpaid issue charge, and less any Policy Debt. |
| **We (Our, Us)** | Phoenix Life Insurance Company. |
| **You (Your)** | The owner of this policy at the time an owner's right is exercised. |

## PART 2: GENERAL PROVISIONS

**Effective Date of Insurance**

This policy will be In Force from the Policy Date until terminated in accordance with its terms, provided the first Issue Premium shown on the Schedule Pages is paid on or before delivery of this policy while the Insured is alive.

**Entire Contract**

This policy, including the Schedule Pages (and any supplements or changes thereto), any riders or endorsements, and the written application of the owner, a copy of which is attached to and made a part of the policy, are the entire contract between You and Us.

This policy is made in consideration of the application and the payment of premiums as provided in this policy. We rely on all statements made by or for the Insured in the written application. Each statement made in an application will, be deemed a representation and not a warranty. No statement will be used to void this policy or in defense of a claim under this policy unless:

1. it is contained in the application or in a supplemental application; and

2. a copy of that application is attached to this policy when issued or made a part of this policy when changes become effective.

Any change in the provisions of the policy, to be in effect, must be signed by one of Our executive officers and countersigned by Our registrar or one of Our executive officers. This policy is issued by Us and any benefits payable under this policy are payable by Us.

**Revised Schedule Pages**

The Schedule Pages issued with the policy show the initial policy data in effect for this policy on the Policy Date. Some of this policy data may change by an action You request or take or by a change You make. Any of these changes will be reflected in Revised Schedule Pages which supplement or restate the Schedule Pages and show the effective date of the change. We will send You such Revised Schedule Pages along with a copy of any supplemental application, and they will become part of this policy as of their effective date.

**Age**

Issue Age means the Insured's age on the Policy Date as of the Insured's nearest birthday. The attained age of the Insured on any Policy Anniversary and for the entire Policy Year then starting is the Issue Age plus the number of Policy Years since the Policy Date.

**Misstatement of Age or Sex**

If the age or sex of the insured has been misstated, any benefits payable under this policy will be adjusted to reflect the correct age and sex. The death benefit payable will be adjusted to reflect the amount of coverage that would have been supported by the most recent monthly deduction based on the then current cost of insurance rates for the correct age and sex.

**Contestability**

We rely on all statements made by or for the insured in the written application and in any supplemental application. These statements are considered to be representations and not warranties. We can contest the validity of this policy and any coverage under it for any material misrepresentation of fact. To do so, however, the misrepresentation must be contained in an application and the application, must be attached to this policy when issued or made a part of this policy when a change is made.

We cannot contest the validity of the original face amount of this policy after it has been In Force during the insured's lifetime for two years from its Policy Date (or two years from any reinstatement, if applicable). If We contest the policy, it will be based on the application for this policy (or the application for reinstatement, if applicable).

If this policy was issued as the result of a conversion option from term insurance, the contestable period for the converted amount is effective as of the date the term policy was issued.

If We contest the validity of all or a portion of the face amount provided under this policy, the amount We pay with respect to such portion of the face amount will be limited to the higher of a return of any paid premium required by Us for the contested Face Amount, or the sum of any monthly deductions made under this policy for the contested face amount.

**Insurability Requirements After Issue**

To make some changes or elections under this policy after it is issued, the Insured must meet Our insurability requirements (medical and/or financial) as follows:

1. evidence of the Insured's insurability must be given that is satisfactory to Us; and
2. under Our underwriting standards, the Insured must be in a Risk Classification that is the same as, or better than, the Risk Classification for this policy at issue.

**Suicide Exclusion**

If the Insured dies by suicide within two years from the Policy Date, and while the policy is In Force, Our liability shall be limited to an amount equal to the premiums paid on this policy less any debt owed Us and less any partial withdrawals.

If this policy was issued as a result of a conversion option from term insurance and if the Insured died by suicide within two years of the date the original term policy was issued and while this policy is In Force, Our liability shall be limited to an amount equal to the premiums paid on this policy and the original term policy, less any debt owed Us and less any partial withdrawals.

If this policy is reinstated, the Suicide Exclusion period does not begin anew. As regards to an increase in death benefit attributable to a premium payment as described in the Payments provision of Part 4, the Suicide Exclusion period begins again from the date of the increase in death benefit and only for the amount of such increase. The amount we pay attributable to such an increase in death benefit, in the event of suicide within such period, will be limited to a return of the monthly deductions assessed for the portion of the death benefit equal to the increase in death benefit.

**Termination**

If not previously terminated, this policy will terminate automatically on the earliest of:

1. the date the Insured dies; or

2. the date the grace period expires without the payment of sufficient premium in accordance with the Grace Period and Lapse Provision in Part 4.

**Minimum Policy Value**

All of the values under this policy are equal to or more than the minimums required on the Policy Date by the state in which this policy was delivered. The method of computation of the values under this policy has been filed as may be required with the Insurance Department of the state in which this policy was delivered.

## PART 3: OWNER, COLLATERAL ASSIGNMENT, BENEFICIARY

**Owner**

The Insured is the owner of this policy, unless otherwise provided in the application or by later transfer of ownership.

**Rights of Owner**

While the Insured is living, You may, as the owner, exercise all rights provided by this policy or allowed by Us. Consent of any beneficiary not irrevocably named or any contingent owner is not required. By Written Notice You may:

1. Transfer ownership to a new owner.

2. Name or change a contingent owner to succeed to the rights of owner at the owner's death. If there is no contingent owner at the owner's death, ownership will pass to the Insured, except as You may have otherwise directed In Writing.

3. Receive any amounts payable under this policy during the Insured's lifetime.

4. Change the beneficiary of the death benefit. See Part 3.

5. Change the Subsequent Planned Premium payment amount and frequency. See Part 4.

6. Obtain a partial withdrawal. See Part 5.

7. Surrender this policy for its cash Surrender Value. See Part 5.

8. Obtain policy loans. See Part 6.

9. Request changes in the insurance amount. See Part 7.

10. Change the Death Benefit Option. See Part 7.

11. Select a payment option for any cash Surrender Value that becomes payable. See Part 10.

12. Assign, release or surrender any of Your interest in the policy.

Exercise of any of these rights will, to the extent thereof, assign, release or surrender the interest of the Insured and all other beneficiaries and owners under this policy.

Any change in the owner or beneficiary designation is effective on the date the notice was signed, subject to receipt by the insurer. A transfer of ownership (or absolute assignment) is not the same as a "collateral assignment" as described in the next paragraph, and the new owner is not an "assignee" as these terms are used in this policy.

**Collateral Assignment**

By Written Notice You may assign an interest in this policy as collateral to a collateral assignee. The collateral assignment or a certified copy of it must be filed with Us at Our Main Administrative Office. When filed, it will bind Us as of the date of the assignment, subject to any action taken by Us before such filing. We shall not be responsible for the validity of any assignment. The interest of the assignee shall be prior to the interest of any beneficiary not irrevocably named or any contingent owner. A collateral assignee cannot change the beneficiary, owner or contingent owner.

**Beneficiary**

Unless another payment option is elected as described in Part 10, any death proceeds that become payable will be paid in equal shares to such beneficiaries living at the death of the Insured as stated in the application or as later changed. Payments will be made successively in the following order:

a) Primary beneficiaries;
b) Contingent beneficiaries, if any, provided no primary beneficiary is living at the death of the Insured;
c) You or Your executor or administrator, provided no primary or contingent beneficiary is living at the death of the Insured, or in the absence of a beneficiary designation.

Unless otherwise stated, the relationship of a beneficiary is the relationship to the Insured.

**How to Change the Beneficiary**

You may change the beneficiary by Written Notice filed with Us at Our Main Administrative Office. When We receive it, the change will relate back and take effect as of the date it was signed by You. However, the change will be subject to any payments made or actions taken by Us before We received the notice at Our Main Administrative Office.

Irrevocable beneficiaries are permitted and cannot be changed without the consent of the irrevocable beneficiary.

## PART 4: PREMIUMS

**Payments**

The Issue Premium as shown on the Schedule Pages is payable on or before delivery of this policy. The Insured must be alive when that premium is paid.

Subject to the limitations stated below, You may pay additional premiums at any time prior to the Policy Anniversary nearest the Insured's age 100 while this policy is In Force.

On Written Request We will send Subsequent Planned Premium notices to You. These notices can be sent annually, semi-annually or quarterly. Premiums may also be paid at other intervals, or under automatic collection methods, subject to Our consent.

The minimum premium payment amount that We will accept is $25, unless to prevent policy lapse. Any premium payment that would increase the Death Benefit by more than it would increase the Policy Value, shall be subject to evidence of insurability satisfactory to Us. As regards to any such increase, the Contestability and Suicide Exclusion provisions in Part 2 will apply from the date of the increase. The application for such increase will be attached to and is made part of the policy.

**Total Premium Limit**

The total premium limit is shown on the Schedule Pages and is applied to the sum of all premiums received by Us to date, excluding premiums applied to debt repayment, reduced by the sum of all partial withdrawals paid by Us to date. If the total premium limit is exceeded, We will refund the excess with interest at an annual rate of not less than 4%, not later than 60 days after the end of the Policy Year in which the limit was exceeded. The Policy Value will be adjusted to reflect such refund.

The total premium limit may be exceeded if additional premium is needed to prevent lapse under the Grace Period and Lapse provision, and such additional premium is permitted by federal tax laws or regulations such that this policy continues to meet the Definition of Life Insurance.

The total premium limit may change due to:

a) a change in Death Benefit Option;

b) a decrease of face amount;

c) a partial withdrawal;

d) addition, change or termination of a rider; or

e) a change in federal tax law or regulations.

If the total premium limit changes, We will send You Revised Schedule Pages reflecting the change. However, We reserve the right to require that the policy be returned to Us to endorse the change.

**Reduced Paid-Up Benefit**

Upon your request, after the first policy year, you may elect to lapse this policy to a reduced paid-up Death Benefit as of the next policy anniversary. The amount of the Death Benefit will be calculated based on the Surrender Value after assessment of the full Surrender Charge, the Guaranteed Minimum Interest Rate and the Guaranteed Maximum Cost of Insurance rates as specified in the Schedule Pages. Once elected, no further premiums may be paid into the contract. The cash surrender value of this reduced paid-up Death Benefit will be equal to the present value of the future guaranteed benefits provided for by this policy at that time.

**Grace Period and Lapse**

During the first seven Policy Years, if on any Monthly Calculation Day the required monthly deduction exceeds the Policy Value less any outstanding Debt, a grace period of 61 days will be allowed for the payment of an additional premium. Such additional premium, less the Sales Charge must be sufficient to increase such value on that Monthly Calculation Day to cover three monthly deductions.

After the seventh Policy Year, if on any Monthly Calculation Day the required monthly deduction exceeds the Surrender Value, a grace period of 61 days will be allowed for the payment of an additional premium. Such additional premium, less the Sales Charge must be sufficient to increase such value on that Monthly Calculation Day to cover three monthly deductions.

In addition, if on any Monthly Calculation Day the Policy Debt exceeds the maximum loan value, a grace period of 61 days will be allowed for the repayment of the policy loan such that the Policy Debt is no greater than the maximum loan value.

The policy will continue In Force during such grace period. We will mail to You and any Assigns at the post office addresses last known to Us a Written Notice as to the amount of premium required. This Written Notice will be sent at least 15 days and not more than 45 days prior to the date that the policy would lapse. If such required premium amount is not postmarked as having been mailed to Us by the end of the grace period, the policy will lapse without value. The Death Benefit payable during the grace period will equal the Death Benefit in effect immediately prior to such period less overdue charges.

Any premiums paid will be used, after assessment of sales charges, to pay for any unpaid monthly deductions.

**Reinstatement**

If this policy terminates, in accordance with the Grace Period and Lapse Provision, You may reinstate this policy back to an "In Force" status within five years after the expiration of the Grace Period. Reinstatement must become effective prior to age 100 and while the Insured is alive. We will not approve a request for a reinstatement

until We receive at Our Main Administrative Office all of the following:

1. a Written Request for reinstatement;

2. evidence of insurability satisfactory to Us;

3. if applicable, payment or reinstatement of any Policy Debt as of the date of lapse; and

4. the payment of a reinstatement premium while the Insured is alive which equals an amount needed to provide for a positive Surrender Value as of the date of lapse, plus three monthly deductions. However, during the first seven Policy Years, the reinstatement premium will equal an amount needed to provide for a positive Policy Value (less any Policy Debt) as of the date of lapse, plus three monthly deductions.

Subject to the foregoing conditions, the effective date of a reinstatement will be the Monthly Calculation Day following the date We approve the request for reinstatement. If We approve it on a Monthly Calculation Day, the effective date will be that Monthly Calculation Day.

The Policy Value as of the effective date of a reinstatement shall equal the reinstatement premium received, plus any Policy Debt in effect as of the date of lapse, plus any surrender charge assessed on the date of lapse, minus the monthly deduction for the month then starting.

The surrender charge as of the effective date of a reinstatement shall equal the surrender charge that would be in effect as if the policy never lapsed.

## PART 5: POLICY VALUES

The premiums You pay, minus the premium expense charges shown on the Schedule Pages, are added to the policy's Policy Value. We make monthly deductions from the Policy Value to cover the cost of insurance, the cost of any additional benefit riders and the monthly charges shown on the Schedule Pages. We also deduct any partial withdrawals You make and charges for them, as well as any charges for face amount decreases. The Policy Value earns interest. Any additional amounts credited to the Policy Value are nonforfeitable, except indirectly due to surrender charges.

Details are provided below. We will keep You informed of the current Policy Value by sending You an Annual Report as described in Part 8 of this policy.

**Basis of Calculations**

Minimum Surrender Values are determined from the Basis of Calculations shown on the Schedule Pages. The Guaranteed Maximum Insurance Rates shown on the Schedule Pages are also based on this Table.

**Policy Value**

Policy Value is to be calculated as follows:

1. on each Monthly Calculation Day following the Policy Date, the Policy Value will equal (A + B + C − D − E);

2. on a day of the month other than a Monthly Calculation Day, it will equal (A + C), plus interest on A from the beginning of the Policy Month to the date on which the Policy Value is being determined;

3. on the Policy Date, it will equal all premiums received, net of any premium expense charges, minus E;

where:

A = the Policy Value on the prior Monthly Calculation Day, after assessment of the monthly deduction on that day;

B = one month's interest on A, including any Additional Interest Credit;

C = all premiums received, net of any premium expense charges, since the prior Monthly Calculation Day, plus interest thereon to the end of the Policy Month, or any earlier date on which the Policy Value is being determined;

D = any partial withdrawal, and charge for it, being made as of that Monthly Calculation Day; and

E = the monthly deduction for the month then starting (no monthly deduction is made if the policy is surrendered for its full Surrender Value as of that Monthly Calculation Day).

**Interest Rate**

We will, from time to time, determine the interest rate used in the calculation of the Policy Value, based on Our anticipation of future investment earnings, mortality, persistency and expense/administrative costs. We will determine the interest rate at least once each year. We may, in Our sole discretion, change the interest rate. Changes made will be in accordance with procedures and standards on file with the Insurance Department of the state where this policy was delivered. Any interest credited in excess of the Guaranteed Minimum Interest Rate is referred to as "excess interest." The effective annual interest rate will never be less than the Guaranteed Minimum Interest Rate shown on the Schedule Pages.

We may credit different interest rates on loaned and unloaned portions of the Policy Value. The rate in effect on a given date for unloaned amounts is referred to as the "current interest rate." For loaned amounts, the credited interest rate for the first 15 policy years will be equal to the Loan Interest Rate in effect on that date less 1.5%, and after year 15 the rate will equal the Loan Interest Rate in effect on that date less 0.5%. In no event will the credited rate on loaned amounts be less than the Guaranteed Minimum Interest Rate. All interest rates are stated as effective annual rates. Interest will be compounded at least monthly to yield the effective annual rate.

**Benchmark Additional Interest Credit**

Beginning in the third Policy Year of this policy, in addition to interest being credited under the policy on each Monthly Calculation Day, We will also credit Additional Interest on each Monthly Calculation Day on amounts in excess of the Policy Value Benchmark Amount, shown on the Schedule Page. The Benchmark Additional Interest Rate will be equal to:

1. An annual effective rate of 1% if the Current Interest Rate is 5% or greater; or

2. An annual effective rate of .5% if the Current Interest Rate is at least 4.5% but less than 5%; or

3. An annual effective rate of 0% if the Current Interest Rate is less than 4.5%.

This Additional Interest Credit will be equal to (A x B), where:

A = the Benchmark Additional Interest Rate; and

B = the excess of the unloaned portion of the Policy Value over the Policy Value Benchmark Amount, shown on the Schedule Page.

The Additional Interest Credit is provided to reflect a reduction in Our holdback margin for profit and expense.

**Monthly Deduction**

The monthly deduction is the amount deducted from the Policy Value on the Policy Date and on each Monthly Calculation Day to pay the cost of insurance, the cost for any additional benefit riders and monthly charges for the Policy Month starting on that day. The monthly deduction will be equal to:

(A + B + C); where:

A = the cost of insurance (as defined in the Cost of Insurance provision below);

B = the monthly cost for any additional benefit riders as shown on the Schedule Pages;

C = the Monthly Service Charge shown on the Schedule Pages, and if applicable, one-twelfth of the Issue Charge.

**Cost of Insurance**

The cost of insurance is the amount We charge each month for providing the insurance coverage. The cost of insurance is equal to:

(A x (B − C)) + D; where

A = the applicable cost of insurance rate for the Insured's risk class, based upon the Net Amount at Risk and Insured's risk class, including any applicable substandard mortality percentage extra. The Net Amount at Risk is equal to (B−C) below;

B = the Death Benefit at the beginning of the Policy Month, divided by the Monthly Factor shown on the Schedule Pages;

C = the Policy Value at the beginning of the Policy Month, after the Monthly Service Charge and, when applicable, one-twelfth of the Issue Charge, and prior to subtracting the Cost of Insurance for that month;

D = the Substandard (Temporary or Permanent) Extra Charge, if any, shown on the Schedule Pages.

In item B "Death Benefit" means the Death Benefit as defined in Part 7 but prior to subtracting the cost of insurance for that month from any Policy Value element.

**Cost of Insurance Rates**

The cost of insurance rate for each Policy Month is based on the Insured's age at issue, risk class and sex, and on policy duration. The rate used in computing the cost of insurance is obtained from the Table of Guaranteed Maximum Cost of Insurance Rates shown on the Schedule Pages for the insured risk classification(s), or such lower rate as We may declare. At least 31 days before the start of the Policy Year, We will send You a notice of any change in rates.

No more frequently than once per year and no less frequently than once every five years, We will review the monthly Cost of Insurance Rates to determine if these rates should be changed. However, the rates will never exceed the Guaranteed Maximum Cost of Insurance Rates shown on the Schedule Pages. Our right to change rates also is subject to the following terms:

1. Any change in rates will be made on a uniform basis for all insureds in the same class. No change in rates will occur due to any change in the Insured's health or occupation.

2. Any change in rates will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the rates.

3. Any change in rates will be based on a change in Our expectations of future investment earnings, mortality, persistency and expense/administrative costs.

4. Any change in rates will comply with any procedures and standards that may be on file with the insurance official of the jurisdiction where this policy is delivered.

The Monthly Service Charge, shown on the Schedule Pages, is subject to change based on Our expectations of future investment earnings; mortality, persistency and expense/administrative costs, subject to the maximum Monthly Service Charge stated on the Schedule Pages.

**Surrender Value**

You may surrender this policy for its Surrender Value at any time, by sending Us a Written Request along with this policy on or before such Monthly Calculation Day.

The Surrender Value on any date is the Policy Value on that date minus any applicable surrender charge as shown in the Table of Surrender Charges on the Schedule Pages, minus any Policy Debt, minus any unpaid issue charge. If the surrender is requested within 30 days after a Policy Anniversary, the Surrender Value shall not be less than the Surrender Value on the Policy Anniversary less any debt, partial withdrawals and charges made or incurred since the Policy Anniversary. The Surrender Value is never less than zero.

If this policy is terminated, the remaining schedule of Surrender Charges will be suspended. When this policy is reinstated, the remaining schedule of Surrender Charges also will be reinstated. The Surrender Charges are based on the period of time the policy is in

effect. When reinstated, the schedule of Surrender Charges will start from the point where the schedule was suspended.

**Partial Withdrawals**

You may withdraw part of the Surrender Value as of any Monthly Calculation Day while the Insured is living, subject to the charges and limitations shown on the Schedule Pages. We must receive your Written Request for partial withdrawal on or before the Monthly Calculation Day on which the partial withdrawal is to be effective. The Policy Value will be reduced by the amount withdrawn, a partial surrender charge and a partial withdrawal fee.

The partial surrender charge is equal to the product of (A) and (B), where (A) is the Face Amount decrease in units of $1,000 resulting from the partial withdrawal, and (B) is the charge per $1,000 of Face Amount as set forth in the Table of Surrender Charges shown on Schedule Page 3 of 5. The partial surrender charge assessed will reduce all remaining surrender charges. There is no partial surrender charge assessed under Death Benefit Option B.

The partial withdrawal fee is shown on the Schedule Pages.

Under Death Benefit Option A (the Face Amount), the Face Amount is decreased by the same amount of reduction as the Policy Value.

Under Death Benefit Option B (the Face Amount plus the Policy Value), the Face Amount does not change.

A partial withdrawal will not be permitted which would reduce the Face Amount below Our then current Minimum Face Amount, or the Surrender Value to zero.

Any benefits provided are not less than that required by law of the state where this policy was delivered. We reserve the right to defer payment of surrender values for six months from the date of request.

## PART 6: POLICY LOANS

**When Available**

You may obtain a loan from Us at any time, on assignment of the policy to Us as security, if it has a Surrender Value greater than zero.

**Amount Available**

The amount of any loan may not exceed the maximum loan value less the amount of any existing debt, where the maximum loan value is equal to the lesser of:

- the Surrender Value of this policy projected from the date of the loan to the next Policy Anniversary based upon guaranteed assumptions, minus loan interest charges through the next Policy Anniversary; and
- the current Surrender Value of this policy.

If on any Monthly Calculation Day the Policy Debt exceeds the maximum loan value, this policy will lapse according to the terms of the "Grace Period and Lapse" provision.

We reserve the right to defer the granting of a loan, other than for the payment of any premium to Us, for six months after submission of a loan application.

A loan will have a permanent effect on any death benefit and cash surrender value of this policy. We recommend consultation with a tax advisor before taking a loan.

**Loan Interest**

Loan interest will accure on a daily basis from the date of the loan, and is payable in arrears.

Loans will bear interest at such rate or rates as established by Us for any period during which loans are outstanding. On each Policy Anniversary We will set the rate that will apply during the next Policy Year. Such rate will be effective at the beginning of that year and will apply to both new and any outstanding loans under this policy.

On each Policy Anniversary, any unpaid loan interest from the previous Policy Year will be added to the existing policy loan. Failure to repay a policy loan or to pay loan interest will not terminate this policy except as otherwise provided under the Grace Period and Lapse Provision in Part 4 when the policy does not have sufficient remaining value to pay the monthly deductions, in which event, that provision will apply.

We will notify You of the initial loan interest rate at the time a policy loan is made, or as soon as practical thereafter. If there are any outstanding loans, except for purposes of reinstatement, We will give You at least 30 days advance notice of any increase in the rate.

There is a maximum limit on the interest rate We can set. The maximum limit is the Published Monthly Average for the calendar month ending two months before the Policy Year begins or the Guaranteed Minimum Interest Rate used in computing the Policy Value plus 1%, whichever is higher.

The Published Monthly Average will be:

A. The Corporate Bond Yield Average – Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor to that Service; or

B. If that Monthly Average is no longer published, a substantially similar average issued by the insurance supervisory official of the state where this policy was delivered.

If the maximum limit for a Policy Year is at least 1/2% higher than the rate in effect for the previous year, We may increase the rate to not more than that limit.

If the maximum limit for a Policy Year is at least 1/2% lower than the rate in effect for the previous Policy Year, We must decrease the rate to not more than that limit.

**Debt**

As used in this policy, "debt" or "Policy Debt" means all loans existing on this policy plus accrued interest. When this policy

terminates, We will add to any existing debt interest accrued from the prior Policy Anniversary to the termination date.

**Repayment**

The whole or any part of a loan may be repaid at any time while this policy is in effect. Any moneys received will be applied directly to reduce the debt unless specified as a premium payment. We will not accept partial payments in amounts less than $25, unless to prevent policy lapse.

## PART 7: INSURANCE COVERAGE PROVISIONS

**Death Proceeds**

Upon receipt by Us of Due Proof of Death that the Insured died while this policy is In Force, We will pay the death proceeds of this policy. The death proceeds at the death of the Insured are equal to:

a) the Death Benefit, as described below, in effect on the Insured's date of death; PLUS

b) any insurance then in effect on the life of the Insured that is provided by any additional benefit riders; PLUS

c) any premiums received by Us after the Monthly Calculation Day just prior to the Date of Death and on or before the Date of Death; MINUS

d) Any partial withdrawals made after the Date of Death and prior to receipt of Written Notice of the insured's death; MINUS

e) Any debt then existing on this policy; MINUS

f) Any monthly deductions not already made up to and including the Policy Month of death.

**Interest on Insurance Proceeds**

We will pay interest on any death proceeds from the date of death to the date of payment. The amount of interest will be the same as would be paid were the death proceeds left for that period of time to earn interest under Payment Option 2. However, in no case will the amount of interest be less than the minimum required in Your state.

**Death Benefit**

The Death Benefit under this policy will be determined under either Option A or Option B, whichever is chosen and is then in effect, but in no event while the policy In Force will it be less than the Minimum Death Benefit described below.

Option A: The Face Amount on that date.

Option B: The Face Amount plus the Policy Value on that date.

**Minimum Death Benefit**

The Minimum Death Benefit will be equal to a percentage of the Policy Value as of the insured's attained age at the beginning of the Policy Year in which the insured's death occurs, as follows:

| ATTAINED AGE | % OF POLICY VALUE | ATTAINED AGE | % OF POLICY VALUE | ATTAINED AGE | % OF POLICY VALUE |
|---|---|---|---|---|---|
| 0-40 | 250% | 54 | 157% | 68 | 117% |
| 41 | 243% | 55 | 150% | 69 | 116% |
| 42 | 236% | 56 | 146% | 70 | 115% |
| 43 | 229% | 57 | 142% | 71 | 113% |
| 44 | 222% | 58 | 138% | 72 | 111% |
| 45 | 215% | 59 | 134% | 73 | 109% |
| 46 | 209% | 60 | 130% | 74 | 107% |
| 47 | 203% | 61 | 128% | 75 | 105% |
| 48 | 197% | 62 | 126% | 76-90 | 105% |
| 49 | 191% | 63 | 124% | 91 | 104% |
| 50 | 185% | 64 | 122% | 92 | 103% |
| 51 | 178% | 65 | 120% | 93 | 102% |
| 52 | 171% | 66 | 119% | 94 | 101% |
| 53 | 164% | 67 | 118% | 95 and over | 100% |

**Death Benefit Following Insured's Age 100**

After the Policy Anniversary which follows the Insured's 100th birthday, the Death Benefit will equal the Policy Value. Monthly Service Charges and Cost of Insurance Charges will not be deducted after this anniversary, nor can any premiums be paid. Policy loans and partial withdrawals will continue to be made available after this anniversary.

**Under federal tax law, this policy may not qualify as life insurance after the Insured's attained age 100. It may be subject to adverse tax consequences and a tax advisor should be consulted before the owner chooses to continue the policy after the Insured's attained age 100.**

**Change in Death Benefit Option**

The Face Amount and Death Benefit Option You have chosen initially are shown on the initial Schedule Pages. While this policy is In Force, You may request In Writing to change the Death Benefit Option. Any change will be subject to the following:

1. A change in Death Benefit Option will require that there be no immediate change in Our insurance risk. To assure this, when We approve a change from Option A to Option B, We will decrease the Face Amount by the Policy Value. Such a change from Option A to Option B may not be made if it would reduce the Face Amount below the Minimum Face Amount shown on the Schedule Pages. Similarly, when We approve a change from Option B to Option A, We will increase the Face Amount by the Policy Value. We will not require evidence of insurability for a change in Death Benefit Option. You are limited to one change in Death Benefit Option for each Policy Year.

2. The effective date of any change will be the Monthly Calculation Day next following Our approval of Your Written Request for change. This date will be shown on the Revised Schedule Pages that We will send You.

**Request for a Decrease in Face Amount**

You may request a decrease in face amount at any time after the first Policy Year. The decrease requested must at least equal $25,000 and the face amount remaining after the decrease must at least equal $250,000. All requests to decrease the face amount must be In Writing and will be effective on the first Monthly Calculation Day following the date We approve the request. We reserve the right to require that this policy first be returned to Us before the decrease is made. Upon a decrease in face amount, a partial surrender charge will be deducted from the Policy Value based on the amount of the decrease. The charge will equal the applicable surrender charge that would then apply to a full surrender multiplied by the result of dividing the decrease in face amount by the face amount of the policy before the decrease. We will send You a Revised Schedule Page reflecting the change.

## PART 8: MISCELLANEOUS PROVISIONS

**Annual Report**

We will send You, without charge, a report for each Policy Year which includes:

1. the current Policy Value, Death Benefit, Face Amount and Surrender Value;
2. any partial withdrawals, premiums paid, interest credited and charges made during the year;
3. any outstanding policy loans and new loans and loan repayments made during the year; and
4. such additional information as required by the Superintendent of Insurance or the supervisory official of the state in which this policy was delivered .

You have the right to request an illustrative report at any other time. We reserve the right to charge a reasonable fee for the report.

**Projection of Benefits and Values**

We will provide You, on Written Request and payment of Our service fee then in effect, a projection of illustrative future benefits and values under Your Policy. We may limit the number of such projections in any Policy Year.

**Notices By Us**

Whenever We are required to give notice to You, it shall be deemed given if We mail it to You and, unless otherwise specified, to the assignee of record, if any, in a postage-paid envelope mailed by first class mail to the last known address of record at Our Main Administrative Office.

**Deferment of Certain Payments**

We may defer, for not more than six months after We receive Written Request, the payment of the Surrender Value due to surrender or partial withdrawal or the making of any loan (except to pay premiums). If payment is deferred 10 days or more on any surrender, interest will be paid on the amount deferred at the interest rate currently payable on the interest-only settlement option described in Part 9, from the date the request is received to the date of payment.

**Claims of Creditors**

The proceeds and any income payments under this policy shall not be subject to the claims of creditors and shall be exempt from legal process, levy or attachment to the extent allowed by law.

**Corrections**

We reserve the right to correct any clerical errors in this policy, or in Our administration of the policy.

## PART 9: PAYMENT OPTIONS

**Who May Elect Payment Options**

The surrender or death proceeds of this policy will be paid in one sum unless otherwise provided. As an alternative to payment in one sum as provided under Option 1, the proceeds may be applied under one or more of the alternative income payment options described in this Part.

However, Our consent is required for the election of an income payment option by a fiduciary or any entity other than a natural person. Our consent is also required for elections by any Assigns or an owner other than the Insured if the owner has been changed.

Except for Option 7 which is not available for death proceeds, You may elect any payment option for payment of the death proceeds. You may also designate or change one or more beneficiaries who will be the payee or payees under that Option. You may only do this during the lifetime of the Insured. If no election is in effect when the death benefit becomes payable, the beneficiary may elect any payment option other than Option 7. The payment options are also available to the payee of any Surrender Value that becomes payable under this policy.

Unless We agree otherwise, all payments under any Option chosen will be made to the designated payee or to his or her executor or administrator. We may require proof of age of any payee or payees on whose life payments depend as well as proof of the continued survival of any such payee(s).

**How To Elect a Payment Option**

The election of an income payment option must be in Writing. You can elect that the payments be made on an annual, semi-annual, quarterly, or monthly basis provided that each installment will at least equal $25. We also require that at least $1,000 be applied under any option chosen.

**What Payment Options Are Available**

This section provides a brief description of the various payment options that are available. In Part 10 You will find tables illustrating the guaranteed installment amounts provided by several of the Options described in this section. The amounts shown for Option 4, Option 5 and Option 7 are the minimum monthly payments for each $1,000 applied. The actual payments will be based on the monthly payment rates We are using when the first payment is due. They will not be less than shown in the tables.

Option 1 – Payment in one sum

Option 2 – Left to earn interest

We pay interest on the amount left with Us under this Option as a principal sum.

We guarantee that at least one of the versions of this Option will provide interest at a rate of at least 3% per year.

Option 3 – Payments for a specified period

Equal income installments are paid for a specified period of years whether the payee lives or dies. The first payment will be on the date of settlement.

The Option 3 Table shows the guaranteed amount of each installment for monthly and annual payment frequencies. The table assumes an interest rate of 3% per year on the unpaid balance. The actual interest rate is guaranteed not to be less than this minimum rate.

Option 4 – Life annuity with specified period certain

Equal installments are paid until the later of:

a) the death of the payee;

b) the end of the period certain.

The first payment will be on the date of settlement. The period certain must be chosen at the time this Option is elected. The periods certain that may be chosen are as follows.

a) ten years;

b) twenty years;

c) until the installments paid refund the amount applied under this Option. If the payee is not living when the final payment falls due, that payment will be limited to the amount which needs to be added to the payments already made to equal the amount applied under this Option.

If , for the age of the payee, a period certain is chosen that is shorter than another period certain paying the same installment amount, We will deem the longer period certain as having been elected.

Any life annuity as may be provided under this Option is calculated using an interest assumption of 3 3/8%, except that any life annuity providing a period certain of twenty years or more is calculated using an interest rate of 3 1/4%.

Option 5 – Life annuity

Equal installments are paid only during the lifetime of the payee. The first payment will be on the date of settlement.

Any life annuity as may be provided under this Option is calculated using an interest rate of 3 1/2%.

Option 6 – Payments of a specified amount

Equal installments of a specified amount, out of the principal sum and interest on that sum, are paid until the principal sum remaining is less than the amount of the installment. When that happens, the principal sum remaining with accrued interest will be paid as a final payment. The first payment will be on the date of settlement. The payments will include interest on the principal sum remaining at a rate guaranteed to at least equal 3% per year. This interest will be credited at the end of each year. If the amount of interest credited at the end of a year exceeds the income payments made in the last 12 months, that excess will be paid in one sum on the date credited.

Option 7 – Joint survivorship annuity with a 10-year period certain

This payment option is not available for death proceeds. This Option is only available if the policy is surrendered within 6 months of the Policy Anniversary nearest the Insured's 55th, 60th, or 65th birthday. The first payment will be on the date of settlement. Equal income installments are paid until the latest of:

a) the end of the 10-year period certain;

b) the death of the Insured;

c) the death of the other named annuitant.

The other annuitant must be named at the time this Option is elected and cannot later be changed. That annuitant must have an adjusted age as defined in Part 10 of at least 40.

Any joint survivorship annuity as may be provided under this Option is calculated using an interest rate of 3 3/8%.

**Other Payment Options**

We may offer other payment options or alternative versions of the options listed in the above section.

**Additional Interest**

In addition to:

a) the interest of 3% per year guaranteed on the principal sum remaining with Us under Option 2 or 6; and

b) the interest of 3% per year included in the installments payable under Option 3;

We will pay or credit at the end of each year such additional interest as We may declare.

## PART 10: TABLES OF PAYMENT OPTION AMOUNTS

The installment amounts shown in the tables that follow are shown for each $1,000 applied. Amounts for payment frequencies, periods or ages not shown will be furnished upon request. Under Options 4 and 5, the installment amount for younger ages than shown will be the same as for the first age shown and for older ages than shown, it will be the same amount as for the last age shown.

**Adjusted Age**

The term "age" as used in the tables refers to the adjusted age. Under Options 4 and 5, the adjusted age is defined as follows:

a) for Surrender Values, the age of the payee on the payee's nearest birthday to the Policy Anniversary nearest the date of surrender;

b) for death benefits, the age of the payee on the payee's birthday nearest the effective date of the payment option elected.

Under Option 7, the adjusted age is the age on the nearest birthday to the Policy Anniversary nearest the date of surrender. The table for Option 7 only shows the amounts for annuitants of the opposite sex. Rates for annuitants of the same sex will be furnished upon request.

**Basis of Calculation**

The rates that follow are based on the a-49 Table projected to 1985 with Projection Scale B and Projection B thereafter with 3 1/2% interest for Non-Refund, 3 3/8% for 10-Year Certain and Life and Installment Refund, and 3 1/2% for 20-Year Certain and Life.

## Option 3 - Payments for a specified period

| Number of Years....... | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|
| Annual Installment....$ | 211.99 | 179.22 | 155.83 | 138.31 | 124.69 | 113.82 | 104.93 | 97.54 | 91.29 |
| Monthly Installment...$ | 17.91 | 15.14 | 13.16 | 11.68 | 10.53 | 9.61 | 8.86 | 8.24 | 7.71 |

| Number of Years....... | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 25 | 30 |
|---|---|---|---|---|---|---|---|---|---|
| Annual Installments....$ | 85.95 | 81.33 | 77.29 | 73.74 | 70.59 | 67.78 | 65.26 | 55.76 | 49.53 |
| Monthly Installment...$ | 7.26 | 6.87 | 6.53 | 6.23 | 5.96 | 5.73 | 5.51 | 4.71 | 4.18 |

## *Option 4 - Life annuity with specified period certain

| Age of Payee | Installment Refund Certain | | 10 Years Certain | | 20 Years Certain | | Age of Payee | Installment Refund Certain | | 10 Years Certain | | 20 Years Certain | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Male | Female | Male | Female | Male | Female | | Male | Female | Male | Female | Male | Female |
| 10 | $3.08 | $3.03 | $3.08 | $2.99 | $3.00 | $2.94 | 50 | $4.36 | $4.12 | $4.50 | $4.10 | $4.28 | $3.99 |
| 15 | 3.14 | 3.09 | 3.15 | 3.04 | 3.07 | 3.00 | 55 | 4.76 | 4.47 | 4.95 | 4.47 | 4.61 | 4.31 |
| 20 | 3.22 | 3.16 | 3.24 | 3.11 | 3.15 | 3.07 | 60 | 5.28 | 4.93 | 5.54 | 4.96 | 4.97 | 4.67 |
| 25 | 3.33 | 3.24 | 3.34 | 3.20 | 3.25 | 3.15 | 65 | 5.97 | 5.54 | 6.30 | 5.63 | 5.29 | 5.06 |
| 30 | 3.45 | 3.35 | 3.47 | 3.30 | 3.38 | 3.25 | 70 | 6.91 | 6.39 | 7.24 | 6.50 | 5.43 | 5.31 |
| 35 | 3.61 | 3.48 | 3.64 | 3.43 | 3.55 | 3.38 | 75 | 8.21 | 7.57 | 8.26 | 7.56 | 5.44 | 5.40 |
| 40 | 3.80 | 3.64 | 3.86 | 3.60 | 3.74 | 3.54 | 80 | 10.04 | 9.26 | 9.12 | 8.60 | 5.46 | 5.46 |
| 45 | 4.05 | 3.85 | 4.14 | 3.82 | 3.99 | 3.74 | 85 | 12.61 | 11.68 | 9.60 | 9.31 | 5.46 | 5.46 |

## * Option 5 - Life annuity

| Age Of Payee | Male | Female | Age Of Payee | Male | Female |
|---|---|---|---|---|---|
| 10 | $3.37 | $3.12 | 50 | $4.62 | $4.28 |
| 15 | 3.24 | 3.18 | 55 | 5.12 | 4.68 |
| 20 | 3.32 | 3.25 | 60 | 5.79 | 5.24 |
| 25 | 3.42 | 3.34 | 65 | 6.75 | 6.04 |
| 30 | 3.56 | 3.44 | 70 | 8.15 | 7.22 |
| 35 | 3.73 | 3.58 | 75 | 10.26 | 9.03 |
| 40 | 3.95 | 3.75 | 80 | 13.54 | 11.88 |
| 45 | 4.24 | 3.98 | 85 | 18.72 | 16.54 |

***Option 7 - Joint survivorship annuity with 10-year period certain**

| Age of Other Annuitant F | Age of Insured Male | | | Age of Other Annuitant F | Age of Insured Male | | | Age of Other Annuitant M | Age of Insured Female | | | Age of Other Annuitant M | Age of Insured Female | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 55 | 60 | 65 | | 55 | 60 | 65 | | 55 | 60 | 65 | | 55 | 60 | 65 |
| 40 | $3.62 | $3.64 | $3.65 | 60 | $4.43 | $4.64 | $4.82 | 40 | $3.72 | $3.77 | $3.80 | 60 | $4.34 | $4.64 | $4.93 |
| 45 | 3.80 | 3.83 | 3.86 | 65 | 4.61 | 4.93 | 5.23 | 45 | 3.89 | 3.97 | 4.03 | 65 | 4.44 | 4.82 | 5.23 |
| 50 | 4.00 | 4.07 | 4.12 | 70 | 4.75 | 5.18 | 5.63 | 50 | 4.06 | 4.19 | 4.31 | 70 | 4.50 | 4.95 | 5.48 |
| 55 | 4.22 | 4.34 | 4.44 | 75 | 4.86 | 5.36 | 5.96 | 55 | 4.22 | 4.43 | 4.61 | 75 | 4.54 | 5.03 | 5.65 |

* Minimum monthly income for each $1,000 applied.

# EXCHANGE OF INSURED OPTION RIDER

This rider is part of the policy to which it is attached. Except as stated in this rider, it is subject to all of the provisions contained in the policy.

**The Exchange Option**
While this rider is in effect and subject to its terms, you have the option to exchange your policy ("the exchange policy") for a new policy on the life of a substitute insured.

**How to Exercise This Option**
To exercise this option, You must file an application with Us at Our Main Administrative Office. It must be signed by You. We must also receive:

1. Evidence that You have a satisfactory insurable interest in the life of the substitute insured.

2. Evidence that the substitute insured is insurable under our established practice in the selection of risks for the amount and plan applied for. Selection of risks includes health and non-health factors.

3. The release of any lien against or assignment of your policy. You may instead submit written approval by the lienholder or assigns of the exchange policy in a form satisfactory to Us with such other documents as We may reasonably require.

4. The surrender and release of the exchange policy.

5. Payment of any amounts due to Us for the exchange as described in the Exchange Adjustments.

Unless otherwise provided in the application, the owner and the beneficiary of the new policy will be the same as under the exchange policy. Any subsequent changes will be governed by provisions of the new policy.

The Date of Exchange will be the policy anniversary following the later of:

1. Our receipt of the application;

2. Payment of the Exchange Adjustments, if any; and

3. Our approval of the insurable interest.

The new policy will take effect on the Date of Exchange. When the new policy takes effect, the exchange policy will terminate.

**The New Policy**
The Policy Date of the new policy will be the Date of Exchange.

The issue age of the Insured under the new policy will be determined based upon the substitute insured's age on his or her birthday nearest the date of issue of the new policy.

The new policy on the life of the substitute insured will be written on any plan of universal life insurance issued with a level face amount issued by Us at the time of the exchange. The new policy will be subject to Our published issue rules (e.g., age and amount limits) for the plan chosen which are in effect at that time. The risk classification and any exclusions applicable to the new policy will be determined in accordance with Our rules and practices in effect on the date of exchange. The rates for the new policy will be based on Our published rates in effect on the Date of Exchange.

The face amount of the new policy will equal the basic face amount of the exchange policy without regard to any riders under the exchange policy, except as provided below. The Policy Value of the exchange policy on the Date of Exchange will be applied as premium to the new policy, but without any issue or sales charge applied under the new policy.

**Exchange Adjustments**
The owner must pay an amount equal to the excess, if any, of the surrender charge in effect on the exchange policy over the surrender charge for the new policy. All such surrender charges will be determined as of the Date of Exchange.

In some cases, the amount of Policy Value that may be applied to the new policy may exceed the premium limit for the new policy. In that event, We will return such excess Policy Value to You in cash.

**Monthly Rider Charges**
There are no Monthly Charges for coverage under this rider.

**Termination of This Rider**
This rider will terminate on the first of any of the following events to occur:

1. Termination of the exchange policy;

2. Lapse or Exchange of the exchange policy;

3. Our receipt at Our Home Office of a Written Request to cancel this rider; and

4. Death of the insured.

Phoenix Life Insurance Company

Dona D. Young

Chairman, President
and Chief Executive Officer



Phoenix Life Insurance Company
P.O. Box 8027
Boston, MA 02266-8027

**Policy Acceptance Form**

| Agency: E9206 | Insured(s): JOHN L LOEB JR |
|---|---|
| Policy Number: 97303991 | |

**DECLARATION:**

The insured(s) declares that the statements made in the application remain full, complete, and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been sought.

All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to that insured's signature below and complete a form #519B for that insured. PLEASE NOTE: Home Office approval of form #519B is necessary before the policy is in effect.

**AMENDMENTS:** The application for Policy No. 97303991 is amended as follows:

**Policy Option A is not applicable to this plan of insurance.**
**The subsequent planned annual premium is $540,000.**
**The first year anticipated annual premium is $540,000.**

**ENDORSEMENTS:**

**Delivery expiry is 12/20/2005 on policy 97303991.**

It is agreed that the above declaration and amendments are part of the application and shall be part of the policy.

**DELIVERY RECEIPT:** To be completed when policy is delivered. If form #519B is required, please consult with your agent before completing this section.

This certifies that as the policy owner, (check ONE only):

[X] I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information.

[ ] I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information, and authorize ______________ to hold such policy on my behalf.

Date 11/16/05 Insured(s) [signature]

Signed at New York, NY

Witness [signature]

Owner John L Loeb Jr Insurance Trust, By: [signature] ... as trustee

By [signature] (if other than insured)
Robert J. Busch, VP

If owner is a firm or corporation, please give the name of the firm or corporation and the title of the officer signing for the firm or corporation.

AGENT: ORIGINAL to Underwriting and Issue, YELLOW COPY to Agent, PINK COPY to remain with policy.

PHOENIX® Phoenix Life Insurance Company
PO Box 8027
Boston MA 02266-8027
Underwriting Service Center

**Application for Life Insurance**
**Part I**

**Section I - Proposed Insured**

Print Name as it is to appear on policy (First, Middle, Last) John L. Loeb Jr

Sex ☒ Male ☐ Female

Birthplace (State or Country) U.S.A.

United States Citizen ☒ Yes ☐ No

Marital Status ☐ Single ☐ Married [

REDACTED

REDACTED

**Section II - Ownership**

☐ A. Insured
☐ B. Successive Owners
☐ B1. Owners Jointly
☐ C. Corporation, its successors or assigns (Include state of incorporation)
☐ D. Partnership (Include Name of all Partners - if partnership is limited, indicate which partners are general partners)
☐ E. Sole Proprietorship (Include Name of Sole Proprietor)
☒ F. Trust (Include Name and Date of Trust, Name of Trustee(s) and Grantor)

(Complete section below if **B, C, D, E** or F are checked)

**If Owner is other than Proposed Insured, Premium Notice will be sent to:**

Owner's Name John L. Loeb, Jr. Insurance Trust
Hudson United Bank, trustee John L. Loeb Jr Grantor

Mailing Address c/o Hudson United Bank 75 Rockefeller Plaza New York, NY 10019

Owner's Email Address

Social Security or Tax I.D. Number 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 Relationship Date of Birth

**Contingent Owner**

Name Date of Birth

Relationship

**Ultimate Owner:** Check one. If none checked, insured will be ultimate owner.

☐ Insured ☐ Executor or administrator of the survivor of the primary and contingent owners

**Section III - Beneficiary Designation**

| Primary Beneficiary | Relationship to Proposed Insured | Date of Birth (If Availabl |
|---|---|---|
| John L. Loeb, Jr. Insurance Trust | | |

☐ **If this box is checked, each of the Contingent Beneficiaries listed shall receive an equal interest.**

| First Contingent Beneficiary | Relationship to Proposed Insured | Date of Birth (If Av |
|---|---|---|
| Second Contingent Beneficiary | Relationship to Proposed Insured | Date of Birth (If |

REDACTED

**If Trust is primary beneficiary: (check one)**

☐ Trust under Insured's will
☒ Inter vivos - Name of Trustee Hudson United Bank
Date of Trust October 17, 2005

To qualify for payment, beneficiary must be living: (Check A or B, otherwise A will apply)

☐ A. at the Proposed Insured's death. ☐ B. on the 30th day after the date of the Proposed Insured's death.

**Section IV - Coverage Applied For**

| Plan of Insurance | Basic Policy Amount |
|---|---|
| Phoenix Accumulator VL II | $ 10,000,000 |

**Section V - VARIABLE/UNIVERSAL PLANS of Insurance - Riders and Features**

| First Year Anticipated, BILLED Premium (Excluding 1035 Exchange, Lump Sum Funds, etc.) | Subsequent Planned Annual Premium |
|---|---|
| | |

- ☐ Disability Waiver of a Specified Amount
  Amount $ ____________
- ☐ Accidental Death Benefit Rider
- ☐ Death Benefit Protection Rider
  ☐ Age 70 ☐ Age 80 ☐ Age 100
- ☐ Purchase Protector ____________ units
- ☐ Child's Term Rider
- ☐ Family Term Rider
- ☐ Living Benefit Rider
- ☐ Guaranteed Death Benefit Rider
- ☐ Guaranteed Extension Rider
- ☐ Cash Value Accumulation Rider
- ☐ Age 100 + Rider
- ☐ Individual Term Rider $ ________

**Death Benefit Option:** (check one) If none checked, Option 1 will apply.
- ☒ Option 1 - Level Face Amount
- ☐ Option 2 - Increasing Face Amount

**Face Amount Increase Options:**
- ☐ ________% percentage Increase
- ☐ $ ________ Fixed Dollar Increase
- ☐ Increase Equal to Premiums Paid

**Policy Option:** (check one) If none checked, Option A will apply.
- ☒ Policy Option A
- ☐ Policy Option B
- ☐ Policy Option C
- ☐ Other ____________
- ☐ Other ____________
- ☐ Other ____________
- ☐ Other ____________

**Temporary Money Market Allocation**

If the state of issue does not require refund of premium during the Right To Cancel Period, but you prefer to temporarily allocate your premiums to the Money Market subaccount until the end of the Right to Cancel Period, as stated in the policy, indicate: ☐ Yes ☐ No

**Electronic Delivery Authorization**

By checking "Yes," I am authorizing the Company to provide my statements, prospectuses and other information electronically if available. I understand that I must have Internet access to use this service and there may be access fees charged by the Internet service provider. ☐ Yes ☐ No

**Section VI - Suitability**

**Do you understand that if you have purchased a Variable Life Policy and the Death Benefit may be variable or fixed under certain conditions and that the Death Benefit and Cash Values under any Variable Policy may increase or decrease in amount or duration based on the investment experience of the underlying subaccounts?** ☐ Yes ☐ No

**If you are purchasing a Variable Life Policy, do you believe it is suitable to meet your financial objectives?** ☐ Yes ☐ No

**If I have purchased a Variable Life Policy, I confirm that I have received the prospectus for that policy and its underlying funds.**

**Illustrations of benefits including death benefits, policy values and cash surrender values are available on request.**

**Section VII - Complete if Temporary Insurance is Requested**

If either of the following questions are answered "Yes" or left blank, no agent or broker is authorized to accept money and a Temporary Insurance Agreement **may not** be issued, and no coverage will take effect.

| Yes | No | |
|---|---|---|
| ☐ | ☐ | 1. Within the past two years have you been treated for heart disease, stroke, or cancer or had such treatment recommended? |
| ☐ | ☐ | 2. Within the past 60 days have you been scheduled or advised to have any diagnostic test (excluding HIV) tests or surgery not yet performed? |

$__________ has been paid by ____________________ to the Licensed Agent/Registered Representative indicated in this application, for proposed insurance applied for in this application. This sum is to be applied in accordance with and subject to the terms of the **Temporary Insurance Receipt** bearing the same number as this application.

**Section VIII - TERM/WHOLE LIFE PLANS of Insurance - Riders and Features**

☐ Accidental Death Benefit
☐ Disability Waiver of Premium on Insured
☐ Purchase Protector ______________ units
☐ Family Protection
☐ Children's Protection ______________ units
☐ Living Benefit Rider
☐ Other ______________

Cost of Living is automatic (No COL for Term products) unless this box is checked ☐ I do not desire Cost of Living

Additional Death Benefit Riders:
Primary Insurance Term Rider (PITR) $ __________
Other Rider Name __________ Amount $ __________

☐ Paid-Up Additions Purchase Options Rider (PAPOR) (check one)
☐ PAPOR A-Flexible ☐ PAPOR B-Flexible with Optionterm
Number of years payable __________
Intended premium payments for the first 7 years:

Year 1 __________ Year 5 __________
Year 2 __________ Year 6 __________
Year 3 __________ Year 7 __________
Year 4 __________ **Maximum Amount $** __________

**Dividend Option:**
☐ Optionterm
Optionterm Death Benefit $ __________
Premium Paying Coverage ☐ Yes ☐ No or
% of Increase __________
☐ Accumulate at Interest (ACCUM)
☐ Paid-up Additional Insurance (PUA)
☐ One Year Term with Balance to:
☐ Cash ☐ PUA ☐ ACCUM ☐ RP
☐ Reduce Premium (RP)
☐ Cash
☐ Other __________
☐ Other __________

Automatic Premium Loan, If applicable
☐ Yes ☐ No

Policy Loan Interest Rate, if applicable (If none checked, "Variable" will apply.)
☐ Variable ☐ Fixed

**Section IX - Mode of Premium Payment** - (Please note, there is a higher cost associated with the purchase of a Whole Life or Term policy, if the mode of payment is other than on an annual pay basis. Please consult with your Licensed Agent/Registered Representative.)

☐ Annual ☒ Quarterly ☐ Semi-Annual
☐ Monthly (Variable Life Insurance only) ☐ PCS (Phoenix Check-O-Matic Service)
Minimum Monthly Check for Each Service - $25.00

Multiple Billing Option - Give # or Details __________
☐ List Bill ☐ Employee Insurance Counseling Service (EICS) ☐ Salary Allotment ☐ Pension ☐ Money Purchase Pension
☐ Other __________

**If electing PCS, complete the following:**
Existing Policy Number or PCS File Number __________

**Authorization Agreement for Preauthorized Payments**
I (we) hereby authorize the Company (Note: Company is defined as indicated on page 1 of application) to initiate debit entries to my (our) checking account and the depository named below.

**Information for New Account**
Attach a void check to furnish encoding details.
If the depositor's name is not imprinted on the check, fill it in here exactly as it appears in the bank records.

**Attach Void Check Here**

Signature of depositor (if different from owner) __________

Send premium notices to: (in addition to owner)
☐ Insured at: ☐ Home Address ☐ Business Address
☐ Other (Name, Relationship to Owner and Address) __________

**Section X - Existing Life Insurance**

Describe all additional coverage in force. Include individual and group. If no coverage inforce, check here ☒.

| Company | Issue Date | Plan | Amount | Personal / Business |
|---|---|---|---|---|
| | | | $ | ☐ ☐ |
| | | | $ | ☐ ☐ |
| | | | $ | ☐ ☐ |

Total Life Insurance in force (if none, indicate) $ NONE Total Accidental Death Benefit in force (if none, indicate) $____________

| Yes | No | |
|---|---|---|
| ☐ | ☒ | 1. Are there any life insurance policies or annuity contracts, owned by, or on the life of, the applicants or the insureds or the owner(s) or the annuitant? |
| ☐ | ☒ | 2. With this policy, do you plan to replace (in whole or in part) now or in the future any existing life insurance or annuity contract in force with this policy? |
| ☐ | ☒ | 3. Do you plan to utilize values from any existing life insurance policy or annuity contract (through loans, surrenders or otherwise) to pay any initial or subsequent premium(s) for this policy? |

For all "Yes" answers above, please provide the following information

| Company | Issue Date | Plan | Amount | Personal / Business |
|---|---|---|---|---|
| | | | $ | ☐ ☐ |
| | | | $ | ☐ ☐ |
| | | | $ | ☐ ☐ |

REDACTED

al Information

REDACTED

Have you used tobacco or nicotine pro[REDACTED] last 10 years? If "Yes," please circle the product(s) used: cigarettes, cigars, pipes, snuff, smokeless or chewing tobacco, nicotine patch or gum.
If "Yes," check one: ☐ Use currently ☐ Date quit____________.

Have you ever applied for life, accident, or health insurance and been declined, postponed, or been offered a policy differing in plan, amount or premium rate from that applied for? (If "Yes," give date, company and reason).

Are you negotiating for other insurance? (If "Yes," name companies and total amount to be placed in force.)

Do you intend to live or travel outside the United States or Canada? (If "Yes," state where and for how long).

Have you flown during the past three years as a pilot, student pilot or crew member? (If "Yes," complete Aviation Questionnaire).

Have you participated in the past 3 years or plan to engage in any extreme sport activities such as motorized vehicle, or parachute jumping, or underwater diving, or any other extreme avocation? (If "Yes," complete Avocation Questionnaire).

Have you in the past three years been the driver of a motor vehicle involved in an accident, or convicted of a moving violation of any motor vehicle law, or had your driver's license suspended or revoked?

8. Have you ever been convicted of a felony or do you have charges pending?

Give full details for all "Yes" answers above. If necessary, use an additional piece of paper and please sign it.

| Question # | Details |
|---|---|
| 3. | |
| | |
| | |
| | |
| 4. | REDACTED |
| | |

OL2773NY

**Section XIII - Medical History (Not necessary to complete if medical or paramedical exam has been ordered)**

... pounds or more in the past 2 years?

REDACTED

... Yes (please provide details below) ...

**To the best of your knowledge and belief have you ever had, or been told by a physician or other health care provider that you have:**

1. High blood pressure or hypertension?
2. Pain, pressure, or discomfort in the chest, angina pectoris, palpitations, swelling of the ankles, or undue shortness of breath?
3. Heart disease, coronary artery disease, cardiomyopathy, heart failure, atrial fibrillation, heart rhythm abnormality, heart murmur, congenital heart disease or valvular heart disease?
4. Peripheral vascular disease, claudication, narrowing or blockage of arteries or veins?
5. Asthma, pulmonary fibrosis, chronic cough, emphysema, pneumonia, or any other lung disease?
6. Neurologic disease, seizures, fainting, falls, concussion, stroke, transient ischemic attack (TIA), tremor, neuropathy, weakness, pa Parkinson's disease, memory loss, dementia, or any other diseas of the brain or nervous system?
7. Depression, bipolar disorder, schizophrenia, anxiety, or other psychiatric illness?
8. Arthritis, lupus, or any musculoskeletal or skin disorder?
9. Ulcers, abdominal pain, colitis, Crohn's disease, gall bladder disease, liver disease, hepatitis, jaundice, pancreatitis, or any other disease of the gastrointestinal system?
10. Diabetes, kidney disease, kidney stones, bladder disorder, prostate disorder, protein or blood in the urine?
11. Endocrine disorder, including disorder of the thyroid, parathyroi adrenal, or pituitary glands?
12. Acquired Immune Deficiency Syndrome (AIDS) or any other immunologic disorder?
13. Anemia, bleeding or clotting disorder, or any other disorder of the blood or bone marrow?
14. Cancer of any type, tumor (benign or malignant), leukemia, lymphoma, or Hodgkin's disease?
15. Are you taking any kind of medicine, therapy, or treatment regularly or at frequent intervals?
16. Have you ever been treated for alcoholism or been advised to limit or stop your use of alcohol?
17. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens, or any prescription drug except in accordance with a physician's instructions?
18. Have you ever been a patient in any hospital, treatment center, or similar facility within the last 10 years?
19. Have you had, or been advised to have, any surgery, X-rays, electrocardiograms, blood studies (excluding HIV or AIDS tests), or other tests within the last 5 years?
20. Other than above, have you had any other physical or psychologi disorder or been treated by a physician or other health care provide for any reason within the past 5 years? ☐ Yes ☒ No

Please provide details of "YES" answers (include question number, diagnosis, date of occurrence, spital or treating physician's name and address, and rrent status). Use OL1590 if additional space is cessary to record all details.

REDACTED

Phoenix reserves the right to require additional medical information, medical examination or testing to complete the underwriting process.

**Authorization To Obtain Information**

I authorize any physician, health care provider, hospital, clinic or other medically-related facility, insurance company or the Medical Information Bureau (MIB), having any records or knowledge of me or my health, to provide any such information to Phoenix Life Insurance Company and its affiliated insurers (Phoenix) or its reinsurers. I authorize any of the above sources to release to Phoenix or its reinsurers any of my information relating to alcohol use, drug use and mental health care.

Medical information will be used only for the purpose of risk evaluation and determining eligibility for benefits under any policies issued. Phoenix may disclose information it has obtained to others as permitted or required by law, including the MIB, our reinsurers and other persons or entities performing business or legal services in connection with this application, any contract issued pursuant to it or in connection with the determination of eligibility for benefits under an existing policy. Information that is not personally identifiable may be used for insurance statistical studies.

If insurance on any minor child is applied for, this authorization extends to records and knowledge of that child and that child's health. To facilitate rapid submission of information, I authorize all of the above sources, except MIB, to give such records or knowledge to any agency employed by Phoenix to collect and transmit such information.

I authorize consumer reporting agencies, insurance companies, motor vehicle departments, my attorneys, accountants and business associates and the MIB to provide any information to Phoenix or its reinsurers that may affect my insurability. This may include information about my occupation, participation in hazardous activities, motor vehicle record, foreign travel, finances, and other insurance coverage in place.

I acknowledge that I have received a copy of the Notice of Information Practices, including information about Investigative Consumer Reports and the Medical Information Bureau. I authorize the preparation of an investigative consumer report.

This authorization shall continue to be valid for thirty months from the date it is signed unless otherwise required by law. A photocopy of this signed authorization shall be as valid as the original. This authorization may be revoked by writing to Phoenix prior to the time the insurance coverage has been placed in force. I understand my authorized representative or I may receive a copy of this authorization on request.

☐ I do ☐ I do not (check one) require that I be interviewed in connection with any investigative consumer report that may be prepared.

I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded.

I understand that i) no statement made to, or information acquired by any Licensed Agent/Registered Representative who takes this application, shall bind the Company unless stated in Part I and/or Part II of this application, and ii) the Licensed Agent/Registered Representative has no authority to make, modify, alter or discharge any contract thereby applied for.

I understand and agree that the insurance applied for shall not take effect unless and until each of the following has occurred: the policy has been issued by the Company; the premium required for issuance of the policy has been paid in full during the lifetime of the insured; all the representations made in the application remain true, complete and accurate as of the latest of such dates, and there has been no change in the health of any proposed insured that would change the answers to any of the questions in the application, except as otherwise provided by the Temporary Insurance Agreement.

I understand that if there is any change in my health or physical condition, or if I visit a physician or am hospitalized, subsequent to the date I complete the application or provide any information to be contained in the application, I will inform the Company as soon as possible.

This application is attached to and made a part of the policy.

Under penalty of perjury, I confirm that (a) the Social Security or Tax Identification Number shown above is correct, and (b) that I am not subject to back-up withholding. (Strike this out and initial if not true).

If I have applied for the Living Benefit Rider, I confirm that I have received a copy of the disclosure form, Summary of Coverage for Accelerated Benefit Rider.

| Proposed Insured's Signature | State Signed In | Witness (Must be signed in presence of Proposed Insured) | Date |
|---|---|---|---|
| [signature] L. Loeb | N.Y. | [signature] | 10/20/05 |
| **Owner's Signature (If other than Proposed Insured)** John Loeb ... Trustee ... [signature] | **State Signed In** N.Y. | **Witness (Must be signed in presence of Owner)** [signature] | **Date** 10/20/05 |
| **Parent's Signature (for minor insured)** Robert J. Loeb [illegible] | **State Signed In** | **Witness (Must be signed in presence of Parent)** | **Date** |

The Producer hereby confirms he/she has truly and accurately recorded on the application the information supplied by the Proposed Insured; and that he/she is qualified and authorized to discuss the contract herein applied for.

Will the proposed insured replace (in whole or in part) any existing life insurance or annuity contract in force with the policy applied for? ☐ Yes ☒ No

Will the proposed insured utilize values from another insurance policy (through loans, surrenders or otherwise) or annuity to pay for the initial or subsequent premium(s) for the policy applied for? ☐ Yes ☒ No

Are there any life insurance policies or annuity contracts owned by or on the life of the applicants or the insureds or the owner(s) or the annuitant? ☐ Yes ☒ No

| Lic. Agt./Reg. Rep's Name (Print) | | Lic. Agt./Reg. Rep's Email Address | |
|---|---|---|---|
| Steven Lockwood | | steve@lockwoodpension.com | |
| **Lic. Agt./Reg. Rep's Signature** | **Date** | **Lic. Agt./Reg. Rep.'s I.D. No.** | **Lic. Agt./Reg. Rep.'s Telephone No.** |
| X [signature] | 10/20/05 | 307075 | 212 717 7334 |
| **Broker / Dealer Name and Address** | | | **Broker/Dealer Number** |