# EXHIBIT B



Your Phoenix contract is enclosed.
Store in a safe place.

| | |
|---|---|
| **Insured** | MICHAEL EARL MOSS |
| **Policy Number** | 97304872 |
| **Plan** | Phoenix Accumulator UL |



PHOENIX

 **PHOENIX LIFE INSURANCE COMPANY**
**A Stock Company**

| | | | |
|---|---|---|---|
| **Insured** | MICHAEL EARL MOSS | **Total Face Amount at Issue** | $6,000,000 |
| **Policy Number** | 97304872 | **Policy Date** | October 12, 2007 |
| **Death Benefit** | Option A | **Issue Date** | October 12, 2007 |
| **Plan** | Phoenix Accumulator UL | | |

The Phoenix Life Insurance Company ("the Company") agrees, subject to the conditions and provisions of this policy, to pay the Death Benefit to the Beneficiary in a lump sum upon the death of the Insured if such death occurs while the policy is in force, and to provide the other benefits, rights, and privileges of the policy. If the Company makes other plans of payment available other than a lump sum, then a Beneficiary may request written election of any such other plans in lieu of a lump sum. The Death Benefit will be payable on receipt at the Main Administrative Office of the Company of due proof of the Insured's death.

We are issuing the policy in consideration of the application and our receipt of the Minimum Initial Premium at our Main Administrative Office. The provisions of this and the following pages and any attachments make up your contract.

**RIGHT TO RETURN THIS POLICY. This policy may be returned within 10 days (60 days for replacements) after you receive it for a refund of any premium received, less any withdrawals and loans made under this policy. This policy will be void from its beginning. You may return the policy by delivering or mailing it to us at the address below or by returning it to the agent or agency office through which it was delivered.**

**Main Administrative Office**

Phoenix Life Insurance Company
Variable and Universal Life Administration
P.O. Box 8027
Boston, MA  02266-8027
Telephone (800) 541-0171

Signed for Phoenix Life Insurance Company at One American Row, Hartford, Connecticut 06103-2899.

*Dona D. Young*

Chairman, President
and Chief Executive Officer

*John H. Beers*

Secretary

**READ YOUR POLICY CAREFULLY**
**It is a legal contract between the Owner and Phoenix Life Insurance Company**

**Universal Life Insurance Policy**
**Flexible Premiums**
**Death Benefit payable at death of Insured**
**Nonparticipating – not eligible for dividends**
**Benefits, premiums, and the Risk Classification are shown in Section 1**

U001NYF1

# TABLE OF CONTENTS

| Section | Provision |
|---|---|
| 1. | Schedule Pages |
| 2. | Table of Rates |
| 3. | Definitions |
| 4. | Qualification as Life Insurance |
| 5. | Total Face Amount |
| 6. | Death Proceeds |
| 7. | Guaranteed Death Benefit |
| 8. | Death Benefit On or After Age 100 Anniversary |
| 9. | Policy Value |
| 10. | Premiums |
| 11. | Grace Period |
| 12. | Policy Termination |
| 13. | Reinstatement |
| 14. | Loans and Overloan Protection |
| 15. | Surrenders and Withdrawals |
| 16. | Basis of Computations |
| 17. | Owner(s) and Beneficiary(ies) |
| 18. | Assignment |
| 19. | Misstatements |
| 20. | Suicide Exclusion |
| 21. | Incontestability |
| 22. | The Entire Contract |
| 23. | Annual Statement |
| 24. | Claims of Creditors |
| 25. | Right to Defer Payment of Benefits |

U001ZZT1

## SECTION 1: SCHEDULE PAGES

POLICY NUMBER:   97304872

| | |
|---|---|
| **Insured** | MICHAEL EARL MOSS |
| **Age at Policy Date** | 72 |
| **Sex** | Male |
| **Risk Classification** | Non-Smoker, Percentage Substandard 150.0% |
| **Additional Ratings** | Not Applicable |
| **Owner, Beneficiary** | As designated in the application or subsequently changed |
| **Policy Date** | October 12, 2007 |
| **Issue Date** | October 12, 2007 |
| **Maturity Date** | October 12, 2035      (See Death Benefit On or After Age 100 Anniversary provision in Section 8.) |
| **Death Benefit Option at Issue** | Option A |
| **Life Insurance Qualification Test** | Guideline Premium Test |

| | | |
|---|---|---|
| **Total Face Amount** | Basic Face Amount at Issue | $6,000,000 |
| | Supplemental Face Amount at Issue | $0 |
| | Total Face Amount at Issue | $6,000,000 |

### Premiums at Issue

| | |
|---|---|
| **Premium Mode** | Annual |
| **Minimum Initial Premium** | $31,950.00 |
| **Planned Premium** | $299,526.00 |
| **Monthly Guarantee Premium** | $15,975.00 |

### Other Benefits and Specifications
**(See Rider Information for further details regarding riders)**

| | |
|---|---|
| **Preferred Loan Amount at Issue** | $0 |
| **Additional Interest Start Date** | October 12, 2014 |
| **Guaranteed Death Benefit Period** | 5 Policy Years |
| **Withdrawal Charge Period** | Policy Years 1-10 |

**Notice:** The actual premiums paid will affect the Policy Value, the duration of insurance coverage, and the amount of Death Benefit as described in Section 6. **Even if the Planned Premiums shown above are paid as scheduled, they may not be sufficient to continue the policy in force to the Maturity Date (or the death of the insured, if earlier), since the current cost of insurance and interest rates are not guaranteed, and policy loans and partial withdrawals may be taken (See Section 11 entitled "Grace Period").** Unless the Total Cumulative Premium Test is satisfied during the Guaranteed Death Benefit Period, the policy will continue in force to the Maturity Date (or the death of the insured) only if on each Monthly Calculation Date the Net Policy Value, less Policy Debt, during the first 9 Policy Years is at least equal to all due and unpaid Monthly Deductions. After the first 9 Policy Years, the Net Surrender Value on each Monthly Calculation Date must be at least equal to all due and unpaid Monthly Deductions.

This policy will not lapse at any time prior to the end of the Guaranteed Death Benefit Period shown above if the Total Cumulative Premium Test, as defined in Section 7, is satisfied. **Based on the payment of the Monthly Guarantee Premium until the end of the Guaranteed Death Benefit Period, specified above, assuming guaranteed charges and guaranteed interest credits, the resulting Policy Value may be insufficient to keep this policy in force on the Monthly Calculation Date next following the end of the Guaranteed Death Benefit Period unless an additional payment is made on that day.** Please contact our Main Administrative Office for more information.

---

### SECTION 1: SCHEDULE PAGES (continued)

---

POLICY NUMBER:   97304872

### Policy Charges

**Deductions from Premium Payments**

| | |
|---|---|
| **Sales Charge*** | 10% of first $332,806.20 of premium paid in the first Policy Year |
| | 7% of any premium paid in excess of $332,806.20 in the first Policy Year |
| | 5% of all premiums paid in Policy Years 2 and thereafter. |

*No sales charge will apply to any loan carried over as part of the initial premium paid for this policy.

**Monthly Deduction**  (the following charges are deducted monthly from the Policy Value on each Monthly Calculation Date)

| | |
|---|---|
| **Issue Charge** | $50.00   deducted during the first Policy Year only. If You surrender during the first Policy Year, any unpaid Issue Charges will be assessed to reduce the Net Surrender Value payable under this policy. |
| **Service Charge** | $3.50   guaranteed not to exceed $7.00. |
| **Cost of Insurance Charge** | Determined in accordance with Section 9.  Maximum monthly rates per $1,000 of Net Amount at Risk are shown in Section 2. |
| **Rider Charges** | As hereinafter described in this Section 1 under Rider Information |

**Other Deductions**

| | |
|---|---|
| **Overloan Transaction Charge** | 3.5% of the Policy Value, deducted when the overloan protection feature is exercised, as described in Section 14. |
| **Surrender Charge** | The charges shown in this table are as of the beginning of each Policy Year. These Surrender Charges will reduce on a monthly basis to equal zero over time, as shown in this table.  The policy's Surrender Charge is equal to the sum of that shown for the Basic Face Amount and that shown for the Supplemental Face Amount. |

#### Table Of Surrender Charges

| Policy Year | Basic Face Amount | Supplemental Face Amount |
|---|---|---|
| 1 | $276,264 | $0 |
| 2 | $263,202 | $0 |
| 3 | $250,555 | $0 |
| 4 | $238,394 | $0 |
| 5 | $226,703 | $0 |
| 6 | $215,448 | $0 |
| 7 | $204,564 | $0 |
| 8 | $193,950 | $0 |
| 9 | $183,530 | $0 |
| 10 | $173,276 | $0 |
| 11 | $163,170 | $0 |
| 12 | $153,213 | $0 |
| 13 | $143,379 | $0 |
| 14 | $133,531 | $0 |
| 15 | $77,220 | $0 |
| 16 | $0 | $0 |
| 17 | $0 | $0 |
| 18 | $0 | $0 |
| 19 | $0 | $0 |
| 20 | $0 | $0 |
| 21+ | $0 | $0 |

U001NYS2

CASE 1:11-cv-08405-CM-JCF

---

### SECTION 1: SCHEDULE PAGES (continued)

---

POLICY NUMBER:    97304872

### Rider Information

| | Rider Description | Rider Issue Date | Benefit Amount | Rider Expiry Date | Rider Charge |
|---|---|---|---|---|---|
| VR162 | Living Benefit Rider | 10/12/2007 | | | None |

\* Rider Charges for subsequent Policy Months are in accordance with those guarantees specified in the rider.

U001ZZS3

---

### SECTION 1: SCHEDULE PAGES (continued)

POLICY NUMBER:   97304872

#### Table of Values*

**Refer to your policy provisions for details on the terms and values shown in this table.**

| | |
|---|---|
| Minimum Total Face Amount | $100,000 |
| Minimum Basic Face Amount | $100,000 |
| Non-Preferred Policy Loan Interest Rate | 6% |
| Preferred Policy Loan Interest Rate | 4% |
| Minimum Withdrawal Amount | $500 |
| Guaranteed Minimum Interest Rate | 4% |
| Policy Value Benchmark Percentage** | 40% |
| Guideline Single Premium | $4,195,289.66 |
| Guideline Level Premium | $657,590.51 |
| Maximum Annual Premium | $1,000,000 |
| Minimum Total Face Amount Decrease | $10,000 |
| Credited Interest Rate on Non-Preferred Loaned Amounts | 4.75% for policy years 1-15, 5.50% thereafter |
| Credited Interest Rate on Preferred Loaned Amounts | 4% |

*Additional amounts are not guaranteed. We have the right to change the amount of interest credited to the policy and the amount of cost of insurance deducted under the policy. This may require more premium to be paid than was illustrated, or the cash values may be less than those illustrated.

**Beginning on the Additional Interest Start Date as shown in Section 1, We will credit a Additional Interest each Monthly Calculation Date on amounts in excess of the Policy Value Benchmark Amount. See Section 9 of this policy for more details.

U001NYS4

---

**SECTION 2: TABLE OF RATES**

---

POLICY NUMBER:   97304872

## MINIMUM DEATH BENEFIT PERCENTAGES & MAXIMUM MONTHLY COST OF INSURANCE RATE TABLE

| Attained Age | Minimum Death Benefit Percentage | Maximum Monthly Rates per 1,000 of Net Amount at Risk | Attained Age | Minimum Death Benefit Percentage | Maximum Monthly Rates per 1,000 of Net Amount at Risk |
|---|---|---|---|---|---|
| 72 | 111% | 5.3200 | 87 | 105% | 22.0987 |
| 73 | 109% | 5.9299 | 88 | 105% | 23.8612 |
| 74 | 107% | 6.6150 | 89 | 105% | 25.6612 |
| 75 | 105% | 7.3500 | 90 | 105% | 27.5238 |
| 76 | 105% | 8.1325 | 91 | 104% | 29.4799 |
| 77 | 105% | 8.9550 | 92 | 103% | 31.5937 |
| 78 | 105% | 9.8088 | 93 | 102% | 33.9537 |
| 79 | 105% | 10.7149 | 94 | 101% | 36.9562 |
| 80 | 105% | 11.7087 | 95 | 100% | 41.2450 |
| 81 | 105% | 12.8149 | 96 | 100% | 48.0687 |
| 82 | 105% | 14.0650 | 97 | 100% | 60.0250 |
| 83 | 105% | 15.4737 | 98 | 100% | 82.2475 |
| 84 | 105% | 17.0137 | 99 | 100% | 83.3333 |
| 85 | 105% | 18.6499 | 100+ | 100% | 0.0000 |
| 86 | 105% | 20.3500 | | | |

**Basis of Calculations:**  1980 Commissioner's Standard Ordinary Mortality Smoker/Nonsmoker Distinct Table (Age Nearest Birthday) for the Insured's sex and Risk Classification, Age, and 4% effective annual interest rate. The Monthly Factor used in determining Cost of Insurance is 1.0032737.

If this policy is issued on a unisex basis, we will use the 1980 Commissioners' Standard Ordinary Mortality Smoker/Nonsmoker Distinct 80% Male Table (Age Nearest Birthday) for the Insured's Risk Classification, Age, and 4% effective annual interest rate.  The Monthly Factor used in determining the Cost of Insurance is 1.0032737.

U001ZZS5

## SECTION 3: DEFINITIONS

The term **"Age"** means, on any given date, the age of the person in question at his or her birthday nearest that date.

The term **"Age 100 Anniversary"** means the Policy Anniversary nearest the Insured's 100th birthday.

The term **"Attained Age"** on any date means the Age plus the number of whole years that have elapsed since the Policy Date.

The term **"business day"** means any day that we are open for business.

The term **"due proof of death"** means, a certified death certificate, an order of a court of competent jurisdiction, or any other proof acceptable to us.

The term **"in force"** means the policy has not terminated or otherwise lapsed in accordance with the Grace Period provision.

The terms **"in writing," "written notice,"** and **"written request"** mean a written form signed by you, satisfactory to us and received at our Home Office or Main Administrative Office or such other medium electronic or otherwise that we may from time to time make available.

The term **"Issue Date"** means the date from which the Suicide Exclusion and Incontestability provisions are applied.

The term **"Maturity Date"** means the date shown in Section 1.  This is the date upon which the Insured reaches Attained Age 100.

The term **"Minimum Initial Premium"** means the minimum premium needed to put the policy in force and is shown in Section 1.

The terms **"Monthly Calculation Date"** or **"Monthly Calculation Day"** mean the date on which monthly deductions are assessed from the Policy Value.  The first Monthly Calculation Date is the Policy Date.  Subsequent Monthly Calculation Dates are the same days of each month thereafter or, if such day does not fall within a given month, the last day of that month will be used.

The term **"Net Policy Value"** equals the Policy Value less the Policy Debt.

The term **"Net Surrender Value"** equals the Surrender Value less the Policy Debt.

The term **"notice"** means that whenever we are required to give notice to you, it shall be deemed given if we mail it to you and, unless otherwise specified, to the assignee of record, if any, in a postage-paid envelope mailed by first class mail to the last known address of record from our Main Administrative Office. If we mutually agree notice may also be provided by an electronic medium.

The term **"Planned Premium"** means the premium that is selected in the application or as later changed by you for this policy that you intend to be pay on a regular modal basis

The term **"Policy Anniversary"** means the same day and month of each year as the Policy Date. If the day does not exist in a month, the last day of the month will be used.

The term **"Policy Date"** means the date shown in Section 1.  Policy Charges are calculated from the Policy Date. Policy Years, Policy Months, and Policy Anniversaries are determined from the Policy Date.

The term **"Policy Debt"** means unpaid loans with accrued interest.

The term **"Policy Month"** means the period from one Monthly Calculation Date up to, but not including, the next Monthly Calculation Date.

The term **"Policy Value"** means the amount equal to the Net Premium credited less an amount not to exceed one month of Monthly Deductions from the Policy Value on the later of the Issue Date or the receipt of the first payment at our Main Administrative Office as shown in Section 1. Thereafter the Policy Value is determined by accumulating with interest the Policy Value for the prior day by Net Premiums credited and decreased by withdrawals and, on the Monthly Calculation Date, the Monthly Deductions from Policy Value shown in Section 1. For further details see Section 9: Policy Value.

The term **"Policy Year"**  means, with respect to the first Policy Year, the one-year period beginning on the Policy Date up to, but not including, the first Policy Anniversary.  Each subsequent Policy Year is the one-year period beginning on a Policy Anniversary up to, but not including, the next Policy Anniversary.

The term **"Preferred Loan"** means any loan that is carried over as part of the initial premium paid for this policy from a previously issued policy plus any loan taken to pay loan interest on the Preferred Loan.

The term "Surrender Value" means the Policy Value less any applicable Surrender Charges, and less any unpaid issue charges.

The terms "we", "us", and "our" refer only to the Company.

The terms "you" and "your" refer only to the owner of this policy as defined in Section 17.

---

## SECTION 4: Qualification as Life Insurance

The provisions of this policy are to be interpreted to ensure or maintain qualification as a life insurance contract for federal income tax purposes, notwithstanding any other provisions of the policy to the contrary. We reserve the right to make any reasonable adjustments to the terms or conditions of this policy, including distributions from the policy to the extent we deem it necessary, if it becomes necessary to maintain qualification as life insurance. This provision should not be construed to guarantee that this policy will receive tax treatment as life insurance or that the tax treatment of life insurance will never be changed by the future actions of any tax authority. To ensure that the policy qualifies as life insurance, one of the following tests will apply to the policy. The test you elected is shown in Section 1, Schedule Pages. Your election cannot be changed after issue. We reserve the right to refuse any premium payments that would cause the policy to fail the test you elected.

**Guideline Premium Limit**
Under the Guideline Premium Limit test, the sum of the premiums paid less a portion of any withdrawals, as defined in the Code, may not exceed the greater of:
- The Guideline Single Premium (as determined for your policy); or
- The sum of the annual Guideline Level Premium to the date of the payment.

If you elected this test, the Guideline Single Premium and the Guideline Level Premium are shown in Section 1. If at any time the premiums received under the policy exceed the amount allowable for such tax qualification, such excess amount shall be removed from the policy as of the date of its payment, together with interest thereon from such date, and any appropriate adjustment in the Death Benefit shall be made as of such date. This excess amount (plus or minus any interest) shall be refunded to you no later than 60 days after the end of the applicable Policy Year. If this excess amount (plus or minus any interest) is not refunded by then, the Total Face Amount under the policy shall be increased retroactively so that at no time is the Death Benefit ever less than the amount necessary to ensure or maintain such tax qualification. In no event, however, will we refuse to accept any premium necessary to prevent the policy from terminating.

**Cash Value Accumulation Test**
Under this test, the net single premium for the future benefits of the contract must always be greater than the Policy Value. The net single premium is that single amount that would provide for the cost of the Death Benefit and any applicable riders under this policy. We reserve the right to modify the Death Benefit Percentages shown in Section 2, retroactively if necessary, to ensure or maintain qualification of this policy as a life insurance contract for federal income tax purposes, notwithstanding any other provisions of this policy to the contrary.

---

## SECTION 5: Total Face Amount

The Total Face Amount is made up of two components: (i) the Basic Face Amount, and (ii) the Supplemental Face Amount, if any. The Total Face Amount remains equal to the Total Face Amount at Issue, shown in Section 1, or as modified according to the terms of this Policy.

**Reduction of Total Face Amount**
You may request a reduction in Total Face Amount at any time after the first Policy Year provided this policy is in force and subject to the Minimum Total Face Amount. Any reduction in the Total Face Amount will be implemented by first reducing any Supplemental Face Amount. Any reduction in the Total Face Amount will be effective on the next Monthly Calculation Date after our approval. Upon a reduction in Total Face Amount, a pro-rata Surrender Charge will be deducted from the Policy Value based on the Policy Year and amount of the reduction in accordance with the Table of Surrender Charges shown in Section 1.

U001ZZR2

---

## SECTION 6: Death Proceeds

---

If the Insured dies while the policy is in force, we will pay the Death Proceeds, as described below, upon receipt of due proof of death of the Insured, subject to any applicable provisions of the policy.

If the Insured dies on or after the date we receive a request from you to surrender the policy, no Death Proceeds will be paid. We will pay the amount payable under the Surrenders and Withdrawals provision instead.  The Death Proceeds at the death of the Insured are equal to:

    (a) the Death Benefit, as described below, in effect on the Insured's date of death; plus

    (b) any insurance then in effect on the life of the Insured that is provided by any additional benefit riders; less

    (c) any Policy Debt then existing on this policy.

If the Insured dies during the Grace Period, the Death Proceeds payable described above will be modified as follows:

    (a) the Death Proceeds will be reduced by any outstanding Policy Charges due; and

    (b) the Policy Value used in the calculation of the Death Benefit will be the Policy Value as of the date of death of the Insured.

We will pay interest on any Death Proceeds paid in one sum in the event of the Insured's death from the date of death to the date of payment as required by applicable state law. If the state does not specify the interest rate, we will use an effective annual  rate of no less than 3%.

### Death Benefit

The Death Benefit under this policy will be determined under either Option A or Option B, whichever is then in effect.

Option A: The Total Face Amount on the date of death of the Insured or, if greater, the Minimum Death Benefit as described below.

Option B: The Total Face Amount plus the Policy Value on the date of death of the Insured or, if greater, the Minimum Death Benefit as described below.

If withdrawals are made, the Death Benefit will be reduced by reducing the Total Face Amount if Option A is in effect, or the Policy Value if Option B is in effect.

### Minimum Death Benefit

The Minimum Death Benefit is equal to the Policy Value on the date of death multiplied by the applicable Minimum Death Benefit Percentage for the Attained Age of the Insured. The Minimum Death Benefit Percentages are shown in Section 2. To the extent that the Net Amount at Risk associated with the Minimum Death Benefit that results from this calculation exceeds our guidelines and limitations that may be in effect, we reserve the right to:

    (a) distribute to you a portion of the Policy Value such that the Net Amount at Risk associated with the resulting Minimum Death Benefit does not exceed our guidelines and limitations in effect; or

    (b) if we should decide to accept the additional death benefit, require evidence of insurability satisfactory to us.

### Change in Death Benefit Option

While this policy is in force and prior to the Age 100 Anniversary, you may request in writing to change the Death Benefit Option, subject to the Minimum Basic Face Amount shown in Section 1. If, however, you have exercised the Overloan Protection feature as described in Section 14, the death benefit will be changed to Death Benefit Option A if it is not already in effect. No further changes to death benefit options will be allowed. Any change in Death Benefit Options will be effective on the next Monthly Calculation Date.  Any change will be subject to the following:

- Change from Option A to Option B:  the Total Face Amount will be reduced by the Policy Value.

- Change from Option B to Option A:  the Total Face Amount will be increased by the Policy Value.

Any reduction in the Total Face Amount will be implemented by first reducing any Supplemental Face Amount, with no change to the surrender charge schedule of the policy.

If the Supplemental Face Amount is greater than 0, any increase in the Total Face Amount will be implemented by increasing the Supplemental Face Amount. If the Supplemental Face Amount is equal to 0, any increase in Total Face Amount will be implemented by increasing the Basic Face Amount.

U001NYP3

We will not require evidence of insurability for a change in Death Benefit Options. You are limited to one change in Death Benefit Option per Policy Year.

Any change in Total Face Amount as a result of a death benefit option change will not change the surrender charges for this policy.

---

## SECTION 7: Guaranteed Death Benefit

The Guaranteed Death Benefit feature provides a guarantee during the Guaranteed Death Benefit Period that the Basic Face Amount, any Supplemental Face Amount, and any rider benefits of your policy will not terminate, regardless of Policy Value, if the Total Cumulative Premium Test is met.

**Total Cumulative Premium Test** – In order to pass this test, the total premiums paid by you less partial withdrawals, since policy issue, less policy debt must be at least equal to the sum of all Monthly Guarantee Premiums applicable for each Policy Month since the Policy Date.

The Monthly Guarantee Premium applicable on the Policy Date is shown on the Schedule Page of the Policy, and shall be the same for each Policy Month thereafter. However, if there is a change in the (a) Total Face Amount, (b) the addition, change or termination of a rider, or (c) a change in risk classification, we will modify the Monthly Guarantee Premium. The revised Monthly Guarantee Premium shall then be applicable for the Policy Month in which the change occurs and for each Policy Month thereafter until another change, if any, shall occur.

While the Guaranteed Death Benefit feature is in effect, monthly deductions will continue to be deducted from the Policy Value as provided for under the terms of this Policy. If the Policy Value is insufficient to cover such monthly deduction, such insufficiency shall be carried over as a charge to be deducted from such future Policy Value(s) as may later exist. No interest will accrue on these charges. If the insured dies while the Guaranteed Death Benefit feature is in effect, such insufficiency, if any, will not reduce the Death Benefit payable under this contract.

---

## SECTION 8: Death Benefit On or After Age 100 Anniversary

Coverage under this policy on or after the Age 100 Anniversary is subject to the conditions specified below.

**Death Benefit**
The Death Benefit will be determined in the same respect as specified in Section 6, except as follows.
- If Death Benefit Option B is in effect, we will change to Death Benefit Option A effective on the Age 100 Anniversary, which means the Total Face Amount will not be increased by the Policy Value.
- The Death Benefit will be equal to the greater of (a) the Total Face Amount on the Date of the Insured's death, or (b) the Policy Value after the Age 100 Anniversary.

**Premiums and Monthly Deductions**
We will cease to take Monthly Deductions specified in Section 1, and we will not accept any further premium payments. However, loan repayments will continue to be accepted.

**Credited Interest**
We will continue to credit interest monthly to the Policy Value.

**Policy Debt and Default**
Loan interest will continue to be charged if there is an outstanding loan on the Age 100 Anniversary. The policy will go into default at any time the Policy Debt exceeds the Policy Value, and the Loans provision and the Surrenders and Withdrawals provision will still be in effect.

**Under federal tax law, this policy may not qualify as life insurance after the Insured's Attained Age 100. It may be subject to adverse tax consequences and a tax advisor should be consulted before the owner chooses to continue the policy after the Insured's Attained Age 100.**

U001NYP4

---
SECTION 9: Policy Value
---

**Net Premiums Added**

When we receive your premium payments at our Main Administrative Office, we deduct a Sales Charge which will not exceed the amount shown in Section 1 and add the balance remaining (the Net Premium) to your Policy Value. We will do this before we take any other deductions due on that business day. However, we will add any Net Premiums received before the Policy Date to your Policy Value as of the Policy Date. While a loan exists, we will treat the amounts you pay as premiums unless you request in writing that they be treated as loan repayments. If you instruct us to do so, we will first deduct from such payments the amount of accrued interest on loans and then deduct the amount specified as a loan repayment before applying any balance remaining as a premium payment.

**Monthly Deductions**

A deduction is due and will be taken from the Policy Value as of the Policy Date and as of each applicable Monthly Calculation Date. Monthly Deductions are calculated from the Policy Date.  If, at your request, we set the Policy Date to a date which precedes the date on which we receive the initial premium, Monthly Deductions due for the period prior to receipt of the initial premium will be taken on the later of the date we receive the initial premium and the date our underwriters approve issuance of this policy.

Monthly Deductions are due until the Age 100 Anniversary, at which time we will cease to take any further Monthly Deductions as described in Section 8.

The Monthly Deduction for any Policy Month that will be deducted from your Policy Value consists of charges (a) through (e) listed below, each of which will be deducted in the order as listed, where:

- (a) is the Issue Charge;
- (b) is the Service Charge;
- (c) is the sum of the charges for riders which are part of the policy, if any,;
- (d) is the sum of all charges for any applicable Additional Ratings shown in Section 1; and
- (e) is the Cost of Insurance Charge, as described below.

**Cost of Insurance Charge**

The rates for the Cost of Insurance Charge as of the Policy Date are based on the sex, if applicable, Age, Risk Classification, Basic Face Amount, Supplemental Face Amount, Net Amount at Risk, and duration that the coverage has been in force for the Insured.

The Cost of Insurance Charge for a specific Policy Month is the charge for the Net Amount at Risk. The charge for the Net Amount at Risk is an amount equal to the per dollar cost of insurance rate for that month multiplied by the Net Amount at Risk, and  such rates will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions. The Maximum Monthly Rates at any Age are shown in Section 2 as a rate per $1,000 of Net Amount at Risk. To get the maximum rate per dollar, the rate shown must be divided by 1,000. Each Cost of Insurance Charge is deducted in advance of the applicable insurance coverage for which we are at risk.

The Cost of Insurance calculation will reflect any adjustment for the Minimum Death Benefit.

We review our Cost of Insurance rates periodically, and may re-determine Cost of Insurance rates at such time on a basis that does not discriminate unfairly within any class of insureds. Any change in rates will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing the rates.

**Net Amount at Risk**

The Net Amount at Risk is the amount determined by subtracting (a) from the greater of (b) or (c) where:

- (a) is the greater of 0 and the Policy Value at the end of the immediately preceding business day less all charges due on the Monthly Calculation Date;
- (b) (i) is the Total Face Amount divided by the applicable Monthly Factor shown in the footnote in Section 2 for Death Benefit Option A; or (ii) is the Total Face Amount divided by the applicable Monthly Factor shown in the footnote in Section 2 plus the greater of 0 and the Policy Value for Death Benefit Option B; and
- (c) is the amount defined in (a) multiplied by the applicable Minimum Death Benefit Percentage shown in Section 2.

U001NYP5

## Interest Rate

Each Monthly Calculation Date we will credit interest on the Policy Value

We will determine the credited interest rate(s) used in the calculation of the Policy Value, based on our anticipation of future investment earnings, mortality, persistency, expense and administrative costs, and taxes. We may, in our sole discretion, change the interest rate(s). Changes in the rate(s) will apply to all policies in the same Risk Classifications. The effective annual interest rate will never be less than the Guaranteed Minimum Interest Rate shown in Section 1. Any interest credited in excess of that computed based upon the Guaranteed Minimum Interest Rate is referred to as "excess interest."

We may credit different interest rates on loaned and unloaned portions of the Policy Value. The rate(s) in effect on a given date for unloaned amounts is referred to as the "current interest rate(s)." For loaned amounts, the credited interest rate on the non-preferred loaned portion of the Policy Value is equal to the Credited Interest Rate on Non-Preferred Loan Amounts shown in Section 1 and for the preferred loaned portion of the Policy Value is equal to the Credited Interest Rate on Preferred Loan Amounts shown in Section 1.

All interest rates are stated as effective annual rates. Interest will be compounded at least monthly to yield the effective annual rate.

## Additional Interest

On each Monthly Calculation Date beginning on the Additional Interest Start Date, (shown in Section 1), in addition to interest being credited under the policy, we will also credit Additional Interest on amounts in excess of the Policy Value Benchmark Amount, defined as follows.

The Policy Value Benchmark Amount is equal to the Policy Value Benchmark Percentage (shown in Section 1) multiplied by the sum of the Total Face Amount at issue and the insurance amount then in effect on any applicable riders attached to this policy.

The Additional Interest equals the monthly equivalent of the Additional Interest Rate, as specified in the table below, multiplied by the amount that (a) exceeds (b), where:

   (a) = the lesser of the unloaned portion of the Policy Value and the Total Face Amount, and
   (b) = Policy Value Benchmark Amount.

| Effective Annual Rate on unloaned Policy Value | Additional Interest Rate |
|---|---|
| At least 4.5% | 1.00% |
| At least 4.25% but less than 4.50% | .50% |
| Less than 4.25% | 0% |

---

### SECTION 10: Premiums

---

No insurance under this policy will take effect until our underwriters approve issuance of this policy and the conditions specified in the application form have been satisfied, including our receipt of at least the Minimum Initial Premium.

We will process any premium payment subject to the limitations of the life insurance qualification test elected by you, unless one of the following exceptions applies:

   (i)    we will process a payment received prior to the Policy Date as if received on the Policy Date.
   (ii)   we will process the portion of any premium payment for which we require evidence of the Insured's continued insurability on the first business day after we have received such evidence and found it satisfactory to us.

If however, our receipt of any premium payment (or portion thereof) would cause the policy to not qualify as a "life insurance contract" under the federal income tax laws, we will not process such payment (or portion thereof). In addition in the case of certain other situations that could have tax implications, we will process the payment (or portion thereof) on the first business day after we have received satisfactory written instructions from you.

U001NYP6

Subject to these limitations, you may pay additional premiums at any time prior to the Age 100 Anniversary and while this policy is in force. Unless we agree otherwise, maximum premium payments are subject to the Maximum Annual Premium shown in Section 1. If, however, you have exercised Overloan Protection, no further premiums may be paid once Overloan Protection goes into effect. All premiums are payable at our Main Administrative Office or to an authorized agent. You may request a receipt signed by one of our executive officers.

If any premium payment results in an increase in the Death Benefit by more than it would increase the Policy Value, then we will either refund the premium or require evidence of insurability satisfactory to us. To the extent of such evidence, the Incontestability and Suicide Exclusion provisions will apply from the date of the increase. The application for such increase will be attached to and is made part of the policy. We may limit the number and amount of premium payments in any Policy Year. The minimum premium payment that we will accept is $25, unless to prevent policy lapse.

---

## SECTION 11: Grace Period

**During the first 5 Policy Years -** If the Total Cumulative Premium Test is satisfied, as described in Section 7, then the Basic Face Amount, any Supplemental Face Amount, and any rider benefits will remain in effect during the Guaranteed Death Benefit Period. If, however, the Total Cumulative Premium Test is not satisfied, then this policy and any riders will go into default if, on any Monthly Calculation Date, the required Monthly Deductions exceed the Net Policy Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums. Such additional premium payments, less the Sales Charge, must be sufficient to increase the Net Policy Value on that Monthly Calculation Date to cover three Monthly Deductions or, if less, the amount necessary to pass the Total Cumulative Premium Test for the next three Policy Months.

**During Policy Years 6 through 9 -** This policy and any riders will go into default if, on any Monthly Calculation Date, the required Monthly Deductions exceed the Net Policy Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums. Such additional premium payments, less the Sales Charge, must be sufficient to increase the Net Policy Value on that Monthly Calculation Date to cover three Monthly Deductions.

**After the 9th Policy Year -** This policy and any riders will go into default if, on any Monthly Calculation Date, the required Monthly Deductions exceed the Net Surrender Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums. Such additional premium payments, less the Sales Charge, must be sufficient to increase the Net Surrender Value on that Monthly Calculation Date to cover three Monthly Deductions.

In addition, this policy and any riders will go into default if, on any Monthly Calculation Date, Policy Debt exceeds the Policy Value. A grace period of 61 days from the date the policy goes into default will be allowed for the payment of additional premiums or repayment of policy debt. Such payment must be sufficient such that the Policy Value will at least equal the Policy Debt.

At least 15 days and not more than 45 days prior to termination of coverage, we will send notice to your last known address, specifying the amount you must pay to bring the policy out of default. If we have notice of a policy assignment on file at our Main Administrative Office, we will also mail a copy of the notice of the amount due to the assignee on record. When payment is received, any Policy Charges which are past due and unpaid will be immediately deducted from the Policy Value. If the necessary additional premium payments have not been received by the end of the grace period, the policy will terminate. Upon termination of the policy, the remaining Net Surrender Value, if any, will be paid to the Owner. If the Insured dies while the policy is in default, then we will deduct from the proceeds all Monthly Deductions due and unpaid as of the date of the Insured's death. Unless a rider provides otherwise, no riders will be in effect after the policy terminates.

U001NYP7

**Reduced Paid-Up Benefit**

Upon your written request, after this policy has been in force for at least one full year, this policy can be lapsed to a reduced paid-up Death Benefit as of the date of your written request. The amount of Death Benefit will be calculated based on the Net Surrender Value of the contract, the Guaranteed Minimum Interest Rate shown in Section 1 and the Maximum Monthly Cost of Insurance Rates as shown in Section 2. Once elected, no further premiums may be paid into the contract and all riders attached to this policy will terminate. The Net Surrender Value of this reduced paid-up Death Benefit will be equal to the present value of the future guaranteed benefits provided for by this policy at that time.

---

## SECTION 12: Policy Termination

This policy will terminate automatically on the earliest of:

(1)  the date the Insured dies;

(2)  the date the grace period expires without the payment of sufficient premium or debt repayment as provided in Section 11; or

(3)  the date the policy is surrendered for its Net Surrender Value.

---

## SECTION 13: Reinstatement

If this policy terminates in accordance with the Grace Period provision, you may reinstate this policy while the Insured is alive within five years from the date the policy goes into default, as specified in Section 11. The policy cannot be reinstated if it has been surrendered for its Net Surrender Value. It also cannot be reinstated if the date of reinstatement is on or after the Age 100 Anniversary. We will not approve a request for reinstatement until we receive at our Main Administrative Office all of the following:

(1)  a written request for reinstatement;

(2)  evidence of insurability satisfactory to us;

(3)  payment or reinstatement of any Policy Debt as of the date of termination, if applicable; and

(4)  payment of the Reinstatement Premium. The Reinstatement Premium equals the amount that was required to bring the policy out of default immediately prior to termination, plus three Monthly Deductions.

Requirements (2) through (4) must be satisfied within 60 days after the date we receive a written request for reinstatement.

If we approve your request,

(1)  the reinstatement date will be the date we receive the required payment at our Main Administrative Office;

(2)  any Surrender Charge will be reinstated to the amount it was at the date of default;

(3)  the remaining Surrender Charge Schedule, if any, will be the same as on the date of default;

(4)  the Policy Value on the date of reinstatement, prior to the crediting of any Net Premium paid on the reinstatement, will be equal to the Policy Value on the date the policy terminated.

If this policy is reinstated, the Suicide Exclusion will not begin anew. Upon reinstatement the Guaranteed Death Benefit feature described in Section 7 will no longer be in effect.

## SECTION 14: Loans and Overloan Protection

While this policy is in force, and sufficient loan value is available, a loan may be obtained by written request.  A loan may not be taken after you have exercised Overloan Protection. To obtain a loan, we may require a loan agreement from you, since the policy is the only security for the loan. We may defer loans as provided by law or as provided in Section 25. Loans may not be made if the policy is in the grace period as described in Section 11. A loan will have a permanent effect on any death benefit and Net Surrender Value of this policy.  We recommend consultation with a tax advisor before taking a loan.

**Maximum Loan Value**

The Maximum Loan Value on the Policy Date is equal to 75% of the premiums received. Thereafter, the Maximum Loan Value on any date is equal to the lesser of (a) or (b), where:

    (a) = the Policy Value, projected (with interest and monthly charges) to the next Policy Anniversary, less any applicable Surrender Charge, discounted for interest at the non-preferred policy loan interest rate; and

    (b) = the current Surrender Value of this policy.

The Maximum Loan Value, however, will not be less than the Preferred Loan Amount plus accrued interest on such amount, but in no event greater than the current Policy Value.

**Available Loan Value**

The available loan value on any date is an amount equal to the Maximum Loan Value less Policy Debt.

U001NYP9

**Loan Interest Charged**
Loan interest will accrue on a daily basis from the date of the loan, and is payable in arrears.

Non-Preferred Loans will bear interest at a rate equal to the Non-Preferred Policy Loan Interest Rate shown in Section 1. Preferred Loans, will bear interest at a rate equal to the Preferred Policy Loan Interest Rate shown in Section 1. Loan interest will be payable on each Policy Anniversary and on the date the loan is settled. In the event that you do not pay the loan interest charged in a Policy Year, such amount will be added to the Policy Debt on the Policy Anniversary. The portion of the loan interest attributable to the Preferred Loan Amount will be reflected as an increase to the Preferred Loan Amount on the Policy Anniversary.

This policy will not lapse in any Policy Year solely as a result of a change in the Interest Rate during such Policy Year.

**Loan Repayment**
You may repay the Policy Debt in whole or in part at any time prior to the death of the Insured and while the policy is in force. Subject to any rider, endorsement, or other provisions, while a loan exists, we will treat any amounts you pay as premiums, unless you request in writing that they be treated as loan repayments.

**Overloan Protection**
You have the option of exercising Overloan Protection, in writing, when the following conditions exist on the Monthly Calculation Date:
1. the Policy Debt exceeds the specified Total Face Amount;
2. the Policy Debt is equal to 96% of the Policy Value;
3. the Insured is at least 65 years of Age;
4. this policy has been in force for at least 15 Policy Years; and
5. the Guideline Premium Life Insurance Qualification Test is in effect.

If the loan balance is in excess of 96% of the Policy Value, the portion of the loan balance that exceeds 96% of the Policy Value must be repaid at the time that such Overloan Protection is exercised. Overloan Protection will be effective on the Monthly Calculation Date following your written request. Once in effect, Overloan Protection will keep your policy in force and the following changes will automatically take effect.

1. Any riders then in effect will terminate.
2. The Death Benefit Option will be permanently set to Death Benefit Option A.
3. The Total Face Amount then in effect will be reduced to 101% of the Policy Value.
4. The death benefit will equal the greater of (a) and (b), where:
    (a) = the new Total Face Amount, and
    (b) = the applicable Minimum Death Benefit Percentage shown in Section 2, multiplied by the greater of (i) and (ii), where:
        (i) = the Policy Value, and
        (ii) = the Policy Debt.
5. No further premium payments will be accepted.
6. No further withdrawals will be allowed.
7. No further monthly deductions will be assessed.
8. No additional loans or loan repayments will be allowed.

Any loan balance will reduce the death benefit payable. Loan interest will continue to accrue on this policy.

Once you have exercised Overloan Protection, a one-time Overloan Transaction Charge, as shown in Section 1, will be assessed. There is no additional charge for this benefit or for any of the automatic changes that occur pursuant to your election of this benefit.

## SECTION 15: Surrenders and Withdrawals

**Surrender of the Policy**
You may surrender this policy upon written request for its Net Surrender Value at any time prior to the death of the Insured. We will determine the Net Surrender Value as of the end of the business day on which we have received at our Main Administrative Office your written request for surrender of the policy. After we receive your written request to surrender the policy, no insurance will be in force.

**Withdrawals**
Once per Policy Month while the Insured is living, you may request a withdrawal of part of the Net Surrender Value, if available. A withdrawal will not be permitted after you have exercised Overloan Protection. An amount equal to the withdrawal and its related pro-rata Surrender Charge, shown in Section 1, will be deducted from the Policy Value, if such withdrawal occurs during the Withdrawal Charge Period shown in Section 1. Withdrawals are subject to the following conditions:

    (a)    each withdrawal must be for at least the Minimum Withdrawal Amount shown in Section 1;

    (b)    after the withdrawal, the remaining Net Surrender Value must be greater than zero;

    (c)    a withdrawal will not be permitted which would reduce the Basic Face Amount below the Minimum Face Amount shown in Section 1.

We will process the withdrawal, thereby reducing the Policy Value, as of the end of the business day on which we receive your written request.

If Death Benefit Option A is in effect on the date of the withdrawal, such withdrawal will reduce, dollar for dollar, the Supplemental Face Amount first, and then the Basic Face Amount. If, however, the Death Benefit in effect on the date of the withdrawal is equal to the Minimum Death Benefit, withdrawals on such day will first reduce the Death Benefit by the amount withdrawn multiplied by the applicable Minimum Death Benefit Percentage until the Death Benefit is equal to the Total Face Amount. Such excess withdrawal amount will then reduce, dollar for dollar, the Supplemental Face Amount first, and then the Basic Face Amount. Your Death Benefit will continue to be determined in accordance with Sections 6 and 8 based upon the revised Total Face Amount of coverage.

If Death Benefit Option B is in effect at the time of the withdrawal, the amount of the withdrawal will be deducted from the Policy Value. The Total Face Amount does not change.

Any benefits provided are not less than that required by law of the state where this policy was delivered. We may defer payment of surrender values as provided by law or as provided in Section 25.

## SECTION 16: Basis of Computations

All of the values under this policy are equal to or more than the minimums required on the Policy Date by the state in which this policy was delivered or issued for delivery. The method of computation of the values under this policy has been filed as may be required with the Insurance Department of the state in which this policy was delivered or issued for delivery.

## SECTION 17: Owner(s) and Beneficiary(ies)

The Insured is the owner of this policy, unless otherwise provided in the application or if ownership is changed by later transfer of ownership. If, however, you are offered consideration by a third party to transfer ownership of your policy or any interest in your policy including a collateral or absolute assignment to such third party, no transfer of ownership shall take effect unless we or one of our affiliated companies first have the right to also offer consideration for your policy. We will require information satisfactory to us that is necessary for us to determine the amount of such consideration we will offer for your policy.

While the Insured is living, the owner may exercise all rights provided by this policy or allowed by us. Consent of any beneficiary not irrevocably named or any contingent owner is not required. If there is no surviving Beneficiary upon the death of the Insured, you will be the Beneficiary, but if you were the Insured, your estate will be the Beneficiary.

Any death proceeds that become payable will be paid in equal shares to such beneficiaries living at the death of the Insured as stated in the application or as later changed. Payments will be made successively in the following order:

    (a) Primary beneficiaries;

    (b) Contingent beneficiaries, if any, provided no primary beneficiary is living at the death of the Insured;

    (c) you or your executor or administrator, provided no primary or contingent beneficiary is living at the death of your insured, or in the absence of a beneficiary designation.

Unless otherwise stated, the relationship of a beneficiary is the relationship to the Insured. You may change the beneficiary by written notice filed with us at our Main Administrative Office. When we receive it, the change will take effect as of the date it was signed by you. However, the change will be subject to any payments made or actions taken by us before we received the notice at our Main Administrative Office.

## SECTION 18: Assignment

Except as otherwise provided in this policy, you may, by written notice, assign any interest in this policy without the consent of any person other than an irrevocable Beneficiary. The assignment or a certified copy of it must be filed with us at our Main Administrative Office.  When filed, it will bind us as of the date of the assignment, subject to any action taken by us before such filing.  We shall not be responsible for the validity or sufficiency of any assignment. The interest of the assignee shall be prior to the interest of any beneficiary not irrevocably named or any contingent owner. An assignee cannot change the beneficiary, owner, or contingent owner.

## SECTION 19: Misstatements

If the age or sex of the Insured has been misstated, we will adjust the Basic Face Amount, any Supplemental Face Amount, and every other benefit to that which would have been purchased at the correct age or sex by the most recent Cost of Insurance charge deducted under Section 9.

## SECTION 20: Suicide Exclusion

If the Insured dies by suicide within two years from the Issue Date and while the policy is in force, our liability shall be limited to an amount equal to the premiums paid on this policy less any Policy Debt owed us and less any withdrawals.

If this policy was issued as a result of a conversion option from term insurance and if the Insured died by suicide within two years of the date the original term policy was issued and while this policy is In Force, our liability shall be limited to an amount equal to the premiums paid on this policy and the original term policy, less any Policy Debt owed Us and less any withdrawals.

The Suicide Exclusion period will only begin again from the date of an applied for increase in death benefit and only for the amount of such increase.

U001NYPC

## SECTION 21: Incontestability

This policy shall be incontestable after it has been in force during the Insured's lifetime for two years from the Issue Date, except for any provision for reinstatement or policy change requiring evidence of insurability. In the case of reinstatement or any policy change requiring evidence of insurability, the incontestable period shall be two years from the effective date of such reinstatement or policy change. Any premium payment which we accept subject to insurability, and any increase in the Death Benefit resulting from such payment, shall be considered a policy change for purposes of this Section.

While insurance is contestable, we may either rescind the insurance or deny a claim on the basis of:

1. a material misrepresentation in the application or supplemental application for this policy or any face amount increase; or

2. a material misrepresentation in the reinstatement application if there has been a rein-statement of this policy.

If we contest the validity of all or a portion of the face amount provided under this policy, the amount we pay with respect to the contested amount will be limited to the higher of a return of any paid premium required by us for the con tested face amount or the sum of any Monthly Deductions made under this policy for the contested face amount.

If this policy was issued as the result of a conversion option from term insurance, the contestable period for the converted amount is effective as of the date the term policy was issued.

## SECTION 22: The Entire Contract

The written application for the policy is attached at issue. This policy, including the Schedule Pages (and any supplements or changes thereto), any riders, amendments, or endorsements to it, and the application for it (and any supplemental applications) constitute the entire contract between you and us. However, additional written requests or applications for policy changes or acceptance of excess payment may be submitted to us after issue and such additional requests may become part of the policy.

We rely on all statements made by or for the Insured in the written application. Each statement made in an application will be deemed a representation and not a warranty. No statement will be used to void this policy or in defense of a claim under this policy unless:

1. it is contained in the application or in a supplemental application; and

2. a copy of that application is attached to this policy when issued or made a part of this policy when changes become effective.

Any change in the provisions of the policy, including modifying the policy, waiving any of its conditions, or making an agreement for the Company, to be in effect, must be in writing and signed by one of our executive officers and countersigned by our registrar or one of our executive officers. We have the right to correct any clerical errors in this policy, or in our administration of the policy.

U001NYPD

## SECTION 23: Annual Statement

Within 30 days after each Policy Anniversary, we will send you, without charge, a report for each Policy Year which includes:

1. the current Policy Value, Death Benefit, Total Face Amount and Surrender Value;
2. any withdrawals, premiums paid, interest credited and charges made during the year;
3. any outstanding loans and new loans and loan repayments made during the year; and
4. such additional information as required by the Superintendent of Insurance or the supervisory official of the state in which this policy was delivered.

You have the right to request an illustrative report at any other time. We may charge a reasonable fee, not to exceed $50, for the report.

We will provide you, on written request, a projection of illustrative future benefits and values under your policy. We will provide one report annually without charge. For additional reports you request, we have the right to charge a reasonable service fee, not to exceed $50. We may limit the number of such projections in any Policy Year.

## SECTION 24: Claims of Creditors

The proceeds and any income payments under this policy shall not be subject to the claims of creditors and shall be exempt from legal process, levy or attachment to the extent allowed by law.  These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

## SECTION 25: Right to Defer Payment of Benefits

We reserve the right to defer payment of Net Surrender Values, withdrawals, and policy loans, for up to six months, except when used to make a premium payment. If payment is deferred 10 days or more on any surrender or policy loan, interest will be paid at an effective annual rate of at least 3.0% on the amount deferred, from the date the request is received to the date of payment.

U001NYPE

## ACCELERATED BENEFIT RIDER

This rider is part of the policy to which it is attached, effective as of the Rider Date, if it is listed on the policy's Schedule Page or in an Endorsement after that page. You should therefore review the policy's Schedule Page for applicability. Except as stated in this rider, it is subject to all of the provisions contained in the policy.

**THE BENEFIT PAID UNDER THIS RIDER MAY BE TAXABLE. YOU SHOULD CONSULT YOUR PERSONAL TAX ADVISOR REGARDING POSSIBLE TAX CONSEQUENCES.**

| | |
|---|---|
| **Rider Date** | SAME AS POLICY DATE |
| **Maximum Administrative Charge** | $300.00 |
| **Maximum Proportion Allowable** | 75% |
| **Maximum Accelerated Benefit** | $250,000 |
| **Minimum Remaining Face Amount** | $10,000 |

**Definitions**

**Insured** is the person covered under the basic policy.

**You (Your)** is the owner of the policy to which this rider is attached.

**We (Our, Us)** refers to Phoenix Life Insurance Company, or its subsidiaries.

**Eligible Amount** is the amount of insurance under the policy that is eligible for accelerated payment. It is equal to the death benefit of the policy at the time of claim but exclusive of any supplemental rider death benefits.

**Proportion** is the percentage of the Eligible Amount that will be accelerated under this rider. The Proportion is chosen by you at the time of election of an accelerated benefit, subject to the following limitations. The Proportion elected:

1. can be no more than the Maximum Proportion Allowable as specified in this rider;
2. cannot result in a remaining death benefit below the minimum as specified in this rider;
3. cannot result in a Requested Benefit that is less than the lower of 25% of the policy face amount or $50,000; and
4. cannot result in a Requested Benefit that exceeds the Maximum Accelerated Benefit as specified in this rider.

This rider terminates upon payment of the accelerated benefit.

**Maximum Accelerated Benefit** is the amount shown on the first page of this rider. This Maximum Accelerated Benefit applies, in aggregate, to all policies issued on the insured by us.

**Requested Benefit** is the Proportion multiplied by the Eligible Amount.

**Terminal Illness** is an illness or condition that is expected to result in the insured's death within six months based on evidence satisfactory to us as defined under the Proof of Terminal Illness section below.

**Rider Description**

This rider allows you to elect an accelerated benefit upon terminal illness of the insured. The election must be made by a written request signed by you. We must also receive proof satisfactory to us of the insured's terminal illness as described in the Proof of Terminal Illness section below. The amount of the accelerated benefit will be adjusted as described under the Payment Made to You section below. The resulting payment will be made in a lump sum. Policy values, cash surrender values, loan values, premiums, and the death benefit as specified in the policy to which this rider is attached will be reduced if you receive an accelerated benefit. There is no premium charge for this rider.

**Payment Made To You**

The amount of the payment made to you will be determined by discounting the Requested Benefit at our then current discounting rate for a period of six (6) months, to reflect the early payment of insurance proceeds under the policy.

Our discounting rate will be subject to the higher of:

1. 5%; or
2. the Published Monthly Average for the calendar month ending two months before the date that we receive your written request for payment under this rider.

The Published Monthly Average will be:

a. The Corporate Bond Yield Average –– Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor to that Service; or

b. If that Monthly Average is no longer published, a substantially similar average, established by regulation for policy loan rates issued by the insurance supervisory official of the state where the rider was delivered will be applicable.

If the cash surrender value multiplied by the Proportion exceeds the discounted value, then the discounted Requested Benefit will be increased to equal such greater amount.

The discounted Requested Benefit is reduced by the Proportion of any policy debt, including any unpaid loan interest, and the Proportion of any other amounts due us from you. This result is then reduced by our then current Administrative Charge for benefits under this type of rider, not to exceed the maximum as specified in this rider. The amount that remains is the payment that will be made to you.

In the event that the insured dies after the written request but before we make the payment, and we receive written notice at our Main Administrative Office during this period of this event, the request will be considered void, and no payment will be made under this rider.

**Effect On Contract**

The following values will be reduced by the Proportion at the time the payment is made to you:

1. the future planned premium payable on the basic policy;

2. the face amount of the policy at the time of claim;

3. the cash value (policy value);

4. any remaining surrender charge;

5. the cash surrender value; and

6. any policy debt including any unpaid loan interest.

If this rider is attached to a variable life insurance policy that permits fund investment in various subaccounts of our Variable Universal Life Separate Account, the reduction in policy value will be achieved through a proportionate reduction in this policy's share in the value of each subaccount based on the allocation you request at the time of your accelerated benefit request. If no allocation request is made, the assignment to each subaccount will be made in the same manner as provided for monthly deductions.

Future values under the policy will be determined in a manner consistent with that under the original policy, as adjusted to reflect the above reductions. We will mail to you a new policy Schedule Page reflecting any payment made under this rider.

The policyowner will be responsible to pay the premiums and any policy loan interest, as adjusted above, on the then remaining policy in order to keep the policy in force.

**Proof of Terminal Illness**

A licensed physician, who is not yourself or a member of your family, must provide us with evidence satisfactory to us of the insured's terminal illness. We reserve the right to obtain a second medical opinion from a physician of our choosing at our expense.

**Conditions**

Payment under this rider is subject to the following conditions:

1. The policy must be in force.

2. We will require the consent of any assignees and irrevocable beneficiaries to any request for payment under this rider.

3. No payments will be made under this rider to satisfy the claims, demands, or obligations of any creditor, trustee in bankruptcy or governmental agency, or arising under any court order directed against you, to the extent that we have written notice thereof.

**Rider Termination**

This rider will terminate on the earliest of:

1. Termination or surrender of this policy to which it is attached;

2. Our receipt of your written request to terminate this rider; or

3. Payment of any benefit under this rider.

Phoenix Life Insurance Company

*John H. Beers*

Secretary

**Final Steps to Make Your Policy Effective**
In order to place your policy in force, you must:

1. Review, complete and mail to Phoenix the
   Policy Acceptance Form in this section

2. Send Phoenix any premiums still due


**Checklist for Policy Acceptance Form**
As you fill out the form, make sure it includes:

- Date signed
- State where the contract was signed
- Signature of the insured
- Signature of the owner
  (if different from the insured)
- Witness signature


**Final Step**
Detach the white copy of the form and mail it back to
Phoenix in the enclosed, self-addressed envelope.

 **PHOENIX**

Phoenix Life Insurance Company
P.O. Box 8027
Boston, MA 02266-8027
Underwriting Service Center

30 Dan Road, Suite 8027
Canton, MA 02021-2809
For Overnight Delivery

**Policy Acceptance Form**

| Agency: E9206 | Insured(s): MICHAEL EARL MOSS |
|---|---|
| Policy Number: 97304872 | |

**DECLARATION:**

The insured(s) declares that the statements made in the application remain full, complete, and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been sought.

All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to that insured's signature below and complete a form #519B for that insured. PLEASE NOTE: Home Office approval of form #519B is necessary before the policy is in effect.

**AMENDMENTS:**   The application for Policy No. 97304872   is amended as follows:

Base policy is rated.  Premiums are payable as shown on the schedule page of this policy.
The subsequent planned annual premium is $299,526.
The first year anticipated annual premium is $299,526.
The face amount of the base policy is decreased to $6,000,000.
The primary beneficiary is The Michael Moss Irrevocable Life Insurance Trust Dated 8/15/2007, Martin Fleisher, As Trustee.

**ENDORSEMENTS:**

Delivery expiry is 11/12/2007 on policy 97304872.

It is agreed that the above declaration and amendments are part of the application and shall be part of the policy.

**DELIVERY RECEIPT:** To be completed when policy is delivered. If form #519B is required, please consult with your agent before completing this section.

This certifies that as the policy owner, (check ONE only):

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information.

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information, and authorize _____ to hold such policy on my behalf.

| Date | _____ | Insured(s) | _____ | ☐ |
| Signed at | _____ | | _____ | ☐ |
| Witness | _____ | | _____ | ☐ |
| Owner | _____ | | _____ | ☐ |
| | (If other than Insured) | | _____ | ☐ |

If owner is a firm or corporation, please give the name of the firm or corporation and the title of the officer signing for the firm or corporation.

AGENT: ORIGINAL to Underwriting and Issue, YELLOW COPY to Agent, PINK COPY to remain with policy.

 **PHOENIX**

Phoenix Life Insurance Company
P.O. Box 8027
Boston, MA 02266-8027
Underwriting Service Center

30 Dan Road, Suite 8027
Canton, MA 02021-2809
For Overnight Delivery

**Policy Acceptance Form**

| Agency: E9206 | Insured(s): MICHAEL EARL MOSS |
| Policy Number: 97304872 | |

**DECLARATION:**

The insured(s) declares that the statements made in the application remain full, complete, and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been sought.

All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to that insured's signature below and complete a form #519B for that insured. PLEASE NOTE: Home Office approval of form #519B is necessary before the policy is in effect.

**AMENDMENTS:**   The application for Policy No. 97304872  is amended as follows:

> Base policy is rated.  Premiums are payable as shown on the schedule page of this policy.
> The subsequent planned annual premium is $299,526.
> The first year anticipated annual premium is $299,526.
> The face amount of the base policy is decreased to $6,000,000.
> The primary beneficiary is The Michael Moss Irrevocable Life Insurance Trust Dated 8/15/2007, Martin Fleisher, As Trustee.

**ENDORSEMENTS:**

> Delivery expiry is 11/12/2007 on policy 97304872.

It is agreed that the above declaration and amendments are part of the application and shall be part of the policy.

**DELIVERY RECEIPT:** To be completed when policy is delivered. If form #519B is required, please consult with your agent before completing this section.

This certifies that as the policy owner, (check ONE only):

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information.

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information, and authorize _____ to hold such policy on my behalf.

| Date | _____ | Insured(s) | _____ | ☐ |
| Signed at | _____ | | _____ | ☐ |
| Witness | _____ | | _____ | ☐ |
| Owner | _____ | | _____ | ☐ |
| | (If other than Insured) | | _____ | ☐ |

If owner is a firm or corporation, please give the name of the firm or corporation and the title of the officer signing for the firm or corporation.

AGENT: ORIGINAL to Underwriting and Issue, YELLOW COPY to Agent, PINK COPY to remain with policy.

HR01                                             HHR01ZZ1        2-96

 **PHOENIX**

Phoenix Life Insurance Company
P.O. Box 8027
Boston, MA 02266-8027

Underwriting Service Center

30 Dan Road, Suite 8027
Canton, MA 02021-2809

For Overnight Delivery

**Policy Acceptance Form**

| Agency: | E9206 | Insured(s): |
|---|---|---|
| Policy Number: | 97304872 | MICHAEL EARL MOSS |

**DECLARATION:**

The insured(s) declares that the statements made in the application remain full, complete, and true as of this date; that since the date of the application, no insured has applied to any insurance company or society without receiving the exact policy applied for or had any symptoms, diseases or disorders for which advice has been sought.

All insured(s) must attest to the above declaration. If any insured cannot attest to the above statement, please so indicate by checking the box next to that insured's signature below and complete a form #519B for that insured. PLEASE NOTE: Home Office approval of form #519B is necessary before the policy is in effect.

**AMENDMENTS:**   The application for Policy No. 97304872  is amended as follows:

Base policy is rated.  Premiums are payable as shown on the schedule page of this policy.
The subsequent planned annual premium is $299,526.
The first year anticipated annual premium is $299,526.
The face amount of the base policy is decreased to $6,000,000.
The primary beneficiary is The Michael Moss Irrevocable Life Insurance Trust Dated 8/15/2007, Martin Fleisher, As Trustee.

**ENDORSEMENTS:**

Delivery expiry is 11/12/2007 on policy 97304872.

It is agreed that the above declaration and amendments are part of the application and shall be part of the policy.

**DELIVERY RECEIPT:** To be completed when policy is delivered. If form #519B is required, please consult with your agent before completing this section.

This certifies that as the policy owner, (check ONE only):

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information.

☐ I have received delivery of the insurance policy listed above, which includes a Statement of Policy Cost and Benefit Information, and authorize _____ to hold such policy on my behalf.

| Date | _____ | Insured(s) | _____ | ☐ |
|---|---|---|---|---|
| Signed at | _____ | | _____ | ☐ |
| Witness | _____ | | _____ | ☐ |
| Owner | _____ | | _____ | ☐ |
| | (If other than Insured) | | _____ | ☐ |

If owner is a firm or corporation, please give the name of the firm or corporation and the title of the officer signing for the firm or corporation.

AGENT: ORIGINAL to Underwriting and Issue, YELLOW COPY to Agent, PINK COPY to remain with policy.

HR01                                                                     HHR01ZZ1          2-96

**046289700841**

◈ **PHOENIX**®
Phoenix Life Insurance Company
PO Box 8027
Boston MA 02266-8027
*Underwriting Service Center*

For Overnight Delivery
Phoenix Life Insurance Company
68 Brooks Drive Suite 8027
Braintree MA 02184

**Application for Life Insurance**
**Part I**

---

### Section I – Proposed Insured Information

Name (First, Middle, Last)
**MICHAEL EARL MOSS**

| Birth State | Birth Country | | U.S. Citizen |
|---|---|---|---|
| VA | U.S.A. | | ☑ Y ☐ N |

**REDACTED**

a. If "Yes", check the product(s) used: ☐ Cigarettes ☐ Cigars, Pipe      ...ss or Chewing Tobacco, ☐ Nicotine Patch or Gum
b. If "Yes", check where appropriate: ☐ Use Curr...

### Section II – Ownership (Select one, if B o...     ...opriate sections)

☐ A. Insured   ☐ B. Partnership   ☑ C. O...   ...ertification of Trust Agreement

| Owner's Name (First, Middle, Last) The Michael Moss Irrevocable Life Insurance Trust II | | Date of Birth (mm/dd/yyyy) 08/15/2007 | Relationship to Proposed Insured Trust |
|---|---|---|---|
| Owner's Street Address (include Apt #) C/O Martin Fleisher, Trustee 176 East 7½ Street | City New York | State NY | ZIP Code 10021 | Home Telephone # |

If Owner is a Partnership - list all partners. If there is a general partner, complete Partnership Authorization form.
Name(s) of All Partner(s) (First, Middle, Last)

| Employer's Street Address | City | State | ZIP Code |
|---|---|---|---|
| Email Address | | | |

### Section III – Beneficiary Designation
Unless otherwise specified, payments will be shared equally by all primary beneficiaries who survive the Proposed Insured or if none, by all contingent beneficiaries who survive the Proposed Insured. Only the Owner has the right to change the beneficiary(ies) unless otherwise stated.

| Primary Beneficiary(ies) Name(s) (First, Middle, Last) The Michael Moss Irrevocable Life Insurance Trust II | Date of Birth (mm/dd/yyyy) 08/15/2007 | | Relationship to Proposed Insured Trust | % Share 100% |
|---|---|---|---|---|
| Contingent Beneficiary(ies) Name(s) (First, Middle, Last) | Date of Birth (mm/dd/yyyy) | Social Security # or Tax ID# (if available) | Relationship to Proposed Insured | % Share |

OL4250NY

1 of 6

1-06

046289700842

## Section IV - Coverage Applied For

| Plan of Insurance | Basic Face Amount | $ 10,000,000 |
|---|---|---|
| Phoenix Accumulator UL III (0906) | Supplemental Face Amount $ | |
| | Total Face Amount | $ 22,000,000 |

## Section V - VARIABLE/UNIVERSAL PLANS of Insurance - Riders and Features

First Year Anticipated, BILLED Premium (Excluding 1035 Exchange, Lump Sum Funds, etc.)

$ 453,827 / Year

Subsequent Planned Annual Premium

$ 453,827

☐ Disability Waiver of a Specified Amount

Amount $_____

☐ Accidental Death Benefit Rider

☐ Alternate Surrender Value Rider

☐ Life Plan Options Rider

☐ Child's Term Rider

☐ Family Term Rider

☒ Living Benefit Rider

☐ Guaranteed Death Benefit Rider

☐ Guaranteed Extension Rider

☐ Cash Value Accumulation Rider

☐ Age 100 + Rider

☐ Individual Term Rider $_____

☐ Increasing Term Rider $_____

☐ Other _____

☐ Other _____

**Death Benefit Option:** (check one) If none checked, Option 1 will apply.

☒ Option 1 Level Face Amount

☐ Option 2 Increasing Face Amount

**Face Amount Increase Options:**

☐ _____% percentage Increase

☐ $_____ Fixed Dollar Increase

☐ Increase Equal to Premiums Paid

**Policy Option:** (check one) If none checked, Option A will apply.

☐ Policy Option A

☐ Policy Option B

☐ Policy Option C

☐ Guaranteed Minimum Withdrawal Benefit

**Life Insurance Qualification Test:** (Check One) If none checked, Guideline Premium will apply.

☒ Guideline Premium Test

☐ Cash Value Accumulation Test

## Temporary Money Market Allocation

If the state of issue does not require refund of premium during the Right To Cancel Period, but you prefer to temporarily allocate your premiums to the Money Market subaccount until the end of the Right to Cancel Period, as stated in the policy, indicate: ☐ Yes  ☐ No

## Section VI - Suitability

Do you understand that if you have purchased a Variable Life Policy that the Death Benefit may be variable or fixed under certain conditions and that the Death Benefit and Cash Values under any Variable Policy may increase or decrease in amount or duration based on the investment experience of the underlying subaccounts? ☐ Yes  ☐ No

If you are purchasing a Variable Life Policy, do you believe it is suitable to meet your financial objectives? ☐ Yes  ☐ No

If I have purchased a Variable Life Policy, I confirm that I have received the prospectus for that policy and its underlying funds.

Illustrations of benefits including death benefits, policy values and cash surrender values are available on request.

04628970 0843

## Section VI - Mode of Premium Payment

☒ Annual          ☐ Quarterly          ☐ Semi-Annual
☐ Monthly (Variable Life Insurance only)     ☐ PCS (Phoenix Check-O-Matic Service)
                                            Minimum Monthly Check for Each Service - $25.00

**Multiple Billing Option - Give # or Details** _____
☐ List Bill    ☐ Employee Insurance Counseling Service (EICS)    ☐ Salary Allotment    ☐ Pension    ☐ Money Purchase Pension
☐ Other _____

**If electing PCS, complete the following:**
Existing Policy Number or PCS File Number _____

**Authorization Agreement for Preauthorized Payments**
I (we) hereby authorize the Company (Note: Company is defined as indicated on page 1 of application) to initiate debit entries to my (our) checking account and the depository named below.

**Information for New Account**
Attach a void check to furnish encoding details.
If the depositor's name is not imprinted on the check, fill it in here exactly as it appears in the bank records.

*Attach Void Check Here*

Signature of depositor (if different from owner) _____

**Send premium notices to: (in addition to owner)**
☐ Insured at:    ☐ Home Address    ☐ Business Address    ☐ Other
Name (First, Middle, Last) _____
Street Address _____
City _____ State _____ ZIP Code _____ Relationship to Owner _____

## Section VII – Existing Life Insurance

| Yes | No | | |
|-----|-----|---|---|
| ☐ | ☒ | 1. | Are there any life insurance policies or annuity contracts, owned by, or on the life of, the applicant(s) or the insured(s) or the owner(s) or the annuitant? |
| ☐ | ☒ | 2. | With this policy, do you plan to replace (in whole or in part) now or in the future any existing life insurance or annuity contract in force with this policy? |
| ☐ | ☒ | 3. | Do you plan to utilize values from any existing life insurance policy or annuity contract (through loans, surrenders or otherwise) to pay any initial or subsequent premium(s) for this policy? |

For all "Yes" answers above, please provide the following information. If no coverage inforce, check here ☒

| Company | Issue Date (mm/yyyy) | Plan | Amount | Pers/Bus | Replacing Y  N |
|---------|---------------------|------|--------|----------|----------------|
| | | | $ | ☐ ☐ | ☐ ☐ |
| | | | $ | ☐ ☐ | ☐ ☐ |
| | | | $ | ☐ ☐ | ☐ ☐ |
| | | Total Life Insurance in Force | $ | | |

0402093700844

## Section VIII – Additional Information
Give full details for all "Yes" answers below. If necessary, use an additional piece of paper and please sign it.

1. Is non-recourse premium financing or any other method being utilized to pay premiums in order to facilitate a current or future transfer, assignment or other action with respect to the benefits provided under the policy being applied for?

2. Have you ever applied for life, accident, disability or health insurance and been declined, postponed, or been offered a policy differing in plan, amount or premium rate from that applied for? (If "Yes," give date, company and reason).

   Date (mm/dd/yyyy):                    Company:                    Reason:

3. Are you negotiating for other insurance? (If "Yes," name companies and total amount to be placed in force.)

   Company(ies)                                          Total Amount to be placed in force:

**REDACTED**

4. Do you intend to travel or reside outside of the United States or Canada?
   (If "Yes," state where, how long and purpose).

   Location City, Country:               Purpose:               How Long: (Specify weeks, months, years)

5. Have you flown during the past 3 years as a pilot, student pilot or crew member or do you plan to do so? (If "Yes," complete Aviation Questionnaire).

6. Have you participated in the past 3 years or plan to engage in any extreme sport activities such as motorized vehicle racing, parachute jumping, underwater diving, or any other extreme avocation? (If "Yes," complete Avocation Questionnaire).

7. Have you ever been convicted of a felony? (If "Yes," give details)
   Details:

8. Have you ever been convicted of driving under the influence of alcohol or drugs, or had your driver's license been suspended or revoked, or had greater than 2 moving violations in the past 3 years? (If "Yes," give details)
   Details:

9. Is there an intention that any party, other than the Owner, will obtain any right, title or interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?

## Section IX – Medical Transfer Statement *(Complete when submitting medical examinations of another insurance company.)*

I request that Phoenix review and consider the exam conducted by the Life Insurance Company listed below in evaluating my application. I authorize Phoenix to receive and review such application(s), and authorize my producer, broker or other life insurance company to provide such application to Phoenix.

1. Name of the insurance company for which examination(s) was made

2. Date of examination (mm/dd/yyyy)

3. To the best of your knowledge and belief, are the statements in the examination true, accurate and complete as of today? ☐ Yes ☐ No
   If "No", please explain.

4. Have you consulted a medical doctor or other practitioner since the above examination? *(If "Yes", complete Section X)* ☐ Yes ☐ No

046200 700845

## Section X - Medical History (Not necessary to complete if medical or paramedical exam has been ordered)

| Current Height | | | Current Weight | Has your weight changed by 10 pounds or more in the past 2 years? If "yes", how much ____ pounds ☐ Gain ☐ Loss | | | |
|---|---|---|---|---|---|---|---|
| **Family History:** | Age if Alive | Age at Death | If alive, indicate health problems or if deceased, indicate cause of death: | **Family History:** | Age if Alive | Age at Death | If alive, indicate health problems or if deceased, indicate cause of death: |
| Father ☐ Alive ☐ Deceased | | | | Mother ☐ Alive ☐ Deceased | | | |
| **Personal Physician:** Please provide the name and address of your personal physician or health care provider, date of most recent visit, reason for visit, and results of treatment (if any): | | | | Has anyone in your immediate family developed any hereditary condition, cancer, or heart disease before age 60? ☐ Yes (please provide details below) ☐ No | | | |

To the best of your knowledge and belief, have you ever had, or been told by a physician or other health care provider that you have:

1. High blood pressure or hypertension?
2. Pain, pressure, or discomfort in the chest, angina pectoris, palpitations, swelling of the ankles, or undue shortness of breath?
3. Heart disease, coronary artery disease, cardiomyopathy, heart failure, atrial fibrillation, heart rhythm abnormality, heart murmur, congenital heart disease or valvular heart disease?
4. Peripheral vascular disease, claudication, narrowing or blockage of arteries or veins?
5. Asthma, pulmonary fibrosis, chronic cough, emphysema, pneumonia, or any other lung disease?
6. Neurologic disease, seizures, fainting, falls, concussion, stroke, transient ischemic attack (TIA), tremor, neuropathy, weakness, paralysis, Parkinson's disease, memory loss, dementia, or any other disease of the brain or nervous system?
7. Depression, bipolar disorder, schizophrenia, anxiety, or other psychiatric illness?
8. Arthritis, lupus, or any musculoskeletal or skin disorder?
9. Ulcers, abdominal pain, colitis, Crohn's disease, gall bladder disease, liver disease, hepatitis, jaundice, pancreatitis, or any other disease of the gastrointestinal system?
10. Diabetes, kidney disease, kidney stones, bladder disorder, prostate disorder, protein or blood in the urine?
11. Endocrine disorder, including disorder of the thyroid, parathyroid, adrenal, or pituitary glands?
12. Anemia, bleeding or clotting disorder, or any other disorder of the blood (excluding Human Immunodeficiency Virus) or bone marrow?
13. Cancer of any type, tumor (benign or malignant), leukemia, lymphoma, or Hodgkin's disease?
14. Are you taking any kind of medicine, therapy, or treatment regularly or at frequent intervals?
15. Have you ever been treated for alcoholism or been advised to limit or stop your use of alcohol?
16. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens, or any prescription drug except in accordance with a physician's instructions?
17. Have you ever been a patient in any hospital, treatment center, or similar facility within the last 10 years?
18. Have you had, or been advised to have, any surgery, X-rays, electrocardiograms, blood studies (excluding Human Immunodeficiency Virus or AIDS tests), or other tests within the last 5 years?
19. Other than above, have you had any other physical or psychological disorder or been treated by a physician or other health care provider for any reason within the past 5 years?

Please provide details of "Yes" answers (include question number, diagnosis, date of occurrence, current status, hospital or treating physician's name and address). Use application Part II Addendum if additional space is necessary to record all details.

REDACTED

Phoenix reserves the right to require additional medical information, medical examination or testing to complete the underwriting process.

046289700846

## Section XI - Authorization To Obtain Information

I authorize any licensed physician, health care practitioner, hospital, medical laboratory, clinic or other medically-related facility, insurance company or the Medical Information Bureau (MIB), having any records or knowledge of me or my health, to provide any such information to Phoenix Life Insurance Company (Phoenix), or its reinsurers. The information requested may include information regarding diagnosis and treatment of physical or mental condition, including consultations occurring after the date this authorization is signed. I authorize any of the above sources to release to Phoenix or its reinsurers any of my information relating to mental health care.

Medical information will be used only for the purpose of risk evaluation and determining eligibility for benefits under any policies issued. Phoenix may disclose information it has obtained to others as permitted or required by law, including the MIB, our reinsurers and other persons or entities performing business or legal services in connection with this application, any contract issued pursuant to it or in connection with the determination of eligibility for benefits under an existing policy. Information that is not personally identifiable may be used for insurance statistical studies.

To facilitate rapid submission of information, I authorize all of the above sources, except MIB, to give such records or knowledge to any agency employed by Phoenix to collect and transmit such information.

I authorize consumer reporting agencies, insurance companies, motor vehicle departments, my attorneys, accountants and business associates and the MIB to provide any information to Phoenix or its reinsurers that may affect my insurability. This may include information about my occupation, participation in hazardous activities, motor vehicle record, foreign travel, finances, and other insurance coverage in place.

I acknowledge that I have received a copy of the Notice of Information Practices, including information about Investigative Consumer Reports and the Medical Information Bureau. I authorize the preparation of an investigative consumer report. I understand that upon written request, I am entitled to receive a copy of the investigative consumer report.

This authorization shall continue to be valid for 24 months from the date it is signed unless otherwise required by law. A photocopy of this signed authorization shall be as valid as the original. This authorization may be revoked by writing to Phoenix prior to the time the insurance coverage has been placed in force. I understand my authorized representative or I may receive a copy of this authorization on request.

☐ I do  ☐ I do not (check one) require that I be interviewed in connection with any investigative consumer report that may be prepared.

## Section XII – Signature

I have reviewed this application, and the statements made herein are those of the proposed insured and all such statements made by the proposed insured in Part I or and in Part II of this application are full, complete, and true to the best knowledge and belief of the undersigned and have been correctly recorded.

I understand that 1) no statement made to, or information acquired by any Licensed Producer who takes this application, shall bind the Company unless stated in Part I and/or Part II of this application, and 2) the Licensed Producer has no authority to make, modify, alter or discharge any contract thereby applied for.

I understand and agree that the insurance applied for shall not take effect unless and until each of the following has occurred: 1) the policy has been issued by the Company; 2) the premium required for issuance of the policy has been paid in full during the lifetime of the insured; 3) all the representations made in the application remain true, complete and accurate as of the latest of such dates; 4) the insured is alive when the policy is issued, and 5) there has been no change in the health of any proposed insured that would change the answers to any of the questions in the application, except as otherwise provided by The Temporary Insurance Agreement.

This application is attached to and made a part of the policy.

Under penalty of perjury, I confirm that 1) the Social Security or Tax Identification Number shown is correct, and 2) that I am not subject to back-up withholding. If I have applied for the Living Benefit Rider, I confirm that I have received a copy of the disclosure form, Summary of Coverage for Accelerated Benefit Rider.

| Proposed Insured's Signature | State Signed In | Witness Signature(Must be signed in presence of Proposed Insured) | Date (mm/dd/yyyy) |
|---|---|---|---|
| | NY | | 08/15/2007 |
| Owner's Signature (if other than Proposed Insured) | State Signed In | Witness Signature (Must be signed in presence of Owner) | Date (mm/dd/yyyy) |
| | NY | | 08/15/2007 |
| Parent's Signature (for minor insured) | State Signed In | Witness Signature (Must be signed in presence of Owner) | Date (mm/dd/yyyy) |

The Producer hereby confirms he/she has truly and accurately recorded on the application the information supplied by the Proposed Insured; and that he/she is qualified and authorized to discuss the contract herein applied for.

| Licensed Producer's Name (Print First, Middle, Last) | Licensed Producer's Email Address |
|---|---|
| MICHAEL STUART KAMIL | MIKAM937@COMCAST.NET |

| Licensed Producer's Signature | Date (mm/dd/yyyy) | Licensed Producer's I.D. # | Licensed Producer's Telephone # |
|---|---|---|---|
| | 08/15/2007 | LA-1038385 | (730)332-1182 |

OL4250NY



**PHOENIX**  Phoenix Life Insurance Company
Statutory Home Office        Main Administrative Office
10 Krey Boulevard            PO Box 8027
East Greenbush NY 12144      Boston MA 02266-8027

**Medical History
Application Part II**

Underwriting and Issue

| Name of Proposed Insured | Sex | | Date of Birth |
|---|---|---|---|
| Michael E. Moss | ☑ Male ☐ Female | | 11/15/1935 |

**Personal Physician:** Please provide the name and address of your

| Family History: | Age if Alive | Age at Death | If alive, indicate health problems or if deceased, indicate cause of death: |
|---|---|---|---|

Have you ever had, or been told by a physician or other health care provider that

1. High blood pressure or hypertension?
2. Pain, pressure, or discomfort in the chest, angina pectoris, palpitations, swelling the ankles, or shortness of breath?
3. Heart disease, coronary artery disease, cardiomyopathy, heart failure, atrial fibrill heart rhythm abnormality, heart murmur, congenital heart disease or valvular he disease?  *rmi see Next page*
4. Peripheral vascular disease, claudication, narrowing or blockage of arteries or veins?
5. Asthma, pulmonary fibrosis, chronic cough, emphysema, pneumonia, or any ot lung disease?
6. Neurologic disease, seizures, fainting, falls, concussion, stroke, transient ischem attack (TIA), tremor, neuropathy, weakness paralysis, Parkinson's disease, men loss, dementia, or any other disease of the brain or nervous system?
   bipolar disorder, schizophrenia, anxiety, or any other psychiatric
   ...us, or any musculoskeletal or skin disorder?
   ...minal pain, colitis, Crohn's disease, gall bladder disease, liver diseas ...undice, pancreatitis, or other disease of the gastrointestinal system?
   ...dney disease, kidney stones, bladder disorder, prostate disorder, pro ...e urine?
   ...disorder, including disorder of the thyroid, parathyroid, adrenal, or ...nds?
12. Acqu... ...nmune Deficiency Syndrome (AIDS) or any other immunologic disorder?
13. Anemia, bleeding or clotting disorder, or any other disorder of the blood or bone marrow?
14. Cancer of any type, tumor (benign or malignant), leukemia, lymphoma, or Hodgkin's disease?
15. Are you taking any kind of medicine, therapy, or treatment regularly or at frequent intervals?
16. Have you ever been treated for alcoholism or been advised to limit or stop your ...of alcohol?
17. Have you ever used narcotics, barbiturates, amphetamines, hallucinogens, or a prescription drug except in accordance with a physician's instructions?
18. Have you been a patient in any hospital, treatment center, or similar facility with last 10 years?
19. Have you had, or been advised to have, any surgery, X-rays, electrocardiogram blood studies (excluding HIV or AIDS tests), or other tests within the last 5 year
20. Other than above, have you had any physical or psychological disorder or been treated by a physician or other health care provider for any reason within the pa 5 years?

lease provide details of "YES" answers (include question umber, diagnosis, date of occurrence, hospital or treating hysician's name and address, treatment, and current

**REDACTED**

THE FOREGOING STATEMENTS ARE FULL, COMPLETE AND TRUE TO THE BEST THIS APPLICATION IS ATTACHED TO AND MADE A PART OF THE POLICY.

AND BELIEF.

Dated at ....... NY NY ....... 
(CITY AND STATE)

Date  08/17/2007        8/17/2007

Witness .......
(EXAMINER)

Michael Moss
PROPOSED INSURED SIGN FULL NAME

OL121BNY

9-04