**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTIN FLEISHER, AS TRUSTEE OF THE MICHAEL MOSS IRREVOCABLE LIFE INSURANCE TRUST II and JONATHAN BERCK, AS TRUSTEE OF THE JOHN L. LOEB, JR. INSURANCE TRUST, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) Civil Action No. 11-cv-8405(CM) |
| Plaintiff, | ) ) |
| vs. | ) ) **PLAINTIFFS' OPPOSITION TO** ) **DEFENDANT PHOENIX LIFE** ) **INSURANCE COMPANY'S** ) **MOTION FOR PARTIAL** ) **DISMISSAL OF THE CLASS** ) **ACTION COMPLAINT** |
| PHOENIX LIFE INSURANCE COMPANY, | ) ) |
| Defendant. | ) ) ) ) |

# Table of Contents

Page

I.      INTRODUCTION ................................................................................................. 5

II.     STATEMENT OF FACTS ................................................................................... 6

III.    ARGUMENT ...................................................................................................... 8

      A.      Phoenix's Motion to Dismiss Plaintiffs' Breach of the Covenant of Good
              Faith and Fair Dealing Claim Should be Denied because this Claim is Not
              Redundant of Plaintiffs' Breach of Contract Claim ................................................. 8

      B.      Phoenix's Motion to Dismiss Plaintiffs' Declaratory Judgment Claim
              Should be Denied because this Claim is Not Redundant of Plaintiffs'
              Breach of Contract Claim .................................................................................... 13

      C.      Plaintiffs More than Adequately State a Claim Under GBL § 349 ..................... 15

            1.      GBL § 349 has a broad scope and applies to plaintiffs' claim ................ 16

            2.      The Complaint alleges consumer-oriented conduct................................... 17

                  a.      Plaintiffs' GBL § 349 claim does not fail as a matter of law
                       because of the face value of the policies at issue.......................... 19

                  b.      Phoenix's assertion that this case does not involve
                       "ordinary consumer transactions" fails......................................... 20

                  c.      Phoenix's arguments regarding the purported sophistication
                       of the parties fail ...................................................................... 22

                  d.      Phoenix's contention that the policies are not form policies
                       is incorrect.............................................................................. 23

                  e.      New York courts allow GBL § 349 claims to proceed in
                       cases involving allegations relating to the life settlements
                       market ..................................................................................... 24

            3.      The Complaint adequately alleges injury as a result of Phoenix's deceptive
                 conduct .................................................................................................. 27

IV.     CONCLUSION.................................................................................................. 28

# TABLE OF AUTHORITIES

## CASES

*BD v. DeBuono,*
    130 F. Supp. 2d 401 (S.D.N.Y. 2000)................................................................................9

*Berck v. Principal Life Insurance Co.,*
    No. 150305/2010 (N.Y. Sup. Ct. Mar. 7, 2011) ..............................................................21

*Beller v. William Penn Life Ins. Co. of New York,*
    8 A.D. 3d 310 (N.Y. App. Div. 2004) .............................................................................13

*Butvin v. Doubleclick, Inc.,*
    22 Fed. Appx. 57 (2d Cir. 2001) .......................................................................................6

*Butvin v. DoubleClick, Inc.,*
    No. 99 Civ. 4727, 2001 WL 228121 (S.D.N.Y. Mar. 7, 2001) .....................................6, 8

*Buyers & Renters United to Save Harlem v. Pinnacle Group N.Y. LLC,*
    757 F. Supp. 2d 499 (S.D.N.Y. 2008)..............................................................................16

*Continental Casualty Co. v. Coastal Savings Bank,*
    977 F.2d 734 (2d Cir. 1992)...............................................................................................9

*Continental Cas. Co. v. Nationwide Indem. Co.,*
    16 A.D.3d 353 (N.Y. App. Div. 2005) .............................................................................18

*Don King Productions, Inc. v. Douglas,*
    742 F. Supp. 741 (S.D.N.Y. 1990).....................................................................................5

*ETrade Financial Corp. v. Deutsche Bank AG,*
    No. 05 Civ. 0902, 2008 WL 2428225 (S.D.N.Y. June 13, 2008)...................................7, 8

*Eaves v. Designs for Finance, Inc.,*
    785 F. Supp. 2d 229 (S.D.N.Y. 2011)..............................................................................18

*Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.,*
    No. 05 Civ. 8510, 2007 WL 438088 (S.D.N.Y. Feb.8, 2007) ...........................................6

*Grand Heritage Management, LLC v. Murphy,*
    No. 06 Civ. 5977, 2007 WL 3355380 (S.D.N.Y. Nov. 7, 2007) .......................................6

*Exxonmobil Inter-America, Inc.l v. Advanced Information Engineering Services, Inc.,*
    328 F. Supp. 2d 443 (S.D.N.Y. 2004)...................................................................17, 18, 19

*Gaidon v Guardian Life Insurance Co. of America*,
    94 N.Y.2d 330 (1999) .......................................................................................14

*Interested Underwriters at Lloyd's of London Subscribing to Policy # 991361018 v.*
    *Church Loans & Investments Trust*,
    432 F. Supp. 2d 330 (S.D.N.Y. 2006).....................................12, 14, 16, 19, 20

*John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*,
    No. 11-CV-5453, 2011 WL 5245192 (S.D.N.Y. Nov. 2, 2011).......................10

*Karlin v. IVF America*,
    93 N.Y.2d 282 (N.Y. 1999) ............................................................................12

*Kirke La Shelle Company v. The Paul Armstrong Company et al.*,
    263 N.Y. 79 (N.Y. 1933) ..................................................................................5

*Kramer v. Lockwood Pension Services, Inc.*,
    653 F. Supp. 2d 354 (S.D.N.Y. 2009)........................................................21, 22

*Kramer v. Phoenix Life Ins. Co.*,
    15 N.Y.3d 539 (N.Y. 2010) ............................................................................22

*Kramer v. Time Warner Inc.*,
    937 F.2d 767 (2d Cir. 199)..............................................................................18

*Leberman v. John Blair & Co.*,
    880 F.2d 1555 (2d Cir. 1989)............................................................................5

*Lincoln Life & Annuity Co. of New York v. Bernstein*,
    No. 08-2461, 2009 WL 1912468 (N.Y. Sup. Ct. June 29, 2009) .............12, 14, 15, 19, 21

*Lonner v. Simon Property Group, Inc.*,
    57 A.D.3d 100 (N.Y. App. Div. 2008) ......................................................5, 7, 13

*Madison Capital Co., LLC v. Alasia, LLC*,
    615 F. Supp. 2d 233 (S.D.N.Y. 2009).........................................................5, 6, 7

*Makuch v. New York Cent. Mut. Fire Ins. Co.*,
    12 A.D.3d 1110 (N.Y. App. Div. 2004) ...............................................2, 3, 4, 12, 14

*New York University v. Continental Insurance Co.*,
    87 N.Y.2d 308 (N.Y. 1995) ............................................................................18

*New York v. Feldman*,
    210 F. Supp. 294 (S.D.N.Y. 2002)...................................................................19

*Oswego  Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    85 N.Y.2d 20 (N.Y. 1995) ...................................................................................13, 16, 17

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
    478 F. Supp. 2d 496 (S.D.N.Y. 2007).............................................................................8

*Phoenix Life Insurance Co. v. The Irwin Levinson Insurance Trust II*,
    No. 600985/2008 (N.Y. Sup. Ct. Feb. 19, 2009) ............................................................14

*Riordan v. Nationwide Mutual Fire Insurance Co.*,
    977 F.2d 47 (2d Cir. 1992)...............................................................................................15

*Sokoloff v. Town Sports Int'l*,
    6 A.D.3d 185 (N.Y. App. Div. 2004) ...............................................................................24

*Spagnola v. Chubb Corp.*,
    574 F.3d 64 (2d Cir. 2009).................................................................................................24

*Teller v. Bill Hayes, Ltd.*,
    172 A.D.2d 604 (N.Y. App. Div. 1991) .........................................................................18

*Teller v. Bill Hayes, Ltd.*,
    213 A.D.2d 141 (N.Y. App. Div. 1995) .................................................................16, 17

*Texas v. United States*,
    523 U.S. 296 (1998).............................................................................................10, 11

*Wells Fargo Bank Northwest v. America General Life Insurance Co.*,
    No. 10-1327, 2011 WL 1899338 (D.N.J. May 19, 2011)............................................21, 22

*Wilner v. Allstate Ins. Co.*,
    71 A.D.3d 155 (N.Y. App. Div. 2010) ...................................................................12, 14

*Yue v. Conseco Life Insurance Co., No. CV 08-1506*,
    2011 WL 210943 (C.D. Cal. Jan. 19, 2011) ....................................................................11

## I.    <u>INTRODUCTION</u>

Plaintiffs are life insurance customers of defendant Phoenix Life Insurance Company ("Phoenix") who entered into standard, form contracts that expressly provide when and how Phoenix is authorized to raise the cost of insurance ("COI"). The Complaint alleges a breach of contract claim on the grounds that Phoenix violated five express provisions of these contracts. Compl. at ¶¶ 23-24 (COI rates changes must be "made on a uniform basis for all insureds in the same class," based on specific factors such as "future mortality," and cannot be used to "recoup past losses").  Phoenix does not move to dismiss this cause of action.

Instead, Phoenix erroneously ignores the difference between breaches of these five *express* contractual provisions and the substantially different *implied* covenant of good faith and fair dealing, and moves to dismiss the latter claim on the ground that it is "duplicative" of the former. This argument is meritless because the Complaint alleges that Phoenix "promoted," "marketed," and "sold" these policies with a heavy emphasis on their "flexible premium" features, and the COI rate hike "renders the concept of 'flexible premiums' illusory." *Id.* at ¶¶ 3, 11. Phoenix's misconduct thereby deprived plaintiffs of the benefits of the contract—even if the jury were to find that Phoenix did not breach the terms in a hyper-technical sense—which is a well-recognized, cognizable good-faith claim. In any event, Phoenix apparently construes the express terms of the contracts at issue differently than plaintiffs and intends to raise that argument on summary judgment. *See* Motion at 6, n.1. Thus, determining whether a breach of the express terms of the contract are in fact "duplicative" of the breach of the implied covenant of good faith and fair dealing cannot be decided on the pleadings.

Phoenix relies again on this "duplicative" argument and asks the Court to exercise its discretion to dismiss the declaratory judgment claim because it too is supposedly duplicative of the breach of contract claim. However, the second COI increase at issue in this case will not even be assessed on any named plaintiff until at least October 2012, and the first COI increase is levied annually every time premiums are due. Accordingly, the breach of contract claim seeks the recovery of money for *past* damages and the declaratory judgment claim seeks a *prospective*

determination of plaintiffs' rights and responsibilities. The two claims are therefore obviously not redundant. Instead, under the guise of avoiding "duplication,"  Phoenix is asking the Court to require that plaintiff first suffer hundreds of thousands of dollars of *additional* economic damage in the future and then sue again for breach of contract. Such an absurd result is exactly what the Declaratory Judgment Act is designed to prevent.

Finally, as for the General Business Law § 349 claim, Phoenix asks that the Court rule on the pleadings that its COI increase did not impact the "little guy," even though the Complaint alleges the opposite. Compl. at ¶ 7 ("These COI increases have also impacted ordinary consumers, who purchase insurance for the benefit of their families and to pay estate taxes upon their death."). The Complaint also alleges that these policies are all standard, form policies that the insureds could not individually negotiate, *id.* at ¶ 25, which also supports a strong inference on the pleadings that the conduct at issue is consumer-oriented. *See, e.g.*, *Makuch v. New York Cent. Mut. Fire Ins. Co.*, 12 A.D.3d 1110, 1110 (N.Y. App. Div. 2004) (finding that a GBL § 349 claim was adequately pled "at this early prediscovery phase" because "[i]n particular, the allegations that the forms making up plaintiffs' insurance policy are standard and regularly used by defendant are sufficient to support the allegation that defendant's actions are consumer-oriented") (citing cases). Phoenix's only response to this fact is to dispute it, *see, e.g.,* Motion at 2 (arguing that the policies were "customized" for plaintiffs), a tactic wholly improper on a motion to dismiss.

As a result, and for the reasons stated more fully below, the Court should deny Phoenix's motion to partially dismiss the Complaint.

## II.  STATEMENT OF FACTS

This is a class action brought on behalf of hundreds—if not thousands—of policyholders who own flexible premium, universal life insurance policies issued by Phoenix (also known as "Phoenix Accumulator" or "PAUL" policies). The principal benefit of PAUL policies is they permit policyholders to pay the minimum amount of premiums necessary to keep the policies in-

force.  Compl. at ¶ 2. Unlike whole life insurance, which requires fixed monthly or quarterly premium payments, the premiums required for PAUL policies need only be sufficient to cover the COI charges and certain other specified expense charges. *Id.* Consumers prefer flexible premium universal life policies because, in Phoenix's words, they "present the opportunity to pay lower premiums, as well as adjust the amount and timing of premium payments." *Id.* When consumers fully utilize this flexible premium feature, the "accumulated policy value"—which reflects the amount of premiums paid in excess of COI charges and expenses—is close to zero. *Id.*

Despite having marketed and sold the PAUL policies as "flexible premium" policies, beginning in 2010, Phoenix initiated a series of COI rate increases targeted at policyholders who chose to use the flexible premium feature. *Id.* at ¶ 3. In March 2010, Phoenix announced the first COI rate increase, which applies to a subset of PAUL policyholders who, in Phoenix's opinion, were not keeping their accumulated policy value at a "sufficient level." *Id.* at ¶¶ 26-31.  For other policyholders of the same class, no COI rate increase was imposed. *Id.* Indeed, Phoenix told policyholders that they could "reduce or even eliminate the increase" by paying more money into their accounts than they were contractually required to do. *Id.* at ¶ 26. The intent and effect of the COI rate increase was to deter policyholders from fully utilizing the flexible premium feature of the PAUL policies and to induce the lapse of policies.

In October 2011, Phoenix announced a second COI increase. *Id.* at ¶ 32. The intent and effect of the second COI increase were the same as with respect to the first COI increase: to impair policyholders' ability to utilize the flexible premium feature of their policies and to induce lapses. *Id.* at ¶¶ 32-34.

The first and second COI increases each took effect on the policy anniversary of each individual policy. *Id.* at ¶¶ 26 & 32. Because the second COI increase "will go into effect" on the "next policy anniversary" for each policy in the putative class starting "on or after November 1, 2011," it may not take effect for some putative class members until the end of October 2012.

The policies at issue are all form policies, and insureds are not permitted to negotiate any terms. *Id.* at ¶ 25. Each contains various prohibitions and limitations on how and why Phoenix may increase COI rates. *Id.* at ¶¶ 23-24.

Plaintiffs' Complaint alleges four causes of action. In their first cause of action, plaintiffs allege that Phoenix breached these express provisions in implementing a COI rate increase targeted at only a subset of PAUL policyholders based on accumulated policy value. *Id.* at ¶¶ 46-50. In their second cause of action, plaintiffs allege that Phoenix breached the implied covenant of good faith and fair dealing by selling "flexible premium" policies and then selectively raising COI rates on policyholders who fully utilize that feature. *Id.* at ¶¶ 52-56. For their third cause of action, plaintiffs allege that Phoenix's deceptive, consumer-oriented conduct violates the New York General Business Law § 349. *Id.* at ¶¶ 58-64. For their fourth cause of action, plaintiffs seek declaratory judgment that the first and second COI rate increases are unlawful and a declaration that accumulated policy value is not a valid basis for a COI rate increase.[1]

Phoenix has moved to dismiss the second, third, and fourth causes of action. Phoenix has not moved to dismiss the first cause of action for breach of contract. For the reasons discussed below, Phoenix's motion for partial dismissal should be denied.

## III.   ARGUMENT

### A.   Phoenix's Motion to Dismiss Plaintiffs' Breach of the Covenant of Good Faith and Fair Dealing Claim Should be Denied because this Claim is Not Redundant of Plaintiffs' Breach of Contract Claim

Phoenix's motion to dismiss plaintiffs' claim for breach of the covenant of good faith and fair dealing should be denied. As the New York Court of Appeal explained over 80 years ago:

---

[1] Although outside the scope of the Complaint, plaintiffs note for the Court's information an important event that occurred *after* the filing of the Complaint: Phoenix apparently "rescinded" the first COI increase and replaced it with a third COI increase. Phoenix has thus essentially admitted that the first COI increase was unlawful, and has purportedly "credited" the affected accounts. Plaintiffs are conducting discovery on the methodology used to refund the money, the rate of interest applied, and the effect of the replacement COI increase, and would plead these additional facts if an amended complaint is ultimately required.

"In every contract there is an implied covenant that neither party shall do anything, which will have the effect of destroying or injuring the right of the other party, to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." *Kirke La Shelle Company v. The Paul Armstrong Company et al.*, 263 N.Y. 79, 79 (N.Y. 1933). The covenant "precludes each party from engaging in conduct that will deprive the other party of the benefits of their agreement." *Leberman v. John Blair & Co.*, 880 F.2d 1555, 1560 (2d Cir. 1989). Hence, the covenant is violated "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other of the right to receive the benefits under the agreement." *Don King Productions, Inc. v. Douglas*, 742 F. Supp. 741, 767 (S.D.N.Y. 1990). Further, "[w]here the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." *Lonner v. Simon Property Group, Inc.,* 57 A.D.3d 100, 109 (N.Y. App. Div. 2008) (citation omitted).

Phoenix is correct that a claim for breach of the covenant of good faith and fair dealing claims is properly dismissed when it is redundant of a breach of contract claim. *See, e.g., Madison Capital Co., LLC v. Alasia, LLC*, 615 F. Supp. 2d 233, 239 (S.D.N.Y. 2009) (McMahon, J.). Phoenix is wrong, however, in asserting that plaintiffs' claims here are duplicative.

Plaintiffs' breach of contract claim is based on Phoenix's breach of five *express* provisions of the policies:

- <u>Express Provision #1</u>: "Any change in [COI] rates will be made on a uniform basis for all insureds in the same class." Compl. at ¶¶ 23-24.

- <u>Express Provision #2</u>: "We review our Cost of Insurance Rates periodically, and may re-determine Cost of Insurance rates at such time on a basis that does not discriminate unfairly within any class of insureds." *Id.* at ¶ 24.

- Express Provision #3: "[COI] rates will be based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements." *Id.* at ¶¶ 23-24.

- Express Provision #4: "The cost of insurance rate for each Policy Month is based on the Insured's age at issue, risk class and sex, and on policy duration." *Id.* at ¶ 23.

- Express Provision #5: "Any change in rates will be determined prospectively. We will not distribute past gains or recoup prior losses, if any, by changing rates." *Id.* at ¶¶ 23-24.

Plaintiffs' breach of the covenant of good faith and fair dealing claim, by contrast, is not predicated on the breach of any of these five express provisions; rather, it is based on the fact that Phoenix (a) sells and labels the subject policies as "flexible premium universal life" policies, (b) does not disclose in the policies that it will impose higher COI rates for policyholders who utilize the flexible premium feature, and (c) now seeks to punish policyholders who choose to pay flexible premiums and thereby induce the lapse of those policies. Thus, even assuming *arguendo* that Phoenix could convince a jury that it complied with the literal terms of its contract, Phoenix could still be found liable for breach of the covenant of good faith and fair dealing for preventing consumers from utilizing an essential feature of the contracts—the ability to pay flexible premiums. *See generally Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*, No. 05 Civ. 8510, 2007 WL 438088 at *7 (S.D.N.Y. Feb.8, 2007) ("In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative; however, in some cases, a party may be in breach of its implied duty of good faith and fair dealing even if it is not in breach of its express contractual obligations.") (quotation omitted); *Grand Heritage Management, LLC v. Murphy*, No. 06 Civ. 5977, 2007 WL 3355380 (S.D.N.Y. Nov. 7, 2007) (denying motion to dismiss claim for breach of covenant of good faith and fair dealing where claim was "based on allegations different from those underlying the accompanying breach of contract claim"); *Butvin v. DoubleClick, Inc.*, No. 99 Civ. 4727, 2001 WL 228121, at *8 (S.D.N.Y. Mar. 7, 2001), *aff'd in Butvin v. Doubleclick, Inc.*, 22 Fed. Appx. 57 (2d Cir. 2001) ("New York courts have recognized a separate cause of action for breach of the

covenant of good faith and fair dealing, however, in cases involving efforts by one party to a contract to subvert the contract itself.").

The cases relied upon by Phoenix are all inapposite because, in each of those cases, the claim for breach of the covenant of good faith and fair dealing was entirely redundant of the breach of contract claim. Here, plaintiffs' breach of covenant of good faith and fair dealing claim is not coterminous with the breach of contract claim. Plaintiffs' claim is based on the fact that any reasonable person purchasing a flexible premium universal life insurance policy would expect that they would not be selectively targeted for COI rate increases for paying flexible premiums. *See Madison Capital Co., LLC*, 615 F. Supp. 2d at 239 (explaining that the covenant encompasses "any promises which a reasonable person in the position of the promisee would be justified in understanding were included") (citations omitted). Indeed, Phoenix's conduct is no different than a wireless provider offering "free roaming" that disconnects customers who roam more than a certain number of minutes a month, or a retailer of gift cards that punishes consumers who do not use their cards by charging excessive "dormancy fees" that are not properly disclosed. *See, e.g., Lonner,* 57 A.D.3d at 109 (finding that lack of adequate disclosure gave rise to claim for breach of the implied covenant, and that "[e]ven were the defendant entitled to charge dormancy fees, it is still precluded under the implied covenant of good faith and fair dealing from setting such fees at grossly excessive amounts. Thus, the amended complaint sufficiently states a claim to recover damages for breach of the implied covenant of good faith and fair dealing.").

Furthermore, courts are particularly wary of dismissing claims for breach of the covenant of good faith and fair dealing where—as is the case here—the meaning of a contract has yet to be determined. *E*Trade Financial Corp. v. Deutsche Bank AG,* No. 05 Civ. 0902, 2008 WL 2428225, at *26 (S.D.N.Y. June 13, 2008) ("Here, because the meaning of the parties' contract has yet to be determined, it is too soon to address whether the plaintiffs' claim of breach of the covenant of good faith and fair dealing is duplicative."); *see also* Motion at 6 n.1 (arguing that Phoenix disputes Plaintiffs' "flawed reading of the policy language"). Plaintiffs have properly

pled a claim for breach of the covenant of good faith and fair dealing that is not predicated upon any breach of an express contractual term. Accordingly, defendant's motion to dismiss this claim should be denied.

Notwithstanding the foregoing, plaintiffs do wish to highlight an ambiguity in Phoenix's motion: it is unclear whether Phoenix is asserting that plaintiffs have not stated a valid claim under an implied covenant of good faith and fair dealing *theory*, or whether Phoenix's objection is to having that claim be a *separate cause of action* from the breach of contract cause of action. Some authorities suggest that, because the implied covenant is deemed part of the contract, a cause of action for breach of contract includes both claims for breaches of express provisions and breaches of the implied covenant and it is therefore unnecessary to plead the breach of the implied covenant as a separate cause of action. *See, e.g., Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 503 (S.D.N.Y. 2007) ("a breach of the implied covenant is not a separate cause of action, but is instead one way of establishing a breach of contract"). Other cases applying New York law—both state and federal—have sustained claims for breach of the covenant of good faith and fair dealing as an independent cause of action. *See, e.g., E\*Trade Financial Corp.*, 2008 WL 2428225 at \*26 (denying motion to dismiss claim for breach of the implied covenant pled as a separate cause of action); *Butvin*, 2001 WL 228121, at \*8 (reviewing New York decisions and concluding that claims for breach of the implied covenant are properly pled as a separate cause of action).  Following those authorities and to give Phoenix fair notice of the claims, plaintiffs pled their implied covenant claim as a separate cause of action. But if Phoenix's only objection is to the form of the claim, and not the underlying legal theory, and if this Court elects to follow the *Payday Advance Plus* line of cases instead of the *E\*Trade Financial Corp.* line of cases cited above, plaintiffs have no objection to amending the Complaint to state a single cause of action for breach of contract that includes both (a) claims predicated on breach of express contractual provisions and (b) claims predicated on breach of the implied covenant of good faith and fair dealing; but Phoenix's argument that the implied

covenant of good faith and fair dealing is "redundant" with the five express provisions at issue in the contracts is wholly without merit.

**B.  Phoenix's Motion to Dismiss Plaintiffs' Declaratory Judgment Claim Should be Denied because this Claim is Not Redundant of Plaintiffs' Breach of Contract Claim**

Phoenix's request that the Court exercise its discretion not to hear plaintiffs' declaratory judgment claim should be rejected. "The two criteria guiding the policy in favor of rendering declaratory judgments are (1) whether the judgment will serve a useful purpose in clarifying and settling legal relations in issue, and (2) whether it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding. If either prong of the test is met, the request for declaratory judgment should be entertained." *BD v. DeBuono*, 130 F. Supp. 2d 401, 430 (S.D.N.Y. 2000) (citing *Continental Casualty Co. v. Coastal Savings Bank*, 977 F.2d 734, 737 (2d Cir. 1992)) (McMahon, J.). Here, both prongs of this test are easily met.

The declaratory judgment requested will serve a useful purpose in settling legal rights without forcing plaintiffs to await a violation of their rights. On October 2011, Phoenix announced a second COI increase that "will go into effect" on the "next policy anniversary" for each policy in the putative class starting "on or after November 1, 2011." Compl. ¶ 32. That means, for example, that the second COI increase will go into effect against the plaintiff-owner of the Moss Policy in about eight months, starting on October 2012.[2] As for the first COI increase, the plaintiff-owner of the Loeb Policy already became eligible for the first COI increase in November 2011,[3] but that increase is applicable *every policy year* which will cost that plaintiff

---

[2] Complaint Ex. B (Moss Policy) at 3 (Section 1: Schedule Pages, **Policy Date**: October 12, 2007); *id* at 8 (Section 3: Definitions. "The term **'Policy Anniversary'** means the same day and month of each year as the Policy Date. . . . The term **'Policy Date'** means the date shown in Section 1.") (emphasis in original). Although the second COI increase does not go into effect for the Moss Policy until October 2012, the announcement of the increased COI also damaged the value of policy immediately. Compl. at ¶ 35.

[3] Complaint Ex. A (Loeb Policy) at 2 (Schedule Page, **Policy Date:** November 1, 2005); *id.* at 9 (Part 1: Definitions, **Policy Anniversary**: The anniversary of the Policy Date. . . . **Policy Date**:

$46,700 the second year, an additional $30,500 the third year, $30,300 the fourth year, and $16,5000 the sixth year.  *Id.* ¶ 28. Rather than waiting to suffer all of these economic harms, plaintiffs sued now seeking a prospective determination of rights through a declaratory judgment that, amongst other things, the COI increases are unlawful.

Thus, Phoenix is obviously wrong to suggest that the Court should exercise its discretion not to hear the claim because the requested declaratory relief is "superfluous" of the breach of contract claim. The breach of contract claim entitles plaintiffs to *damages* suffered for *past* wrongful conduct; the declaratory judgment claim, on the other hand, entitles plaintiffs to a *prospective* determination of plaintiffs' *rights* that would otherwise be harmed each year the COI increases remain in effect.  *See John Wiley & Sons, Inc. v. Visuals Unlimited, Inc.*, No. 11-CV-5453, 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) ("[D]eclaratory relief is intended to operate prospectively.") (McMahon, J.) (quoting *Nat'l Union Firs Ins. Co. of Pittsburg, Pa. v. Int'l Wire Grp., Inc.*, No. 02 Civ. 10338, 2003 WL 2127714, at *5 (S.D.N.Y. June 2, 2003)).

Phoenix's half-hearted response to this argument is buried in footnote 6 in its motion, in which, citing to *Texas v. United States*, 523 U.S. 296, 300 (1998), Phoenix asserts that plaintiffs' request for declaratory relief is not ripe because future COI increases "may not occur as anticipated, if it occurs at all." In *Texas*, however, the Court applied the ripeness doctrine to a suit filed by the state of Texas seeking a declaration that section 5 of the Voting Rights Act of 1965 does not apply to a Texas law which sought to hold local school boards accountable for student achievement by empowering a commissioner to select possible sanctions when a school district underperformed. Texas applied for the required preclearance from the United States Attorney General, who determined that certain provisions within the scheme may violate § 5. Texas filed suit seeking a declaration that § 5 did not apply. The Supreme Court held that the claim was not ripe for adjudication because the imposition of sanctions on Texas schools was "contingent on a number of factors," such as the school district falling below state standards and

The Policy Date shown on the Schedule Pages from which Policy Years and Policy Anniversaries are measured.").

other less intrusive sanctions initially not working, and Texas had not even "pointed" to a school district in which it was "currently foreseen or even likely" for the sanctions at issue to even be needed. *Id.* at 300.

In stark contrast, here, Phoenix sent a form letter to plaintiff and putative class members stating in unmistakably clear, unconditional terms: "We are sending you this letter to inform you that on November 1, 2011, **we are increasing cost of insurance rates** on certain [PAUL] policies, including your policy referenced above . . . This change **will go into effect** on your next policy anniversary on or after November 1, 2011." Compl. at ¶ 32 (emphasis added). No contingencies and no caveats. A declaratory judgment would therefore afford relief from the uncertainty, insecurity and controversy giving rise to this lawsuit. Given these facts, the request for a declaratory judgment for prospective relief is ripe, and courts have so held in similar COI cases. *See Yue v. Conseco Life Ins. Co.*, No. CV 08-1506, 2011 WL 210943, at *6 (C.D. Cal. Jan. 19, 2011) ("Conseco has maintained the position that the factors and methodology it used to calculate the Contested COI Increases are permissible under the Policies. . . Conseco is planning on adopting changes to the COI rate that would take effect in the future. Thus, [plaintiff's] request the Court determine doing so would violate the [contract], is still very much a live controversy.").

## C.    Plaintiffs More than Adequately State a Claim Under GBL § 349

Phoenix next argues that plaintiffs do not state a claim under General Business Law § 349. Phoenix would have this Court believe that its conduct, explicitly alleged in the Complaint to be deceptive and to have affected thousands of policyholders in the same way, is immune from scrutiny under that statute because the individual life insurance policies at issue are, as a matter of law, too valuable to merit protection, and because consumers in the life settlements market as a whole simply have no hope of invoking Section 349.  These blanket contentions are plainly wrong. Numerous recent, on-point New York rulings have upheld Section 349 claims

premised on virtually identical allegations, as well as insurance transactions involving *these very same parties*.

> GBL § 349 provides in relevant part:
> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful [and] . . . any person who has been injured by reason of any violation of this section may bring an action in his own name. . . .

A GBL § 349 claim is properly stated where a party alleges that the challenged "conduct was consumer-oriented, that the conduct was misleading in a material way, and that plaintiffs suffered injury as a result of the deceptive acts." *Makuch*, 12 A.D.3d at 1111. A plaintiff facing a motion to dismiss a GBL § 349 claim bears only a "minimal burden . . . at this early stage of the litigation." *Interested Underwriters at Lloyd's of London Subscribing to Policy # 991361018 v. Church Loans & Invs. Trust*, 432 F. Supp. 2d 330, 332 (S.D.N.Y. 2006).

Phoenix does not dispute that plaintiffs' have properly alleged material, deceptive conduct. Accordingly, the only elements in dispute are whether plaintiffs' have adequately alleged (a) consumer-oriented conduct and (b) injury.

### 1.    GBL § 349 has a broad scope and applies to plaintiffs' claim

GBL § 349's "scope is broad indeed." *Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 160 (N.Y. App. Div. 2010); *see also Karlin v. IVF Am.*, 93 N.Y.2d 282, 290 (N.Y. 1999), *quoting* N.Y. Dept. of Law, Mem. to Governor, 1963 Legis. Am., at 105 (GBL § 349 "on [its] face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad.") (citations and footnote omitted).

Despite Phoenix's insinuations to the contrary, New York courts routinely apply GBL § 349 to many types of consumer claims relating to insurance policies. *See, e.g., Wilner*, 71 A.D. 3d at 160-61 (listing and describing numerous New York cases applying GBL § 349 "[w]ith regard to matters pertaining to insurance," including disputes over coverage and rates); *Lonner*, 57 A.D.3d at 110 ("This Court has broadly construed general consumer protection laws to effectuate their remedial purposes, applying the State deceptive practices law to a full spectrum

of consumer-oriented conduct, from the sale of 'vanishing premium' life insurance policies to the provision of infertility services. We have repeatedly emphasized that [General Business Law § 349] and section 350, its companion 'apply to virtually all economic activity, and their application has been correspondingly broad.") (citations and internal ellipses omitted); *Lincoln Life & Annuity Co. of New York v. Bernstein*, No. 08-2461, 2009 WL 1912468, at *5 (N.Y. Sup. Ct. June 29, 2009) (denying motion to dismiss GBL claim arising from refusal to pay death benefits under a $20 million insurance policy).

Indeed, in a case involving *virtually identical cost of insurance allegations* to the case at bar, the New York Appellate Division clearly signaled that GBL § 349 applies. *Beller v. William Penn Life Ins. Co. of New York*, 8 A.D. 3d 310 (N.Y. App. Div. 2004), involved claims brought by an owner of a flexible premium adjustable life insurance policy similar to the PAUL policies in this case. As the Court explained, the policy provided, "in essence, for premiums to be based upon the 'cost of insurance,' which is to be 'determined by the [insurer] based on its expectation of'" certain enumerated factors. *Id.* at 312. Any change in the cost of insurance rates had to be "due to a change in the [insurer's] expectation in one or more of" the enumerated factors. *Id.*

Many years after the policy issued, the plaintiff brought suit "alleging, inter alia, that the defendant breached the terms of the policy, and engaged in deceptive trade practices in violation of General Business Law § 349, by increasing the cost of insurance rates without regard to the flexible factors." *Id.* These are exactly the allegations made by the plaintiffs in this case. Although the Appellate Division found that a time limitation applied, it nevertheless went out of its way to contradict the lower court—which dismissed the GBL claim—and "find that the complaint sufficiently states a cause of action to recover damages for deceptive trade practices in violation of General Business Law § 349." *Id.* at 314 (citations omitted).

## 2. The Complaint alleges consumer-oriented conduct

The Complaint alleges consumer-oriented conduct on the part of Phoenix. This prong requires a plaintiff to "demonstrate that the acts of practices [complained of] have a broader impact on consumers at large," as opposed to a simple "[p]rivate contract dispute." *Oswego*

*Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (N.Y. 1995).  The Complaint meets this requirement by alleging the following:

- The PAUL policies in this case were standard form policies and were not individually negotiated. (Compl. ¶¶ 2, 19-21, 25, 62)

- These policies and their standard terms were extensively marketed to consumers at large, for example in "press releases as 'appropriate for those looking to minimize long term insurance costs' because they 'present the opportunity to pay lower premiums, as well as adjust the amount and timing of premium payments.'" Compl. ¶¶ 2-3, 20, 59-60, 62)

- Public reports confirmed that over two thousand policies and policyholders have been affected by Phoenix's conduct. (Compl. ¶¶ 28, 34, 62).

Numerous New York cases have held that GBL § 349 claims involving standard form insurance policies adequately allege consumer-oriented conduct.  *See, e.g.*, *Makuch*, 12 A.D.3d at 1110; *Lloyd's*, 432 F. Supp. 2d at 334 ("Decisions from New York Appellate Division courts have emphasized that standard agreements and policies are significant in showing that challenged actions are consumer-oriented") (citing cases); *Bernstein*, 2009 WL 1912463, at *6 ("Defendants have properly alleged that plaintiff's conduct was consumer-oriented.  Defendants set forth in their complaint that the policy issued by Lincoln Life was a standard-form policy sold by Lincoln Life to many consumers."); *Phoenix Life Ins. Co. v. The Irwin Levinson Insurance Trust II*, No. 600985/2008 at 16-17 (N.Y. Sup. Ct. Feb. 19, 2009) ("*Levinson*") ("Thus, the allegations that the forms making up [Phoenix's] insurance policy are standard and regularly used by plaintiff are sufficient to support the allegation that plaintiff's actions are consumer-oriented").

Additionally, New York cases find consumer-oriented conduct when a scheme has been widely marketed to many consumers. *See, e.g.*, *Wilner*, 71 A.D.3d at 163-64 ("where the conduct being complained of . . . 'involve[s] an extensive marketing scheme that ha[s] a broader impact on consumers at large . . . courts will permit a cause of action pursuant to General Business Law § 349"); *Gaidon v Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999). Finally, New York

courts find consumer-oriented conduct when, as here, conduct is alleged that affects consumers and potential consumers other than the parties to the case. *See, e.g.*, *Riordan*, 977 F.2d at 53 (at trial, "the Riordans presented ample evidence to prove that Nationwide engaged in similar deceptive practices against other policyholders, thus satisfying the GBL § 349 requirement that the conduct be recurring or have ramifications for the general public"); *Bernstein*, 2009 WL 1912463, at *6 (the "consumer-oriented" requirement is "met by proof that the acts or practices have a broader impact on the consumer at large in that they are directed to consumers or *potentially* affect similarly situated consumers") (emphasis in the original).

Despite the fact that plaintiffs' GBL claim is virtually identical to the claim in *Beller*, Phoenix nevertheless advances a series of arguments that this Court should treat them completely differently. Each argument is unsupported by the weight of New York precedent.

   a.   **Plaintiffs' GBL § 349 claim does not fail as a matter of law because of the face value of the policies at issue**

First, there is certainly no dollar limitation in the plain language of the statute, as the Second Circuit observed in *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47 (2d Cir. 1992). In that case, the Court affirmed a trial court judgment following a jury trial, which resulted in an award of well over $500,000 in damages and attorney's fees arising from a claim under one homeowners insurance policy. *Id.* at 48. On appeal, Nationwide attempted the very same "little guy" and "modest amount" arguments that Phoenix makes in this case, contending that GBL § 349 "is meant to cover the deceptive actions of retail operations 'or the type of conduct generally prosecutable in small claims court.'" *Id.* at 52. The Second Circuit squarely rejected these arguments, writing that "the language of the statute places no such limitations on the citizen suit provision of subsection (h) [of GBL § 349]. Given the statutory intent to protect consumers, . . . *we see no reason to limit the application of the statute to small claims when consumers at all levels are subject to deceptive acts and practices*." *Id.* (internal citation omitted) (emphasis added); *see also Bernstein*, 2009 WL 1912468, at *7 (holding that the

Trustee and investor "have properly pleaded a cause of action under GBL § 349" in a case involving a $20 million life insurance policy).

Furthermore, while the policies held by the named plaintiffs have substantial face value, nothing in the Complaint suggests that all of the PAUL policies at issue have similar face values. This case involves hundreds of other PAUL policies with different, and presumably lower, face values. Compl. at ¶7. Without discovery, it is impossible to know the range of those values, but it is clear that Phoenix's conduct is directed at all policies that, in Phoenix's opinion, lack "sufficient policy value."  To the extent that the face value of the subject policies is relevant at all—which it is not—dismissal is premature; Phoenix would bear the burden on summary judgment to establish this supposed fact (that appears nowhere in the Complaint). *See Lloyd's*, 432 F. Supp. 2d at 333.

<b>b.    Phoenix's assertion that this case does not involve "ordinary consumer transactions" fails</b>

Phoenix's contention that plaintiffs' claim does not involve "ordinary consumer transactions" is similarly without merit. This Court has observed that "[t]he leading case on GBL § 349 is *Oswego Laborers' v. Marine Midland Bank*."  *Buyers & Renters United to Save Harlem v. Pinnacle Group N.Y. LLC*, 757 F. Supp. 2d 499, 512 (S.D.N.Y. 2008) (McMahon, J.). Plaintiffs' claim in this case falls squarely within the type of GBL § 349 claim recognized and approved of by the New York Court of Appeals in *Oswego*, in which the Court ruled that defendants should be denied summary judgment on a GBL § 349 claim.

In *Oswego*, two union funds initiated an action against a bank arising from the revelation that savings accounts opened for the funds were not paying interest according to the standard terms initially provided to the funds. *Oswego*, 85 N.Y.2d at 23-24. The funds asserted a single claim, for deceptive practices under GBL § 349. This type of fact pattern, involving large, sophisticated parties on both sides, was "unlike any that had gone before" in terms of a court applying GBL § 349, *Teller v. Bill Hayes, Ltd.*, 213 A.D.2d 141, 147 (N.Y. App. Div. 1995), and lay somewhere between the traditional "modest transactions" often associated with GBL § 349

claims, and "large, private, single-shot contractual transactions" that are not properly addressed by such claims. *Id.*

*Oswego* approved of the GBL § 349 claim in that case for reasons directly applicable to the current case:

> The record indicates that defendant Bank dealt with plaintiffs' representative as any customer entering the bank to open a savings account, furnishing the Funds with standard documents presented to customers upon the opening of accounts. The account openings were not unique to these two parties, nor were they private in nature or a 'single-shot transaction." Thus, plaintiffs have satisfied the threshold test in that the acts they complain of are consumer-oriented in the sense that they potentially affect similarly situated customers.

*Oswego*, 85 N.Y.2d at 26-27.

*Oswego* is directly on point. As discussed further below, the Complaint alleges that the PAUL policies at issue in this case were standard form policies no different from those marketed, offered, and sold to other, similarly situated consumers (*e.g.*, Compl. ¶¶ 2, 7, 19-20, 25, 59-60). The issuance of these standard policies was not unique to the plaintiffs, nor were they a "single-shot transaction." The Complaint even goes a step further than *Oswego* in that it specifically alleges that Phoenix's cost of insurance increases affected thousands of other policies and policyholders; no comparable allegation is mentioned in *Oswego*.

The cases upon which Phoenix relies are off-base. Phoenix tries to conflate this case with disputes between large companies over complex, one-off, individualized transactions. For example, *Exxonmobil Inter-America, Inc.l v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443 (S.D.N.Y. 2004), is inapposite. The GBL claim in that case was dismissed for two reasons, none of which apply here: (1) the contract at issue was highly customized, unlike the standard form policies alleged in the Complaint, and (2) Exxon is a huge company and clearly "not the type of consumer § 349 was intended to protect." *Id.* at 449-50. The allegations in the Complaint regarding the plaintiffs (Compl. ¶¶ 12,-13) provide absolutely no support for the idea that they are huge entities like Exxon. Indeed, *Exxonmobil* shows exactly why GBL § 349 applies in this case: "§ 349 liability attaches primarily where a party's misrepresentations are boilerplate and

have the potential to be repeated in order to deceive numerous similarly situated buyers." *Exxonmobil*, 328 F. Supp. 2d at 449.  This aptly describes the misrepresentations alleged in the standard form PAUL policies and widely disseminated marketing materials alleged in the Complaint.[4]

        **c.**        **Phoenix's arguments regarding the purported sophistication of the parties fail**

Phoenix next argues that the named plaintiffs in this case are sophisticated parties, and therefore that they do not deserve protection under § 349. Motion at 17-18. Both propositions are wrong.

As stated above, there are no allegations in the Complaint about the sophistication of the plaintiffs. Phoenix attempts to introduce, for their truth, website pages, documents and contentions about the plaintiffs to "establish" facts about their business and sophistication. Motion at 7-8, 17. Of course, this is wholly improper on a motion to dismiss; except for certain matters of which judicial notice may be taken under Federal Rule of Evidence 201, "[i]n considering a motion to dismiss for failure to state a claim under [Rule] 12(b)(6), a district court must limit itself to fact stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 199). The Court may not take judicial notice of Phoenix's mere assertions as to the relative "sophistication" of the plaintiffs, which is a matter completely outside the Complaint

---

[4] Phoenix's other authorities are similarly unhelpful.  *Continental Casualty Co.* is also a case between two large companies in which the Court noted that the conduct alleged did not "affect[ ] the consuming public at large."  *Continental Cas. Co. v. Nationwide Indem. Co.*, 16 A.D.3d 353, 354 (N.Y. App. Div. 2005). *Eaves* is another case about a private, one-off individualized contract between two business entities, just like Exxonmobil.  *Eaves* dealt with commodities "available only to businesses" and "marketed exclusively to small businesses and their owners, rather than consumers at large," *Eaves v. Designs for Finance, Inc.*, 785 F. Supp. 2d 229, 265 (S.D.N.Y. 2011), unlike the generally available individual life insurance policies in this case. *New York University* also involved large parties, as well as a complex, non-standard policy that was "tailored to meet the purchaser's wishes and requirements."  *New York Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 321 (N.Y. 1995). *Teller* similarly involves a private one-shot action, and was decided on a motion for summary judgment. *Teller v. Bill Hayes, Ltd.*, 172 A.D. 2d 604, 605 (N.Y. App. Div. 1991).

and subject to fact discovery. Accordingly, plaintiffs' object to Phoenix's introduction of website pages and other documents outside the Complaint; such "evidence" is not properly subject to judicial notice.

Furthermore, even if one assumes a certain level of sophistication of the plaintiff trustees in this case, this would not lead to dismissal of their GBL claim. First, sophistication of the parties is only one factor to consider in a GBL analysis, and it is not dispositive. *See Lloyd's*, 432 F. Supp. 2d at 332 (describing factors relevant in the consumer-orientation analysis, including sophistication of the parties); *Bernstein*, 2009 WL 1912468, at *6 ("the reasonable consumer does not mean the least sophisticated consumer"); *New York v. Feldman*, 210 F. Supp. 294, 301 (S.D.N.Y. 2002) (observing that the "consumer-oriented activity" element "has been construed liberally" and the critical question is "whether the matter affects the public interest in New York, *not whether the suit is brought by a consumer*") (emphasis added).  Indeed, even "commercial entities are not *per se* excluded from bringing an action under § 349." *Exxonmobil*, 328 F. Supp. 2d at 449; *Lloyd's*, 432 F. Supp. 2d at 333.

Second, there is no allegation in the Complaint that the trustees were substantively involved in the acquisition of the policies. Insurance trusts are frequently directed trusts, with attorneys or large financial institutions appointed as trustee by the insured. The trustee simply signs documents on behalf of the trust, but it is <u>the insured</u> who applies for and procures the insurance and designates the legal owner and beneficiary of the policy. There is no reason to believe differently here. Under Phoenix's faulty logic, no insurance trust could ever maintain a GBL claim because such trusts are almost always nominally in the name of an attorney or large financial institution who is supposedly "sophisticated." That is not the law.

### d.   <u>Phoenix's contention that the policies are not form policies is incorrect</u>

Phoenix's contention that the subject policies are not form policies is simply false. As an initial matter, Phoenix's contentions on this issue go outside the scope of the pleadings. The Complaint alleges that "[t]he policies at issue are all form policies, and insureds are not permitted to negotiate different terms." Compl. at ¶ 25. On a motion to dismiss, factual

allegations such as this are presumed true and cannot be contested. *Lloyd's*, 432 F. Supp. 2d at 333 ("At the motion to dismiss stage, the Court must accept as true [the] characterization of the agreement as a 'standard, garden-variety fire insurance policy.'").[5]

To the extent Phoenix is suggesting that the policies are not form policies because insureds can select different policy riders, this argument is meritless. The policy riders are just different forms attached to other forms. None of the specific terms or language are negotiable. Moreover, none of the riders have anything to do with the COI increases at issue in this litigation. Phoenix's argument that the ability to select different riders makes the PAUL policies individualized transactions is like a car rental company asserting that its rental agreements are not form contracts because a renter can choose between different cars, different types of insurance, different fuel refilling options, and can add additional drivers. This argument (even if it could be made on the pleadings) has no merit.

### e.   New York courts allow GBL § 349 claims to proceed in cases involving allegations relating to the life settlements market

Phoenix further argues that courts have declined to apply GBL § 349 to disputes over life settlements. As an initial matter, this argument is irrelevant. This case is about insurance policies—not life settlement contracts. The only relevance of the life settlement market to this case is that, based on statements made by Phoenix, the COI increases appear to have been generally targeted at life settlement investors. But there is no evidence (and no allegations) that *only* life settlements were impacted by the COI increases; in fact, the Complaint alleges the exact opposite. Compl. at ¶ 7. The principal issues in this case are (a) how Phoenix marketed the policies and the terms of those policies, and (b) whether Phoenix's subsequent COI increases

---

[5] In any event, plaintiffs' allegation are unquestionably true. In discovery, plaintiffs have requested copies of all of the underlying policies. Phoenix responded that it would produce "specimen forms." *See* Declaration of Ryan Kirkpatrick. at ¶ 5, Ex. C (stating that Phoenix will provide copies of "specimen forms for the" policies). In meet and confer discussions on this issue, Phoenix's counsel represented that these were form policies and that there were only "two or three" forms at issue, making production of the individual policies unnecessary. *Id.*at ¶ 5Plaintiffs request leave to amend the complaint to add these allegation if for any reason the Court is persuaded by Phoenix's heavily-disputed "not a form policy" arguments.

were lawful. Whether the underlying policies were sold after issuance once, multiple times, or never has no bearing on the validity of plaintiffs' claims.

Furthermore, numerous New York courts have sustained GBL § 349 claims on a motion to dismiss in cases involving allegations relating to the life settlements market. *See, e.g.*, *Bernstein*, 2009 WL 1912468, at \*7; *Berck v. Principal Life Ins. Co.*, No. 150305/2010 (N.Y. Sup. Ct. Mar. 7, 2011) (upholding GBL § 349 claim brought by against insurance brokerage in a case involving a $5 million policy alleged to have been sold into the life settlements market); *Levinson*, No. 600985/2008 at 16-17 (upholding GBL § 349 claim brought by defendants against plaintiff insurer "at this pre-discovery stage" in a similar, $5 million case).

Jonathan S. Berck, in his capacity as a trustee of different insurance trust, was a party in both the *Berck* and *Levinson* cases. Neither court concluded that GBL § 349 did not apply because of Berck's involvement as trustee, or because of the life settlement allegations in those cases. The *Levinson* case is particularly notable. In that case, Phoenix brought suit against Berck, in his capacity as trustee of the Irwin Levinson Life Insurance Trust II, in an effort to avoid paying the benefits on a policy. While the Court acknowledged the "sophistication of the parties" arguments raised by Phoenix, it nevertheless declined to dismiss the GBL § 349 claim at that stage in the litigation.

Phoenix leans heavily on two cases in making its broad argument that the life settlements market as a whole is ill-suited to GBL § 349 claims: *Kramer v. Lockwood Pension Servs., Inc.*, 653 F. Supp. 2d 354 (S.D.N.Y. 2009), and *Wells Fargo Bank Northwest v. Am. Gen. Life Ins. Co.*, No. 10-1327, 2011 WL 1899338 (D.N.J. May 19, 2011). Neither of these two cases supports Phoenix's position.

<u>*Kramer.*</u>  *Kramer* involved several insurance companies' refusal to pay death benefits on a single insured, Arthur Levin, of the law firm of Kramer Levin Naftalis & Frankel LLP. In the 104-page *Kramer* ruling, the district court (Judge Batts) devoted only a few paragraphs to a GBL analysis.  *Kramer*, 653 F. Supp. 2d at 384-85. A different issue took center stage: Judge Batts' doubt as to whether the specific insurance/life settlement transactions at issue were legal under

the New York insurable interest rule.[6] In dismissing the GBL claim, Judge Batts reasoned that there were legitimate questions about the validity of the specific underlying policies and that "the allegation here is not that the insurance companies have failed to pay benefits in all cases, but rather, have resisted making payments on policies which, arguably, violated New York Insurance Laws." *Id.* at 385. Unlike *Kramer*, this case does not involve an insurance company refusing to pay death benefits on select policies that arguably violate New York Insurance Laws. It involves an unlawful COI rate increase imposed on thousands of policies—whether part of a life settlement or not—in violation of Phoenix's form contracts and other representations.

<u>Wells Fargo.</u>   *Wells Fargo*, an unpublished opinion by a New Jersey magistrate judge purporting to interpret New York statutory and case law, is neither binding nor persuasive here. In declining to allow amendment of the complaint to add a GBL § 349 claim, the magistrate judge (invoking *Kramer*) relied entirely on a finding that the parties—both corporate entities— are not "the types of parties the statute was designed to protect. As pled in the proposed amended pleading, both parties are experienced and sophisticated players in the life settlement industry, of relatively equal bargaining power, and involved in a complex commercial undertaking." *Wells Fargo*, 2011 WL 1899338, at *7.

Phoenix's reliance on *Wells Fargo* is unavailing. Here, the Complaint does not allege that the plaintiffs possessed "equal bargaining power" with Phoenix, but on the contrary that the policies they purchased were contracts of adhesion, and the plaintiffs were not permitted to negotiate any of the terms. Compl. at ¶¶ 25, 62. The Complaint also does not allege that these life insurance policies constituted "complex commercial undertakings"; they are standard universal life insurance policies, and the question of their complexity is a matter for fact

---

[6] Judge Batts certified the insurable interest question for interlocutory appeal to the Second Circuit. *Id.* at 401. After further certification to the New York Court of Appeals, that Court definitively ruled that the transactions alleged in *Kramer*, in which the insured allegedly took out life insurance policies for the purpose of transferring them to investors after issuance, were perfectly legal. *Kramer v. Phoenix Life Ins. Co.*, 15 N.Y.3d 539 (N.Y. 2010). Phoenix and the other insurers thereafter abandoned their challenges and paid the death benefits.

discovery. Finally, as stated above, the specific allegations of the Complaint, referring to the many hundreds of policies and policyholders affected by Phoenix's actions without regard for whether they were involved in a life settlement transaction, distinguish this case from the GBL claim in *Wells Fargo*.

      **3.**      <u>**The Complaint adequately alleges injury as a result of Phoenix's deceptive conduct**</u>

Finally, the Complaint adequately alleges that plaintiffs were injured as a result of Phoenix's deceptive conduct:

- Policyholders must either (a) pay exorbitant premiums that would no longer justify the ultimate death benefits, or (b) lapse or surrender their policies and forfeit the premiums also paid (Compl. ¶¶ 8, 30)

- Policyholders that choose to increase their accumulated policy value in order to avoid the cost of insurance increases earn lower rates of return as other policies of the same class (Compl. ¶ 31)

- The announcement of the second cost of insurance increase has damaged the value of the Moss Policy and other policies subject to this increase (Compl. ¶ 34)

Phoenix's only argument with regard to the injury element is that plaintiffs have failed to allege an injury independent of the breach of contract.  Mot. at 21-23.  This contention is contradicted by the allegations in the Complaint. The deceptive acts were Phoenix's misrepresentations in its marketing and sale of PAUL policies, as well as the announcement of its illegal cost of insurance increases.  Just as with the breach of the implied covenant of good faith and fair dealing claim, these acts are distinct from Phoenix's breach of the express provisions of the contract, and give rise to different injuries. Indeed, the deceptive conduct impacted the value of the policies both at issuance and at the time the COI increase was <u>announced</u>. That mere announcement—as opposed to the actual implementation—immediately damaged the resale value of the policies and forced consumers to choose whether to pay higher premiums in the future or lapse their policies. As alleged in the Complaint, the mere announcement of the increase did induce the lapse of policies. Pursuant to the GBL claim,

plaintiffs also seek injunctive and declaratory relief prohibiting the deceptive marketing and other conduct at issue, as well as attorneys' fees, which would ordinarily be unavailable in a breach of contract action.

The precedents that Phoenix cites are far afield from this case. In *Sokoloff*, a health club member who sued her gym simply had no injury whatsoever. She complained about the nonrefundable initiation fee and the limits on the defendant health club's liability in the membership agreement, but she had continuously used the gym's services, paid her membership fees, and never sought to cancel her membership. In those circumstances, it made sense for the court to conclude that the plaintiff "impermissibly set[] forth deception as both act and injury." *Sokoloff v. Town Sports Int'l*, 6 A.D.3d 185, 185-86 (N.Y. App. Div. 2004).

*Spagnola*, while an insurance case, is likewise inapposite. In that case, after years of paying for coverage under a homeowners policy, the policyholder complained that he had discovered his premiums increased faster than he expected. *Spagnola v. Chubb Corp.*, 574 F.3d 64, 66-67 (2d Cir. 2009). The Court asserted that under GBL § 349, the "loss must be independent of the loss caused by the alleged breach of contract," and noted that "Spagnola does not claim that he did not receive adequate insurance or that he did not contract for the coverage he received." *Id.* at 74. This analysis simply does not apply to the acts and injuries alleged in this case. As explained above, the deceptive acts include misleading marketing and policy language—not the simple breach of contract—and the consumer injuries include forced lapses, loss of policy value, and imposition of decreased rates of return.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, plaintiffs respectfully request that Phoenix's partial motion to dismiss be denied in its entirety.


Dated: February 9, 2012

                                        \_\_/s/ Steven G. Sklaver_____
                                        Jacob W. Buchdahl
                                        Shawn J. Rabin
                                        Rebecca S. Tinio

SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, NY  10022
Tel.:    212-336-8330
Fax:    212-336-8340
jbuchdahl@susmangodfrey.com
rtinio@susmangodfrey.com
srabin@susmangodfrey.com

Steven G. Sklaver (*pro hac vice*)
Ryan C. Kirkpatrick (*pro hac vice*)
SUSMAN GODFREY LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Tel:    310-789-3100
Fax:    310-789-3150
ssklaver@susmangodfrey.com
rkirkpatrick@susmangodfrey.com

*Attorneys for Plaintiffs and Classes*