# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARTIN FLEISHER, AS TRUSTEE OF THE MICHAEL MOSS IRREVOCABLE LIFE INSURANCE TRUST II and JONATHAN BERCK, AS TRUSTEE OF THE JOHN L. LOEB, JR. INSURANCE TRUST, on behalf of themselves and all others similarly situated,<br><br>             Plaintiff,<br><br>vs.<br><br>PHOENIX LIFE INSURANCE COMPANY,<br><br>             Defendant. | Civil Action No. 11-cv-8405(CM)<br><br><br>**DECLARATION OF RYAN C. KIRKPATRICK IN SUPPORT OF OPPOSITION TO MOTION FOR PARTIAL DISMISSAL OF CLASS ACTION COMPLAINT** |

I, Ryan C. Kirkpatrick, declare as follows:

1.    I am a partner with the law firm of Susman Godfrey L.L.P., and counsel for plaintiffs in the above-captioned action.  I am a member of good standing of the bar of the state of California and have been admitted *pro hac vice* in the above-captioned matter.  I am over the age of eighteen, attest to the following matters from personal knowledge, and if called as a witness, could and competently testify to the matters from personal knowledge, and if called as a witness, could competently testify to the matters set forth herein.

2.    Pursuant to the Court's Individual Rules of Practice, attached as Exhibit A is a true and correct copy of the unpublished decision in *Phoenix Life Ins. Co. v. The Irwin Levinson Insurance Trust II*, No. 600985/2008 (N.Y. Sup. Ct. Feb. 19, 2009).

3.    Pursuant to the Court's Individual Rules of Practice, attached as Exhibit B is a true and correct copy of the unpublished decision in *Berck v. Principal Life Ins. Co.*, No. 150305/2010 (N.Y. Sup. Ct. Mar. 7, 2011).

4.      Attached as Exhibit C is a true and correct copy of Phoenix's response to Request Number 4 of Plaintiffs' First Set of Requests for Production of Documents, in which Phoenix states that it will produce "specimen policy forms for New York policies subject to the first COI increase."

5.      In meet and confer sessions with Phoenix's counsel regarding the production of the subject policies, Phoenix's counsel has represented that the policies are all form policies and that there are only "two or three" different forms at issue in this case.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Signed this 9th day of February, 2012, in Los Angeles, California.

_____

Ryan C. Kirkpatrick

# EXHIBIT A

**SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY**

PRESENT: _____**CAROL EDMEAD**_____          PART _35_
                                    *Justice*

*Phoenix Life Ins. Co.*

INDEX NO. _600985/2008_

MOTION DATE _10/27/08_

MOTION SEQ. NO. _001_

*Irwin Levinson Ins. Trust*

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

| | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | |
| Answering Affidavits — Exhibits _____ | |
| Replying Affidavits _____ | |

**Cross-Motion:**   ☒ **Yes**   ☐ **No**

Upon the foregoing papers, it is ordered that this motion

In accordance with the accompanying Memorandum Decision, it is hereby

ORDERED that the branch of plaintiff's motion to dismiss defendants' first counterclaim for failure to state a cause of action pursuant to CPLR 3211(a)(7), is granted, and defendants' first counterclaim is hereby dismissed; and it is further

ORDERED that the branch of plaintiff's motion to dismiss defendants' third counterclaim pursuant to CPLR 3211(a)(7), is denied; and it is further

ORDERED that defendants' cross-motion pursuant to CPLR 3211(a)(7) and 2215 to dismiss the complaint is denied; and it is further

ORDERED that the parties appear for a preliminary conference in Part 35 on March 31, 2009, 2:15 p.m.; and it is further

ORDERED that plaintiff serve a copy of this order with notice of entry upon all parties within 20 days of entry.

This constitutes the decision and order of the Court.

Dated: _2/19/2009_

**CAROL EDMEAD**                    *J.S.C.*

**Check one:**   ☐ **FINAL DISPOSITION**   ☒ **NON-FINAL DISPOSITION**

**Check if appropriate:**   ☐ **DO NOT POST**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: PART 35
--------------------------------------------------------------X
PHOENIX LIFE INSURANCE COMPANY,

                                        Plaintiff,

                                                                    Index No.: 600985/08
                -v-

THE IRWIN LEVINSON INSURANCE TRUST II,                              Sequence #001
and JONATHAN S. BERCK, as
SUCCESSOR TRUSTEE,

                                        Defendants.
--------------------------------------------------------------X

                        MEMORANDUM DECISION

        In this action to rescind a certain life insurance policy, plaintiff Phoenix Life Insurance

Company ("Phoenix" or "plaintiff") moves pursuant to CPLR 3211 to dismiss the first and third

counterclaims asserted by defendants The Irwin Levinson Insurance Trust II (the "Trust") and

Jonathan S. Berck, as Successor Trustee (the "Trustee") (collectively, the "defendants") on the

ground that such counterclaims fail to state a cause of action.  In response, defendants cross-

move pursuant to CPLR 3211(a)(7) and 2215 to dismiss the complaint.

        Background[1]

        This case arises from plaintiff's refusal to pay the death benefit of an insurance policy that

was procured by the Trust as part of what Phoenix deems a "SOLI" (stranger-originated life

insurance) arrangement (also known as "disposable policies" or "investor-initiated life

insurance").  In such an arrangement, a policy is purchased, not with a view of the insured paying

premiums for the benefit of the insured's family, but with a view toward reselling the policy to an

"outside investor" in a secondary market for life insurance.  The outside investor pays the insured

---

[1] The Background is largely taken from the complaint and defendant's memorandum of law.

in order to make a "wager" on the duration of the insured's life.

The entire secondary market for life insurance policies (sometimes called the "life settlement" market) is a multibillion dollar financial industry that provides life insurance policyholders who do not wish to continue maintaining their policies alternatives besides either allowing their policy to lapse or selling it back to the insurer for its cash surrender value, but also involves parties who seek to invest in an "insured's imminent demise."

Under New York Insurance Law,[2] as well as the long-standing public policy recognized by New York courts, it is illegal for anyone to procure, or cause to be procured, a life insurance policy on an insured for the benefit of an outside investor who does not have an insurable interest in the insured.[3]  To conceal the real policyholder's lack of insurable interest from the insurer, as well as to induce the insured's application, investors establish an irrevocable trust solely to hold the target insurance policy. The trust is established around the time that the insured submits his application, and is named as the owner and beneficiary of the policy, with the beneficiary being

---

[2] Section 3205(b)(l) of the New York Insurance Law provides:

Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own  .
person for the benefit of any person, firm, association or corporation. Nothing herein shall be deemed to
prohibit the immediate transfer or assignment of a contract so procured or effectuated.

Section 3205(b)(2) of the New York Insurance Law provides:

No person shall procure or cause to be procured, directly or by assignment or otherwise any contract of
insurance upon the person of another unless the benefits under such contract are payable to the person
insured or his personal representatives, or to a person having, at the time when such contract is made, an
insurable interest in the person insured.

[3] Section 3205(a)(1) of the New York Insurance Law defines "insurable interest" as follows:
(A) in the case of persons closely related by blood or by law, a substantial interest engendered by love and
affection;
(B) in the case of other persons, a lawful and substantial economic interest in the continued life, health or
bodily safety of the person insured, as distinguished from an interest which would arise only by, or would
be enhanced in value by, the death, disablement or injury of the insured.

2

entitled to the death benefits payable under the policy.  The beneficiary of the trust is typically

disclosed to the insurer and designated as the insured or a family member.  Once the policy is

issued, the insured transfers the beneficial interest in the policy to an outside investor in

exchange for a significant lump sum payment.

In 2006 alone, more than $12 billion in life insurance policies (measured by face value)

were sold to purchasers in the secondary market such as Goldman Sachs & Co., Credit Suisse,

and UBS AG.  Phoenix itself created its own separate division, Phoenix Life Solutions, to

participate in the life settlement market.

It is uncontested that in November 2005, Phoenix issued to the Trust a life insurance

policy with a total death benefit of $5,000,000, on the life of Irwin Levinson (the "Policy").  The

initial beneficiary of the Trust was Dede Levinson, Levinson's wife.  On or about July 10, 2006,

Berck was named Trustee of the Trust.

It is undisputed that (I) the insured, Levinson, died on January 24, 2007, while the Policy

was in force, within the contestability period of the Policy; (2) defendants submitted a claim for

$5,000,000 in death benefits; and (3) upon investigation of the claim, Phoenix elected to tender

the return of premiums to defendants and rescind the Policy.

Pleadings

Phoenix commenced this action against defendants for rescission of the Policy, claiming

that defendants are not entitled to recover under the Policy because the Policy application

contained a medical misrepresentation (first cause of action) and is void because the Policy

lacked an insurable interest (second and third causes of action).

In their Answer, defendants deny these allegations and insist that they are entitled to death

3

benefits under the Policy.  Accordingly, defendants have asserted a counterclaim for a declaration that "Phoenix must pay the Trust the benefits owed under the Policy and may not rescind the Policy or refuse to pay the benefits due under the Policy" (the "first counterclaim").  Defendants also asserted a second counterclaim for breach of contract seeking payment of those death benefits, plus interest.  Defendants' breach of contract claim seeks a declaration that "Phoenix breached the Policy" and an award of damages in an amount not less than the "face value of the million, plus interest" from defendants.  Defendants' third counterclaim alleges a violation of Section 349 of the New York General Business Law ("GBL 349").

Plaintiff's Motion

Defendants' first counterclaim for a declaratory judgment is entirely redundant of defendants' second counterclaim for breach of contract.  The pleadings acknowledge a dispute under the Policy that has already ripened into litigation.  Although defendants initially claim they "have no adequate remedy at law," they also allege that there is an enforceable contract between the parties which entitles them to money damages.  Further, there is no relief sought in the declaratory judgment claim beyond that which is sought in the breach of contract claim.  Because the breach of contract claim necessarily includes a request for a determination of the parties' rights and obligations under the Policy and posits the availability of money damages, a declaration of defendants' right to the Policy proceeds is unnecessary.  Therefore, the first counterclaim should be dismissed.

The third counterclaim should also be dismissed.  First, defendants failed to allege facts sufficient to show that the challenged conduct has a broader impact on consumers at large, *i.e.*, that it potentially affects similarly situated consumers in New York.  Defendants' allegations that

4

(1) the Policy at issue is a standard form policy and (2) "on information and belief" Phoenix has

not paid the proceeds of this Policy and "other similar policies," fall short of the standard

necessary to state a claim under GBL 349. The notion that plaintiff's use of a standard form -

which is regulated and approved by the New York Insurance Department under Section 3201

(a)(1) of the New York Insurance Law - supports an inference that it is engaged in deceptive acts

or practices affecting a broad swath of innocent consumers at large is nonsense. Further, every

insurer, including Phoenix, has a right to rescind policies and deny claims. In any event,

according to the affidavit of plaintiff's Vice-President, Thomas J. McCabe, Jr., of the 23,702

claims Phoenix has received from January 1, 2006 through October 1, 2008, except for the six

cases of suicide received during the policy's contestable period, Phoenix has denied a claim or

commenced an action to rescind the policy in five cases.

      Second, a dispute between a sophisticated trust and an insurer involving a $5 million life

insurance policy does not implicate the modest consumer fraud transaction that GBL 349 was

intended to address. The alleged improper practice does not have "a broader impact on

consumers at large" or affect the consumers with whom the legislature was concerned, i.e., those

involved in "modest" consumer transactions. The subject insurance policy was procured with the

advice and assistance of knowledgeable and sophisticated parties, and the $5,000,000 at issue

indicates that this dispute is outside the scope of GBL 349. Plaintiff points out that to procure

the Policy, Levinson and his insurance broker, Steven Lockwood ("Lockwood"), established the

Trust, which required planning with respect to the assets to be held by the Trust, a determination

of the rights and duties of the trustee and beneficiaries, and an analysis of the advantages of

proceeding with the transaction in this form. The original trustee was Hudson United Bank and

the current trustee, Berck, is an attorney. Since GBL 349 does not protect sophisticated parties to a multimillion dollar private contract, the GBL 349 claim must be dismissed.

Third, defendants have not alleged facts from which one might infer a deceptive practice. Defendants' vague allegation plaintiff misrepresented that "claims for payment under such policies would be investigated and processed in good faith and in a timely manner," is insufficient. Defendants do not seek or demand an investigation of their claim, and allege no facts regarding the quality and timeliness of Phoenix's investigation that would indicate that their claim was wrongly denied or raise an inference of a deceptive act or practice. Further, defendants' allegation that plaintiff misrepresented that "benefits would be paid in accordance with the terms of such policies," amounts to nothing more than a restatement of defendants' breach of contract claim, *i.e.*, that Phoenix failed to pay pursuant to its promise to do so. It is undisputed that the Policy allows Phoenix to rescind if it discovers material misrepresentations in the application, and New York law declares that policies lacking an insurable interest are void. Thus, a reasonable consumer could not have been misled into believing that Phoenix could not contest the Policy for the reasons stated in its Complaint. If seeking rescission of a policy on medical misrepresentation or other legally permissible grounds constitutes a deceptive practice, litigation of GBL 349 claims in response to coverage denials will become routine.

Therefore, defendants' first and third counterclaims must be dismissed.

<u>Opposition</u>

In opposition, defendants assert that the facts alleged in their pleading must be deemed true, and that CPLR § 3013 only requires that statements in a pleading "be sufficiently particular" to provide notice of the transactions intended to be proved and the material elements of each

6

defense.  Defendants are not required to plead "facts" in support of their counterclaims.

Therefore, defendants have pled a cause of action under GBL 349 as follows: (1) Phoenix's

conduct was consumer-oriented because (a) the Policy is "a standard form policy sold by Phoenix

to other consumers," and (b) Phoenix has "likewise" refused payment on other similar, standard

form policies allegedly purchased in the secondary market for life insurance policies; (2) the

Policy was "misleading in a material respect" in light of the provision that Phoenix is obligated

to pay the proceeds of the Policy to the beneficiary upon receipt of proof that the death of

Levinson occurred while the Policy was in force.  The Trust was led to believe that its claim for

payment under the Policy would be investigated and processed in good faith and that benefits

would be paid pursuant to the terms of the Policy, when in fact "Phoenix has failed and refused

to do so" because of Phoenix's practices as to policies of this kind; and (3) defendants have been

injured as a result of Phoenix's failure to pay the Policy in the amount of at least $5 million, plus

interest and attorneys' fees.

Further, Phoenix's practice of not paying and/or seeking to rescind or void standard-issue

life insurance policies sold by Phoenix, that it believed were the subject of transactions in the

secondary market for life insurance policies constitutes "consumer-oriented" conduct.  Such

allegation addresses practices that "have a broad impact on consumers at large" and concern

something much more wide-ranging than the "[p]rivate contract disputes, unique to the parties."

Additionally, there are pleadings in other lawsuits where Phoenix or its affiliates have sought to

rescind or void one or more of their standard-form insurance policies that were subsequently sold

in the life settlement market (on the basis of allegations which mirror those set forth in Phoenix's

Complaint in this action), or in which Phoenix is defending a lawsuit brought by a policyowner

in the face of Phoenix's refusal to payout on a policy on the basis that the policy had been sold in the secondary market for life insurance. However, in the event defendants are required to plead additional facts in support of their GBL 349 claim, defendants seek leave to so replead.

Further GBL 349 is not limited to unsophisticated parties and to suits for just "modest" amounts, but expressly entitles "any" victim of a deceptive business practice to recover its "actual damages," regardless of the amount of those damages or the victim's alleged "sophistication." GBL 349 applies to virtually all economic activity, not just consumer-oriented activity of modest proportion. And, Phoenix's contentions regarding the "sophistication" of the decedent, Levinson, and/or Lockwood are patently irrelevant, because neither of those individuals is alleged by defendants (or Phoenix) to have been the purchaser of the Policy, and neither of them is a party to this action. Further, there is nothing in the record before the Court to establish to what extent any comparable degree of "sophistication" is possessed by defendant Berck, the Trustee of the Trust.

Defendants' GBL 349 claim also sufficiently identifies Phoenix's deceptive practice - representing to customers that policy benefits would be paid in accordance with policy terms while actually pursuing a practice of doing otherwise for policies it believes were the subject of secondary market transactions. Plaintiff's representation that it would pay benefits upon the death of the insured pursuant to the terms of the Policy, was made to all other consumers who purchased the same standard-issue policy. Also, Phoenix's alleged misrepresentation was misleading in a material respect, in that the Trust was led to believe that its claim for payment would be processed in good faith and that benefits would be paid, when in fact it was Phoenix's practice to withhold payment if it believed that the policy had been the subject of the secondary

8

life settlement market. Defendants' counterclaims allege that the Trust purchased the Policy in reliance on Phoenix's misleading representations, which the Trust surely would not have done had it known Phoenix had no intention of honoring the contractual payment obligations. Based on the above, defendants' GBL 349 counterclaim is not a mere restatement of the breach of contract claim, or a case where the deception is claimed to lie merely in the fact that one particular claim was denied by the insurer, as Phoenix claims.

Further, defendants' declaratory judgment counterclaim should not be dismissed. Whether defendants' remedies at law are sufficient to encompass everything that defendants would obtain from their declaratory counterclaim, is an insufficient basis upon which to dismiss a declaratory judgment claim. The elimination of the declaratory judgment claim at this stage in the proceeding will not promote any judicial efficiencies or narrow the scope of discovery. And, the logical conclusion of Phoenix's argument would be the dismissal of Phoenix's own recision claims, since the resolution of defendants' breach of contract claim will necessarily require resolution of Phoenix's claim for rescission or that the Policy was void from its inception, which is all the relief Phoenix seeks in this action.

If this Court determines that defendants' declaratory judgment claim should be dismissed on the grounds that all the issues it raises are already encompassed by defendants' breach-of-contract counterclaim for damages, then the Court should correspondingly also dismiss Phoenix's own complaint as well.

Plaintiff's Reply and Opposition to Cross-Motion

Even applying the CPLR's liberal pleading standards, defendants' allegations that the Policy was based on a standard form and that Phoenix denied defendants' claim do not bring that

9

claim denial within the ambit of GBL 349. Here, defendants' Answer fails to plead what the alleged practice consists of and how it affects consumers at large. Certainly, the defendants (and the investors on whose behalf they are acting) are not "consumers" within the meaning of GBL 349. Even if they were, they must show more than the existence of a claim dispute between Phoenix and themselves to satisfy the consumer-oriented conduct element. Defendants' sole allegation with respect to conduct that extends beyond the relationship between the parties - that Phoenix has "done likewise with respect to other similar policies" - could mean anything from Phoenix denies all claims involving standard-form policies, to Phoenix sometimes denies claims on policies using the same or similar standard form (which does not suggest a deceptive practice), to Phoenix denies claims involving medical misrepresentations and/or SOLI schemes (which is clearly not a deceptive practice). Thus, the Answer fails to describe any conduct that amounts to a deceptive practice that affects consumers at large.

Also, the four lawsuits relied upon by the defendants to demonstrate a deceptive practice fail to support their GBL claim. In three of the four cases that defendants cite, the insureds' claims were not denied. The fourth case demonstrates that the instant dispute really arises from highly sophisticated parties' attempts to wager on the lives of senior citizens, in violation of state law and public policy. In the fourth case, the estate of the deceased alleged that the deceased, with the assistance of Lockwood, procured life insurance coverage that he never intended to hold, that the policies lacked an insurable interest, and that the insurance scheme was engineered by Lockwood and assisted by Berck. Yet, defendants herein fail to explain how an effort to rescind an in-force policy involves any such misrepresentations. Given that the estate in the fourth case made detailed allegations concerning fraudulent wager schemes involving tens of millions of dollars in life insurance before Phoenix had decided whether to pay or deny the claims made therein, it is clear that Phoenix has been *responding* to multiple sophisticated frauds, and

10

certainly not making unfounded accusations in a campaign against legitimate life settlement transactions. The fourth case also shows that defendants are, and represent, sophisticated parties with respect to these transactions. Lockwood and Berck are experienced with multiple iterations of virtually identical trusts and transactions, as evidenced by their own pleadings in other lawsuits, and their sophistication is thus subject to judicial notice on this motion. Defendants are a trust and a trustee who have participated in multiple multimillion dollar life insurance transactions, and their very description of the alleged deceptive practice suggests that they are engaged in anything but typical consumer transactions under the protection of GBL 349.

Thus, allowing the defendants to replead would be futile. And, to hold otherwise would open the doors to every litigant who gripes about a transaction involving a standard form regardless of their admitted sophistication level and the high dollar value of the transaction at issue. On these facts, a contrary holding would also permit sophisticated fraudsters and gamblers to use GBL 349 as a sword to pursue their illicit SOLI profits, rather than as a shield to protect legitimate consumers. Having procured and managed millions of dollars of insurance held by life insurance trusts, Lockwood, Berck, and the investment entities who they represent are not entitled to the protections of GBL 349.

Phoenix also argues that defendants' general observation that an adequate remedy at law does not necessarily preclude a claim for declaratory relief is simply unresponsive to the specific holdings of caselaw that dismissal of a declaratory claim is appropriate in this case.

Further, defendants' cross-motion to dismiss Phoenix's complaint on the (supposedly reciprocal) theory that its counterclaim for breach of contract would fully resolve all the issues raised by Phoenix's complaint is frivolous. Phoenix has cited three cases showing that dismissal of defendants' declaratory claim is warranted when it is duplicative and/or derivative of the party's *own* breach of contract claim. Defendants have not cited a single case in support of the

11

novel proposition that Phoenix's complaint should be dismissed simply because defendants have asserted a breach of contract counterclaim. They cannot cite any such case because a paradigm use of a declaratory judgment claim is to resolve a genuine dispute without having to await an opposing party's breach of contract claim. Thus, defendants' cross-motion should be denied.

Analysis

In determining a motion to dismiss, the Court's role is ordinarily limited to determining whether the complaint states a cause of action (*Frank v DaimlerChrysler Corp.*, 292 AD2d 118, 741 NYS2d 9 [1st Dept 2002]). The standard on a motion to dismiss a pleading for failure to state a cause of action is not whether the party has artfully drafted the pleading, but whether deeming the pleading to allege whatever can be reasonably implied from its statements, a cause of action can be sustained (*see Stendig, Inc. v Thom Rock Realty Co.*, 163 AD2d 46 [1st Dept 1990]; *Leviton Manufacturing Co., Inc. v Blumberg*, 242 AD2d 205, 660 NYS2d 726 [1st Dept 1997] [on a motion for dismissal for failure to state a cause of action, the court must accept factual allegations as true]). When considering a motion to dismiss for failure to state a cause of action, the pleadings must be liberally construed (*see*, CPLR § 3026), and the court must "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit into any cognizable legal theory" (*Nonnon v City of New York*, 9 NY3d 825 [2007]; *Leon v Martinez*, 84 NY2d 83, 87-88, 614 NYS2d 972 [1994]).

On a motion to dismiss for failure to state a cause of action, where the parties have submitted evidentiary material, including affidavits, or where the bare legal conclusions and factual allegations are "flatly contradicted by documentary evidence" the pertinent issue is whether claimant has a cause of action, not whether one has been stated in the complaint (*see Guggenheimer v Ginzburg*, 43 NY2d 268, 275 [1977]; *R.H. Sanbar Projects, Inc. v Gruzen*

12

*Partnership*, 148 AD2d 316, 538 NYS2d 532 [1st Dept 1989]; *Biondi v Beekman Hill House Apt. Corp.*, 257 AD2d 76, 81, 692 NYS2d 304 [1st Dept 1999], *affd* 94 NY2d 659, 709 NYS2d 861 [2000]; *Kliebert v McKoan*, 228 AD2d 232, 643 NYS2d 114 [1st Dept], *lv denied* 89 NY2d 802, 653 NYS2d 279 [1996]).

First Counterclaim

The first counterclaim alleges that "there is now an actual controversy of a justiciable nature "regarding whether Phoenix must pay the benefits due the Trust under the Policy, and whether Phoenix had any basis to seek to rescind the Policy or refuse to pay benefits due under the Policy." (Answer, ¶119) Defendants seek a declaration that "Phoenix must pay the Trust the benefits owed under the Policy . . ." (Answer ¶121).  The second counterclaim for breach of contract alleges that "Phoenix has breached the Policy by failing and refusing to pay the benefits due under the Policy to the Trust" and that defendants "are entitled to a declaration that Phoenix breached the Policy and an award of damages in an amount not less than the face value of the Policy . . . ." (¶¶ 129, 131).

Declaratory relief is unnecessary and inappropriate when the plaintiff already has an adequate alternative remedy in the form of a claim for breach of contract (*Apple Records, Inc. v Capitol Records. Inc.*, 137 AD2d 50, 54, 529 NYS2d 279, 281 [1st Dept 1988]).  Here, the first counterclaim for a declaratory judgment is essentially duplicative of the defendants' breach of contract counterclaim, and seeks a declaration of the same rights and obligations as will be determined under the breach of contract claim.  Thus, dismissal is appropriate under the circumstances (*see Josephs v Bank of New York*, 302 AD2d 318, 319 [1st Dept 2003] [[d]ismissal of the declaratory judgment action was also warranted by the circumstance that it was duplicative of plaintiff's [other] action, [as] the two actions involving substantially the same parties, issues and underlying facts"]).

13

Defendants' reliance on *Seneca Ins. Co. v Lincolnshire Mgmt., Inc.* (269 AD2d 274, 275, 703 NYS2d 127, 129 [1st Dept 2000]) for the proposition that the existence of an adequate remedy at law does not require that the Supreme Court decline to render declaratory judgment is misplaced. In *Seneca*, the alternative remedy allegedly available to the parties was another action pending between the parties in another action, in another state courts, whereas here, the actual controversy between the parties to be resolved in defendants' breach of contract counterclaim exists within the same action.

Third Counterclaim

GBL 349(a),(h), New York's deceptive business practices statute, provides in relevant part:

> Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful [and] . . . . any person who has been injured by reason of any violation of this section may bring an action in his own name . . . to recover his actual damages.

A deceptive business practices claim is stated where a party alleges that the challenged "conduct was consumer-oriented, that the conduct was misleading in a material way, and that plaintiffs suffered injury as a result of the deceptive acts" (*Makuch v N.Y. Cent. Mut. Fire Ins. Co.*, 12 AD3d 1110, 1111, 785 NYS2d 236, 237-38 [4th Dept 2004], *citing Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, N.A.*, 85 NY2d 20, 623 NYS2d 529 [1995]; *Blue Cross and Blue Shield of N.J., Inc. v Philip Morris USA Inc.*, 3 NY3d 200 [2004] [plaintiff must allege both a deceptive act or practice directed toward consumers and that such act or practice resulted in actual injury to a plaintiff]). "Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior. The statute itself does not require recurring conduct" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, N.A.*, 85 NY2d at 25). The aggrieved party "must allege facts sufficient to show that the challenged conduct has a broader impact on consumers at large, in that it potentially affects similarly situated consumers

14

in New York" (*Clover Pool Supply Co. v Central NY News, Inc.*, 2006 WL 3359323, at 2 [WDNY 2006]).

The Court notes that most disputes between policy holders and insurance companies "are nothing more than private contractual disputes"over the rights to insurance proceeds (*see DePasquale v Allstate Ins. Co.*, 179 F Supp 2d 51, 61 [EDNY 2002]) and do not fall within the scope of the statute's protection (*Fekete v GA Ins. Co. a/N.Y.*, 279 AD2d 300, 719 NYS2d 52, 53 [1st Dept 2001]; *see New York Univ.*, 87 NY2d 308, 321, 639 NYS2d at 290-91 [1995] [ ]). However, and insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of GBL 349 (*see Acquista v N.Y. Life Ins. Co.*, 285 AD2d 73,83, 730 NYS2d 272, 279 [1st Dept 2001] [allegations about insurance company practices concerning "a standard-issue policy provided to an individual consumer" are sufficient to establish "consumer-oriented" conduct under GBL 349]; *Joannou v Blue Ridge Ins. Co.*, 289 AD2d 531, 532, 735 NYS2d 786 [2d Dept 2001] ["An insurance carrier's failure to pay benefits allegedly due its insured under the terms of a standard insurance policy can constitute a violation of [GBL § 349]"]; *Makuch v N.Y. Cent. Mut. Fire Ins. Co.*, 12 AD3d 1110, 1111, 785 NYS2d 236, 237-38 [4th Dept 2004]["[A]llegations that the forms making up plaintiffs' insurance policy are standard and regularly used by defendant are sufficient to support the allegation that defendant's actions are consumer-oriented"]).  As explained by the First Department:

> The term unfair or deceptive practices [in GBL § 349] has been defined as representations or omissions "likely to mislead a reasonable consumer acting reasonably under the circumstances." The allegation that the insurer <u>makes a practice</u> of inordinately delaying and then denying a claim without reference to its viability, may be said to fall within the parameters of that definition. Certainly, it goes beyond "a private contract dispute as to policy coverage."
> *Acquista*, 285 AD2d at 82.

(*see also Wendol v Guardian Life Ins. Co. of Am.*, 2006 N.Y. Misc. LEXIS 4004 at 7-8 [Sup Ct NY Co 2006]; *see also Elacgua v Physicians' Reciorocal Insurers*, 52 AD3d 886, 860

15

NYS2d 229 [3d Dept 2008] [insurer's practice should be regarded as consumer-oriented under GBL 349 when it was "not an isolated incident, but a routine practice that affected many similarly situated insureds"]; *Skibinsky v State Farm Fire & Cas. Co.*, 6 AD3d 975, 976, 775 NYS2d 200, 201 [3d Dept 2004][allegations that an insurer engaged in a "recurring pattern" of selling homeowner's policies to consumers sufficient to state GBL 349 claim]). The Court must examine the allegations in the pleading to determine whether they satisfy the consumer-oriented element necessary to state a claim under GBL 349.

It is undisputed that Phoenix delivers policies in New York in conformity with Section 3201 (a)(1) of the New York Insurance Law, which requires the filing for approval of all policy forms that are delivered or issued for delivery in New York for life insurance. The record indicates that Phoenix dealt with Levinson and his Trust as any other customer aided by his or her insurance broker seeking life insurance coverage, furnishing the policy with standard documents presented to similarly situated individuals in obtaining life insurance. It is also alleged that Phoenix utilized a standard-issue policy and that Phoenix engaged in a practice of reneging on those policies issued to others. The procurement by the Trust of life insurance coverage is not a practice unique to the parties herein, nor was it private in nature or a "'single shot transaction'" (*see Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank, N.A.*, 85 NY2d at 26; *cf. Genesco Entertainment v Koch*, 593 F Supp 743, 752 [DCNY 1984] [negotiation for rental of Shea Stadium was a "'single shot transaction,'" not a typical consumer transaction and therefore not covered by section 349]). Thus, the allegations that the forms making up plaintiff's insurance policy are standard and regularly used by plaintiff are sufficient to support the allegation that plaintiff's actions are consumer-oriented (*Makuch v New York Cent. Mut. Fire Ins. Co.*, 12 AD3d 1110, 785 NYS2d 236 [4[th] Dept 2004] [holding that allegations that the forms making up plaintiffs' insurance policy are standard and regularly used by defendant are

16

sufficient to support the allegation that defendant's actions are consumer-oriented] *citing* *Acquista v New York Life Ins. Co.*, 285 AD2d 73, 82-83, 730 NYS2d 272).

Although defendants' allegations are based upon "information and belief," defendants have submitted documents from other cases, in which plaintiff similarly sought a declaration that certain million-dollar life insurance policies be rescinded due to the lack of an insurable interest. Thus, the cases on which plaintiff relies for the proposition that the facts alleged are insufficient to support the consumer-oriented element are distinguishable (*cf. Tinlee Enters., Inc. v Aetna Cas. & Sur. Co.*, 834 F Supp 605-609 [EDNY 1993] [allegation that "Upon information and belief, defendant has taken actions of a similar nature to those herein in handling of other similar claims"]; *see also Sichel v UNUM Provident Corp.*, 230 F Supp 2d 325 [SDNY 2002] [no further facts were made to indicate that defendant engaged in a "national policy," where defendant only claimed that insurer obtained a physician who would falsely state the plaintiff was able to work in his occupation, and use this as a means of avoiding paying the plaintiff his benefits]; *Free/all Express, Inc. v Hudson River Park Trust*, 2007 WL 2582222, at 3 [Sup Ct New York County 2007][speculation and conclusory allegations, rather than factual allegations which would "support a contention/conclusion that the offensive acts or omissions are consumer-oriented within the meaning of the statute" were insufficient]; *Egan v New York Care Plus Ins. Co.*, 277 AD2d 652, 653, 716 NYS2d 430, 432 [3d Dept 2000][holding that a denial of a claim for coverage upon the basis that prolonged intravenous antibiotic therapy was not a generally accepted therapy in the treatment of such disease, was merely a private contract dispute and not the proper subject of a GBL 349 claim]).  To the degree that the record indicates that the instant litigation is one of several actions whereby Phoenix has sought to rescind a life insurance policy it issued where the policy is the subject of a purported "life settlement" transaction, defendants have stated a claim under GBL 349.

17

Further, defendants have alleged a deceptive practice by Phoenix, arising from Phoenix's standard-issue policy and its practice of attempting to rescind those policies. Defendants expressly alleged in their GBL 349 counterclaim that "[t]he Policy provides that Phoenix is obligated to pay the proceeds of the Policy to the beneficiary upon receipt of due proof that the death of Irwin Levinson occurred while the Policy was in force." (¶124). Further, although proof of Levinson's death and other documentation was provided to plaintiff, plaintiff refused to pay the benefits under the Policy. Such allegations, coupled with the claim that defendants were misled to believe that their claim for payment would be paid pursuant to the Policy, defendants have alleged a deceptive practice, sufficient for this case to proceed to discovery (*see Monga v Security Mut. Life Ins. Co. of New York*, 2002 WL 31777872 [Sup Ct Monroe County 2002] [granting leave to amend complaint to assert GBL 349 claim, where proposed complaint alleged "on information and belief," that policy was a standard form policy sold by defendant to many other consumers, defendant's representations and omissions set forth above were misleading, in that plaintiff was led to believe his disability claim would be processed in good faith, and that benefits would be paid in accordance with the terms of the policy]). The documents support defendants' allegation the Policy sold to defendants in this case was also sold to many other similarly situated consumers.

Notably, plaintiff did not move for dismissal based on documentary evidence, or for summary judgment. The "battle" over whether defendants can meet their obligation of a "threshold showing that [their GBL] claim [is] predicated upon a deceptive act or practice that was consumer oriented" is best reserved for a motion for summary judgment after discovery (*Skibinsky v State Farm Fire and Casualty Co.*, 6 AD3d 975, *supra*, *citing Egan v New York Care Plus Ins. Co.*, 277 AD2d 652, 653 [2000]).

The Court is mindful that the purpose of GBL 349 is to protect the "consumer at large,"

18

*i.e.*, those "those who purchase goods and services for personal, family or household use" and that where the alleged deceptive practices occur between relatively sophisticated entities with equal bargaining power, such does not give rise to liability under GBL 349 *(Freefall Express, Inc. v Hudson River Park Trust*, 16 Misc 3d 1135, 847 NYS2d 901 [Sup Ct New York County 2007 [large businesses are not the small-time individual consumers GBL § 349 was intended to protect], *citing Genesco Entertainment v Koch*, 593 F Supp 743, 751-752 [SDNY 1984]).

It is undisputed that Lockwood, is a sophisticated estate insurance advisor who caters to wealthy individuals, and Berck, in his capacity as insurance trust trustee, are involved in a number of multi-million dollar life insurance transactions currently being litigated in New York and elsewhere *(see, e.g., Life Product Clearing LLC v Angel*, 530 F Supp 2d 646 [SDNY 2008]). These other transactions also involve sophisticated life insurance trusts similar to the Trust. These sophisticated parties - an estate insurance advisor, the Vice President of a Bank, and an attorney specializing in life insurance trusts, have procured and managed millions of dollars of insurance held by life insurance trusts, arguably are not entitled, with respect to such transactions, to the protections that GBL 349 affords to ordinary consumers making modest purchases *(see Genesco Entmt v Koch*, 593 F Supp 743, 751-53 [SDNY 1984][dismissing a GBL 349 claim in light of the "complex arrangements, knowledgeable and experienced parties and large sums of money"]; *Clover Pool Supply Co.*, 2006 WL 3359323, at 3-4 [finding plaintiff was not the type of consumer GBL 349 was designed to protect and that its breach of contract claim did not implicate the public interest]).

Thus, it appears that defendants are relying on a consumer protection statute to defend a practice that the very same statute was intended to guard against. However, at this pre-discovery stage, and in light of the limited nature of the CPLR 3211(a)(7) relief sought by plaintiff, it would be improvident for this Court to determine the apparent *merit* of plaintiff's claims.

19

As to defendants' cross-motion to dismiss the complaint, the Court finds that defendants' arguments are wholly devoid of merit.  Therefore, the cross-motion by defendants is denied.

Conclusion

Based on the foregoing, it is hereby

ORDERED that the branch of plaintiff's motion to dismiss defendants' first counterclaim for failure to state a cause of action pursuant to CPLR 3211(a)(7), is granted, and defendants' first counterclaim is hereby dismissed; and it is further

ORDERED that the branch of plaintiff's motion to dismiss defendants' third counterclaim pursuant to CPLR 3211(a)(7), is denied; and it is further

ORDERED that defendants' cross-motion pursuant to CPLR 3211(a)(7) and 2215 to dismiss the complaint is denied; and it is further

ORDERED that the parties appear for a preliminary conference in Part 35 on March 31, 2009, 2:15 p.m.; and it is further

ORDERED that plaintiff serve a copy of this order with notice of entry upon all parties within 20 days of entry.

This constitutes the decision and order of the Court.

Dated: February 19, 2009

Hon. Carol Robinson Edmead, J.S.C.

**HON. CAROL EDMEAD**

20

# EXHIBIT B

INDEX NO. 150305/2010
RECEIVED NYSCEF: 03/07/2011

FILED: NEW YORK COUNTY CLERK 03/07/2011

NYSCEF DOC. NO. 71

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: BARBARA R. KAPNICK                   PART 39

Index Number : 150305/2010

**BERCK, JONATHAN S**

VS.

**PRINCIPAL LIFE INSURANCE CO.**

SEQUENCE NUMBER : 001

DISMISS ACTION

INDEX NO.  _____

MOTION DATE  _____

MOTION SEQ. NO.  _____

MOTION CAL. NO.  _____

this motion to/for  _____

PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...  _____

Answering Affidavits — Exhibits  _____

Replying Affidavits  _____

Cross-Motion:  ☐ Yes  ☒ No

Upon the foregoing papers, it is ordered that this motion by defendants M&M Brokerage Services Inc and Marvin Meyer to dismiss the second cause of action for violation of General Business Law §349 as against them is denied in accordance with the decision dictated on the record on March 7, 2011 after hearing oral argument.

Said defendants shall serve their Answer within 20 days, and all parties shall appear for a preliminary conference in IA Part 39, 60 Centre St. - Rm. 208 on April 13, 2011 at 10:00 a.m.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

Dated: _3/7/11_                   BARBARA R. KAPNICK  J.S.C.

Check one:  ☐ FINAL DISPOSITION  ☒ NON-FINAL DISPOSITION

Check if appropriate:  ☐ DO NOT POST  ☐ REFERENCE

☐ SUBMIT ORDER/ JUDG.  ☐ SETTLE ORDER/ JUDG.

# EXHIBIT C

In addition to the above objections, Phoenix specifically objects to subpart (j) of Request for Production No. 3 because it is vague, overbroad, and seeks information beyond that relevant to a claim or defense.  Subject to and without waiving these objections, the above objections and the objections to Plaintiffs' Definitions and Instructions, Phoenix will produce the responsive, non-privileged communications with third parties set forth in its response to subpart (f) of Request for Production No. 3, some of which may also be responsive to this subpart of the Request.

(k)     [Any scripts, talking points, or other DOCUMENTS prepared for the press, regulators, or policyholders CONCERNING the THIRD COI INCREASE.]

Subject to and without waiving the above objections and the objections to Plaintiffs' Definitions and Instructions, Phoenix will produce any responsive, non-privileged scripts, talking points, and similar documents that Phoenix disclosed in its communications concerning the third COI rate increase with regulators, including the New York Department of Financial Services (Insurance), with members of the media, and with New York policyholders, except that, to the extent its communications were via form letters or correspondence, Phoenix will only produce a copy of the specimen.

**Request for Production No. 4**

Copies of all life insurance policies affected by the FIRST COI INCREASE.

**Response to Request for Production No. 4**

Phoenix objects to Request for Production No. 4 to the extent it requests information concerning policies that were not New York issued because it is overly broad and seeks information not relevant to a claim or defense. Phoenix further objects to Request for Production No. 4 to the extent that it requests disclosure of information, including without limitation personal, nonpublic health and financial information for persons other than the named Plaintiffs,

the disclosure of which would violate applicable state and federal privacy laws or the production of which would require overly burdensome redaction of such nonpublic health and financial information.   Phoenix further objects to the extent Request for Production No. 4 might be interpreted to impose on Phoenix an obligation to produce individual policy files, other than those for the named Plaintiffs, because the imposition of such an obligation would be premature and unduly burdensome in advance of a class being certified in this Action.   Phoenix also objects to this Request because the term "policies affected by the FIRST COI INCREASE" is not defined and could be subject to multiple interpretations; for the purpose of this response, Phoenix interprets "policies affected by the FIRST COI INCREASE" as meaning policies subject to the first COI rate increase, even if a charge attributable to a rate increase was not in fact imposed. Subject to and without waiving these objections and the objections to Plaintiffs' Definitions and Instructions, and contingent on the entry of a stipulated protective order governing the production and exchange of confidential information that the parties to this Action may enter, Phoenix states that it does not maintain a copy of each policy delivered to each individual policyholder, but it will produce responsive, non-privileged copies of specimen policy forms for New York policies subject to the first COI rate increase and the application and schedule for the Loeb policy.

**Request for Production No. 5**

Copies of all life insurance policies affected by the SECOND COI INCREASE.

**Response to Request for Production No. 5**

Phoenix objects to Request for Production No. 5 to the extent it requests information concerning policies that were not New York issued because it is overly broad and seeks information not relevant to a claim or defense.   Phoenix further objects to Request for Production

23