UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

|  |  |  |
|---|---|---|
| MARTIN FLEISHER, as trustee of the Michael Moss Irrevocable Life Insurance Trust II, and JONATHAN BERCK, as trustee of the John L. Loeb, Jr. Insurance Trust, on behalf of themselves and all others similarly situated, | : : : : : : | ECF Case<br><br>Case No. 11 Civ. 8405 (CM) |
| Plaintiffs, | : : | |
| vs. | : : | |
| PHOENIX LIFE INSURANCE COMPANY, | : : | |
| Defendant. | : : | |

_____

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
PHOENIX LIFE INSURANCE COMPANY'S MOTION FOR
PARTIAL DISMISSAL OF THE CLASS ACTION COMPLAINT**


DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
(212) 415-9200

JORDEN BURT LLP
1025 Thomas Jefferson Street NW
Suite 400 East
Washington, DC 20007
(202) 965-8100

*Attorneys for Defendant
Phoenix Life Insurance Company*

Dated: New York, New York
       February 16, 2012

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT.............................................................................................................................1

    I.    The Trustees' Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Improperly Duplicates Their Claim For Breach Of Contract.....................................................................................................................1

    II.    The Request For Declaratory Relief Also Duplicates The Breach Of Contract Claim ................................................................................................................4

    III.    The Trustees' General Business Law § 349 Claim Fails On Multiple Grounds.......................................................................................................................5

        A.    The § 349 Claim Is Not Based On "Consumer-Oriented" Conduct...................................................................................................................5

            1.    The Court Must Assess The Complaint On Its Own Terms, Not Based On The Trustees' Backpedaled Version Of The Complaint..............................................................5

            2.    Phoenix's Cases Are On Point; The Trustees' Cases Are Not...........................................................................................................6

        B.    The Injury Alleged Is Not Independent Of The Alleged Contract Breach ................................................................................................................9

CONCLUSION.........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**                                                                      **Page(s)**

*Beller v. William Penn Life Insurance Co. of New York*,
8 A.D.3d 310, 778 N.Y.S.2d 82 (2004)................................................................................7

*Berck v. Principal Life Insurance Co.*,
No. 150305/10 (N.Y. Sup. Ct. Mar. 7, 2011)......................................................................8

*Echostar DBS Corp. v. Gemstar-TV Guide International, Inc.*,
No. 05 Civ. 8510, 2007 WL 438088 (S.D.N.Y. Feb. 8, 2007)..........................................1, 3

*Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A.*,
No. 06 Civ. 5246, 2007 WL 950134 (S.D.N.Y. Mar. 28, 2007)........................................3

*Independent Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*,
157 F.3d 933 (2d Cir. 1998)...............................................................................................3

*Kermanshah v. Kermanshah*,
580 F. Supp. 2d 247 (S.D.N.Y. 2008)................................................................................3

*Kramer v. Lockwood Pension Services, Inc.*,
653 F. Supp. 2d 354 (S.D.N.Y. 2009)................................................................................5, 6, 7

*Lincoln Life & Annuity Co. of New York v. Bernstein*,
No. 08-2461, 2009 WL 1912468 (N.Y. Sup. Ct. June 29, 2009)........................................8

*Madison Capital Co. v. Alasia*,
615 F. Supp. 2d 233 (S.D.N.Y. 2009)................................................................................4

*New York University v. Continental Insurance Co.*,
87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995)...............................................4

*Oswego Laborers' v. Marine Midland Bank*,
85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995).................................................9

*Phoenix Life Insurance Co. v. Irwin Levinson Insurance Trust II*,
No. 600985/08, 2009 WL 497318 (N.Y. Sup. Ct. Feb. 19, 2009)......................................8

*Riordan v. Nationwide Mutual Fire Insurance Co.*,
977 F.2d 47 (2d Cir. 1992).................................................................................................9

*Spagnola v. Chubb Corp.*,
574 F.3d 64 (2d Cir. 2009).................................................................................................9

*Wells Fargo Bank Northwest, N.A. v. American General Life Insurance Co.*,
    No. 10 Civ. 1327, 2011 WL 1899338 (D.N.J. May 19, 2011) ..........................................7, 9

*Wright v. Ernst & Young LLP*, 152 F.3d 169 (2d Cir. 1998) .........................................................2

**Statutes**

N.Y. Gen. Bus. Law § 349 ................................................................................................. *passim*

**Miscellaneous**

Kenneth Black, Jr. & Harold D. Skipper, Jr., *Life & Health Insurance* (13th ed. 1999) .................2

U.S. Government Accountability Office, GAO-10-775, *Life Insurance Settlements:
    Regulatory Inconsistencies May Pose a Number of Challenges* (2010), *available
    at* http://www.gao.gov/new.items/d10775.pdf ...................................................................5, 6

Jonathan Berck, *Insurance, Captive Insurance Companies & Life Settlements*
    (last visited Feb. 13, 2012), http://jsberck.com/practice-areas/insurance-life-
    settlements ..........................................................................................................................5

Jonathan Berck, *Trustee and Escrow Services* (last visited Feb. 13, 2012),
    http://jsberck.com/practice-areas/trustee-escrow-services ......................................................5

**PRELIMINARY STATEMENT**

The Trustees' opposition is a study in backpedaling. Their Complaint characterizes Phoenix's cost of insurance rate increases as supposedly "targeted at" sophisticated "life settlement investors, or trustees with known connections to life settlement investors," Compl. ¶ 33, and an "assault on life settlement investors," *id.* ¶ 3. It stresses that each increase "does not affect thousands of similar PAUL policies," *id.* ¶ 33, and it avers that Phoenix "issued policies for the sole purpose of resale in the secondary market," *id.* ¶ 6. Yet the Court will find none of this in the Trustees' opposition. These core allegations have been pushed to the side, at least for the moment, because they inconveniently contradict the Trustees' conclusory assertion "that the conduct at issue is consumer-oriented." Pls.' Opp. at 6. But the only conduct actually alleged, if assumed to be true, establishes that the rate increases are "secondary market investor-oriented." This is not the sort of case to which New York General Business Law § 349 properly applies.

The opposition also ignores that this is a *contract* dispute. The Trustees' efforts at articulating alternative damage theories simply prove that they suffered no losses independent of losses caused by the purported breach of their policies' express provisions. Their opposition speaks of different types of conduct – inducement to contract versus contractual nonperformance – but it does not speak of injuries distinct from the alleged contract losses. This failure, among others, remains fatal to the Trustees' claims for breach of the implied covenant, for declaratory relief, and § 349 violations, each of which merely repackages the breach of contract claim.

**ARGUMENT**

**I.    The Trustees' Claim For Breach Of The Implied Covenant Of Good Faith And Fair Dealing Improperly Duplicates Their Claim For Breach Of Contract.**

"In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative." *Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc.*, No. 05 Civ.

1

8510, 2007 WL 438088, at *7 (S.D.N.Y. Feb. 8, 2007). The Complaint's Second Claim for

Relief, alleging breach of the implied covenant, is no exception to this general rule.

The Trustees' opposition attempts to transfigure their "bad faith" allegations. The

Trustees now contend the "bad faith" is "that Phoenix (a) sells and labels the subject policies as

'flexible premium universal life' policies, (b) does not disclose in the policies that it will impose

higher COI rates for policyholders who utilize the flexible premium feature, and (c) now seeks to

punish policyholders who choose to pay flexible premiums and thereby induce the lapse of those

policies." Pls.' Opp. at 10.[1] But the opposition's emphasis on *precontractual* misrepresentations

and omissions is not found in the Complaint. The Complaint's "bad faith" allegations, *see*

Compl. ¶¶ 51-56, describe *postcontractual* nonperformance, alleging that "Phoenix breached the

implied covenant of good faith and fair dealing by undermining plaintiffs' right to pay premiums

as needed" by "increasing the cost of insurance rates," *id.* ¶ 54, and also "by using the cost of

insurance rates to make the subject policies prohibitively expensive and attempting to induce the

lapse or surrender" of the policies, *id.* ¶ 55. The Trustees cannot use their opposition to "fix" the

Complaint – "a party is not entitled to amend its complaint through statements made in motion

papers." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).

Even if the Complaint were amended to include these allegations, it would fail to state a

cognizable implied covenant claim. Hypothetically amended, Phoenix's "alleged violation of the

covenant of good faith and fair dealing – knowingly concealing crucial information during

negotiations – took place before the parties actually entered into the contract. Parties cannot

---

[1] "Flexible premium" is hardly a representation of policy rights or obligations, much less a policy term governing cost of insurance determinations that the Trustees acknowledge are addressed in multiple express provisions. Rather, it is an appellation used to distinguish universal life policies from fixed-premium, term, and whole-life policies. *See* Kenneth Black, Jr. & Harold D. Skipper, Jr., *Life & Health Insurance* 114 (13th ed. 1999).

breach a contract's implied promise of good faith and fair dealing before the contract is entered into. Claims under this theory arise when a party does something to prevent the other party from attaining an already agreed upon benefit." *Echostar*, 2007 WL 438088, at \*8 (dismissing implied covenant claim); *see also Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 941 (2d Cir. 1998) (same). Moreover, the two claims are redundant because, ultimately, the "bad faith" alleged in the opposition is about "punish[ing]" policyholders to "induce" lapse, Pls.' Opp. at 10, which describes the effect of breaching express policy terms.

Regardless of the nature of the misconduct at issue, precontractual or postcontractual, the Trustees cannot distinguish their implied covenant claim from their breach of contract claim because different damages are not alleged. *See* Def.'s Memo. at 10-11. The Complaint seeks the same "compensatory damages" for the First and Second Claims for Relief. "[W]here the relief sought by the plaintiff in claiming a breach of the implied covenant of good faith is intrinsically tied to the damages allegedly resulting from the breach of contract, there is no separate and distinct wrong that would give rise to an independent claim." *Kermanshah v. Kermanshah*, 580 F. Supp. 2d 247, 272-73 (S.D.N.Y. 2008) (dismissing implied covenant claim as seeking redundant damages) (internal quotation marks omitted); *see also Excelsior Fund, Inc. v. JP Morgan Chase Bank, N.A.*, No. 06 Civ. 5246, 2007 WL 950134, at \*7 (S.D.N.Y. Mar. 28, 2007) (same). On this point, the Trustees' opposition is conspicuously silent.

Finally, the Trustees urge the Court to not dismiss the implied covenant claim because "the meaning of the contract has yet to be determined," so dismissal is premature. Pls.' Opp. at 11. But the parties' dispute over the policies' meaning is irrelevant. *Accepting the Trustees' construction as correct* for purposes of this motion to dismiss, the implied covenant claim duplicates the breach of contract claim. This Court, and others, dismiss duplicative implied

3

covenant claims even where a contract's disputed meaning has not been determined.  *See, e.g.*, *Madison Capital Co. v. Alasia*, 615 F. Supp. 2d 233, 239 (S.D.N.Y. 2009) (McMahon, J.) (dismissing implied covenant claim as duplicative even though defendant had not yet moved to dismiss breach of contract claim, or for contract interpretation); *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315 & 320, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995) (same).

**II.     The Request For Declaratory Relief Also Duplicates The Breach Of Contract Claim.**

The Fourth Claim for Relief, seeking a declaratory judgment, similarly merits dismissal. Critically, the Trustees do *not* dispute that the jury's resolution of the breach of contract claim with respect to the Loeb Policy and the first cost of insurance increase will obviate the need for a separate judicial declaration to that extent.  And, also to that extent, neither side disputes that declaratory relief is therefore improper and subject to dismissal.

The Trustees instead contend "that the second COI increase will go into effect against the plaintiff-owner of the Moss Policy in about eight months, starting on October 2012."  Pls.' Opp. at 13.  Yet they fail to explain why this fact makes any difference.  The Court can fully adjudicate, through a jury verdict, the breach of contract claim with respect to the Moss Policy and the second increase without the need for a separate declaratory judgment.  The Complaint alleges that the increase's "mere announcement" already "has damaged the value of the Moss Policy," Compl. ¶ 35, and, in any event, the Trustees' assertion of an existing anticipatory breach, *id.* ¶ 49 ("Phoenix has anticipatorily breached the policies"), if proven, is remediable without a redundant judicial declaration.

Although the Trustees may correctly assert that a contract claim can entitle a plaintiff to damages for past conduct, while a claim for declaratory relief can entitle a plaintiff to a prospective determination of the parties' rights, *see* Pls.' Opp. at 14, this "distinction" misses the

point.  Resolution of the Trustees' breach of contract claim will necessarily eliminate uncertainty and clarify the parties' rights, rendering declaratory relief superfluous and subject to Rule 12(b)(6) dismissal.  Phoenix's opening memorandum cites numerous cases to the same effect, *see* Def.'s Memo. at 12-13, none of which are refuted or distinguished in the opposition.[2]

## III.  The Trustees' General Business Law § 349 Claim Fails On Multiple Grounds.

### A.  The § 349 Claim Is Not Based On "Consumer-Oriented" Conduct.

#### 1.  The Court Must Assess The Complaint On Its Own Terms, Not Based On The Trustees' Backpedaled Version Of The Complaint.

The Trustees cannot hide from their own allegations to save the § 349 claim, the Third Claim for Relief.  The Complaint alleges conduct "targeted at," Compl. ¶ 33, and purportedly constituting an "assault on life settlement investors," *id.* ¶ 3, and "trustees with known connections to life settlement investors," *id.* ¶ 33.  Players in the life settlement market:

- Are "sophisticated" and "not ordinary consumers to whom the statute [§ 349] is directed." *Kramer v. Lockwood Pension Servs., Inc.*, 653 F. Supp. 2d 354, 385 (S.D.N.Y. 2009).  For example, "Mr. Berck is one of the leading trustees in New York for life settlement programs,"[3] and "[h]edge funds and other investors in the life settlement industry have frequently been clients of Mr. Berck."[4]

- Invest in "high-dollar-amount policies,"[5] which, according to the Complaint, involve "staggering" cost of insurance charges annually amounting to hundreds of thousands of dollars per policy, Compl. ¶ 8; and

---

[2] The Trustees also chide Phoenix for "assert[ing] that plaintiffs' request for declaratory relief is not ripe," Pls.' Opp. at 14, ignoring that their Complaint asks for sweeping declaratory relief as to possible future rate adjustments *that have not even been announced*.  *See* Compl. ¶ 67(d).

[3] Jonathan Berck, *Trustee and Escrow Services* (last visited Feb. 13, 2012), http://jsberck.com/practice-areas/trustee-escrow-services.

[4] Jonathan Berck, *Insurance, Captive Insurance Companies & Life Settlements* (last visited Feb. 13, 2012), http://jsberck.com/practice-areas/insurance-life-settlements.

[5] U.S. Gov't Accountability Office, GAO-10-775, *Life Insurance Settlements: Regulatory Inconsistencies May Pose a Number of Challenges* 4 (2010) ("GAO Report"), *available at* http://www.gao.gov/new.items/d10775.pdf.

- Do not acquire life insurance policies for traditional use, but for commercial profit.[6]

The Trustees seem to misunderstand their own allegations, arguing that a life settlement trustee "simply signs documents on behalf of the trust, but it is *the insured* who applies for and procures the insurance and designates the legal owner and beneficiary of the trust." Pls.' Opp. at 23 (emphasis in original). Aside from this admission punctuating that life settlement trustees are not themselves consumers to whom § 349 applies, the relative sophistication of *the insureds* is not at issue. The Complaint alleges that the group supposedly affected by Phoenix's "targeted" "assault" is a marketplace composed of hedge funds, banks, wealthy investors, and the trustees and brokers serving them. The Complaint thus does not posit a consumer impact, but an impact in the life settlement industry. The Trustees' invocation of the insureds is a red herring.

### 2.     Phoenix's Cases Are On Point; The Trustees' Cases Are Not.

The Trustees purport to distinguish Phoenix's principal cases on superficial grounds. They contend that "[u]nlike *Kramer*," this case "involves an unlawful COI rate increase imposed on thousands of policies." *Id.* at 26. But the Trustees ignore that the *Kramer* counterclaimants, including Mr. Berck himself, alleged a widespread business practice wherein the life insurer "issued a standard form policy and then resisted paying benefits associated with that policy." 653 F. Supp. 2d at 385. The *Kramer* court (Judge Batts) nonetheless held that "such behavior is not properly considered 'consumer-oriented' where, as here, the parties include sophisticated insurance brokers [*i.e.*, Mr. Berck] and not ordinary consumers to whom the statute is directed." *Id.* The Trustees' myopic focus on the different business practices alleged in the two cases

---

[6] *See id.* The Trustees "object to Phoenix's introduction of website pages and other documents outside the Complaint," Pls.' Opp. at 23, but do not dispute those documents' authenticity. For the reasons explained in Phoenix's opening memorandum, *see* Def.'s Memo. at 7 n.2 & n.3 (collecting authorities), the Court's consideration of Mr. Berck's *own* website, and the GAO Report referenced and relied on *in the Complaint*, Compl. ¶ 5, is entirely proper.

6

disregards that the life settlement *investors* common to both cases are not consumers for purposes of § 349.  The Trustees further disregard that no "standard form" policy is involved – each policy can be customized with riders, features, and options, *see* Compl. Ex. A (Application for Life Insurance); Compl. Ex. B (Application for Life Insurance) – and even if it were otherwise, that would not preclude Rule 12(b)(6) dismissal.  *See Kramer*, 653 F. Supp. 2d at 385.

The Trustees wave away *Wells Fargo Bank Northwest, N.A. v. American General Life Insurance Co.*, No. 10 Civ. 1327, 2011 WL 1899338 (D.N.J. May 19, 2011), where the court explicitly rejected the argument "that those engaging in the life settlement industry are consumers for purposes of triggering the protections of GBL § 349."  2011 WL 1899338, at *6. The Trustees contend that "the Complaint does not allege that plaintiffs possessed 'equal bargaining power' with Phoenix," Pls.' Opp. at 26, blithely overlooking the fact that they are themselves attorneys connected to life settlement investors, and that the group allegedly affected by the rate increases is comprised of hedge funds, banks, and wealthy investors.  The Trustees further contend that the *Wells Fargo* court spoke of "complex commercial undertakings" – the acquisition of high-dollar-amount life insurance for resale in the secondary market, *see* 2011 WL 1899338, at *7 – ignoring that their own Complaint alleges similar "undertakings."

The Trustees rely on several decisions, none of which support the notion that *this* case involves "ordinary consumers," "modest" amounts, or non-investment transactions:

<u>*Beller*</u>.  The opposition cites *Beller v. William Penn Life Insurance Co. of New York*, 8 A.D.3d 310, 778 N.Y.S.2d 82 (2004), supposedly "a case involving virtually identical cost of insurance allegations to the case at bar, [where] the New York Appellate Division clearly signaled that GBL § 349 applies."  Pls.' Opp. at 17.  But unlike the Trustees' lawsuit, *Beller* did not purport to involve conduct "targeted at" investors in the life settlement secondary market.

7

*Bernstein*.  The Trustees additionally cite *Lincoln Life & Annuity Co. of New York v. Bernstein*, No. 08-2461, 2009 WL 1912468 (N.Y. Sup. Ct. June 29, 2009), but, like *Beller*, *Bernstein* did not purport to involve conduct "targeted at" life settlement investors.  To the contrary, the *Bernstein* court noted that the life insurer's conduct was directed "to many consumers."  *Id.* at *6.  *Bernstein* is inapposite.

*Berck*.  The invocation of *Berck v. Principal Life Insurance Co.*, No. 150305/10 (N.Y. Sup. Ct. Mar. 7, 2011), is pointless.  That one-page, two-sentence handwritten order does not offer any analysis, state what arguments any party made, or even describe the case's facts.

*Levinson*.  The Trustees' closest decision is *Phoenix Life Insurance Co. v. Irwin Levinson Insurance Trust II*, No. 600985/08, 2009 WL 497318 (N.Y. Sup. Feb. 19, 2009), but that case actually supports Phoenix.  The Trustees accurately state that the *Levinson* court allowed a § 349 claim asserted by Mr. Berck and a life settlement broker to survive dismissal, but ignore that the *Levinson* court did so grudgingly, and only because of a state pleading standard inapplicable here.  Noting that Mr. Berck was "relying on a consumer protection statute to defend a practice that the very same statute was intended to guard against," the court sympathized with Phoenix:

> It is undisputed that Lockwood, a sophisticated estate insurance advisor who caters to wealthy individuals, and Berck, in his capacity as insurance trust trustee, are involved in a number of multi-million dollar life insurance transactions currently being litigated in New York and elsewhere.  These other transactions also involve sophisticated life insurance trusts similar to the Trust.  These sophisticated parties – an estate insurance advisor, the Vice President of a Bank, and an attorney specializing in life insurance trusts, have procured and managed millions of dollars of insurance held by life insurance trusts, arguably are not entitled, with respect to such transactions, to the protections that GBL 349 affords to ordinary consumers making modest purchases.

*Id.* (internal citations omitted).  Constrained by "the limited nature of the CPLR 3211(a)(7) relief sought," however, the *Levinson* court reluctantly declined to dismiss the § 349 claim.  *Id.*

This Court is not so constrained.  To the contrary, as the *Wells Fargo* court observed in following *Kramer* and distinguishing *Levinson*, "the Court is mindful of the apparent divergence between the New York district court in *Kramer* and the New York supreme court," where the latter court "was not applying the *Iqbal* standard, which binds this Court in deciding the present application."  2011 WL 1899338, at *7.  This Court, like the *Wells Fargo* and *Kramer* courts, and unlike the *Levinson* state court, "must do more than merely determine whether a cause of action can be implied from the bare allegations of the complaint but must actually consider whether that cause of action is plausible, given the factual allegations of the pleading."  *Id.* Thus, while the Trustees conclusorily assert that the "COI increases have also impacted ordinary consumers," Compl. ¶ 7, no supporting facts are *plausibly* alleged.  Indeed, that bare allegation is contradicted by the balance of the Complaint, which contends the rate increases were "targeted at" life settlement investors' policies, but not "thousands of similar PAUL policies."  *Id.* ¶ 33.[7]

### B.    The Injury Alleged Is Not Independent Of The Alleged Contract Breach.

"Although a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract."  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).  The Trustees struggle to distinguish *Spagnola* – discussed in Phoenix's opening memorandum, *see* Def.'s Memo. at 22 – but they fall short of the mark.  *See* Pls.' Opp. at 28.  In both *Spagnola* and this case, the plaintiffs contend they were deceptively led to purchase insurance policies.  In both *Spagnola* and this case, the plaintiffs also

---

[7] The opposition's reliance on *Riordan v. Nationwide Mutual Fire Insurance Co.*, 977 F.2d 47 (2d Cir. 1992), and *Oswego Laborers' v. Marine Midland Bank*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741 (1995), is likewise misplaced.  *See* Pls.' Opp. at 19-21.  *Riordan* involved homeowner's insurance policies purchased by average consumers, *see* 977 F.2d at 49, while *Oswego* involved savings accounts available to the consuming public at large, *see* 85 N.Y.2d at 23 & 26.  Neither case concerned life insurance policies allegedly traded in a secondary market, and involving hundreds of thousands of dollars in premiums and cost of insurance charges.

contend they were led to pay increased amounts for the insurance in breach of the policies' terms.  And in both cases, the plaintiffs contend the deception deprived them of the benefit of their contractual bargain.  Here, the "loss" attributable to Phoenix's purported deception is the same "loss" attributable to the alleged breach of contract, the cost of insurance rate increase.

The Trustees pretend their § 349 losses are independent of their contract losses because the former were caused by the rate increase's "announcement – as opposed to the actual implementation – [which] immediately damaged the resale value of the policies." *Id.* at 27.  But the same "announcement" theory is a basis of the contract claim, and is articulated in the First (not Third) Claim for Relief.  Compl. ¶ 49 ("To the extent that Phoenix has *announced, but not fully implemented*, the second COI increase, Phoenix has anticipatorily breached the policies by stating unequivocally that it intends to breach the contract by implementing a COI increase commencing on the first policy anniversary date after November 1, 2011.") (emphasis added).

## CONCLUSION

For all the foregoing reasons, and for the reasons stated in its opening memorandum, Phoenix respectfully moves for an order dismissing, with prejudice, the Second through Fourth Claims for Relief from the Complaint.

Dated: New York, New York
      February 16, 2012

Of Counsel:
Waldemar J. Pflepsen Jr. (*pro hac vice*)
Stephen J. Jorden*
Jason H. Gould*
Brian P. Perryman (*pro hac vice*)
JORDEN BURT LLP
1025 Thomas Jefferson Street NW
Suite 400 East
Washington, DC 20007
(202) 965-8100

*Motion for full admission pending

DORSEY & WHITNEY LLP

By: /s/ Patrick J. Feeley
Patrick J. Feeley
Jonathan R. Montcalm
51 West 52nd Street
New York, New York 10019
(212) 415-9200

*Attorneys for Defendant*
*Phoenix Life Insurance Company*

247394v4DC

10