UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x

MARTIN FLEISHER, as trustee of the Michael Moss
Irrevocable Life Insurance Trust II, and JONATHAN
BERCK, as trustee of the John L. Loeb, Jr. Insurance Trust,
on behalf of themselves and others similarly situated,

                    Plaintiffs,

   -against-                                   11 Civ. 8405 (CM)

PHOENIX LIFE INSURANCE COMPANY,

                    Defendant.

_____x

**DECISION AND ORDER GRANTING DEFENDANT'S MOTION
FOR PARTIAL DISMISSAL OF THE CLASS ACTION COMPLAINT**

McMahon, J.:

### INTRODUCTION

Plaintiffs Martin Fleisher, as Trustee of the Michael Moss Irrevocable Life Insurance

Trust II ("Fleisher"), and Jonathan Berck, as Trustee of the John L. Loeb, Jr. Insurance Trust

("Berck," and, together with Fleisher, "Plaintiffs") initiated this action on November 18, 2011,

by filing a complaint (ECF No. 1, the "Complaint") against Phoenix Life Insurance Company

("Defendant" or "Phoenix"). The Complaint alleges, on behalf of Plaintiffs and a putative class

of others similarly situated, that Phoenix breached the express terms of certain insurance policies

owned by Plaintiffs and putative class members ("Count One"), breached the implied covenant

of good faith and fair dealing contained in such policies ("Count Two"), and violated New York

1

General Business Law § 349 ("Count Three"). Plaintiffs also seek a declaratory judgment concerning the alleged wrongfulness of Phoenix's conduct ("Count Four").

Phoenix has moved to dismiss Counts Two, Three, and Four (ECF No. 16). For the reasons discussed below, Phoenix's motion is GRANTED in its entirety. Counts Two, Three, and Four are DISMISSED.

## I.    Background

### a.   Materials the Court May Consider

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." Rogers v. Blacksmith Brands, Inc., No. 11 Civ. 1940 (VB), 2011 WL 6293764, at *4 (S.D.N.Y. Dec. 13, 2011) (quoting DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010)). A district court may also consider a document that is not incorporated by reference, where the complaint "'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Rogers, 2011 WL 6293764, at *4 (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)); see also ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citing Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000)). "However, 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" DiFolco, 622 F.3d at 111 (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)). "It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." Id.

The parties dispute whether the Court may consider the contents of "a recent GAO report," which is referenced once but not heavily relied upon in the Complaint, (Compl. ¶ 5) (the

2

"GAO Report"), and Berck's website (the "Website"). While not disputing the authenticity of either source, Plaintiffs "object to Phoenix's introduction of website pages and other documents outside the Complaint" as "not properly subject to judicial notice." (Plaintiffs' Opposition to Defendant's Motion for Partial Dismissal (ECF No. 19) ("Opp'n") at 23.) Phoenix, for its part, argues that the Court may take notice of the GAO Report because Plaintiffs "relied upon" it in the Complaint and because it is a "public document issued by [a] federal agenc[y]," (Memorandum of Law in Support of Defendant's Motion for Partial Dismissal (ECF No. 17) ("Motion") at 7 n.3), and of the Website as a party's public website, easily accessed, and the authenticity of which is undisputed, (id. at n.2; Reply Memorandum of Law in Support of Defendant's Motion for Partial Dismissal (ECF No. 21) ("Reply") at 6 n.2). However, the arguments with respect to which Phoenix seeks to introduce the GAO Report and the Website relate only to the consumer-orientation prong of Count Three. Because, as discussed below, I need not reach that prong in order to decide this motion, there is no need to answer this preliminary question.

### b. Factual and Procedural History

The following summary is drawn from the Complaint, the factual allegations of which are presumed true for purposes of this motion.

Plaintiff Berck is the trustee of the John L. Loeb, Jr. Insurance Trust (the "Loeb Trust"). Plaintiff Fleisher is the trustee of the Michael Moss Irrevocable Life Insurance Trust II (the "Moss Trust," and, together with the Loeb Trust, the "Trusts"). Each Trust is an insurance trust organized and existing under the laws of New York. Each plaintiff's principal place of business is in New York.

3

Defendant Phoenix is a New York corporation with its principal place of business in New York. Phoenix sells insurance policies in New York.

This dispute relates to a certain type of insurance policy, known as a premium-adjustable, universal life policy (a "PAUL" policy).[1] PAUL policies differ from standard whole life insurance policies in that PAUL policies require financial contributions only in amounts sufficient to cover the issuer's periodic cost of insurance ("COI") obligations and certain other expenses. The owner of a PAUL policy may pay premiums in excess of this amount. After such costs are deducted from the premium amounts paid, any funds left over are then added to the policy's "accumulated policy value," and earn some interest. However, owners of PAUL policies tend to pay little, if any, above the amounts required to cover the costs; indeed, they often elect to purchase PAUL policies because the structure enables them to minimize the amount invested (in other words, by keeping the accumulated policy value low, they can obtain the same coverage at a lower premium cost than other policies). PAUL policies generally permit the insurer to adjust the COI rates periodically in keeping with changes in certain other factors, such as personal characteristics, economic conditions and mortality estimates, within contractual caps listed in the policies.

The Trusts own PAUL policies issued by Phoenix (the "Loeb Policy," and the "Moss Policy," respectively, and together, the "Policies"). Plaintiffs allege that putative class members are similarly situated owners of Phoenix PAUL policies with terms sufficiently similar to those of the Policies that their claims can be adjudicated together. The Loeb Policy is dated November 1, 2005, has a face value of $10 million, and calls for an initial premium payment of $340,808,

---

[1]   Phoenix refers to these policies not as "premium-adjustable," but rather as "Phoenix Accumulator," universal life insurance policies. (Motion at 3.) As there is no question concerning which actual policies underlie this dispute, this distinction is immaterial, and the Court will refer to such policies generally as "PAUL" policies.

with subsequent quarterly premiums of $135,000. (Compl. Ex. A.) The Moss Policy is dated

October 12, 2007, has a face value of $6 million, and calls for an initial premium and annual

premiums of $299,526. (id. Ex. B.) Both Policies have remained in force at all times relevant to

this litigation.

Each of the Policies contains language stating that Phoenix may only change COI rates

based on factors related to the personal qualities of the insured, such as age, risk, and similar

characteristics, or economic conditions in the insurance industry. They also provide that Phoenix

may only change COI rates if it does so uniformly for, and without discriminating within, any

class of insureds, and that COI rate changes may only be prospective.

In March 2010, Phoenix informed a subset of PAUL policyholders that it was increasing

COI rates for each of such holders' policies "unless [each such policy's] accumulated policy

value is maintained at a sufficient level." (Compl. ¶ 26.) This increase (the "First COI Increase")

affected the Loeb Policy and approximately 700 other policies. For a policy such as the Loeb

Policy with a $10 million face value, the First COI Increase amounts to increased premium

payments of $76,800 the first year, $46,700 the second year, $35,500 the third year, $30,300 the

fourth year, and smaller but not insignificant amounts each year thereafter. (Id. ¶ 28.) Plaintiffs

allege that Phoenix at the same time instituted a decrease in the interest rate earned by the cash

accumulated by this subset of policies. (Id. ¶ 31.)

In October 2011, Phoenix announced a similar COI rate increase, again affecting only a

subset of PAUL policies, this time including the Moss Policy and approximately 1,400 others.

Phoenix informed policyholders of this increase via letters which stated, in relevant part, that the

increase was spurred by Phoenix's "actuarial and financial expectations," and due to take effect

on each affected policy's "next policy anniversary on or after November 1, 2011," (id. ¶ 32) (the

5

"Second COI Increase," and, together with the First COI Increase, the "COI Increases"). The Second COI Increase, according to the foregoing, has taken effect for some, but not all, of the policies it impacts. The Moss Policy, which was issued in October, becomes subject to the Second COI Increase in October 2012.

Plaintiffs do not allege that either COI Increase brought the COI rates for the Policies above the maximum COI rates specified therein.

Plaintiffs allege that the conduct at issue constitutes "the latest round of Phoenix's long-running assault on life settlement investors," (id. ¶ 3), and Phoenix's "latest efforts to depress the life settlement market, [and] discriminate against life settlement investors," (id. ¶ 7). The life settlement market is a secondary market for life insurance policies. Players in this market buy policies from their original owners, often for many times more than their then-current cash surrender value on the issuer's books. (Id. ¶ 5.)

Plaintiffs are careful not to indicate whether they or the putative class members are in any way connected to the life settlement industry. They do, however, allege that "Both the first and second COI increase [sic] appear to be targeted at certain owners (e.g., life settlement investors, or trustees with known connections to life settlement investors) and policies procured through certain brokers (e.g., those with connections to the life settlement market)." (Id. ¶ 33.)

Plaintiffs allege that the COI Increases violate the express terms of the impacted policies by discriminating within classes of insureds and because they are not based on the enumerated permissible factors (Count One). They also claim that Phoenix's conduct violates the implied covenant of good faith and fair dealing inherent in every contract under New York law (Count Two), and New York's consumer protection statute, General Business Law § 349 (Count Three). Finally, they seek a declaration setting forth the parties' rights and obligations (Count Four).

6

Phoenix has moved the Court to dismiss Counts Two, Three, and Four.

## II.    Initial Matters

### a.  Subject Matter Jurisdiction

Plaintiffs allege, and Phoenix does not contest, that this Court has subject matter jurisdiction over this matter pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). (Compl. ¶ 15.) The party invoking federal jurisdiction under CAFA has the burden of showing that the case falls within a district court's jurisdiction. Blockbuster, Inc. v. Galeno, 472 F.3d 53, 58 (2d Cir. 2006). Jurisdiction is appropriate in cases with "no fewer than 100 members of the plaintiff class, minimal diversity, and $5 million in controversy." Id. at 57. For purposes of establishing federal subject matter jurisdiction under CAFA, "minimal diversity" requires that:

> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant; (B) any member of a class of plaintiffs is a foreign state or a citizen or subject of a foreign state and any defendant is a citizen of a State; or (C) any member of a class of plaintiffs is a citizen of a State and any defendant is a foreign state or a citizen or subject of a foreign state.

Id. at 58-59 (citing 28 U.S.C. § 1332(d)(2)).

Here, Plaintiffs explicitly allege that "the aggregate amount of damages exceeds $5,000,000." (Compl. ¶ 15.) They also note that they "are aware of at least one member of both proposed classes that is a citizen of another country," (id.), and, indirectly, that Phoenix is a citizen of New York State, (id. ¶ 14), thus satisfying the "minimal diversity" prong.

However, the Complaint does not explicitly mention whether either class will include at least 100 members. Plaintiffs repeatedly refer in the Complaint to the high numbers of *policies* impacted by the conduct alleged. (See, e.g., id. ¶ 28 ("approximately 700 policies were impacted by this first COI increase"); id. ¶ 34 ("Phoenix targeted approximately 1400 policies with the second COI increase").) A policy is not a policyholder, however, and only the latter can actually

be a member of a class. Thus, these allegations do not affirmatively indicate whether the requisite 100 class members are alleged to exist, or whether fewer than 100 investors and brokers own the 2,100 or more policies at issue.

Nevertheless, Plaintiffs do allege elsewhere in the Complaint that "Both the First COI Increase Class and the Second COI Increase Class consist of hundreds of consumers of life insurance." (Id. ¶ 38.) Although this particular count in the Complaint appears to relate more to the need for a class action than to jurisdiction, it does allege the necessary factual information to pass the CAFA subject matter jurisdiction hurdle at this stage, especially as Phoenix does not contest the issue. Therefore, I conclude that CAFA permits the Court to exercise subject matter jurisdiction over this case.

### b. Choice of Law

Because subject matter jurisdiction in this case is based upon the parties' diversity of citizenship (rather than a federal question), I must next determine which state's substantive law governs. "Where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry." Texaco A/S (Denmark) v. Commercial Ins. Co. of Newark, N.J., 160 F.3d 124, 128 (2d Cir. 1998). Here, although the parties do not explicitly express agreement on forum law, Plaintiffs allege causes of action arising under New York law, and the parties cite primarily to New York law in their briefs, suggesting implicit agreement that New York law governs. "The parties do not argue that the law of a state other than New York should apply here, and the Second Circuit has held that 'where the parties agree that New York law controls, this is sufficient to establish choice of law.'" Jalili v. Xanboo Inc., No. 11 Civ. 1200 (DLC), 2011 WL 4336690, at *3 (S.D.N.Y. Sept. 15, 2011) (quoting Federal Ins. Co. v.

8

American Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011)). Thus, the Court will apply

New York substantive law to this case.

### c. Legal Standard for Failure to State a Claim Upon Which Relief Can Be Granted Under Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint

for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss

under Rule 12(b)(6) . . . a complaint must contain sufficient factual matter accepted as true, to

state a claim to relief that is plausible on its face." Mabry v. Neighborhood Defender Serv., 769

F. Supp. 2d 381, 389 (S.D.N.Y. 2011) (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).

"A plaintiff's obligation . . . requires more than labels and conclusions, and a formulaic recitation

of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007). "Although for the purposes of a motion to dismiss we must take all of the factual

allegations in the complaint as true, we are not bound to accept as true a legal conclusion

couched as a factual allegation." Iqbal, 129 S. Ct. at 1949-50.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court evaluates the

sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court

in Iqbal. First, "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to

withstand a motion to dismiss. Iqbal, 129 S. Ct. at 1949; Hayden v. Paterson, 594 F.3d 150, 161

(2d Cir. 2010).

Second, "When there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement for relief." Iqbal,

129 S. Ct. at 1950. A claim is facially plausible "when the plaintiff pleads factual content that

9

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," with all reasonable inferences drawn in the plaintiff's favor. Id. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.; see generally Rogers, 2011 WL 6293764, at *3-4.

III.   **Plaintiffs' Breach of the Implied Covenant of Good Faith and Fair Dealing Claim (Count Two) is Dismissed**

a.  **Legal Standard**

Under New York law, there is a covenant of good faith and fair dealing implied in all contracts. See 511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153 (N.Y. 2002); Carvel Corp. v. Diversified Mgmt. Grp., 930 F.2d 228, 230 (2d Cir. 1991). "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Harris v. Provident Life & Accident Ins. Co., 310 F.3d 73, 80 (2d Cir. 2002). While the implied covenant of good faith and fair dealing does not "imply obligations inconsistent with other terms of the contractual relationship," it does encompass "any promises which a reasonable person in the position of the promisee would be justified in understanding were included." Manhattan Motorcars, Inc. v. Automobili Lamborghini, 244 F.R.D. 204 (S.D.N.Y. 2007) (quoting Murphy v. Am. Home Prods. Corp., 58 N.Y.2d 293, 304 (N.Y. 1983); Rowe v. Great Atl. & Pac. Tea Co., 46 N.Y.2d 62, 69 (N.Y. 1978)).

To avoid redundancy, "Claims of breach of the implied covenant . . . must be premised on a different set of facts from those underlying a claim for breach of contract." Deutsche Bank Sec., Inc. v. Rhodes, 578 F. Supp. 2d 652, 664 (S.D.N.Y. 2008). "A party may maintain a claim

for breach of the implied covenant only if the claim is based on allegations different from the allegations underlying the accompanying breach of contract claim." Id. Accordingly, "A claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach of covenant of an express provision of the underlying contract." ICD Holdings S.A. v. Frankel, 976 F. Supp. 234, 243-44 (S.D.N.Y. 1997); Murphy, 58 N.Y.2d 293 (holding that the implied obligation is simply "in aid and furtherance of other terms of the agreement of the parties."); Madison Capital Co., LLC v. Alasia, LLC, 615 F. Supp. 2d 233, 239 (S.D.N.Y. 2009).

**b. Discussion**

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing in the Policies is duplicative of their breach of contract claim. "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Harris, 310 F.3d at 81.

Plaintiffs' claim here is precisely so based. Count Two alleges as follows:

54.   Phoenix breached the implied covenant of good faith and fair dealing by undermining plaintiffs' right to pay premiums as needed to cover their monthly deductions. *By increasing the cost of insurance rates based on a policy's accumulated value*, Phoenix is, among other things, penalizing and deterring policyholders from exercising their contractual right to maintain a minimal accumulated policy value, which Phoenix has no right to do.

55.   Phoenix also breached the implied covenant of good faith and fair dealing *by using the cost of insurance rates* to make the subject policies prohibitively expensive and attempting to induce the lapse or surrender of policies so that defendants can keep the premiums and never have to pay death benefits.

(Compl. ¶¶ 54-55 (emphasis added).) The express breach of contract claim, meanwhile, states, in relevant part:

11

47.   *Phoenix's rate increase [sic] have materially breached the Policies* in several respects, including but not limited to the following:

> (a) *Phoenix breached the policies by increasing COI rates* based on a policy's accumulated policy value because accumulated policy value is not one of the permissible and enumerated bases for increasing cost of insurance rates;

> (b) *Phoenix breached the policies by increasing COI rates* on bases that does [sic] not apply uniformly to a class of insureds, and which discriminates unfairly between insureds of the same class . . . .

(Id. ¶ 47(a)-(b) (emphasis added).)

Plaintiffs do not dispute that redundant claims of breach of the implied covenant of good faith and fair dealing should be dismissed, (Opp'n at 9,) or that "In most circumstances, claims for breach of contract and the covenant of good faith and fair dealing are duplicative," (id. at 10 (quoting Echostar DBS Corp. v. Gemstar-TV Guide Int'l, Inc., No. 05 Civ. 8510 (DAB), 2007 WL 438088 at *7 (S.D.N.Y. Feb. 8, 2007))). Rather, they argue that their good faith and fair dealing allegations do not duplicate the breach of contract claims. (Id. at 9.) Specifically, Plaintiffs argue that their claim:

> is based on the fact that Phoenix (a) sells and labels the subject [PAUL] policies as "flexible premium universal life" policies, (b) does not disclose in the policies that it will impose higher COI rates for policyholders who utilize the flexible premium feature, and (c) now seeks to punish policyholders who choose to pay flexible premiums and thereby induce the lapse of those policies. Thus, . . . Phoenix could still be found liable for breach of the covenant of good faith and fair dealing for preventing customers from utilizing an essential feature of the contracts – the ability to pay flexible premiums.

(Id. at 10.)

These allegations are not sufficiently distinct to avoid dismissal for redundancy. First, "Parties cannot breach a contract's implied promise of good faith and fair dealing before the

contract is entered into." Echostar, 2007 WL 438088, at *8. The labeling and marketing

Plaintiffs allege under (a) above must by its nature have occurred "before the contract [was]

entered into," and therefore cannot give rise to the breach alleged. Moreover, to the extent that

any such representations were later memorialized in the Policies, any breach of those

representations would inevitably constitute a breach of the express provisions of the Policies, and

thus duplicate Count One. Argument (a) thus must fail.

Arguments (b) and (c) reveal that the actual conduct complained of is that Phoenix raised

COI rates in a way not permitted under the terms of the Policies. Plaintiffs' phrasing, describing

the alleged "punishment" of Plaintiffs and the other potential class members, has changed. But,

the *conduct* alleged is exactly the same as the charge of the express breach of contract claim, not

"a different set of facts from those underlying a claim for breach of contract." Deutsche Bank

Sec., Inc., 578 F. Supp. 2d at 664.

Accordingly, Count Two is dismissed.

## IV.    Plaintiffs' Declaratory Judgment Claim (Count Four) is Dismissed

### a. Legal Standard

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a) (the "DJA"), a court "may

declare the rights and other legal relations of any interested party seeking such a declaration" in

"a case of actual controversy." An "actual controversy" exists if there is a "substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment." Duane Reade, Inc. v. St. Paul Fire & Marine

Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312

U.S. 270, 273 (1941)). The disagreement must "have taken on a fixed and final shape so that a

court can see what legal issues it is deciding." Jenkins v. United States, 386 F.3d 415, 418 (2d Cir. 2004) (quoting Public Serv. Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 244 (1952)).

"Even where an actual controversy has been established, a court must still decide whether it will exercise its discretion to entertain a request for declaratory judgment." Amusement Indus., Inc. v. Stern, 693 F. Supp. 2d 301, 311 (S.D.N.Y. 2010). The DJA "confers a discretion on the courts rather than an absolute right upon the litigant." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995). In deciding whether to exercise its permissive jurisdiction, a district court may consider "equitable, prudential, and policy arguments." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 136 (2007). In determining whether to exercise jurisdiction over a declaratory judgment action, the court should examine the situation in its entirety. Great Am. Ins. Co. v. Houston General Ins. Co., 735 F. Supp. 581, 585 (S.D.N.Y. 1990).

More specifically, in deciding whether to entertain an action for declaratory judgment, a court is to consider "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Amusement Indus., Inc., 693 F. Supp. 2d at 311 (quoting Duane Reade, Inc., 411 F.3d at 389). A court may also consider: "(1) whether the proposed remedy is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (3) whether there is a better or more effective remedy." Amusement Indus., Inc., 693 F. Supp. 2d at 311 (quoting Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359-60 (2d Cir. 2003)).

   **b. Discussion**

Applying these principles, I decline to entertain Plaintiffs' declaratory judgment claim.

14

The relevant count of the Complaint states:

> 67.   Accordingly, plaintiffs seek a declaration (a) that defendants [sic] cannot raise COI rates unless it changes the rates on a uniform basis for an entire class of insureds; (b) that accumulated policy value is not a lawful basis for a change in COI rates, (c) that Phoenix's COI rate increases are improper and invalid, and (d) setting forth the specific guidelines that govern factual circumstances under which Phoenix can increase the cost of insurance rates.

(Compl. ¶ 67.)

Phoenix does not argue the existence of an actual controversy. Rather, Phoenix asserts that this claim is "superfluous" of Plaintiffs' breach of contract claim. (Motion at 11.) In response, Plaintiffs note, correctly, that "declaratory relief is intended to operate prospectively." (Opp'n at 14 (quoting John Wiley & Sons, Inc. v. Visuals Unlimited, Inc., No. 11 Civ. 5453 (CM), 2011 WL 5245192, at *4 (S.D.N.Y. Nov. 2, 2011) (internal citation omitted)).) As discussed in more detail below, however, that the declaratory relief sought addresses future circumstances does not automatically render adjudication of the claim appropriate; rather, it is one factor informing the analysis under the criteria listed above. Here, the declarations Plaintiffs seek involve conduct so similar to that covered by their express breach of contract claim that entertaining the declaratory judgment claim would not satisfy such criteria, regardless of the inclusion of future conduct.

### i.   Declaratory Judgment Would Serve No Useful Purpose

"The fact that a lawsuit has been filed that will necessarily settle the issues for which declaratory judgment is sought suggests that the declaratory judgment will serve 'no useful purpose.'" Amusement Indus., Inc., 693 F. Supp. 2d at 311. See also Intellectual Capital Partner v. Inst. Credit Partners LLC, No. 08 Civ. 10580 (DC), 2009 WL 1974392, at *6 (S.D.N.Y. July 8, 2009) ("declaratory relief would serve no useful purpose as the legal issues will be resolved by

litigation of the breach of contract claim") (citations omitted); <u>Dolphin Direct Equity Partners, LP v. Interactive Motorsports & Entm't Corp.</u>, No. 08 Civ. 1558 (RMB), 2009 WL 577916, at *11 (S.D.N.Y. March 2, 2009) ("Because this Court has already analyzed the parties' rights and obligations under the [contracts] in connection with Plaintiffs' breach of contract claims, a declaratory judgment on the same issues would be superfluous.").

The declaratory judgment Plaintiffs seek would serve no "useful purpose" in the overall context of this litigation. Count One, alleging breach of express provisions of the Policies, fundamentally turns on the permissibility of the COI Increases. (Compl. ¶ 47.) Indeed, it would not be possible for the Court to find in Plaintiffs' favor on that claim without making a determination as to the COI Increases. Each declaration Plaintiffs seek under Count 4 is premised on the same COI Increases. (<u>Id.</u> ¶ 67 (quoted above).) Thus, "Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action." <u>Sofi Classic S.A. de C.V. v. Hurowitz</u>, 444 F. Supp. 2d 231, 249-50 (S.D.N.Y. 2006).

Plaintiffs argue that dismissal is inappropriate, at least with respect to the Second COI Increase, because of the prospective nature of declaratory relief. However, the broad allegations of Count One include a claim for anticipatory breach of contract, rendering declaratory relief superfluous even as to prospective impact.

Plaintiffs allege under Count One (the express breach of contract claim) that "To the extent that Phoenix has announced, but not fully implemented, the second COI increase, Phoenix has *anticipatorily breached* the policies by stating unequivocally that it intends to breach the contract by implementing a COI increase commencing on the first policy anniversary date after

16

November 1, 2011." (<u>Id.</u> ¶ 49 (emphasis added).) In other words, Plaintiffs allege that Phoenix's announced future conduct, the Second COI Increase, will constitute an anticipatory express breach of the affected Policies, and that "As a direct and proximate cause of Phoenix's material breaches of the policies, plaintiffs . . . have been – *and will continue to be* – damaged." (<u>Id.</u> ¶ 50 (emphasis added).)

The Second COI Increase is the very future conduct on which Plaintiffs focus to argue that the claim for declaratory relief is prospective in nature and thus separate from the express breach of contract cause of action. (Opp'n at 13-14.) However, the Court will need to determine whether the Second COI Increase is improper in order to evaluate whether it anticipatorily breaches the Policies under Count One, regardless of whether it has yet taken effect. Thus, any prospective impact of announced or anticipated COI increases are subsumed within Plaintiffs' express breach of contract claim, and no "useful purpose" would be served by a separate declaratory judgment on the propriety of such increases.

Plaintiffs' reliance on <u>Yue v. Conseco Life Ins. Co.</u>, No. 08 Civ. 1506 (AHM), 2011 WL 210943 (C.D. Cal. Jan. 19, 2011), is misplaced. Although <u>Yue</u> involved COI rate increases, the actual conduct of the parties in that case renders it factually inapposite. In <u>Yue</u>, the insurance company had warranted that it "definitively decided not to make the [contested] COI Increase effective and thus [would] not be taking the action that Yue [sought] to enjoin." <u>Id.</u> at *4. It was unwilling, however, to represent that it would not implement similar COI increases in the future, and indeed indicated that it would likely do so in a manner similar to the increase originally contemplated. <u>Id.</u> at *6. Thus, there was no live controversy over the actions originally complained of, but rather only a potential future controversy the lines of which were clearly drawn, and the court therefore found that declaratory relief served a useful purpose. <u>Id.</u>

17

Here, by contrast, the COI Increases have been and are continuing to be implemented, giving rise to the live breach of contract claim. Declaratory relief served a useful purpose in <u>Yue</u> because there was no such actual claim then before that court through which to determine the validity of the COI increases at issue. Because, as discussed above, this Court does have the express breach of contract claim through which to adjudicate the validity of Phoenix's COI Increases, the <u>Yue</u> court's need to turn to declaratory relief is absent.

### ii.      Declaratory Judgment Would Offer No Relief from Uncertainty

Nor would the declaratory relief Plaintiffs seek offer any "relief from uncertainty." As discussed in connection with the "useful purpose" analysis above, adjudication of the breach of contract claim will address the issues of the validity of the COI Increases on which the claim for declaratory relief rests. Thus, any uncertainty regarding the legality of such actions will of necessity be relieved without the need for a declaratory judgment. See <u>Amusement Indus., Inc.</u>, 693 F. Supp. 2d at 312 ("Nor will [a declaratory judgment] serve to 'offer relief from uncertainty' since the litigation on the main claims will necessarily offer that relief"); <u>Intellectual Capital Partner</u>, 2009 WL 1974392, at *6 ("Any 'cloud of uncertainty' regarding the scope and enforceability of the provisions will be dispelled in litigation of the breach of contract claim, which also provides for damages.").

### iii.      There is a Better or More Effective Remedy

Although Plaintiffs' declaratory judgment claim does not engender worries about "procedural fencing" or "friction between sovereign legal systems," there exists nonetheless "a better or more effective remedy": resolution of the basic breach of contract claim. As discussed above, such resolution will answer the questions Plaintiffs raise in this claim, rendering Count Four subject to dismissal. See <u>Amusement Indus., Inc.</u>, 693 F. Supp. 2d at 312 ("there is a 'better

or more effective remedy' than a declaratory judgment action – specifically, the underlying litigation itself. Thus, there appears to be no purpose to the request for declaratory relief"); John Wiley & Sons, Inc., 2011 WL 5245192, at *4 ("When the traditional remedy provides the parties with the procedural safeguards required by the law to insure the availability of a proper remedy, the courts, in exercising their discretion, may properly dismiss the declaratory judgment action.") (quoting Cunningham Bros., Inc. v. Bail, 407 F.2d 1165, 1169 (7th Cir. 1969)).

For all the foregoing reasons, I decline to exercise the Court's discretion to entertain Plaintiffs' claim for declaratory relief, and Count Four is dismissed.

## V.   Plaintiffs' New York General Business Law § 349 Claim (Count Three) is Dismissed

### a.  Legal Standard

New York State law forbids any "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" within New York. N.Y. Gen. Bus. Law § 349 (McKinney's 2011) ("§ 349"). The parties do not dispute that the scope of the statute is broad with respect to the variety of industries covered, including insurance. See, e.g., Wilner v. Allstate Ins. Co., 71 A.D.3d 155 (N.Y. App. Div. 2010).

"To state a cause of action under § 349, a plaintiff must allege (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." Exxonmobil Inter-America, Inc. v. Adv. Info. Eng'g Servs., Inc., 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004). Because Phoenix does not argue that the "misleading in a material respect" portion of the first prong has been met, I will focus here only on the "consumer-oriented" and injury criteria.

19

In order to qualify for § 349 liability, an act must be consumer-oriented. Id. "As shown by its language and background, § 349 is directed at wrongs against the consuming public . . . To state a claim for consumer-oriented deception, a plaintiff must allege that the disputed acts or practices have a broader impact on consumers at large." Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, 85 N.Y.2d 20 (N.Y. 1995).

Whether conduct is "consumer-oriented" turns on several factors. Courts evaluating § 349 claims generally focus on: (i) the amounts at stake, (ii) the nature of the contracts at issue, and (iii) the sophistication of the parties. Interested Underwriters at Lloyd's of London Subscribing to Policy #991361018 v. Church Loans & Invs. Trust, 432 F. Supp. 2d 330, 332 (S.D.N.Y. 2006) (citing N.Y. Univ. v. Continental Ins. Co., 87 N.Y.2d 308, 320-21 (N.Y. 1995)). None of these factors alone is dispositive. See id. Rather, these considerations as a whole are intended to ascertain whether the "disputed acts or practices have a broader impact on consumers at large." Oswego, 85 N.Y.2d at 25.

A § 349 claim must also allege injury resulting from the deceptive act or practice. The legal standard governing the injury requirement under § 349 is more straightforward. The loss suffered as a result of Phoenix's alleged breach of § 349 must be independent of the loss alleged under the breach of contract claim. Spagnola v. Chubb Corp., 574 F.3d 64, 74 (2d Cir. 2009).

**b. Discussion**

The parties understandably devote significant time and space in their papers to the consumer-orientation requirement, including arguments along each of the three factors noted above. However, § 349's requirements are conjunctive. Exxonmobil, 328 F. Supp. 2d at 447 ("a plaintiff must allege (1) a deceptive consumer-oriented act . . . *and* (2) injury") (emphasis

20

added). Because, as discussed below, I dismiss Count Three on the injury ground, I need not reach the consumer-orientation arguments.

Plaintiffs have failed sufficiently to allege a "loss . . . independent of the loss caused by the alleged breach of contract," Spagnola, 574 F.3d at 74. Therefore, they have failed adequately to allege injury under § 349, and the claim must be dismissed.

Plaintiffs, citing no authority to support their assertions, argue that the injury alleged in their § 349 claim differs from that alleged in the breach of contract claim, because Phoenix's alleged misconduct "immediately damaged the resale value of the policies and forced consumers to choose whether to pay higher premiums in the future or lapse their policies," and that this harm began when Phoenix announced each COI Increase. (Opp'n at 27.) They equate their argument on this point with the breach of the implied covenant of good faith and fair dealing claim. (Id.) Plaintiffs are correct that the analyses relating to distinction from the allegations of Count One are similar. As with the implied breach claim, however, they are incorrect in their assertions that a distinction exists and that their claim should proceed.

The § 349 claim, as articulated in the Complaint, alleges that Phoenix "represented that" it "would not raise the COI rates except based on certain factors stated in the Policies, and that Phoenix would not raise the cost of insurance unless it did so for all insureds in a class," (Compl. ¶ 59), but then "punish[ed] consumers for exercising their contractual right to optimize premium payments [by increasing COI rates for policies with low accumulated policy values]," "discriminated within classes of insureds [in raising COI rates for only some]," and "increase[ed] COI rates on the basis of . . . unenumerated factors." (Id. ¶ 60.) Clearly, just like under Count Two, the conduct of which Plaintiffs complain in the § 349 claim stems from Phoenix's allegedly

21

impermissible COI Increases. But, as discussed above in the context of that count, this is the very same conduct giving rise to the express breach of contract claim. (See id. ¶ 47 (quoted above).)

It follows that two claims predicated on the same conduct are likely to involve similar injury. However, Plaintiffs save the Court time analyzing their position by actually alleging the same injury alleged in their breach of contract claim. Plaintiffs point to their allegations that "Phoenix's deceptive conduct" caused "policyholders" either to pay higher premiums or to allow their policies to lapse, leading to lower rates of return. (Opp'n at 27 (citing Compl. ¶¶ 8, 30, 31).) However, the allegations in the Complaint to which they cite attribute these alleged injuries directly to "increasing COI rates based on accumulated policy value," (Compl. ¶ 8), and "The first COI increase," (id. ¶ 30), as well as the "interest rate decrease" which also allegedly "violated the terms of the policies," (id. ¶ 31). These are the exact causes and effects complained of in the express breach claim, (id. ¶ 47). Thus, any loss alleged in connection with Count Three cannot be unique to Count Three, but rather must stem from the alleged breach of contract (Count One). Such a duplicative injury is insufficient to give rise to a § 349 claim. Spagnola, 574 F.3d at 74.

Finally, Plaintiffs allege that the "mere announcement" of the COI increases has damaged the Policies. (Id. ¶ 35; see also Opp'n at 27.) This does not raise a distinct injury for their § 349 claim, for two reasons. First, that this announcement "damaged the resale value of the policies and forced consumers to choose whether to pay higher premiums in the future or lapse their policies," (Opp'n at 27), once again alleges the same nexus as the breach of contract claim, as just discussed. Moreover, as discussed in connection with Count Four above, Plaintiffs explicitly include this very theory in the express breach claim, alleging that "To the extent that Phoenix has announced, but not fully implemented, the second COI increase, Phoenix has anticipatorily

22

breached the policies." (Compl. ¶ 49.) In other words, the announcement is alleged as an anticipatory breach of the Policies, and cannot also be the independent injury required by § 349.

To state a claim for relief under § 349, "a plaintiff must allege (1) a deceptive consumer-oriented act or practice which is misleading in a material respect, *and* (2) injury resulting from such act." Exxonmobil, 328 F. Supp. 2d at 447 (emphasis added). Because Plaintiffs have not plausibly alleged a cognizable injury under § 349, Count Three is dismissed.

### CONCLUSION

For the reasons discussed above, Defendant's partial motion to dismiss is granted. Counts Two, Three, and Four of Plaintiff's Complaint are dismissed, with prejudice.

The Clerk of the Court is directed to remove the motion at Docket No. 16 from the Court's list of outstanding motions.

Dated:  May 1], 2012

_____
U.S.D.J.

[BY ECF TO ALL PARTIES]

23