**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARTIN FLEISHER, AS TRUSTEE OF THE MICHAEL MOSS IRREVOCABLE LIFE INSURANCE TRUST II and JONATHAN BERCK, AS TRUSTEE OF THE JOHN L. LOEB, JR. INSURANCE TRUST, on behalf of themselves and all others similarly situated, | Civil Action No. 11-cv-8405(CM) |
| Plaintiff, | |
| vs. | |
| PHOENIX LIFE INSURANCE COMPANY, | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL TOWERS WATSON TO PRODUCE DOCUMENTS IN COMPLIANCE WITH SUBPOENA FOR DOCUMENTS DUE JULY 23, 2012**

**CONTENTS**

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ..........................................................................................................................4

I.   THE DOCUMENTS ARE DISCOVERABLE BECAUSE TOWERS WATSON PROVIDED ACTUARIAL GUIDANCE AND ITS DOCUMENTS WERE NOT GENERATED "BECAUSE OF" LITIGATION .................4

II.  EVEN IF THE TOWERS WATSON DOCUMENTS WERE SOMEHOW ONCE CONSIDERED PRIVILEGED, PHOENIX WAIVED THE PRIVILEGE THREE SEPARATE TIMES ........................................................8

   A.  Defendant Waived Any Privilege by Failing to File a Timely Motion to Quash (or Any Motion to Quash) ........................................................8

   B.  Defendant Waived Any Privilege by Failing to Provide a Privilege Log for Towers Watson..................................................................................10

   C.  Defendant Waived Any Privilege by Voluntarily Disclosing the Towers Watson Documents to a Government Agency..........................................11

CONCLUSION......................................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Allied Irish Banks, p.l.c. v. Bank of America, N.A.*,
    240 F.R.D. 96 (S.D.N.Y. 2007) ........................................................................................... 6

*Bank of Am., N.A. v. Terra Nova Ins. Co.*,
    212 F.R.D. 166 (S.D.N.Y. 2002) ....................................................................................... 11

*Carey v. Air Cargo Assocs., Inc.*,
    Nos. M18-302, 09-2353, 2011 WL 446654 (S.D.N.Y. Feb. 7, 2011) ................................. 9

*De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*,
    No. 04 Civ. 4099, 2006 WL 357825 (S.D.N.Y. Feb. 15, 2006) ......................................... 6

*Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*,
    215 F.R.D. 466 (S.D.N.Y. 2003) ......................................................................................... 6

*Harris v. Jamaica Auto Repair, Inc.*,
    No. 03-CV-417, 2009 WL 2242355 (E.D.N.Y. July 27, 2009) ......................................... 9

*In re Application for Subpoena to Kroll*,
    224 F.R.D. 326 (E.D.N.Y. 2004) ...................................................................................... 10

*In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*,
    No. 10-md-02124, 2012 U.S. Dist. LEXIS 99865 (N.D. Cal. July 17, 2012) ................... 2

*In re Grand Jury Subpoena dated July 6, 2005*,
    510 F. 3d 180 (2d Cir. 2007) ........................................................................................ 4, 10

*In re Initial Pub. Offering Sec. Litig.*,
    249 F.R.D. 457 (S.D.N.Y. 2008) ....................................................................................... 11

*In re Steinhardt Partners, LP*,
    9 F. 3d 230 (2nd Cir. 1993) .............................................................................................. 11

*Inomed Labs, LLC v. Alza Corp.*,
    211 F.R.D. 237 (S.D.N.Y. 2002) ......................................................................................... 9

*Lindley v. Life Investors Ins. Co. of Am.*,
    267 F.R.D. 382 (N.D. Okla. 2010) ..................................................................................... 2

*Nova Biomedical Corp. v. i-Stat Corp.*,
    182 F.R.D. 419 (S.D.N.Y. 1998) ......................................................................................... 9

*OneBeacon Ins. Co. v. Forman Int't, Ltd*,
    No. 04 Civ. 2271, 2006 WL 3771010 (S.D.N.Y. Dec. 15, 2006) ..................................... 10

*Ratliff v. Davis Polk & Wardwell*,
    354 F.3d 165 (2d Cir. 2003) .......................................................................................... 11

*SEC v. Beacon Hill Asset Mgmt. LLC*,
    231 F.R.D. 134 (S.D.N.Y. 2004) ..................................................................................... 7

*SEC v. Credit Bancorp, Ltd.*,
    No. 99 CIV 11395, 2002 WL 59418 (S.D.N.Y. Jan. 16, 2002) ......................................... 7

*SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*,
    No. 01 CIV, 9291, 2002 WL 1455346 (S.D.N.Y. 2002) ................................................... 5

*United States v. Adlman*,
    134 F.3d 1194 (2d Cir. 1998) ........................................................................................... 5

**Rules**

Fed. R. Civ. P. 45(c)(3)(A)(iii) .................................................................................................. 9

Fed. R. Civ. P. 45(d)(2); ........................................................................................................... 10

**INTRODUCTION**

In 2010, Towers Watson provided actuarial services to the Defendant, Phoenix Life Insurance Company ("Phoenix"), analyzing the cost-of-insurance ("COI") increases at issue in this case. Plaintiffs therefore subpoenaed Towers Watson for documents reflecting those actuarial services. The return date on the subpoena was on July 23, 2012. For three months, Plaintiffs and Towers Watson negotiated a reasonable procedure for the production of documents responsive to Plaintiffs' subpoena. The documents have all been gathered, but instead of complying with the subpoena, Towers Watson refused to produce them to Plaintiffs, claiming that they may contain Phoenix's protected work product or privileged information even though Phoenix never filed a motion to quash the subpoena nor provided a privilege log. Towers Watson does not claim that it possesses any work product or attorney-client privileges in the documents. Rather, it has refused to produce them solely because of *Phoenix's* claimed privileges.

This argument fails for four separate reasons. As an initial matter, the suggestion – with no supporting evidence, privilege log, or otherwise – that these documents might be privileged is patently false. Neither Towers Watson nor Phoenix has identified any attorney-client communications within these third-party documents, and they are not work product because they were not made in anticipation of litigation. In Phoenix's own words, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ In a virtually identical context — except, unlike here, where the insurer-defendant at least provided a privilege log and/or moved for a protective order — the Central District of California recently concluded that such actuarial reports obtained by insurance companies prior to increasing COI rates are *not* protected work product. *In re*

*Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, No. 10-md-02124, 2012 U.S. Dist. LEXIS 99865, at *6-8 (N.D. Cal. July 17, 2012); *see also Lindley v. Life Investors Ins. Co. of Am.*, 267 F.R.D. 382, 399-400 (N.D. Okla. 2010) ("If anything, the review of premium increases and loss ratios is more closely tied to a business function [of an insurer] and more tangential to 'anticipated litigation.'").

Furthermore, even if Towers Watson documents reflecting its third-party actuarial services provided to Phoenix related to the COI increases somehow were Phoenix's privileged documents, Phoenix waived any applicable privilege in three separate and independent ways: (1) by failing to file a timely motion to quash before the return date set forth in the subpoena, (2) by failing to produce a privilege log to justify withholding documents otherwise responsive to the Tower Watson subpoena, and (3) by voluntarily disclosing these documents to the New York State Insurance Department.

Plaintiffs therefore respectfully move this Court to compel Towers Watson to comply with the subpoena and produce the responsive documents under Federal Rule of Civil Procedure 45(c)(2)(B)(i), which have already been gathered and turned over to the Defendant but not to Plaintiffs.

## BACKGROUND

On June 21, 2012, Plaintiffs served Towers Watson with a subpoena to produce documents under Federal Rule of Civil Procedure 45. The return date of the subpoena was July 23, 2012. Declaration of Seth Ard ("Ard Decl."), Ex. A (Subpoena), Ex. B (Proof of Service). Plaintiffs also sent notice of this subpoena to Phoenix on June 21, 2012. *Id.* at Ex. C. Towers Watson replied by letter identifying a number of general objections, but after negotiating with counsel for Plaintiffs, agreed to commence gathering responsive materials. *Id.* at ¶¶ 5-7. July

23, 2012 came and went, and Phoenix offered no objections of its own to the subpoena, never moved to quash, and never provided a privilege log.

In September 2012, Towers Watson indicated that it had "gathered the electronic and paper documents responsive to the subpoena." *Id.* at ¶ 9 & Ex. H.  Instead of producing these documents to Plaintiffs, however, Towers Watson provided only Phoenix with complete access to the documents for it to review.  Towers Watson then communicated to Plaintiffs that it would not produce any of the documents until Plaintiffs conferred with Phoenix about the issue of privilege.  *Id.* at ¶ 10.

Plaintiffs have since spoken with Phoenix several times regarding the Towers Watson documents.  On October 23, 2012, Plaintiffs conferred with Phoenix by phone regarding the Towers Watson subpoena, and Phoenix communicated that it would at some point in the unspecified future produce documents allegedly sufficient to show that the "entire" Towers Watson engagement was privileged.  *Id.* at ¶ 11.  Since then, however, Phoenix has produced nothing to show that the documents were privileged.  The only document Phoenix ever produced specifically mentioning Towers Watson by name was ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at ¶ 13 & Ex. L.

Plaintiffs have repeatedly asked Phoenix to provide documents that would support Phoenix's claim of privilege.  *Id.* at ¶ 11-14.  Plaintiffs have also asked Phoenix to provide a privilege log and at a minimum release any documents relating to the engagement for which Phoenix was not asserting a privilege, such as the engagement letter.  As of the time of this filing, however, neither Phoenix nor Towers Watson has produced a privilege log nor any other document relating to the Towers Watson engagement.

**ARGUMENT**

Plaintiffs are entitled to the Towers Watson COI documents because they are highly relevant — a point that has never been disputed — and are not protected by any privilege. They are clearly not protected by the attorney-client privilege: Towers Watson was providing actuarial advice to Phoenix, not legal advice. Nor or they protected by the work-product privilege. Phoenix itself has referred to these documents as reflecting ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and not materials made in anticipation of litigation. *See* Ard Decl., ¶ 13 & Ex. L (Letter from Phoenix to N.Y. Ins. Dept.).

**I.    THE DOCUMENTS ARE DISCOVERABLE BECAUSE TOWERS WATSON PROVIDED ACTUARIAL GUIDANCE AND ITS DOCUMENTS WERE NOT GENERATED "BECAUSE OF" LITIGATION**

Towers Watson must produce the documents responsive to the subpoena, which they have already gathered, because they are not protected by any privilege. They are not protected by attorney-client privilege. Towers Watson has not identified any attorney involved in creating the Towers Watson's report; indeed, the letter to the New York State Insurance Department ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* Ard Decl., Ex. L (Letter from Phoenix to N.Y. Ins. Dept.). To the Plaintiffs' knowledge, Mr. Buckingham is not a lawyer and has never served in a legal capacity while at Phoenix; instead, he worked in "Product Implementation and Operations." *Id.* at Ex. M (Buckingham Biography).

Neither are they protected by the work-product privilege. "The attorney work product doctrine provides qualified protection for materials prepared by or at the behest of counsel in anticipation of litigation or for trial." *In re Grand Jury Subpoena dated July 6, 2005*, 510 F. 3d 180, 184 (2d Cir. 2007) (quotation marks omitted). The party invoking the privilege bears the

"heavy burden" of establishing its applicability. *Id.* The actuarial guidance provided by Towers Watson is not work-product because it was not made in anticipation of litigation.

To be prepared in anticipation of litigation, Phoenix must show a causal link between the prospect of impending litigation and the creation of the materials at issue, *i.e.*, that the Towers Watson documents were prepared "*because of* the prospect of litigation." *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998) (internal quotation marks omitted). This test is known in the Second Circuit and elsewhere as the "because of" formulation of the work-product doctrine. *Id.* Materials prepared in the ordinary course of business that would have been prepared irrespective of the potential for litigation cannot be shielded from discovery on the basis that such documents might simultaneously help in the event of future litigation. *Id.* Documents prepared with an eye toward avoiding litigation are also not protected if they would have been prepared *regardless* of whether suit was later filed. *See SR Int'l Bus. Ins. Co. v. World Trade Ctr. Props. LLC*, No. 01 CIV. 9291, 2002 WL 1455346, at *3-4 (S.D.N.Y. 2002). The key inquiry is therefore whether Phoenix (even had it moved to quash or produced a privilege log) can demonstrate that it would not have retained Towers Watson to offer actuarial guidance but for the prospect of litigation. Phoenix's letter to the New York State Insurance Department makes clear that they have not and cannot meet that burden.[1]

In this Circuit, the list of cases denying work-product protection to business services like those provided by Towers Watson is extensive. In *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, for example, the court held that business-strategy services provided by a management consulting firm were not protected work product even though the party

---

[1] For example, here, Plaintiffs seek COI documents that, among other things, include documents that Towers Watson created prior to March 2010, when policyholders received the first letter announcing the first COI increase. *See, e.g.,* Complaint ¶ 10 and Ard Decl., Ex Q. It would have been *impossible* for any specific claims to have arisen before policyholders received and could react to the March 2010 letter, yet Towers Watson will not even produce documents generated before Phoenix sent the March 2010 letter.

"contemplated the possibility that litigation would arise out of the decisions it was preparing to make." No. 04 Civ. 4099, 2006 WL 357825, at *1 (S.D.N.Y. Feb. 15, 2006). A similar result was reached in *Gulf Islands Leasing, Inc. v. Bombardier Capital, Inc.*, where the court held that communications between subsidiaries reflecting potential debt payoff calculations in the event of settlement were not protected work product because the communications were "routine" and part of the party's "regular business," and the threat of future litigation was only speculative. 215 F.R.D. 466, 475-76 (S.D.N.Y. 2003). And again, in *Allied Irish Banks, p.l.c. v. Bank of America, N.A.*, the court held that the defendant's decision to commission a report analyzing when and why certain losses occurred — even in the midst of contemplating the potential of litigation over those same losses — was not enough to show that the report was commissioned *because of* the potential of litigation. 240 F.R.D. 96, 106 (S.D.N.Y. 2007).

Here, as in *DeBeers*, *Gulf Streams*, and *Allied Irish*, Phoenix (even had it filed a motion to quash or produced a privilege log) cannot demonstrate that Phoenix engaged Towers Watson because of litigation; rather, Phoenix hired Towers Watson to provide, in Phoenix's words, ███████████████████████ *See* Ard Decl., Ex. L. Phoenix told the New York State Insurance Department ███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████

████████████ *Id.* In this context, Towers Watson's actuarial guidance was clearly sought in order to obtain business advice, not legal advice.

The letter from Phoenix to the New York insurance regulators is also consistent with how Towers Watson advertises its services to insurers. Towers Watson's website states that "Towers Watson's insurance consulting business helps clients *improve business performance*." Ard Decl., Ex. N (emphasis added). Materials produced by third-parties hired to "solve practical business problems," *id.*, are not materials produced in anticipation of litigation. *See, e.g.*, *SEC v. Credit Bancorp, Ltd.*, No. 99 CIV 11395, 2002 WL 59418, at *2-3 (S.D.N.Y. Jan. 16, 2002) (holding that documents prepared by insurance company to evaluate insurance claims were not prepared in anticipation of litigation); *SEC v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 143-44 (S.D.N.Y. 2004) (holding no work product protection for quantitative analysis regarding whether fund at issue had suffered a loss). The New York State Insurance Department, in fact, described ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ard Decl., Ex. R. Lest there could be any doubt regarding the motivation for obtaining the Towers Watson report, Phoenix's own admission ████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████ Ard. Decl., Ex. L at 1, Ex. M.

Towers Watson was therefore engaged to provide additional actuarial support for a business decision, namely, raising the COI rates at issue in this case. The report was created in April 2010; the complaint in this case was not filed until over a year and a half later in November 2011. Nothing in the record suggests that the potential of litigation even tangentially motivated

the Towers Watson engagement, to say nothing of satisfying the more rigorous "because of" litigation test.

Neither Phoenix nor Towers Watson has ever disputed that the documents in question are relevant under Federal Rule of Civil Procedure 26(b)(1). The documents have been gathered, and the only remaining bar to their production is Towers Watson's failure to produce. With no evidence ever offered to support such a privilege, Towers Watson should be compelled to produce all documents responsive to the subpoena for documents that were due long ago, on July 23, 2012.

## II. EVEN IF THE TOWERS WATSON DOCUMENTS WERE SOMEHOW ONCE CONSIDERED PRIVILEGED, PHOENIX WAIVED THE PRIVILEGE THREE SEPARATE TIMES

Towers Watson is not excused from complying with the subpoena simply because Phoenix now contends the evidence is entitled to work-product protection, because even if such a privilege once applied (which it never did), Phoenix waived its rights under the privilege not once, but on three separate occasions. First, Phoenix failed to file a timely motion to quash the Towers Watson subpoena on the basis of privilege. Second, Phoenix has submitted no privilege log with respect to the withheld Towers Watson documents, or assisted Towers Watson in completing one, despite repeated requests from Plaintiff to do so, and despite documents being due under the subpoena more than four months ago. And finally, Phoenix voluntarily submitted the Towers Watson documents to a government agency during an investigation into Phoenix's practices.

### A. Defendant Waived Any Privilege by Failing to File a Timely Motion to Quash (or Any Motion to Quash)

Phoenix waived any privilege by failing to assert its rights in a timely fashion. Federal Rule of Civil Procedure 45(c)(3) requires a court "[o]n timely motion" to quash a subpoena that

"requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(c)(3)(A)(iii).  A motion to quash is considered "timely" under the Rule if it is filed before the service date.  *Nova Biomedical Corp. v. i-Stat Corp.*, 182 F.R.D. 419, 422 (S.D.N.Y. 1998).  The return date in the Towers Watson subpoena, which was sent to Phoenix on June 21, 2012, was July 23, 2012.  *See* Ard Decl., Exs. A, B, C.  No timely motion to quash has been filed.

Courts in the Second Circuit routinely hold that failure to file a timely motion to quash operates as a waiver of any objections to the subpoena.  *See Carey v. Air Cargo Assocs., Inc.*, Nos. M18-302, 09-2353, 2011 WL 446654, at *3 (S.D.N.Y. Feb. 7, 2011) (refusing to quash subpoena based on objections filed after return date); *Harris v. Jamaica Auto Repair, Inc.*, No. 03-CV-417, 2009 WL 2242355, at *2 (E.D.N.Y. July 27, 2009) (refusing to consider late objections to subpoena because objecting party failed to file timely motion to quash).  In *Carey*, for example, the court ruled that the recipient of a subpoena waived any objections to the validity of the subpoena by failing to file a timely motion to quash as required by the rules.  2011 WL 446654, at *3.  "[T]he proper procedural mechanism to challenge the validity of a subpoena is a timely motion to quash."  *Id.*  Although some courts have exercised their discretion to consider late-filed motions to quash in "unusual circumstances," those cases have typically involved overly broad subpoenas or other written objections that could be construed as a motion to quash. *See, e.g.*, *Inomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (denying motion to compel second deposition of non-party because of procedural deficiency, but chastising subpoena recipient for its own "blatant disregard of the subpoena").  Such extenuating circumstances are not present in this case.

Here, after numerous meet and confers to narrow the request, the only final objection Towers Watson made to justify its non-compliance with the subpoena was Phoenix's concern over privilege.  *See* Ard Decl., Ex. I.  There are no other issues before the court, and the responsive documents have already been gathered.  Phoenix simply chose not to file any motion for the last four months, and then refused to produce any documents to support its claim of privilege despite repeated promises to do so.  It is too late for Phoenix to assert a privilege claim now.

### B.      **Defendant Waived Any Privilege by Failing to Provide a Privilege Log for Towers Watson**

Federal Rule of Civil Procedure 45(d)(2) further provides that when material is withheld on the basis of privilege, the person must "expressly make the claim," and "describe the nature of the withheld documents, communications or tangible things in a manner that . . . will enable the parties to assess the claim."  Fed. R. Civ. P. 45(d)(2); *see also* Local Rule 26.2.  A failure to produce a privilege log in response to a subpoena under Rule 45 waives any privilege.  *See OneBeacon Ins. Co. v. Forman Int't, Ltd*, No. 04 Civ. 2271, 2006 WL 3771010, at *8 (S.D.N.Y. Dec. 15, 2006) (holding failure to produce privilege log in response to Rule 45 subpoena waived underlying claim of privilege); *In re Application for Subpoena to Kroll*, 224 F.R.D. 326, 328 (E.D.N.Y. 2004) (same); *see also In re Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001) ("A party that fails to submit a privilege log is deemed to waive the underlying privilege claim.").

Towers Watson has not produced a privilege log at all – nothing that details which documents it is withholding and why; neither has Phoenix.  Towers Watson therefore should be ordered to produce to Plaintiffs documents responsive to the subpoena.

### C. Defendant Waived Any Privilege by Voluntarily Disclosing the Towers Watson Documents to a Government Agency

Plaintiffs are entitled to view these documents because Phoenix voluntarily submitted Towers Watson's final report to the New York State Insurance Department in 2010 to defend against the state agency's investigation into Phoenix's unlawful COI hikes. As a result, the privilege has been voluntarily waived for the entire set of documents relating to Towers Watson's engagement.

In the Second Circuit, if a party voluntarily discloses documents to a regulatory agency, the party waives the work product and attorney product privileges in those documents. *See Ratliff v. Davis Polk & Wardwell*, 354 F.3d 165, 170 (2d Cir. 2003) (holding that any attorney-client privilege was lost when party voluntarily authorized to send the documents to the SEC); *In re Steinhardt Partners, LP*, 9 F. 3d 230, 235 (2nd Cir. 1993) (party waived any work product protection by submitting the memorandum to the SEC without court order); s*ee also In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 466-67 (S.D.N.Y. 2008) (party waived work product privilege by voluntarily disclosing documents to federal regulatory agencies and noting that "there is a strong presumption against a finding of selective waiver, and it should not be permitted absent special circumstances."). Here, Phoenix voluntarily supplied the New York State Insurance Department with Towers Watson's report without any compulsion or court order. *See* Ard Decl., Ex. L; *see also Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 171 (S.D.N.Y. 2002) (holding similar disclosures by insurance company to New York State Insurance Department were voluntary). Phoenix also undeniably stood in an adversarial relationship with the New York State Insurance Department, ████████████████████ ████████████████████████████████████████████. Ard Decl., Ex. S; *see also In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. at 465 (finding waiver applied because

the regulatory agencies "were investigating the possibility of wrongdoing, and [defendant] disclosed the [document] to escape or limit liability"). Phoenix, in fact, initially hoped not to produce the Towers Watson documents to the insurance regulators on the grounds of privilege.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ard Decl., Ex. R.  Phoenix's disclosure therefore waived any privilege that may have applied to these documents.

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully ask this Court to compel Towers Watson to comply with the subpoena to produce documents, in compliance with a subpoena served almost five months ago for documents that were due nearly four months ago.  The documents should be ordered to be produced within one week of the Court deciding this motion, especially since Towers Watson has informed Plaintiffs that it has already collected the documents responsive to the subpoena.

Dated: November 19, 2012

                                                   */S/ Seth Ard*_____
                                                   Seth Ard
                                                   SUSMAN GODFREY LLP
                                                   560 Lexington Avenue, 15th Floor
                                                   New York, NY  10022
                                                   Tel.:   212-336-8330
                                                   Fax:   212-336-8340
                                                   sard@susmangodfrey.com

                                                   Steven G. Sklaver (*pro hac vice*)
                                                   Frances S. Lewis
                                                   SUSMAN GODFREY LLP
                                                   1901 Avenue of the Stars, Suite 950
                                                   Los Angeles, CA 90067-6029

       Tel:   310-789-3100
       Fax:  310-789-3150
       ssklaver@susmangodfrey.com
       flewis@susmangodfrey.com

*Attorneys for Plaintiffs*