UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN FLEISHER, AS TRUSTEE OF THE MICHAEL MOSS IRREVOCABLE LIFE INSURANCE TRUST II and JONATHAN BERCK, AS TRUSTEE OF THE JOHN L. LOEB, JR. INSURANCE TRUST, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PHOENIX LIFE INSURANCE COMPANY,<br><br>Defendant. | Civil Action No. 11-cv-8405(CM)(JCF) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS BY A DATE CERTAIN**

This motion to compel raises a simple issue: how long can Defendant Phoenix Life Insurance Company ("Phoenix") delay production of documents responsive to a document request that issued 11 months ago? Plaintiffs served their first request for production of documents to Phoenix on December 20, 2011 and responsive documents were due on January 19, 2012. Ex. 1. More than 11 months later, Phoenix's document production remains substantially incomplete. While Phoenix has made slow-rolling productions, it recently estimated that it will not complete its production for several more months. Ex. 2. The resulting delay that Phoenix proposes of over a year is far too long. Because the parties' stipulated proposed discovery schedule calls for Plaintiffs' expert report to be submitted on April 1, 2013, (Dkt # 36), and Plaintiffs will likely need to request more documents after reviewing Phoenix's forthcoming productions, Plaintiffs will be unfairly prejudiced if Phoenix does not immediately

1

complete its production of documents responsive to the 2011 document request. Plaintiffs therefore request that the Court order that Phoenix produce all documents responsive to Plaintiffs' first request for production served on December 20, 2011 by the one-year anniversary of that service date, December 20, 2012 (or within two weeks of the Court's decision on this motion, whichever is later).

### 1. Phoenix's COI Hikes and Plaintiffs' December 2011 Request for Production

The facts of this case are relatively straightforward. Plaintiffs, individually and on behalf of similarly-situated class members, allege that Phoenix breached the terms of their insurance contract by unlawfully raising the cost-of-insurance ("COI") rates. The policies at issue are all premium-adjustable, universal life ("PAUL") policies. The principal benefit of PAUL policies is they permit policyholders to pay the minimum amount of premiums necessary to keep the policies in force. As in the related case, *US Bank National Association v. PHL Variable Insurance Company*, 12 Civ. 6811 (CM) (JCF), there is no fixed monthly premium for these policies, but the account must be sufficient to cover fees, including the cost of insurance ("COI") fees. The PAUL policies permit the insurer to adjust the COI fees, but only based on certain specified factors. Plaintiffs allege that Phoenix, in violation of the policy terms, has dramatically increased COI rates on certain PAUL policyholders who exercise their contractual right to keep their policy values as low as possible – and has specifically targeted life settlement investors in a discriminatory fashion. Phoenix has done this in order to increase its fees and to induce "shock lapse" – that is to induce policyholders to allow policies to lapse, thereby relieving Phoenix of the risk of having to pay out on the policy. Plaintiffs first set of document requests, served on December 20, **2011**, seek documents relating to the first, second, and third COI increases

imposed by Phoenix, including documents showing the affected policies, the reasons for the COI increases, and the methodology used to determine the extent and scope of the COI increases.

**2.   Phoenix Has Slow-Rolled Its Production**

On April 13, 2012 – four months after receiving the December 2011 document requests – Phoenix for the first time proposed *search terms* for its electronic documents (ESI), without any explanation for why it had waited four months to propose search terms.  Ex. 3.  As of this time, Phoenix had made a limited hard-copy production and no production of ESI.  Eleven days later, on April 24, 2012, Plaintiffs suggested additional search terms to run, noting that Plaintiffs were not in a position to provide complete search terms until Phoenix completed its production of the initial search term hits, and urging Phoenix to expedite its production given that the document requests had been served more than four months previously.  Ex. 4.  On May 2, 2012, Phoenix provided plaintiffs with a list of the search terms it agreed to run.  Ex. 5.  On July 6, 2012, Plaintiffs informed Phoenix that Plaintiffs objected to the fact that more than six months had elapsed since the document requests were issued, and Phoenix's production remained largely incomplete.  Ex. 6.  On July 27, 2012, Phoenix informed Plaintiffs that the search terms Phoenix had agreed to run almost two months earlier yielded too many documents and Phoenix proposed to reduce the search terms.  Ex. 5.  Phoenix estimated that, with its proposed search term limitations, it would be able to "complete" production within "a minimum of several additional months" and said that if this "timetable is objectionable," it would have to reduce the search terms further.  *Id.*  On August 24, 2012, Phoenix stated that it "remained willing to meet and confer regarding additional targeted searches of the email data set if plaintiffs believe, after reviewing PLIC's *entire* email production, responses to its requests remain unfulfilled."  Ex. 7 (emphasis added).  That production is still not complete and Phoenix now estimates it may take

"several more months" to complete production of documents that hit its initial search terms.  Ex. 2.  During this time, Phoenix has made a disjointed production with no firm statement of what remains to be produced.  Ex. 8 (production log).

### 3. Phoenix's Production Remains Substantially Incomplete

During an October 23, 2012 phone meet and confer meeting, Phoenix estimated that it will take it "several more months" to complete its production of documents responsive to the December 2011 requests.  Ex. 2.  On November 1, 2012, Plaintiffs followed up on this call by outlining many of the outstanding deficiencies in Phoenix's production.  *Id.*  These included Phoenix's failure to complete production of: all communications with New York regulatory agencies regarding the COI increases that are the subject of this suit; all documents provided to or from any third party actuarial firm concerning the COI increases; all the experience studies that Phoenix used to determine whether a COI increase was necessary; the methodology Phoenix used to determine the appropriate interest rate to use; and several more categories of documents.  *Id.*  Phoenix replied only that it has produced many of these documents and "will continue to produce any additional [documents] uncovered in [Phoenix's] continued review."  *Id.*  Of course, because of the disjointed manner in which documents have been produced, Plaintiffs have no way of knowing what categories of documents remain outstanding – and based on Phoenix's responses, Phoenix likely does not either.  The only thing that is clear is that there is much that remains to be produced by Phoenix and Phoenix will not agree to a date certain in the near future by which that production will be complete.

In an effort to avoid motion practice, Plaintiffs asked Phoenix last week to confirm that it could complete its initial production by December 20, 2012 – the one-year anniversary of the service of the document requests.  Ex. 9.  Phoenix refused and said only that it would be willing

to discuss a "timetable for what remains to be done" and suggested that many deficiencies in its production will be cured in its "next production that [it] anticipate[s] making near the end of this month." Ex. 10.

### 4. Plaintiffs' Will Suffer Unfair Prejudice If Documents Responsive to the December 2011 Requests Are Not Produced Immediately

Under the propose discovery schedule stipulated to between the parties, plaintiffs' expert report is due on April 1, 2013.  Dkt # 36.  By Phoenix's current, open-ended estimate, Phoenix may not complete production of documents responsive to its initial search terms before that deadline.  That would, of course, create severe, unfair prejudice.

More troubling still, there will likely be a need for much more document discovery after this initial production is complete.  When documents are produced, new issues inevitably arise that require more time to resolve.  For example, in the first wave of document production, Plaintiffs learned that Phoenix used the term "Project X" as the code name to refer to the first COI increase– the heart of this lawsuit. Ex. 11.  And yet, Phoenix did not even propose 'Project X' as a relevant search term for its own documents.  As a result, Plaintiffs recently had to serve a new document request for Phoenix that would require Phoenix to run 'Project X' as a search term.  Ex. 12.  This will cause further delay given Phoenix's glacial approach to completing document production.  Phoenix has recognized this fact and even said that it does not wish to discuss additional search terms until it has completed its "entire" email production.  Ex. 7.  Given the proposed discovery deadlines, Phoenix must immediately produce all documents responsive to the search terms it proposed over six months ago, for document requests served nearly twelve months ago, failing which Plaintiffs will suffer considerable unfair prejudice.

Courts have routinely criticized – and even sanctioned – parties for making slow, disjointed document productions of the type conducted by Phoenix here.  *See, e.g.*, *Lava*

*Trading, Inc., Hartford Fire Ins. Co.*, 2005 WL 459267 *9 (S.D.N.Y. 2005) (granting sanctions in part because "plaintiff has engaged in an excruciatingly slow and disjointed disclosure of documents, stretching over a period of one year, under the guise of a 'rolling' production or a production in 'waves.' . . . Although the documents in question were certainly voluminous . . . [and] although more than the normal thirty days might well have been required for full compliance with the first request, plaintiff surely did not require one year."); *Phoenix Four, Inc. v. Strategic Res. Corp.*, 2006 WL 1409413, at *9, 2006 U.S. Dist. LEXIS 32211, at *28–29 (S.D.N.Y. May 23, 2006) (ordering dilatory party to pay costs of sanctions motion and $10,000 for each re-deposition after party produced 200-300 boxes of documents nine months after document requests were served); *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 2008 U.S. Dist. LEXIS 46605 (W.D. Pa. June 16, 2008) ("STA served its First Request for Production of Documents and ESI on Hoosier on January 10, 2008. Pursuant to Federal Rule of Civil Procedure 34, Hoosier's response was due on or before February 12, 2008. It is now four (4) months past the time that Hoosier's responses were due and the production apparently is not complete. It appears to the Court that STA has been more than patient with Hoosier on its discovery requests."); *Cochran v. City of Huntington*, 2006 U.S. Dist. LEXIS 39516, at *9 (N.D. Ind. Mar. 31, 2006) (granting motion to compel where the responding party failed to complete production within four months).  Plaintiffs do not seek sanctions. Plaintiffs simply seek documents.  For the foregoing reasons, Plaintiffs respectfully ask the Court to order Phoenix to complete its production of documents responsive to Plaintiffs' December 20, 2011 document request by December 20, 2012 (or within two weeks of deciding this motion, whichever is later).[1]

---

[1] After Judge McMahon referenced this dispute to Your Honor, Phoenix sent a letter to Judge

Dated: November 19, 2012

                                                  */s/ Seth Ard*
                                                  Seth Ard
                                                  SUSMAN GODFREY LLP
                                                  560 Lexington Avenue, 15th Floor
                                                  New York, NY  10022
                                                  Tel.:    212-336-8330
                                                  Fax:    212-336-8340
                                                  sard@susmangodfrey.com

                                                  Steven G. Sklaver (*pro hac vice*)
                                                  Frances Lewis
                                                  SUSMAN GODFREY LLP
                                                  1901 Avenue of the Stars, Suite 950
                                                  Los Angeles, CA 90067-6029
                                                  Tel:    310-789-3100
                                                  Fax:    310-789-3150
                                                  ssklaver@susmangodfrey.com


                                                  *Attorneys for Plaintiffs*

---

McMahan noting that it had produced 560,000 pages of documents, whereas Plaintiffs have only produced 1,100 pages. This is irrelevant and not surprising. There are two Plaintiffs, who sue Phoenix for breaching a contract by discriminating against certain members of an insurance class. Not surprisingly, Phoenix has the vast majority of the relevant documents. Leaving aside a few disputes, Plaintiffs have produced all responsive documents.