UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| | : | ECF Case |
| MARTIN FLEISHER, as trustee of the Michael | : | |
| Moss Irrevocable Life Insurance Trust II, and | : | Case No. 11 Civ. 8405 (CM) |
| JONATHAN BERCK, as trustee of the John L. | : | |
| Loeb, Jr. Insurance Trust, on behalf of themselves | : | **DECLARATION OF JASON H.** |
| and all others similarly situated, | : | **GOULD IN SUPPORT OF** |
| | : | **DEFENDANT PHOENIX LIFE** |
| Plaintiffs, | : | **INSURANCE COMPANY'S** |
| | : | **OPPOSITION TO PLAINTIFFS'** |
| vs. | : | **MOTION TO COMPEL** |
| | : | **PRODUCTION OF** |
| PHOENIX LIFE INSURANCE COMPANY, | : | **DOCUMENTS BY A DATE** |
| | : | **CERTAIN** |
| Defendant. | : | |
| | : | |

I, Jason H. Gould, declare as follows:

1.      I am a member of the New York and District Columbia bars, and am a member of the bar of this Court.  I am a partner with the law firm of Jorden Burt LLP.

2.      I am one of the counsel representing defendant Phoenix Life Insurance Company in the above-captioned action.  I also represent a Phoenix affiliate, defendant PHL Variable Insurance Company, in two related actions pending in this Court, *U.S. Bank National Association, as securities intermediary for Lima Acquisition LP v. PHL Variable Insurance Co.*, No. 12 Civ. 6811, and *Tiger Capital, LLC v. PHL Variable Insurance Co.*, No. 12 Civ. 2939.

3.      I submit this declaration in support of Phoenix's opposition to plaintiffs' motion to compel production of documents by a date certain, ECF No. 42.  I have personal knowledge of the facts set forth below and, if called upon to do so, could testify competently thereto.

4.      Plaintiffs have not fulfilled their meet-and-confer obligations.  At the time their motion to compel was filed on the evening of November 19, 2012, the parties had tentatively discussed plaintiffs' concerns regarding Phoenix's document production timetable, but they had

1

not discussed Phoenix's proposals to alleviate plaintiffs' concerns and to avoid formal motion practice.

5.     Before plaintiffs filed their motion to compel, Phoenix intended to propose to plaintiffs: (1) document production completion dates alternative to December 20, 2012; (2) discussing prioritization of the production of certain documents or categories of documents; and (3) shifting the costs of accelerated discovery to plaintiffs, in full or in part.  The parties have not yet meaningfully conferred on these proposals.

6.     A true and correct copy of the correspondence exchanged between counsel for Phoenix and counsel for plaintiffs on November 19, 2012 is attached hereto as Exhibit A.

7.     Phoenix has made substantial, regular productions on rolling basis in response to plaintiffs' first set of requests for documents, including productions made this year on February 3, February 8, February 15, February 29, March 15, April 9, May 7, May 22, July 19, August 16, August 27, October 3, November 8, and November 30.

8.     To date, Phoenix has produced 590,852 individually Bates-stamped pages.  In addition, Phoenix has produced 1,935 native-format spreadsheets that, if paginated, would constitute at least tens of thousands of additional pages.  Phoenix's total document production to date thus far exceeds 600,000 pages.

9.     To accomplish this, to date Phoenix has paid its third-party e-discovery and legal staffing vendors alone nearly $734,000.  That number does not include the additional hundreds of thousands of dollars Phoenix has paid its litigation counsel in connection with their discovery efforts on Phoenix's behalf.

2

10.     Phoenix has been coordinating with counsel in the *Fleisher*, *U.S. Bank*, and *Tiger Capital* actions to ensure a systematic and thorough document collection for all plaintiffs, and to sculpt the contours of appropriate discovery.

11.     The *U.S. Bank* plaintiff continues to serve additional sets of requests for production, including having served a second set on October 16, 2012, raising the total number of the *U.S. Bank* plaintiff's requests for production to 89.  In addition, the *U.S. Bank* parties are engaged in ongoing disputes and negotiations over the appropriate scope of discovery.  Those disputes may require the Court's intervention at an unknown future time.

12.     On November 11, 2012, plaintiffs served a second set of requests for production on Phoenix.  Phoenix anticipates that the documents responsive to the second set of requests for production will be largely subsumed by the documents Phoenix produces in response to plaintiffs' first set of requests for production.

13.     No depositions have been scheduled by the parties in the *Fleisher*, *U.S. Bank*, and *Tiger Capital* actions.

14.     Phoenix's email archiving system, Autonomy Zantaz, drops single characters like "X" during searches.  A search using the term "Project X" would thus return all documents containing only the word "Project," swamping the search results with false positives.

15.     Approximately 130,000 documents remain to be reviewed for potential responsiveness to plaintiffs' first set of requests for production.  The pages constituting this repository are likely multiples of that number.

16.     Most of the documents remaining to be reviewed for potential responsiveness to plaintiffs' first set of requests for production are intracorporate communications that will

necessitate a detailed privilege review and the selective redaction of commercially sensitive irrelevant information.

17.     Given the complexity of the subject matter and the nuances of this litigation, it would likely take many weeks for Phoenix to properly train and acclimate new document reviewers.

18.     May 31, 2013 represents the earliest estimated date by which Phoenix can be reasonably expected to complete its production under the circumstances.  Phoenix conservatively estimates that it will take at least until the end of March 2013 to complete its first-level review alone of the 130,000 unreviewed documents.

19.     It is difficult to accurately estimate the time necessary for Phoenix to complete its second-level review, as the universe of documents subject to second-level is, obviously, unknown at this time.  Phoenix nonetheless aggressively estimates it will take an additional two months to complete its second-level review.

20.     While Phoenix hopes to complete its production before May 31, 2013, it cannot predict with reasonable certainty that it can.

21.     At first-level review, Phoenix's attorneys are, in general, making threshold determinations of responsiveness to the document requests, and initially evaluating responsive documents for confidentiality, privilege, protection, or centrality to the litigation.  They also are performing initial redactions of personally or commercially sensitive nonresponsive information.

22.     At second-level review, Phoenix's attorneys are, in general, undertaking a heightened level of review and analysis of documents designated responsive, including decisions

5

regarding responsiveness, privilege and redaction determinations and confidentiality designations.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Dated: Washington, DC
      December 5, 2012

Jason H. Gould