UNITED STATES DISTRICT COURT                    (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -:
MARTIN FLEISHER, as trustee of      : 11 Civ. 8405 (CM) (JCF)
the Michael Moss Irrevocable Life   :
Insurance Trust II and JONATHAN     :       MEMORANDUM
BERCK, as trustee of the John L.    :       AND  ORDER
Loeb Jr. Insurance Trust, on behalf :
of themselves and all others        :
similarly situated,                 :
                                    :
                 Plaintiffs,        :
                                    :
     - against -                    :
                                    :
PHOENIX LIFE INSURANCE COMPANY,     :
                                    :
                 Defendant.         :
- - - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

    This case involves claims that Phoenix Life Insurance Company

("Phoenix") violated contractual obligations by improperly raising

the   cost-of-insurance   ("COI")   rates   on   premium-adjustable,

universal life insurance ("PAUL") policies.   The plaintiffs now

move pursuant to Rule 37 of the Federal Rules of Civil Procedure

for an order compelling Phoenix to complete production of documents

responsive to the plaintiffs' first set of requests within two

weeks.

Background

    The facts relating to the plaintiffs' substantive claims are

set forth in detail in a decision in a related case, U.S. Bank

National Association v. PHL Variable Insurance Co., No. 12 Civ.

1

6811, 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012), and will be summarized only briefly here.  The PAUL policies at issue allow policyholders to choose the amount they pay into their policy accounts each month as long as the account balance is sufficient to cover policy charges, including a cost of insurance charge.  The policies permit the insurer to adjust cost of insurance rates, but only based on certain specified factors, the most significant of which is mortality.  The plaintiffs allege that Phoenix has increased its cost of insurance rates notwithstanding the fact that life expectancy has increased.  According to the plaintiffs, Phoenix has done this to inflate its fees and to prompt policyholders to allow their policies to lapse, thus relieving Phoenix of the risk of ever having to pay out on the policies.

The plaintiffs served their First Set of Document Requests Directed to Defendant Phoenix Life Insurance Company ("Plaintiffs' First Document Requests") on December 21, 2011.  (Exh. 1 to Declaration of Seth Ard dated Nov. 19, 2012 ("Ard Decl.")).  Since that time, Phoenix has produced over 600,000 pages in response.  (Defendant Phoenix Life Insurance Company's Memorandum of Law Opposing Plaintiffs' Motion to Compel Production of Documents By a Date Certain ("Def. Memo.") at 1; Declaration of Jason H. Gould dated Dec. 5, 2012 ("Gould Decl."), ¶ 8).  It has yet to review approximately 130,000 documents that have been collected.  (Gould

Decl., ¶ 15).  According to the plaintiffs, production has not been completed in several major categories, including (1) communications with New York State regulatory agencies concerning the COI increases at issue, (2) documents exchanged with outside actuarial firms relating to the COI increases, (3) experience studies used by Phoenix to evaluate the necessity of a COI increase, and (4) documents concerning the methodology used by Phoenix to determine the appropriate interest rate.  (E-mail from Jason H. Gould to Steven G. Sklaver dated Nov. 9, 2012, attached as Exh. 2 to Ard Decl.).

Although the plaintiffs served their document request in December 2011, Phoenix first proposed search terms for collecting electronically stored information on April 13, 2012. (Letter of Jason H. Gould dated April 13, 2012, attached as Exh. 3 to Ard Decl.).  On April 23, 2012, the plaintiffs proposed additional search terms (Letter of Steven G. Sklaver dated April 23, 2012, attached as Exh. 4 to Ard Decl.), and on May 2, 2012, Phoenix provided a list of the terms it agreed to run (Letter of Jason H. Gould dated July 27, 2012 ("Gould 7/27/12 Letter"), attached as Exh. 5 to Ard Decl., at 1).  At the end of July, Phoenix announced that the stipulated search terms had returned too many documents and that it would take several months to complete production based on a reduced set of search terms.  (Gould 7/27/12 Letter).  In

addition, limitations in Phoenix's search capabilities have come to light.  For example, although "Project X" was the code name that Phoenix assigned to the first COI increase, it did not suggest "Project X" as a search term, apparently because its search engine drops single characters like "X", which would have resulted in a search for "Project X" returning every document containing the word "project."  (Memorandum of Law in Support of Plaintiff's [sic] Motion to Compel Production of Documents By a Date Certain ("Pl. Memo.") at 5; "Update on Project X," attached as Exh. 11 to Ard Decl.; Def. Memo. at 10 n.5; Gould Decl., ¶ 14).

Additional factual background will be provided in connection with the legal analysis below.

Discussion

Phoenix contends that the plaintiffs' motion should be denied on the ground that they did not comply with the requirement to meet and confer in good faith.  (Def. Memo. at 3-5).  On the merits, Phoenix maintains that the delay in completing production has resulted from the sheer volume of information requested, and that any prejudice to the plaintiffs can be ameliorated by prioritizing the remaining disclosures.  (Def. Memo. at 5-7, 9-11).  Phoenix argues that it cannot fully comply with Phoenix's discovery demands until it has completed production in the U.S. Bank case because one of the categories of documents sought by the plaintiffs here is all

4

documents produced in that action.  (Def. Memo. at 7-8).  Further, Phoenix notes that the plaintiffs have propounded a second set of document requests and contends that its response to the first must be coordinated with its response to this new demand.  (Def. Memo. at 8-9).  Finally, Phoenix argues that the two-week deadline proposed by the plaintiffs is unworkable and contends that if there is to be any deadline, it should be set at May 31, 2012, with the costs of completing production by that date shifted to the plaintiffs.  (Def. Memo. at 11-17).  I will address each of these issues in turn.

A. <u>Meet and Confer Requirements</u>

A motion to compel discovery "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."  Fed. R. Civ. P. 37(a)(1).  Here, the plaintiffs satisfied that requirement.  As early as July 2012, they conferred with Phoenix concerning the pace of the production.  (Letter from Steven G. Sklaver dated July 6, 2012, attached as Exh. 6 to Ard Decl., at 1 ("This letter responds to the issues addressed in our recent telephonic meet and  confer . . . .  Plaintiffs served their document requests on Phoenix on December 20, 2011.  It is now July 2012, six months later, and Phoenix's document production remains substantially incomplete.")).

Immediately prior to filing the instant motion, the parties communicated further, but Phoenix could only state that it would take "several more months" to complete production. (E-mail of Steven G. Sklaver dated Nov. 1, 2012, attached as part of Exh. 2 to Ard Decl.). Phoenix argues that when the motion was filed, "the parties had tentatively discussed plaintiffs' concerns regarding Phoenix's document production timetable, but they had not discussed Phoenix's proposals to alleviate plaintiffs' concerns and to avoid formal motion practice." (Gould Decl., ¶ 4). This is not surprising, since Phoenix had not made any such proposal during the months that the parties had been negotiating. (Gould Decl., ¶ 5 ("Phoenix intended to propose . . . .")).

A failure to meet and confer may be excused when to do so would be futile. See Gibbons v. Smith, No. 01 Civ. 1224, 2010 WL 582354, at *2 (S.D.N.Y. Feb. 11, 2010); Metrokane, Inc. v. Built NY, Inc., No. 06 Civ. 14447, 2008 WL 4185865, at *3 (S.D.N.Y. Sept. 3, 2008); Myers v. Andzel, No. 06 Civ. 14420, 2007 WL 3256865, at *1 (S.D.N.Y. Oct. 15, 2007). Of course, futility should not be lightly presumed. But where, as here, a party has tried over an extended period of time to obtain full compliance with discovery demands and has received no firm commitment, it has no obligation to continue negotiations that seemingly have no end. See Bell v. Lockheed Martin Corp., Civ. No. 08-6292, 2012 WL 1677240, at *1

6

(D.N.J. May 14, 2012); <u>Bristol-Myers Squibb Co. v. Rhone-Poulenc</u> <u>Rorer, Inc.</u>, No. 95 Civ. 8833, 1998 WL 2829, at *3 (S.D.N.Y. Jan. 6, 1998).

    B. <u>Cause and Effect of Delay</u>

    To be sure, the volume of discovery here is substantial. Nevertheless, the delay in completing production appears largely attributable to Phoenix's inability to get a handle on its own data.  Phoenix took four months even to suggest search terms. Then, because of the limitations of its search tools, it could not target critical documents, like those relating specifically to "Project X."  While the technical difficulties faced by Phoenix might warrant some relaxation of a normal discovery timetable, they do not excuse the extensive delay here.

    Nor is the delay harmless.  The parties face a deadline of June 4, 2013, to submit their expert reports in connection with the merits of the case.  (Order dated Dec. 17, 2012, ¶ 2).  Although Phoenix suggests that it could prioritize discovery so that documents pertinent to expert testimony are produced first, it has not indicated with any specificity how it would go about segregating such information.

    C. <u>Coordination of Discovery</u>

    Phoenix's argument that it cannot complete document production because that production is dependent on disclosures that it makes

in the <u>U.S. Bank</u> case is perplexing.   Phoenix can, of course,

produce now that which it has already produced in <u>U.S. Bank</u> and

then supplement its production here as it discloses additional

documents in that case.   Indeed, it is obligated by Rule

26(e)(1)(A) to do just that.

Phoenix's contention that it must coordinate its responses to

the plaintiffs' first document request with its responses to the

second is equally unavailing.   It is common for a party to be

required to respond to subsequent discovery demands before it has

completed production in response to earlier ones.   To the extent

appropriate, Phoenix can respond to the second request by referring

to or incorporating its responses to the first.

D. <u>Deadline and Cost-Shifting</u>

More than a year has passed since Phoenix was served with the

document requests at issue.   Its suggestion that it cannot now

complete document production for another five months is

unreasonable. But so, too, is the plaintiffs' demand that Phoenix

do so in two weeks.   Balancing the time that Phoenix has already

had to respond to the plaintiffs' requests against the work still

to be done, it is appropriate to require Phoenix to complete its

production by February 28, 2013.   That will allow a period for

follow-up discovery before the date that the expert reports are

due.

Relying on <u>Boeynaems v. LA Fitness International, LLC</u>, 285 F.R.D. 331 (E.D. Pa. 2012), Phoenix argues that the cost of its completing production within any deadline other than one of its own choosing should be shifted to the plaintiffs. (Def. Memo. at 14-17). In <u>Boeynaems</u>, the court stated that

> where (1) class certification is pending, and (2) the plaintiffs have asked for very extensive discovery, compliance with which will be very expensive, that absent compelling equitable circumstances to the contrary, the plaintiffs should pay for the discovery they seek. If the plaintiffs have confidence in their contention that the Court should certify the class, then the plaintiffs should have no objection to making an investment. Where the burden of discovery expense is almost entirely on the defendant, principally because the plaintiffs seek class certification, then the plaintiffs should share the costs.

<u>Id.</u> at 341. The presumption created by <u>Boeynaems</u> has never been adopted in this circuit, and, more importantly, it runs counter to the relevant principle announced by the Supreme Court: "Under [the discovery] rules, the presumption is that the responding party must bear the expense of complying with discovery requests[.]" <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 358 (1978).

Any presumption, of course, may be rebutted, and discovery costs may therefore be shifted to the requesting party under appropriate circumstances. <u>See</u> <u>Zubulake v. UBS Warburg LLC</u>, 217 F.R.D. 309, 317-18 (S.D.N.Y. 2003) ("<u>Zubulake I</u>"); <u>Rowe Entertainment, Inc. v. William Morris Agency, Inc.</u>, 205 F.R.D. 421,

428-29 (S.D.N.Y. 2002).  However, to do so requires an analysis of a range of factors, including (1) the degree to which the request for information is designed to discover germane information, (2) the availability of the same information from different sources, (3) the cost of production as compared to the amount in controversy, (4) the cost of production as compared to the resources of each party, (5) the parties' relative abilities to control discovery costs and their incentives to control costs, (6) the degree of importance of the issues being decided in the litigation, and (7) the relative benefits to each of the parties in obtaining the information at issue.  Zubulake I, 217 F.R.D. at 322.

Of those factors, Phoenix has addressed only two, and even its analysis of those elements is incomplete.  Phoenix has identified the costs of discovery it has incurred to date (Def. Memo. at 15), but not the cost of the additional discovery that it seeks to shift.  Moreover, it has not discussed either the amount in controversy or its own resources.  It has alluded in general terms to the resources of the plaintiffs or, more precisely, the resources of their counsel.  (Def. Memo. at 15).  However, it is far from clear why the resources of counsel should be taken into consideration.  Certainly, Phoenix has not suggested that the wherewithal of the law firms that it has engaged should be weighed in the balance.  More importantly, if the assets of counsel were to

be taken into consideration, the ability of clients to engage an attorney of their choice would likely be hampered. Even if Phoenix had otherwise made its case for cost-shifting, which it has not, I would not include the resources of counsel in the analysis.

Furthermore, Phoenix has represented that the bulk of the costs for completing production relate to review for privileged and confidential communications. (Gould Decl., ¶ 16). Generally, it is not appropriate to shift such costs because "the producing party has the exclusive ability to control the cost of reviewing the documents." Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 290 (S.D.N.Y. 2003) ("Zubulake II"). Nevertheless, I will enter an order pursuant to Rule 502(d) of the Federal Rules of Evidence that will preclude the disclosure of privileged documents in this case from constituting a waiver of privilege or of work product protection in this or any other proceeding, state or federal. Although Phoenix is, of course, free to engage in as exacting a privilege review as it wishes, entry of a Rule 502(d) order will protect against waiver if it opts to conduct a more economical analysis. In addition, I will entertain a protective order that would restrict dissemination of commercially sensitive information and thereby allow Phoenix to expedite its review.

Conclusion

For the reasons set forth above, the plaintiffs' motion to

11

compel (Docket no. 42) is granted to the extent that Phoenix shall

complete the production of documents responsive to the Plaintiffs'

First Document Request by February 28, 2013.  Phoenix's application

to shift the costs of that production to the plaintiffs is denied.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       December 27, 2012

Copies mailed this date:

Seth Ard, Esq.
Susman Godfrey LLP
654 Madison Ave.
New York, NY 10065

Steven G. Sklaver, Esq.
Frances S. Lewis, Esq.
Susman Godfrey LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067

Brian Patrick Perryman, Esq.
Jason H. Gould, Esq.
Waldemar J. Pflepson, Esq.
Jorden Burt LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, D.C. 20007

Stephen J. Jorden, Esq.
Jorden Burt LLP
175 Powder Forest Drive
Simsbury, CT 06089

12

Patrick J. Feeley, Esq.
Jonathan R. Montcalm, Esq.
Dorsey & Whitney LLP
51 West 52nd St.
New York, NY 10019

Paul Meyer, Esq.
Managing Counsel
E-Discovery & Data Management
901 North Glebe Road
Arlington, VA 22203