```
UNITED STATES DISTRICT COURT              (ECF)
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MARTIN FLEISHER, as trustee of    : 11 Civ. 8405 (CM) (JCF)
the Michael Moss Irrevocable Life :
Insurance Trust II and JONATHAN   :        MEMORANDUM
BERCK, as trustee of the John L.  :        AND  ORDER
Loeb Jr. Insurance Trust, on behalf:
of themselves and all others      :
similarly situated,               :
                                  :
               Plaintiffs,        :
                                  :
     - against -                  :
                                  :
PHOENIX LIFE INSURANCE COMPANY,   :
                                  :
               Defendant.         :
- - - - - - - - - - - - - - - - - - -:
```

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

The plaintiffs in this case allege that Phoenix Life Insurance Company ("Phoenix") violated contractual obligations by improperly raising the cost-of-insurance ("COI") rates on premium-adjustable, universal life insurance ("PAUL") policies. The plaintiffs now move pursuant to Rule 45(c)(2)(B)(i) of the Federal Rules of Civil Procedure for an order compelling non-party Towers Watson to produce documents in compliance with a subpoena.

Background

The facts relating to the plaintiffs' claims are described in U.S. Bank National Association v. PHL Variable Insurance Co., No. 12 Civ. 6811, 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012), and in a prior decision in this case (Order dated Dec. 27, 2012). The

1

owners of the policies at issue choose the amount they pay into their PAUL policy accounts each month as long as the account balance remains sufficient to cover policy charges, including a cost of insurance charge.  Phoenix may adjust COI rates based on certain specified factors including, most importantly, mortality. The plaintiffs allege that Phoenix has increased its COI rates even though life expectancy has risen and has done so in order to increase its fees and encourage policyholders to let their policies lapse.

In 2010, Towers Watson provided consulting services to Phoenix, analyzing the COI increases at issue here. (A Proposal to Provide Universal Life Re-determination of Cost of Insurance Rates Support to Phoenix Life Insurance Company, attached as Exh. B to Engagement of Towers Perrin for Consulting Services, attached as Exh. C to Declaration of Gina Collopy O'Connell dated Dec. 5, 2012 ("O'Connell Decl."), at 6).  In a subpoena dated June 20, 2012, and returnable on July 23, 2012, the plaintiffs requested production by Towers Watson of all documents relating to the COI increases, including documents provided to the New York State Department of Insurance. (Subpoena dated June 20, 2012, attached as Exh. A to Declaration of Seth Ard dated Nov. 19, 2012 ("Ard Decl."); Proof of Service dated June 22, 2012, attached as Exh. B to Ard Decl.).  At the same time, the plaintiffs provided notice of the subpoena to

Phoenix.  (E-mail of Helen Danielson dated June 20, 2012, attached as Exh. C to Ard Decl.).  On July 2, 2012, Towers Watson objected to the subpoena on a variety of grounds, including that the requested documents might include communications subject to the attorney-client privilege or covered by the work product doctrine. (Letter of Paul A. Meyer dated July 2, 2012, attached as part of Exh. D to Ard Decl., at 3).  Thereafter, it indicated that it had provided the documents at issue to counsel for Phoenix, who had concluded that many, if not all, of the documents were immune from discovery.  (E-mail of Paul Meyer dated Sept. 26, 2012, attached as Exh. I to Ard Decl.).  Towers Watson did not, however, supply a privilege log.  (Ard Decl., ¶ 10).

On October 23, 2012, Phoenix's counsel indicated in a telephone conference with the plaintiffs' attorneys that Phoenix was asserting privilege with respect to all of the Towers Watson documents.  (Ard Decl., ¶ 11; E-mail of Steven G. Sklaver dated Nov. 1, 2012 ("Sklaver 11/1/12 E-mail"), attached as Exh. J to Ard Decl.).  It reiterated this position on November 9, 2012.  (E-mail of Jason H. Gould dated Nov. 9, 2012, attached as Exh. K to Ard Decl.).  Although the plaintiffs asked that Phoenix submit a privilege log to support its position (Sklaver 11/1/12 E-mail), none was forthcoming until after the plaintiffs had filed the instant motion (Letter of Jason H. Gould dated Dec. 5, 2012

3

("Privilege Log"), attached as Exh. H to Declaration of Jason H. Gould dated Dec. 5, 2012).

The plaintiffs now move for an order compelling Towers Watson to comply with the subpoena.  They argue that the documents are neither privileged nor protected from discovery by the work product doctrine because they involve an actuarial analysis that was not performed "because of" litigation.  (Memorandum of Law in Support of Plaintiffs' Motion to Compel Towers Watson to Produce Documents in Compliance with Subpoena for Documents Due July 23, 2012 ("Pl. Memo.") at 4-8).  Furthermore, the plaintiffs contend that Phoenix waived (or, more accurately, forfeited) any privilege or work product protection by (1) failing to make a timely motion to quash, (2) failing to provide a privilege log, and (3) voluntarily disclosing the documents to the New York Insurance Department. (Pl. Memo. at 8-12).  Both Phoenix and Towers Watson oppose the motion, and Towers Watson maintains that if it is required to comply, the cost should be borne by the plaintiffs.  (Non-Party Towers Watson's Response and Objection to Plaintiffs' Motion to Compel Towers Watson to Produce Documents in Compliance with Subpoena for Documents Due July 23, 2012 ("Towers Watson Memo.") at 5-6; Non-Party Towers Watson's Sur-Reply to Plaintiffs' Motion to Compel Towers Watson to Produce Documents in Compliance with Subpoena for Documents Due July 23, 2012 ("Towers Watson Sur-

4

Reply")).   I will address each of these issues, though not in the
order in which they were raised by the parties.

<u>Discussion</u>

    A. <u>Privilege Log</u>

    Rule 45(d)(2)(A) of the Federal Rules of Civil Procedure
requires that an entity responding to a subpoena raise any claim of
privilege or work product protection "expressly" and "describe the
nature of the withheld documents . . . in a manner that . . . will
enable the parties to assess the claim."   Thus,

> [a] party receiving a discovery request who asserts a
> privilege or work product protection but fails to
> disclose the nature of that claim and provide a
> description is at risk of waiving the privilege or
> protection.   Courts consistently have held that such a
> party is required to produce a document index or
> privilege log, and that the failure to produce a log of
> sufficient detail constitutes a waiver of the underlying
> privilege or work product claim.

9A Charles Alan Wright & Arthur R. Miller, Federal Practice and
Procedure ("Wright & Miller") § 2464 (3d ed. 2008); <u>see</u> <u>In re</u>
<u>Chevron Corp.</u>, 749 F. Supp. 2d 170, 180-86 (S.D.N.Y. 2010);
<u>OneBeacon Insurance Co. v. Forman International, Ltd.</u>, No. 04 Civ.
2771, 2006 WL 3771010, at *4 (S.D.N.Y. Dec. 15, 2006); <u>In re</u>
<u>Application for Subpoena to Kroll</u>, 224 F.R.D. 326, 329 (E.D.N.Y
2004).

    Here, Phoenix's privilege log was both tardy and inadequate.
To be sure, generating a log may be time-consuming, and parties

responding to wide-ranging discovery demand should be given some leeway.  But here, Phoenix received notice of the subpoena in June and produced nothing to support its claims of privilege and work product until December, more than five months later, after the plaintiffs had moved to compel compliance.  Nor did Phoenix seek relief from the Court in the interim.

Even if I were to excuse Phoenix's delay, the log that it has now submitted is wholly insufficient.  The purpose of a log is to permit the opposing party and the court to evaluate claims of privilege or work product protection.  Again, courts are not blind to the potential burden of generating a document-by-document privilege log, and so have authorized parties to identify purportedly privileged documents by category.  See GenOn Mid-Atlantic, LLC v. Stone & Webster, Inc., No. 11 Civ. 1299, 2011 WL 5439046, at *11 (Nov. 10, 2011); In re Rivastigmine Patent Litigation, 237 F.R.D. 69, 87 (S.D.N.Y. 2006).  Here, however, the catalogue proffered by Phoenix falls far short of an acceptable categorical log.  It lists only four broad classes of documents: "documents defining scope of Towers Watson engagement," "policy data," "draft reports," and "Towers internal project administration materials."  (Privilege Log).  Only within the draft report category are any individual documents identified, but even there, the description that purports to apply to all of them is

6

exceedingly general and unhelpful.  By failing to provide a meaningful log, then, Phoenix has forfeited any claim of privilege or work product protection.

    B. <u>Timeliness</u>

    The plaintiffs argue that Phoenix also waived its privilege claims by not moving to quash the subpoena in a timely fashion. (Pl. Memo. at 8-10).  Towers Watson did object to the subpoena and asserted potential claims of privilege within the time allowed. Fed. R. Civ. P. 45(c)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.").  Normally, this would suffice to shift the burden to the plaintiffs to move to compel compliance with the subpoena.  Wright & Miller § 2464.

    However, Towers Watson's objection was substantively inadequate.  The Second Circuit has stated:

> While we are mindful that the investment of time necessary to review all responsive documents for privileged material does not lend itself to the limited fourteen (14) day time period, a person responding to a subpoena should at least assert any privileges within the 14 days provided in Rule 45(c)(2)(B).  A full privilege log may follow within a reasonable time, or if more time is needed an extension may be sought from the trial court.

<u>In re DG Acquisition Corp.</u>, 151 F.3d 75, 81 (2d Cir. 1998) (internal quotation marks, citations, and alterations omitted). Since, as discussed above, neither Towers Watson nor Phoenix has

ever submitted an adequate privilege log, Towers Watson did not object properly within the time permitted.

C. Determination of Privilege or Work Product Protection

"It is axiomatic that the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship, a burden not discharged by mere conclusory or ipse dixit assertions." In re Grand Jury Subpoena Dated Jan. 4, 1984, 750 F.2d 223, 224-25 (2d Cir. 1984) (citations and internal quotation marks omitted); accord von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987); Schanfield v. Sojitz Corp. of America, 258 F.R.D. 211, 214 (S.D.N.Y. 2009). Similarly, the proponent of work product protection bears the "heavy burden" of establishing its applicability. In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).

A party considering a course of conduct with legal consequences may wish to evaluate its exposure to future litigation and, in doing so, generate attorney-client communications and work product. See, e.g., RLS Associates, LLC v. United Bank of Kuwait, PLC, No. 01 Civ. 1290, 2003 WL 1563330, at *3-5 (S.D.N.Y. March 26, 2003). However, documents created for business purposes would not be privileged, see In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); Fox News Network, LLC v. United States Department of the

8

Treasury, No. 09 Civ. 3045, 2012 WL 5931808, at *4 (S.D.N.Y. Nov. 26, 2012), and those that "would have been created irrespective of the anticipated litigation" would not receive protection as work product, RLS Associates, 2003 WL 1563330, at *5.

Because Phoenix has failed to provide more than the most general arguments in favor of its privilege and work product claims, it has failed to carry its burden. While some of the documents at issue may indeed be immune from discovery, others are likely not; indeed, it would be surprising if Phoenix had not obtained an actuarial analysis in connection with the COI increases, even if it had no concerns about its legal exposure. Yet, Phoenix has given me no basis for differentiating between those documents that might be related to its legal concerns and those that are business-oriented. Although it has produced five documents for in camera review (O'Connell Decl., Exhs. A, B, C, D, E), there is no reason to believe that they are in any way representative. Accordingly, even if Phoenix had not forfeited its claims of privilege and work product, it has failed to establish them.

D. Waiver by Disclosure

After Phoenix implemented the COI increases, it received requests for information from the New York State Insurance Department ("NYSID"). (E-mail of Ruth Gumaer dated Jan. 4, 2011,

attached as Exh. F to O'Connell Decl.).  Phoenix initially resisted divulging the Towers Watson report on the ground that it was privileged and confidential.  (Letter of Kathleen H. McGah dated Feb. 8, 2011, attached as Exh. G to O'Connell Decl., at 23). Nevertheless, when NYSID rejected the claims of privilege, Phoenix produced the report, albeit with the caveats that "the outside actuarial guidance was not a prerequisite to Phoenix's determination to increase the COI rate" and that it was not waiving any privileges. (Letter of Kathleen H. McGah dated March 30, 2011, attached as Exh. I to O'Connell Decl., at 2).  The plaintiffs now argue that by disclosing the Towers Watson report to NYSID, Phoenix waived any privilege both as to the report and as to any other document relating to the same subject matter.

Because Phoenix has both failed to meet its burden of establishing its claims of privilege and work product protection and because, in any event, it has forfeited such claims by failing to submit a sufficient privilege log and to assert adequate, timely objections, both the final Towers Watson report and the related documents must be produced.  Whether Towers Watson's disclosure of the report to NYSID was compelled, whether that disclosure constituted a waiver of privilege and work product immunity, and what the scope of that waiver might be are issues that, therefore, need not be decided.

E. Costs

Finally, Towers Watson contends that the plaintiffs should reimburse it for the costs of responding to the subpoena. (Towers Watson Memo. at 5-6; Towers Watson Sur-Reply at 1-3). "Cost-shifting is particularly appropriate in the context of subpoenas, since Rule 45 directs courts to minimize the burden on non-parties." U.S. Bank, 2012 WL 5395249, at *4. Nevertheless, the plaintiffs argue that Towers Watson has demonstrated bias in favor of Phoenix by making the documents at issue available to it without charge and therefore should be precluded from seeking costs from the plaintiffs. (Reply Brief in Support of Plaintiffs' Motion to Compel Towers Watson to Produce Documents in Compliance with Subpoena for Documents Due July 23, 2012, at 10).

There has been no display of favoritism. Towers Watson provided the documents to Phoenix as it was obligated to do in order for Phoenix to review them for privilege. Moreover, Towers Watson did not agree to absorb the costs of producing the documents to Phoenix. (Towers Watson Sur-Reply at 3 ("In fact, Towers Watson has an existing contractual relationship with [Phoenix] that governs its obligations to reimburse Towers Watson for certain costs.")). Accordingly, the plaintiffs shall bear the costs incurred by Towers Watson in producing the subpoenaed documents to it. That shall not include any expenses related to Towers Watson's

review of the documents.   See id.

Conclusion

For the reasons set forth above, the plaintiffs' motion to compel Towers Watson to produce the documents identified in the subpoena for documents due July 23, 2012 (Docket no. 45) is granted, provided that the plaintiffs pay the costs incurred by Towers Watson with the exception of review costs.

SO ORDERED.

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       January 3, 2013


Copies mailed this date:

Seth Ard, Esq.
Susman Godfrey LLP
654 Madison Ave.
New York, NY 10065

Steven G. Sklaver, Esq.
Frances S. Lewis, Esq.
Susman Godfrey LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067

Brian Patrick Perryman, Esq.
Jason H. Gould, Esq.
Waldemar J. Pflepson, Esq.
Jorden Burt LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, D.C. 20007

12

Stephen J. Jorden, Esq.
Jorden Burt LLP
175 Powder Forest Drive
Simsbury, CT 06089

Patrick J. Feeley, Esq.
Jonathan R. Montcalm, Esq.
Dorsey & Whitney LLP
51 West 52nd St.
New York, NY 10019

Paul Meyer, Esq.
Managing Counsel
E-Discovery & Data Management
901 North Glebe Road
Arlington, VA 22203

Sharon L. Levine, Esq.
Paul Kizel, Esq.
Lownstein Sandler PC
1251 Avenue of the Americas
17th Floor
New York, NY 10020