UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MARTIN FLEISHER, as trustee of the Michael Moss Irrevocable Life Insurance Trust II, and JONATHAN BERCK, as trustee of the John L. Loeb, Jr. Insurance Trust, on behalf of themselves and all others similarly situated,<br><br>　　　　　　　　Plaintiffs,<br><br>　　　　vs.<br><br>PHOENIX LIFE INSURANCE COMPANY,<br><br>　　　　　　　　Defendant. | ECF Case<br><br>Case No. 11 Civ. 8405 (CM)(JCF) |

**DEFENDANT PHOENIX LIFE INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO RECONSIDER THE MAGISTRATE JUDGE'S
JANUARY 3, 2013 MEMORANDUM AND ORDER**

　
DORSEY & WHITNEY LLP
51 West 52nd Street
New York, New York 10019
(212) 415-9200

JORDEN BURT LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007
(202) 965-8100

Dated: New York, New York
　　　　January 14, 2013

*Attorneys for Defendant
Phoenix Life Insurance Company*

# TABLE OF AUTHORITIES

**Cases**                                                                                                   **Page(s)**

*105 Street Associates, LLC v. Greenwich Insurance Co.*,
    No. 05 Civ. 9938, 2006 WL 3230292 (S.D.N.Y. Nov. 7, 2006)........................2, 6, 7

*Carpenter v. Churchville Greene Homeowner's Association*,
    No. 09 Civ. 6552, 2011 WL 4711961 (W.D.N.Y. Sept. 29, 2011)............................4

*Export-Import Bank of the United States v. Asia Pulp & Paper Co.*,
    232 F.R.D. 103 (S.D.N.Y. 2005)..................................................................................2

*Grand River Enterprise Six Nations, Ltd. v. Pryor*,
    No. 02 Civ. 5068, 2008 WL 4703114 (S.D.N.Y. Oct. 23, 2008).......................2, 5, 6

*In re InStore Advertising Securities Litigation*,
    163 F.R.D. 452 (S.D.N.Y. 1995)..................................................................................2

*Pem-America, Inc. v. Sunham Home Fashions, LLC*,
    No. 03 Civ. 1377, 2007 WL 3226156 (S.D.N.Y. Oct. 31, 2007)............................1, 2

*RMED International, Inc. v. Sloan's Supermarkets, Inc.*,
    No. 94 Civ. 5587, 2003 WL 41996 (S.D.N.Y. Jan. 6, 2003) ....................................4

*Trudeau v. New York State Consumer Protection Board*,
    237 F.R.D. 325 (N.D.N.Y. 2006) ...........................................................................2, 6

**Rules**

Fed. R. Civ. P. 26................................................................................................................5

Fed. R. Civ. P. 37................................................................................................................6

Local Civ. R. 6.3 ................................................................................................................1

**PRELIMINARY STATEMENT**

Under Local Civil Rule 6.3, Phoenix Life Insurance Company respectfully requests that the Court reconsider aspects of its Memorandum and Order dated January 3, 2013 ("Order") granting plaintiffs' motion to compel Towers Watson to produce the documents identified in plaintiffs' June 22, 2012 subpoena. The Order holds that Phoenix's failure to submit a timely, adequate privilege log waived Phoenix's right to shield the subpoenaed documents under the work-product doctrine and the attorney-client privilege. Phoenix's log was provided for the purpose of establishing that Phoenix's engagement of Towers Watson in clear anticipation of litigation *categorically* immunized from discovery all documents associated therewith. Under the circumstances, the Court's sanction – the blanket forfeiture of Phoenix's privileges and protections as to documents in Towers Watson's custody – is unduly punitive. Consistent with principles enunciated by courts in this District, even if the Court chooses not to reconsider its grant of plaintiffs' motion, this Court, Phoenix respectfully submits, should instead consider a less severe sanction: ordering Phoenix to submit a new, more descriptive privilege log to allow the parties the opportunity to determine which, if any documents, need be submitted to the Court for an *in camera* review.

**ARGUMENT**

**I.   A Lesser Sanction Than Blanket Forfeiture Is Appropriate.**

Courts in this District have proved themselves reluctant to skip immediately to the drastic sanction of blanket forfeiture when a lesser sanction like the submission of a new, more descriptive privilege log could remedy the situation. *See, e.g., Pem-America, Inc. v. Sunham Home Fashions, LLC*, No. 03 Civ. 1377, 2007 WL 3226156, at *2 (S.D.N.Y.

1

Oct. 31, 2007) (although finding the privilege log inadequate, the court directed that a new log be submitted rather than imposing a blanket forfeiture of the claimed privileges); *105 Street Assocs.*, 2006 WL 3230292, at *4 (same); *Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 111 (S.D.N.Y. 2005) (same); *In re InStore Advertising Secs. Litig.*, 163 F.R.D. 452, 457-58 (S.D.N.Y. 1995) (same).  Even where "the Court could declare all of the purported privileges waived," adjudging the privileges "as waived would be too austere a remedy when the deficiencies can be readily rectified at this juncture of the litigation." *Trudeau v. N.Y. State Consumer Prot. Bd.*, 237 F.R.D. 325, 335 (N.D.N.Y. 2006).

While an unjustified failure to list privileged documents on a log of withheld documents in a timely and proper manner may operate as a waiver of an applicable privilege, "of relevance to such a determination is the nature of the violation, its willfulness or cavalier disregard for the rule's requirements, and the harm which results to other parties." *105 Street Assocs., LLC v. Greenwich Ins. Co.*, No. 05 Civ. 9938, 2006 WL 3230292, at *4 (S.D.N.Y. Nov. 7, 2006) (internal quotation marks omitted).  Only "flagrant" violations merit blanket forfeiture. *Pem-America*, 2007 WL 3226156, at *2.

> ***Waiver is not automatic,*** particularly if the party reasonably believed that its objections applied to the document.  As the federal rules, case law and commentators suggest, waiver of a privilege is a serious sanction most suitable for cases of unjustified delay, inexcusable conduct, and bad faith.

*Grand River Enter. Six Nations, Ltd. v. Pryor*, No. 02 Civ. 5068, 2008 WL 4703114, at *1 (S.D.N.Y. Oct. 23, 2008) (internal quotation marks omitted) (emphasis added).

## II. Phoenix By Its Actions Did Not Intend To Waive Applicable Privileges Nor To Disregard Its Obligation Under The Discovery Rules.

These principles of lenity apply here.  As an initial matter, the Order's suggestion that Phoenix's submission of its privilege log was dilatory appears to be based upon a misperception of the facts.  The Order states that Phoenix delayed for "more than five months" after the subpoena was served before attempting to support its claims of privilege and work product.  Order at 6.  Phoenix regrets any lack of clarity on its part that may have contributed to the Court's conclusion.

In fact, after the subpoena was served on Towers Watson on June 22, *id.* at 2, Towers Watson promptly objected on July 2, *id.* at 3, and thereupon began collecting and reviewing documents while remaining in communication with plaintiffs' counsel.  *See* Decl. of Seth Ard ¶¶ 3, 5-10.  Thereafter, Phoenix was given an opportunity to review only a small portion of the responsive documents.  Phoenix, however, was not provided access to most of the documents Towers Watson collected for its review as to possible privilege assertions until late September 2012.  *See, e.g.*, *id.* Ex. H (Towers Watson counsel reporting to plaintiffs' counsel on September 14 that Towers Watson had completed "gather[ing] the electronic and paper documents responsive to the subpoena"); *id.* Ex. I (Towers Watson counsel reporting to plaintiffs' counsel on September 26 that Towers Watson was "providing them [Phoenix's counsel] with access to an ftp: site with the relevant network file shares for further review").

Within a few weeks thereafter, Phoenix reviewed these documents, deliberated regarding the availability of privileges, and informed Towers Watson and plaintiffs' counsel that it was asserting objections based upon the work-product doctrine and attorney-client privilege.  *See, e.g.*, Order at 3 (noting that Phoenix explained its privilege

3

and protection claims to plaintiffs both orally and in writing during October and November 2012). Phoenix was considering what documents it could share with plaintiffs' counsel to demonstrate the existence of these privileges and protections without the need for judicial intervention when plaintiffs filed their motion to compel. Phoenix completed its exchange of these documents, and a privilege log, with plaintiffs' counsel on December 5, 2012. *Id.*; *see also* Decl. of Jason H. Gould ¶¶ 9-15.

Accordingly, Phoenix should not be charged with *five* months' delay in producing a log in support of its claims of privilege and work product. *Two* months passed between Phoenix's review of the bulk of the Towers Watson documents made available and Phoenix's submission of a privilege log.[1] In themselves, delays of that length are not unreasonable, nor do they lead inexorably to a waiver of privilege. *See*, *e.g.*, *Carpenter v. Churchville Greene Homeowner's Ass'n*, No. 09 Civ. 6552, 2011 WL 4711961, at *12 n.7 (W.D.N.Y. Sept. 29, 2011) (declining to find waiver because "defendants have not identified any prejudice resulting from the two-month delay in producing the privilege log"); *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, No. 94 Civ. 5587, 2003 WL

---

[1] As facts brought to the Court's attention in the context of other discovery motions reflect, during this period Phoenix and its counsel were actively engaged in substantial discovery efforts and not consciously disregarding any obligations. They were then, and remain even today, in the midst of managing excessively burdensome discovery in these three related cost of insurance lawsuits pending in this District – this case, *U.S. Bank N.A. v. PHL Variable Insurance Co.*, No. 12 Civ. 6811, and *Tiger Capital, LLC v. PHL Variable Insurance Co.*, No. 12 Civ. 2939, including responding to the 232 (excluding subparts) requests for production of documents that plaintiffs have collectively propounded in those suits. Phoenix produced nearly 600,000 pages in this action alone *after* the service of the Towers Watson subpoena, and was involved in addressing subpoenas served on numerous nonparties, including reinsurers, a trade association, and rating agencies. (It is also fair to note that by comparison, it took plaintiffs in this action six months to produce just over 1,100 pages of material.)

4

41996, at *4 (S.D.N.Y. Jan. 6, 2003) (one-year delay in serving privilege log held not unreasonable and did not waive privilege where there was no evidence of prejudice).

### III. The Privilege Log Was Limited To Categories Of Documents Because Phoenix Believed, And Intended To Show, That The Entire Towers Watson Engagement And Its Associated Documents Were Protected Work-Product.

The perceived deficiencies in the privilege log are explained by Phoenix's reasonable belief that a more detailed log (1) was not required in these circumstances, and (2) in any event, would not have assisted either plaintiffs or the Court in ascertaining the threshold question for non-production as to all materials associated with the Towers Watson engagement, thereby obviating the need for a labor-intensive listing or review of the sort acknowledged in the Court's Order (at 5-6). Courts in this District have held that "if a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections." *Grand River*, 2008 WL 4703114, at *1 (internal quotation marks omitted). *After* the ruling, the court "must then give the party an opportunity to list the document on a privilege log pursuant to Rule 26(b)(5)." *Id.* (internal quotation marks omitted).

Phoenix in good faith believed that, as a matter of law, more particularized assertions of privilege and protection did not need to be logged, document-by-document, until the Court ruled on the objections and explanations for those objections that Phoenix and Towers Watson had already provided to plaintiffs. Nor did Phoenix have reason to believe that a more detailed privilege log would have better explained the basis for its assertions of privilege and protection as to the engagement itself. As explained in Phoenix's opposition to the motion to compel, and detailed in the Declaration of Gina Collopy O'Connell accompanying that opposition, Phoenix asserted that *all* the

5

subpoenaed Towers Watson documents are protected work-product because the documents were *all* prepared in anticipation of then-probable litigation and regulatory investigations. Phoenix thus believed its privilege log was appropriate for the context in which it was provided: to establish the protected nature of the entire Towers Watson engagement as being in anticipation of litigation to assist Phoenix in its legal exposure analysis, as opposed to supporting privilege assertions as to particular documents.[2]

Finally, plaintiffs have made no factually supported showing in their moving papers, and the Court did not find in its Order, that plaintiffs have been prejudiced in any way by anything Phoenix or Towers Watson may have done or failed to do with respect to the subpoenaed documents. As noted above, however, "of relevance" to any privilege waiver analysis is "the harm which results to other parties." *105 Street Assocs.*, 2006 WL 3230292, at *4 (internal quotation marks omitted). If the Court modifies its Order to impose a less severe sanction, Phoenix is now in a position to expeditiously provide a detailed privilege log, eliminating any possible prejudice to plaintiffs.[3]

## CONCLUSION

In short, Phoenix respectfully requests that the Court reconsider the Order to the extent the Court has imposed the "austere," *Trudeau*, 237 F.R.D. at 335, "serious," *Grand*

---

[2] In this regard, the Court appears to have misapprehended (Order at 9) the purpose of the documents submitted for its review, which Phoenix did not mean to suggest were in any sense representative of the materials generated by the Towers Watson engagement. These documents were submitted to support and lend context to Gina Collopy O'Connell's sworn declaration, which was itself submitted to augment the factual basis for Phoenix's categorical invocation of work product protection as to all of the Towers Watson documents.

[3] In situations involving intent to waive, bad faith, and undue delay, courts have considered cost-shifting in response to a party's successful motion to compel, *see* Fed. R. Civ. P. 37(a)(5), though for the reasons set forth herein Phoenix believes those circumstances are not present here.

*River*, 2008 WL 4703114, at *1, and "harsh," *105 Street Assocs.*, 2006 WL 3230292, at *4, sanction of blanket forfeiture of all claims of privilege and protection in connection with the documents subpoenaed from Towers Watson.  Phoenix respectfully asserts that sanction is not fitting under the circumstances.  If the Court elects not to decide at this time the work-product doctrine's applicability to the entirety of the Towers Watson engagement, Phoenix will promptly provide a detailed log, and respectfully suggests that it be given ten (10) business days to complete this project.  If questions regarding grounds for nonproduction as to particular documents remain after review by and discussion with plaintiffs' counsel, then Phoenix proposes to submit any dispute as to those specific documents to the Court for review.

Dated: New York, New York
       January 14, 2013

Respectfully submitted,

DORSEY & WHITNEY LLP
Patrick J. Feeley (PF-4931)
Jonathan R. Montcalm (JM-8866)
51 West 52nd Street
New York, New York 10019
(212) 415-9200

- and -

JORDEN BURT LLP
By: */s/ Waldemar J. Pflepsen, Jr.*
Waldemar J. Pflepsen, Jr. (*pro hac vice*)
Stephen J. Jorden (SJ-5009)
Jason H. Gould (JG-2012)
Brian P. Perryman (*pro hac vice*)
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007
(202) 965-8100

*Attorneys for Defendant*
*Phoenix Life Insurance Company*

257834v1DC