UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____ x

MARTIN FLEISHER, A trustee of the Michael
Moss Irrevocable life insurance Trust II, and
JONATHAN BERCK, as trustee of the John L.
Loeb, Jr. Insurance Trust, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

   -against-

PHOENIX LIFE INSURANCE COMPANY,

        Defendant.

_____ x

```
USDS SDN
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/12/13
```

11 Civ. 8405 (CM)

## DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY THIS ACTION AS A CLASS ACTION

McMahon, J.:

     The complaint in this action alleges that, on two separate occasions in 2010 and 2011, defendant Phoenix Life Insurance Company ("Phoenix") raised the cost of insurance ("COI") applicable to hundreds of Phoenix Accumulator Universal Life (PAUL) insurance policies. The premium increases were in the tens, or even hundreds, of thousands of dollars on some policies. The alleged basis for each raise was the funding ratio of the policy's accumulated value (i.e., the amount of money the policyholder had chosen to invest through the policy) to the face amount of the policy. The alleged motive for each raise was the desire to induce policyholders who were not "good" policyholders (i.e., policyholders who invested significant sums to increase the accumulated value of the policy) to drop their insurance.

     According to plaintiffs, these COI adjustments breached the contracts of insurance (which are allegedly identical for all class members) because accumulated value, unlike age, risk

class, sex, policy duration, expectation of future mortality and persistency, is not listed in the insurance contract as a permissible basis for adjusting the policy's premium. Plaintiffs also allege that the COI rates were increased in a manner that did not apply uniformly to any class of insureds, as required by law.

Plaintiffs own Phoenix-issued life insurance policies that were affected by these allegedly unlawful COI increases, and bring this class action on behalf of themselves and all other policy owners who have been victimized by Phoenix's illegal across-the-board rate hikes. *See* Compl. ¶¶ 36-37 (defining classes).

Although joined in a single lawsuit, each named plaintiff seeks to represent a separate class; I will refer to them as the 2010 Class and the 2011 Class.

Plaintiff Jonathan Berck, trustee of the John L. Loeb, Jr. Insurance Trust, seeks to represent a class of policyholders who experienced unlawful increases in their COI in 2010. Berck asserts a claim for breach of contract. In 2011, the New York state agency responsible for supervising and regulating all insurance carriers in New York took the position that Phoenix's 2010 COI rate hike violated the contract rights of all holders of the affected insurance policies, because "there is no language in the policy that states that Phoenix will take into consideration a funding ratio of the policy's accumulated value to the face amount when adjusting COI rates." Ex. J (NYSID Order, Sept. 6, 2011).[1] While Phoenix insisted that it had done nothing wrong, it eventually rescinded the 2010 COI increase as part of a voluntary settlement with the regulatory agency; new rates were imposed for policies that had not already been terminated, and

---

[1] Unless otherwise noted, a true and correct copy of all exhibits cited in this memorandum are attached to the Declaration of Steven G. Sklaver, dated January 11, 2013 ("Sklaver Decl."). The "NYSID" is the New York State Insurance Department, which was the New York state agency formerly responsible for supervising and regulating all insurance business in New York. The agency was later consolidated with another agency and renamed the New York Department of Financial Services.

adjustments were made retroactively (and refunds issued) to policyholders who had reacted to the precipitous rate hikes by cancelling their insurance.

Berck's claim appears to have been mooted by the settlement. However, in his Reply Brief on this motion for class certification, Berck argues that affected policyholders nonetheless lost money, because they were reimbursed with interest calculated at 4%, rather than New York's statutory rate of 9% interest. No such claim is pleaded in the actual complaint, but recovery of the interest differential appears to be the only relief now sought on behalf of this class of policy holders.[2]

Because of the regulatory settlement, the only open questions with respect to the 2010 Class – which I believe to be pure questions of law – are two:

First, does the fact that the class members accepted the settlement moot any claim for the interest differential; and

Second, if the answer to the first question is no, does New York's statutory prejudgment interest rate apply to the payments Phoenix has made voluntarily, rather than as a result of any judgment against it.

No question could possibly be more "common" than the two questions posed above. And while the absent class members appear to be persons with the means to commence litigation on their own, the interest rate differential – assuming there be one – will yield small amounts of damages for a period of a year or less, meaning that few class members will have the incentive to litigate the issue. I am, therefore, perfectly prepared to certify the 2010 Class for the purpose of litigating the questions posed by whatever is left of their claim. And as all facts pertinent to these questions are undisputed, a simple motion for summary judgment should dispose of them. It does

---

[2] There is some suggestion in one of the briefs that the class members might also be seeking nominal damages, but since nominal damages are a substitute for economic damages, they are not available in circumstances where class members have already been compensated for their injury.

not appear to me that the question of whether the 2010 COI actually breached any contract of insurance needs to be answered.

So we turn to the second proposed class. Plaintiffs allege that the second (2011) rate hike was also illegal – for similar reasons – and Martin Fleisher, as trustee of the Michael Moss Irrevocable Life Insurance Trust II, seeks to represent a class of policyholders who were subjected to dramatic COI increases as a result. Plaintiffs are seeking much the same relief that Phoenix gave to the members of the 2010 COI Increase after the insurer dealt with NYSID. Phoenix counters that the 2011 COI increase was specifically approved by New York's Insurance Commissioner before it went into effect – which, if true, may or may not afford it a complete defense to the breach of contract claims.

There is no meaningful difference in the relevant terms of any of the policies at issue, all of which are substantively identical to the policies held by the named plaintiffs. All of the policies state that any change in the COI rates will be (i) based only on expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements (collectively, the "Non-Guaranteed Elements"),[3] and (ii) made on a uniform basis for all insureds in the same class.

At trial, plaintiffs plan to present evidence common to each Class member that Phoenix breached these contractual provisions. Evidence thus far adduced in discovery reveals that Phoenix's decision to raise the COI on a group of life insurance policies – which Phoenix treated as "blocks" for purposes of monitoring their financial performance – may not have been based on individualized, policy-specific factors. Common evidence will also allegedly demonstrate that

---

[3] For policies subjected to the second COI increase, "tax assumptions" is also a permitted ground for Phoenix to raise COI.

certain affirmative defenses, including voluntary payment (as applied to the 2011 Class), are not viable. Therefore, plaintiffs argue, certification of both proposed classes is appropriate.

Defendants oppose class certification, arguing that a class action is not a superior means of adjudication, because individualized questions relating to defenses and damages predominate over the admittedly common question of whether the rate increases were unlawful in the first place. Defendants also argue that numerosity is lacking, and that irreconcilable conflicts "riddle" the proposed classes.

Sadly, briefing addressing the Rule 23 issues as to the 2011 Class as a separate group is sparse, and I must ignore or discount arguments applicable to certifying the 2010 Class, because I do not believe the two classes can be conflated. They are seeking radically different remedies, and only the 2011 Class needs to prove a breach of contract.

In the final analysis, I agree with plaintiff that common evidence will be introduced to support plaintiffs' claim for breach of contract, and that the claim of breach of contract is identical for all members of the proposed class. "Claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004) (quotations omitted). Courts, in fact, have certified class actions in cases very close to the facts here – a breach of contract COI dispute against an insurance company. *See In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 529-30 (N.D. Cal. 2010) ("*Conseco II*") (holding commonality satisfied because "interpretation of the standard written policy language will present a question common to the class"); *In re Conseco Life Insurance Co. Cost of Ins. Litig.*, No. ML 04-1610, 2005 WL 5678842, at *4 (C.D. Cal. Apr. 26, 2005) ("*Conseco I*") (holding commonality

5

satisfied because "whether the [defendant's action] constituted a breach of contract is an issue common to all class members").

Furthermore, it appears, on the record before me, that Phoenix is wrong when it argues that existence of individualized defenses to the breach of contract claim will predominate over the admittedly common issue. In fact, plaintiffs make a cogent argument (at this preliminary stage) that the purportedly individualized defenses will fall as a matter of law applicable to all class members. And, as will be seen below, all required elements of Fed. R. Civ. P. 23(a) and (b)(3) appear to be met in this case.

In sum: while the 2010 Class may or may not have a justiciable claim, the claims of both classes are appropriately litigated on a classwide basis. Plaintiffs' motion to certify both classes is thus granted.

## STATEMENT OF FACTS

The parties have already taken considerable discovery in this case, so this statement of facts reflects input from both sides as refracted through evidence – it is not simply a recitation of the allegations of the complaint. The court has pretty much accepted the parties' description of the evidence and makes no findings of fact on the merits in connection with this motion.

### I.  The Life Insurance Policies at Issue

All members of the proposed 2010 and 2011 Classes own flexible-premium universal life insurance policies issued by Phoenix, known as "Phoenix Accumulator Universal Life," or "PAUL" policies. Phoenix's Answer, ¶ 2. The principal benefit of PAUL policies is that they permit policyholders to pay a flexible premium instead of a specific amount every time. *See* Phoenix's Answer, ¶ 19; Ex. G (PAUL Marketing Material, at PLIC 000965). Unlike whole life insurance, which requires fixed monthly or quarterly premium payments, PAUL policyholders

6

need only pay some minimum amount in order to keep a PAUL policy in force; that amount is usually the amount sufficient to cover the COI charges and certain other specified expenses. The policyholder has the option to pay a higher premium; that overage is contributed to the "accumulated policy value" or "cash value," which can either be paid out upon maturity or be applied toward future premiums. Phoenix's Answer, ¶ 19.

Consumers often prefer flexible-premium universal life policies because they present the opportunity to pay lower premiums, as well as "adjust the amount and timing of premium payments." Ex. G (PAUL Marketing Material, at PLIC 000965). For consumers who do not intend to use their whole life insurance as an investment vehicle, the "accumulated policy value" – which reflects the amount of premiums paid in excess of COI charges and expenses – tends to remain close to zero.

The policies at issue are all form policies issued by Phoenix from 2004 to 2008 under either "Form U607 NY" or "Form 05PAUL NY." *See* Ex. J (Sept. 6, 2011, NYSID Order) (discussing first increase); Ex. M (Oct. 21, 2011 Letter from Phoenix to NYSID) (discussing second increase). Insureds are not permitted to negotiate any terms, and each policy form must be approved by the NYSID in a standard format before it can be lawfully sold within the state. Declaration of Larry N. Stern ("Stern Decl."), ¶ 17; N.Y. Ins. Law § 3201(b)(1).

These standard policies set out the factors that Phoenix may consider in setting initial COI rates; they also list various prohibitions and limitations on how and why Phoenix may increase COI rates. *See* Declaration of Jonathan Berck ("Berck Decl."), Ex. A (Loeb Policy); Declaration of Martin Fleisher ("Fleisher Decl."), Ex. A (Moss Policy). For example, the Loeb Policy, which was a Form U607 NY policy, states that, "Any change in rates will be made on a uniform basis for all insureds in the same class" and can only be "based on our expectations of

7

future mortality, persistency, investment earnings, expense experience, capital and reserve requirements." Loeb Policy at 11. Similarly, the Moss Policy, which was a Form 05PAUL NY policy, states that Phoenix may re-determine COI rates "on a basis that does not discriminate unfairly within any class of insureds" and will be "based on our expectations of future mortality, persistency, investment earnings, expense experience, capital and reserve requirements, and tax assumptions." Moss Policy at 12.

The COI terms in the Moss and Loeb policies are standard terms of Phoenix's Form U607 NY and Form Paul NY policies that are substantively identical across all the policies at issues in this case. *Compare* Fleisher Decl., Ex. A (Moss Policy) *with* Sklaver Decl., Ex. D (Specimen 05PAUL NY Policy). Phoenix does not dispute the fact that all of the policies affected by the COI increases at issue in this case are similarly worded. In fact, because of this similarity, during discovery, Phoenix produced "copies of *specimen* policy forms for New York policies subject to the first COI rate increase." Ex. B (Phoenix's Responses and Objections to Plaintiff's First Set of Document Requests) (emphasis added).

## II. Phoenix's Rate Increases

Beginning in 2010, Phoenix allegedly initiated a series of COI rate increases targeted at policyholders who chose to use the flexible premium feature and paid only the minimum premium required. Phoenix referred to this COI rate increase in certain internal communications as the "Underfunded Policy Rescue Project" and "Project X." Exs. K, N.

### A. The First COI Increase

In March 2010, Phoenix announced a first COI rate increase, which was designed to affect some 700 PAUL policyholders nationwide, including the Loeb Policy. These policies were selected because, in Phoenix's opinion, they were not keeping their accumulated policy value at

8

a "sufficient level." *See* Berck Decl., Ex. B (First COI Letter); Sklaver Decl., Ex. F (Sample First COI Letter, at PLIC 000732). No COI rate increase was imposed on other policyholders in the same class of insureds, because they had "sufficient accumulated policy value" to "avoid a rate increase." Ex. F (Sample First COI Letter, at PLIC 000731).

In applying these disparate rate increases, Phoenix treated members of the class differently despite a contractual obligation to make "[a]ny change in rates . . . on a uniform basis for all insureds in the same class."

Phoenix told policyholders subjected to this unlawful increase that they could "reduce or even eliminate the increase" only by paying more money into their accounts. Berck Decl., Ex. B. Phoenix refers to this as a premium "dump in." Br. in Opposition at 4. The Loeb Trust paid such a premium "dump in," to the tune of $700,000 in order to avoid an increase with the first COI adjustment.

The intent and effect of the COI rate increase announcement was to stop policyholders from taking full advantage of the flexible premium feature of the PAUL policies, and to induce the affected policyholders to allow their policies to lapse due to the significant increase in policy premiums. Exs. O, P (discussing anticipated "shock lapses" from the COI increase).

Phoenix's rate hike prompted an investigation by the NYSID, the state agency charged with regulating insurers. Ex. E (Letter from NYSID). In response to regulatory inquiries, Phoenix stated that the COI increase was based on a formula that was then "applied consistently to all Subject Policies." Ex. G (2/8/2011 Letter from Phoenix to NYSID, at PLIC 000946). At no point did Phoenix suggest that its decision relied on an analysis of individual policies, or that the NYSID needed to make any individualized determinations about the terms of the policies in order to evaluate whether the increase was lawful. In fact, during the investigation, Phoenix

relied on generalized policy illustrations to demonstrate the permissibility of the first COI increase. *See id.* at PLIC 000968-977, PLIC 000985-994. In its response letter Phoenix repeatedly referenced the standard language in these policy forms, arguing that the uniform language of "Form U607 NY expressly permitted" the COI rate methodology it employed. *Id.* at PLIC 000951.

But Phoenix had also asserted that, "The revised COI rates for impacted policies are a function of the Funding Ratio, defined as the ratio of a policy's accumulated value to the face amount." Ex. H (6/24/2010 Letter from Phoenix to NYSID). Perhaps realizing that the policies do not list "Funding Ratio" as a basis for a COI increase, Phoenix later tried to clarify that the decision was really made "with regard to future mortality, persistency, and investment earnings." Ex. G (2/8/2011 Letter from Phoenix to NYSID, at PLIC 000940). But Phoenix admitted that funding levels were the primary consideration: "[Phoenix] determined that there were material changes to the targeted *contributions to surplus* that necessitated an upward adjustment to COI rates." *Id.* at PLIC 000945 (emphasis added).

Ultimately, the NYSID concluded that the COI increase was (as expressed by Byron Frank a Phoenix Vice President) "not really driven by the mortality, it's really driven by the funding assumption." Ex. I (Voicemail from Phoenix VP Byron Frank). The agency concluded (whether as a preliminary matter or finally is not clear from the briefs) that this "violated [New York law] because [Phoenix] used the funding ratio as a factor for a change in the COI rates even though the [PAUL] II does not include the funding ratio as a factor for any change in COI rates." Ex. J (NYSID Order, Sept. 6, 2011). The NYSID rejected Phoenix's attempt to argue that funding ratios were merely a subcategory of "net amount at risk," in part because "net amount at risk" is identified in the policies as a relevant factor only in setting the *initial* COI rates and also

10

because the term "net amount at risk" did not reasonably suggest that "a COI rate increase would apply as a function of the funding ratio," or that "actual premiums paid will affect COI rate increases." *Id.*

Subsequent to the filing of this action, Phoenix announced that it had rescinded the unlawful first COI increase in order to settle its dispute with the NYSID. Ex. Q (Sample Letter to Policyholders). Phoenix expressly disclaimed agreement with the Department's position.

Under the settlement, PAUL policies subject to the first COI that had not been allowed to lapse received a reversal of the first COI rate adjustment on November 19, 2011. Those policies were subject to a new rate adjustment effective on the first policy anniversary on or after January 1, 2012. Through its policy administrative system, Phoenix restored the policy value to what it would have been had no change become effective on or after April 1, 2010.

Holders of policies that had been terminated received the difference, if any, between the policy value on the policy's default date or the insured's date of death using the COI rate scale effective prior to the 2010 COI and COI rates paid, plus interest at the rate of 4% effective annual yield.

According to Phoenix, the replacement rate accepted by the NYSID resulted in higher COI rates for some policyholders than would have applied if the first COI had remained in effect.

**B. The Second COI Increase**

In October 2011, Phoenix announced a second COI increase that affected a different group of PAUL policies, including the Moss Policy. Ex. F (Sample 2nd COI Letter); Fleisher Decl., Ex. B. Plaintiffs claim that there were 1400 such policies nationwide; Phoenix identifies 104 New York policies held by about 60 or so different policyholders. These policies all had face

11

amounts of $1 million or more and were issued to persons who were 65 years old and older (for one group of policies, 68 or older).

According to plaintiffs, the second COI increase, like the first COI increase, was intended to, and did, penalize policyholders who utilized the flexible premium feature of their policies, by increasing their premiums so much that it would induce policyholders to allow their policies to lapse. While most of the 104 policies it identifies were subject to a COI increase, Phoenix protests that some 17 policies actually saw a COI decrease as a result of the 2011 adjustment.

When the adjustment was announced, Phoenix made no mention of the fact that the increase was related to the amount of the policyholder's accumulated policy value. *Id.* According to plaintiffs, Phoenix has not provided <u>any</u> actuarial explanation for applying this increase to a subset of PAUL policyholders. However, Phoenix pre-cleared the second COI increase with NYSID, which advised defendant in writing that it had "no objection to the company [sic] going ahead with these changes." Berck Decl. Ex. E. This letter was sent while NYSID was negotiating with Phoenix over its demand/request (depending on which side is speaking) that the company rescind the 2010 COI increase. Nonetheless, plaintiffs allege that the second COI increase discriminates unfairly among the same class of policyholders without any apparent basis in expectations of future mortality or other risk factors.

The first and second COI increases each took effect on the policy anniversary of each individual policy. Fleisher Decl., Ex. B; Berck Decl., Ex. B. Because the second COI increase "will go into effect" on the "next policy anniversary" for each policy in the putative class starting "on or after November 1, 2011," the second COI increase did not take effect for some class members until the end of October 2012. Fleisher Decl., Ex. B.

12

## DISCUSSION

### I.  Class Action Standards

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (quoting *Espinoza v. 953 Associates LLC*, 280 F.R.D. 113, 124 (S.D.N.Y. 2011)).

Class certification is appropriate when the party seeking certification demonstrates that the four requirements of Rule 23(a) are satisfied, and that a class action may be maintained under one of the three subsections of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011); *In re Initial Pub. Offering Sec. Litig.* ("In re IPO"), 471 F.3d 24, 41 (2d Cir. 2006). "[T]he district court is afforded broad discretion in class certification questions due to the fact that 'the district court is often in the best position to assess the propriety of the class [action] and has the ability . . . to alter or modify the class, create subclasses, and decertify the class whenever warranted." *MacNamara v. City of New York*, 275 F.R.D. 125, 137 (S.D.N.Y. 2011) (quoting *Sumitomo Copper Litig. v. Credit Lyonnais Rouse, Ltd.*, 262 F.3d 134, 139 (2d Cir. 2001) (alterations in original)).

Although plaintiffs must offer facts sufficient to satisfy the Rule 23 requirements, the court "should not assess any aspect of the merits unrelated to a Rule 23 requirement." *Id.* "[T]he Court's task at the Rule 23 stage is not to resolve the liability question, but to decide 'whether the constituent issues that bear on [Defendant's] ultimate liability are *provable in common*." *Romero v. H.B. Auto. Group, Inc.*, 11 Civ. 386 CM, 2012 WL 1514810, at *17 (S.D.N.Y. May 1, 2012) (emphasis in original, quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010)).

## II. Article Three Standing Issues Do Not Bar Class Certification

The first argument propounded by Phoenix in opposition to this motion is that the class ought not be certified because there are unnamed class members who lack Article III "standing." As to the members of the 2010 Class, defendant argues that all class members have been made whole; as to the 2011 Class, Phoenix contends that some (unidentified) absent class members have suffered no injury.

I assume that, by Article III "standing," Phoenix means that there is no case in controversy as to (1) all members of the 2010 Class and (2) some putative members of the 2011 Class. Otherwise, the argument lacks merit, since courts do not require that each member of a class submit evidence of personal standing prior to certification. Instead, courts look to the standing of the named plaintiffs and the class definition. *Denney v. Deutsche Bank*, 443 F. 3d 253 (2d Cir. 2006). Here, Fleisher, the proposed representative of the 2011 Class, has not been repaid for the second (2011) COI increase, which he alleges to have been imposed in breach of the terms of the insurance contract. Invading a legally protected interest by breaching the terms of a contract is an injury-in-fact for purposes of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Central States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F. 3d 229, 243 (2d Cir. 2007). As both proposed classes are defined so that a policyholder had to be subjected to the first or second COI "increase" in order to be a class member, the 2011 Class does not purport to include policyholders whose rates went down as a result of the 2011 COI. Furthermore, even if the complaint is careless in that regard, plaintiffs have plainly indicated that they do not seek to represent such entities and individuals, if indeed they exist. Therefore, there does not appear to be any Article III issue, whether denominated as case in controversy or standing, relating to the 2011 Class.

14

The more interesting question is whether the claim asserted by Berck on behalf of the proposed 2010 Class gives rise to any case in controversy with Phoenix. Berck, and everyone else in the proposed 2010 Class, accepted the settlement offered by Phoenix as a result of the regulatory agency's investigation. The settlement bore interest at the rate of 4%. Having accepted the settlement, rather than turning it down and pursuing litigation, it is not clear to me that the members of the 2010 Class have any claim for a greater amount of interest. I have already identified this as one of the two questions raised by what is left of the 2010 Class lawsuit; I thus acknowledge the possibility that no member of the 2010 Class has any justiciable case in controversy. A class certification motion is not the vehicle for raising that issue. I invite Phoenix to address it squarely in a motion for summary judgment, made at the earliest possible opportunity.

I thus reject the defendant's argument that Article III considerations preclude certification of the proposed classes.

### III. The Proposed Classes Satisfy the Requirements of Rule 23(a)

#### A. Numerosity

The numerosity requirement is easily met in this case. Phoenix told the NYSID that the first COI increase alone "impacted" 131 policies issued in New York, Ex. R (Email to NYSID, at PLIC 0545275), and has admitted here that there are a total of 232 life insurance policies owned by 132 putative class members at issue in this case. Ex. S (Phoenix's January 8, 2013 email) and Ex. C (Phoenix's Answer to Interrogatory No. 4, identifying different owners for 232 policies). Of course, that encompasses two separate classes, the 2010 Class and the 2011 Class; but each class consists of over 100 separate policies owned by 60 or more separate owner entities.

15

Phoenix, having been advised that this court routinely follows the presumption (widely used in this Circuit) that 40 class members is sufficient to satisfy the numerosity requirement, *see, e.g.*, *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997), argues that the court should instead focus on whether joinder of the more than 40 members of each of the two proposed classes is practicable. It argues that joinder is not impracticable because the absent class members are high net worth entities and individuals and do not lack the resources to participate in this litigation. Plaintiffs reply that the court can make no such finding, because Phoenix has refused to identify the absent class members in discovery, invoking the rule that a defendant cannot shield itself from discovery and then use the undisclosed information as a sword to defeat a motion.

The only question to be answered when considering numerosity is whether the class is so numerous that joinder is "impractical" – not impossible. In this circuit, there exists a presumption that more than 40 class members renders joinder "impractical." Since more than 40 individual policy holders exist for each of the 2010 and 2011 classes, the standard is met and the simple question of numerosity is answered in the affirmative. The net worth of the individuals, and their ability to litigate on their own behalf, is more properly addressed in connection with other class certification factors.

### B. Commonality

When, as here, a group of plaintiffs suffer under a uniform course of conduct or policy, the commonality test is easily satisfied. *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 172–73 (S.D.N.Y. 2011); *In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Litig.*, 208 F.R.D. 493, 505 (S.D.N.Y. 2002).

Insofar as the 2010 Class is concerned, the two questions at issue in the case are plainly common to all members of the class. Whether the 2010 COI breached the contract of insurance is not even at issue in this case.

But breach of contract *is* the central issue in the case brought by Fleisher on behalf of the 2011 Class—whether the COI increases were permitted under the common contract of insurance that was owned by all class member policy holders. Since the terms of the policies and the law that governs them are identical, that raises a question common to all class members.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This is satisfied if the putative class's claims all "depend upon a common contention . . . [the] truth or falsity [of which] will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S. Ct. at 2551; *see also Marisol A. By Forbes v. Giuliani*, 126 F. 3d 372, 377 (2d Cir. 1997) (affirming finding of commonality where all class members' "injuries derive from a unitary course of conduct" by defendant). The commonality requirement does not require that all class members' claims or circumstances be identical, "so long as class members share a single question of law or fact in common." *Madanat v. First Data Corp.*, 282 F.R.D. 304, 310 (E.D.N.Y. 2012) (granting partial class certification over breach of contract claims stemming from form contracts with universal boilerplate language).

Breach of contract cases are particularly appropriate for class certification. In a case also involving a breach of contract claim over standard insurance policies, the Eastern District of New York held that commonality was satisfied because the plaintiff had "demonstrated that (1) all putative class members have signed substantively identical or similar [insurance] form agreements with [the defendant]; and (2) [defendant's] practice of taking [certain] deductions

17

[from reimbursements] under the contracts is a common course of conduct that has affected all putative class members." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 74 (E.D.N.Y. 2004); *see also Mazzei v. Money Store*, --- F. Supp. 2d ---, 2012 WL 6622706, at \*15 (S.D.N.Y. Dec. 20, 2012) (granting partial class certification on breach of contract claim where central issue was whether the defendant's acts were lawful under the terms of a form loan agreement).

A similar COI dispute against a different insurance company that also implemented rate hikes has been certified as a class action *twice* by two separate California district courts, both times because the primary contention—whether the insurer's centralized action violated the terms of the policy form—was an issue common to the class. *See Conseco II,* 270 F.R.D. at 529-30; *Conseco I,* No. ML 04-1610, 2005 WL 5678842, at \*4.[4]

The members of the proposed 2011 Class share common questions of both fact and law. The central issue in this case is whether Phoenix's 2011 COI increase violated the terms of the PAUL policy purchased by the putative members of that class, either because (1) the basis for the increase was unsupported by an enumerated factor in the contract or (2) because the increase was applied discriminatorily rather than, as the contract requires, to all insureds in the same class. All of the putative class members' claims depend on the outcome of those contested issues, and the answers will be uniform for each class member.

Plaintiffs also assert that damages can be calculated formulaically, thereby mooting any argument that damages do not present a common question. With respect to the 2010 Class, plaintiffs' argument is self-evident – the only issue is whether the class members received all the

---

[4] *Cf. Freeman Invs., L.P. v. Pac. Life Ins. Co.*, ---F.3d---, 2013 WL 11884, at \*3 (9th Cir. Jan. 2, 2013) (reversing dismissal of class complaint against insurer who raised COI rates because plaintiffs' breach of contract claim "will turn on whether they can convince the court or jury that theirs is the accepted meaning in the industry" and not whether insurer made individual misrepresentations to each insured).

interest to which they were legally entitled. No damages calculation could possibly present a more common issue of fact.

As for the 2011 class, plaintiffs' liability expert on class certification – Larry N. Stern, a Fellow of the Society of Actuaries (FSA) and a Member of the American Academy of Actuaries (MAAA) – explains that Phoenix's actions are particularly well suited for litigation as a class "because the propriety of each COI increase will turn on questions common to the entire subset of affected policies and will not change on a policy-by-policy basis." Stern Decl., ¶ 22. *See also id.* at ¶¶ 24, 26, 32, 35, 37, 40, 49-50, 53-54. For example, every Class member subjected to the second COI increase can establish a breach of contract by proving one common contention: that Phoenix did not implement the COI increase based upon any of the enumerated factors provided for in the policies that would permit an increase. *Id.* at ¶¶ 22-23. Whether Phoenix's decision was justified by one of the contractually enumerated factors can be established through standard actuarial analysis common in the industry – including by reviewing the "experience studies," or lack thereof, that Phoenix conducted. *Id.* at ¶ 36. Stern's initial review of the data that Phoenix has produced to date suggests that <u>none</u> of these factors supported the 2011 COI increase. *Id.* at ¶ 37.[5]

For example, if Phoenix raised COI rates due to policyholders' funding ratios, as the NYSID determined occurred for the first COI increase, that act by Phoenix would breach *every* Class member's policy because no policy form allowed "funding ratio" as a grounds to increase the COI. "The mere fact that defendants may have engaged in any of the alleged practices alone would be enough to raise common questions of law." *Madanat*, 282 F.R.D. at 311.

---

[5] His opinion extended to the 2010 COI class as well, but it is largely irrelevant, since the only issue presented by that class is the propriety of the interest paid on amounts already tendered by Phoenix to the members of the putative class – a common question if ever there was one.

Whether Phoenix's uniform actions are supported by the terms of the policy forms will therefore not vary on a policy-by-policy basis. Phoenix has never tried to argue to the NYSID that the legitimacy of its COI increases depended on issues unique to any individual contract. As Phoenix admitted to the NYSID: the first COI increase was "applied consistently to all Subject Policies" based on "express policy language" in the generic Form U607 NY; Phoenix has not suggested the second COI increase applied to the 05PAUL NY policies was any different. *See* Ex. G (2/8/2011 Letter from Phoenix to NYSID, at PLIC 000946, 951).

Finally, the case for class certification here is *stronger* than was the case in either of the COI *Conseco* cases, where classes were certified, because plaintiffs here seek only to represent Class members who own policies that were issued in New York, and subject to New York law. And, unlike in *Conseco II*, where the plaintiffs had originally suggested that oral representations by the defendant at the point-of-sale may be relevant, the plaintiffs here rely entirely on the written language of these policies – which Phoenix itself has argued to the NYSID should be interpreted the same way across all policies. *See Conseco II*, 270 F.R.D. at 530.

As in *Steinberg*, because Class members possessed standard form contracts and Phoenix engaged in a common course of conduct against those class members, whether Phoenix's COI increase violated these standard policies will not depend on an individualized inquiry into the contractual terms or circumstances of each affected policy. 224 F.R.D. at 74. The key factual questions in the case involve the methodology, actuarial evidence, and reasoning behind Phoenix's COI rate increases, and whether Phoenix had any basis for targeting the policies affected by the COI increases as compared to other policies that were not affected by the increases. Resolution of these questions, which are central to every 2011 Class member's claim, requires no individualized determinations. Phoenix would be hard pressed to argue that the rate

20

increases were not made on a class-wide basis, because both the terms of the policies and New York insurance law prohibit a life insurer from increasing rates in a manner that discriminates within a class of insureds. N.Y. Ins. Law § 4224(a); *see Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506, 547–48 (S.D.N.Y. 1997).

In sum, the central issue in dispute in connection with the second COI is whether Phoenix's class-wide increase of the COI was contractually permitted under the standard, form contracts it entered into with each Class member – notwithstanding NYSID's alleged approval of the increase. There are no unique facts relevant to this dispute for each Class member, and Phoenix does not have different defenses to justify why some individual Class members were subjected to the COI increases. Thus, there are common answers to common questions, and commonality is therefore easily satisfied.

### C. Typicality

The typicality requirement is met when the claims of the class representatives "'arise from the same practice or course of conduct that gives rise to the claims of the proposed class members.'" *Jermyn v. Best Buy*, 256 F.R.D. 418, 436–37 (S.D.N.Y. 2009) (quoting *Marisol A.,* 126 F.3d at 376); *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact pattern underlying the individual claims."); *Marisol A.*, 126 F.3d at 376 (typicality "satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.").

In this case, the representatives of each proposed class complain of the same unlawful conduct as every other member of the class. For the 2010 Class, the claim of the named plaintiff

21

(Berck) is typical of the claims of every other class member, since all of them had their 2010 COI increases rescinded and were paid settlement amounts with interest at 4%. For the 2011 Class, the claim of the named plaintiff (Fleisher) is also typical, in that all members of the class were allegedly subjected to a COI increase in violation of the terms of their policies. The plaintiffs will therefore make similar legal arguments to prove Phoenix's liability as any other Class member – breach of a form contract.

The typicality requirement is met here even more clearly than it was in the cases cited above, because plaintiffs do not merely allege an unlawful "practice or course of conduct." Plaintiffs allege that all members of each class have been damaged by a single act by Phoenix, the decision to raise the COI (for the 2011 class) or to pay interest at less than the statutory rate (for the 2010 class). Any minor deviations in the numerical amounts of the specific policies at issue has "no bearing" on the contractual question common to all policies. *Madanat*, 282 F.R.D. at 313.

Phoenix argues that Fleisher's claim is not necessarily typical of the claims of all members of the 2011 class because some members of the proposed classes received reductions in their COI as a result of the COI adjustment that was implemented in that year. But the proposed class as defined by plaintiffs consists only of PAUL owners who were subjected to a COI "increase," not a decrease; so if there were any policyholders whose COI went down as a result of the 2011 COI adjustment, they are perforce not members of the class Fleisher proposes to represent.

### D. Adequacy of Representation

The class representatives and their counsel are ready, willing, and able to fairly protect the interests of the class as a whole, and will devote the resources to pursue this case vigorously.

22

In determining whether the adequacy requirement is satisfied, the Court must consider whether "'1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.'" *In re Flag Telecom Holdings, Ltd. Securities Litigation*, 574 F.3d 29, 35 (2d Cir. 2009) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). These criteria are easily met here.

Both Martin Fleisher and Jonathan Berck have undertaken to represent the class vigorously and each affirmatively understands his duties as class representative. Fleisher Decl., ¶¶ 6-8; Berck Decl., ¶¶ 7-9. The named Plaintiffs have an adequate understanding of the claims being advanced in the litigation, reviewed the Complaint before it was filed, and are knowledgeable about the underlying actions taken by Phoenix. *Id.* Neither Fleisher nor Berck has any conflicts of interest with other members of the Class or potential interests that are antagonistic to the Class that would preclude them from representing the Class as a whole. *Id.* Both are trustees of trusts that own policies issued by Phoenix and are in the same position as all other policyholders in the proposed Classes – all of whom have a common interest in seeing that the terms of their policies are honored. *Id.*

Phoenix argues that serious intra-class conflicts render the named plaintiffs inadequate as class representatives, but its arguments (which relate only to the 2011 Class) are far from convincing.

First, Phoenix points out that at least 17 policies affected by the 2011 rate adjustment saw their rates decrease, not increase. If those individuals were encompassed within the class definition there would be an adequacy of representation (and a typicality) problem – but they are not. Fleisher seeks only to represent policyholders who saw their rates increase.

23

Of course, if there are individuals who are not members of the class, but who believe they would be adversely affected were the class members to prevail, they might well have a right to intervene in this action. But that neither makes them class members nor affects the adequacy of Fleisher as a class representative of policyholders who saw their rates increase for allegedly illegal reasons.

I find *Thao v. Midland National Life Insurance Co.*, 09 Civ. 1158, 2012 WL 1900114 (E.D. Wis May 24, 2012), one of the few cases on which defendants rely, unpersuasive. In that case, the court refused to certify a class of universal life insurance policy holders who argued that illegal and extracontractual factors had gone into the calculation of its COI rate. *Thao*, 2012 WL 1900114. The court acknowledged that, "There is likely a single answer for all policyholders" to the question of whether the rates had been calculated in accordance with the common terms of the policy, but nonetheless refused to certify a class because some policyholders might prefer to see the policy construed as the insurer had – even if the insurer was wrong – because the potentially erroneous construction benefitted them financially. *Id.* at *3.

But the refusal to certify a class in such circumstances suggests that a policy holder has a right to have his rates adjusted in an illegal or extracontractual manner, simply because such a wrongful adjustment redounds to his personal benefit. That is not correct – no policyholder has a right to an illegal or extracontractual adjustment to his COI, so the possibility that some policyholders might prefer to see an illegality go unredressed is not a persuasive reason not to certify a sufficiently numerous class of policyholders who do.[6]

---

[6] I would expect such policyholders, if any exist among putative class members, to opt out of the class, perhaps even seeking leave to intervene on the side of defendant.

24

And in any event, plaintiffs are not here seeking an injunction directing Phoenix to recalculate the COI rate adjustment for all policyholders according to a formula they prefer; rather, they ask for damages on behalf of class members who were harmed by the COI increases.

Plaintiffs' counsel has extensive experience as counsel of record in certified class actions, and has specific expertise in litigation over life insurance policies, having handled a number of cases of this type. *See* Sklaver Decl., ¶¶ 1-2, Ex. A. Lead counsel for Plaintiffs, Steven G. Sklaver, has also previously represented other named plaintiffs in a certified class action in which his law firm, Susman Godfrey L.L.P., was appointed lead counsel. *Id.* at ¶2. Counsel for Plaintiffs is more than capable of representing the interest of the proposed Classes in this case, and defendant does not contend otherwise.

### IV. The Proposed Classes Satisfy the Requirements of Rule 23(b)(3)

Certification of each of the proposed Classes is appropriate under Rule 23(b)(3), because the common issues of law and fact predominate over individual issues, and because a class action is the superior method for adjudicating this controversy.

#### A. Predominance

The predominance requirement of Rule 23(b)(3) is satisfied when "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (quoting *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 107–08 (2d Cir. 2007)) (ellipsis in original). While the predominance standard is more demanding than the commonality required by Rule 23(a), predominance "does not require a plaintiff to show that there are *no* individual issues." *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 111 (S.D.N.Y. 2011) (emphasis in original).

There is widespread agreement that certification under Rule 23(b)(3) is warranted for claims that involve contracts that, like here, contain the same or essentially the same terms. "An overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 37 (E.D.N.Y. 2008); *see, e.g.*, *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 42 (1st Cir. 2003) ("Overall, we find that common issues of law and fact predominate here. The case turns on interpretation of the form contract, executed by all class members and defendant."); *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018, 2012 WL 860364, at *11 (N.D.N.Y. Mar. 13, 2012) (certifying class in claim for breach of "a standard form contract, the interpretation of which will not require individualized inquiries as to each contract signed by each proposed class member"); *Steinberg*, 224 F.R.D. at 76 (predominance requirement satisfied when "the plaintiff's claim is for the simple breach of a standard form contract and involves only the standard rules of contract interpretation").

There is but one issue in suit in connection with the now-rescinded 2010 COI rate increase – did the injured parties receive all the interest to which they were entitled as a matter of law, either because acceptance of the settlement moots any claim or because New York's statutory prejudgment interest rate does not apply to voluntary payments? Not only does this common issue predominate, it is exclusive. Settling the question requires no discovery at all; a simple and uncomplicated motion for summary judgment will do the trick, accompanied by what I hope will be a rather short brief.

Because the 2011 class alleges breach of contract case arising out of standardized insurance policy forms, the common questions of law and fact predominate over any individual questions. The insurance policies at issue contain provisions regarding how COI rates are set and

what Phoenix can consider in making any changes in rates, and these terms are substantively identical for all the policies held by the members of the Classes. Even if the appropriate interpretation of these terms is disputed, that issue will be resolved when this court decides "the accepted meaning in the industry" of the same provisions in these uniform policies. How any one individual insured may have interpreted his or her contract is of no moment. *Freeman*, 2013 WL 11884, at *2. The key issue regarding this class is whether Phoenix increased the COI in a way or in a manner that violated the terms of the form insurance contracts. Resolution of that question—and thus Phoenix's liability—will depend on common proof. *See Flores*, 284 F.R.D. at 130-31 ("The key issue regarding this class is whether Defendants had general policies to deny its employees spread of hours pay and to make its employees pay for their uniforms. Plaintiffs have adduced sufficient evidence that these common policies exist. Resolution of these questions—and thus Defendants' liability—will depend on common proof.").

The lawfulness of Phoenix's actions as to each member of the Classes will not depend on issues specific to that individual, but will instead depend on the common answer to the common contention that Phoenix used an impermissible basis to increase the COI for a large group of policyholders in one fell swoop. *See* Stern Decl. ¶¶ 22, 24, 26, 32, 40, 49-54. Phoenix's own response to the NYSID's inquiries about the first COI increase (which has some probative relevance to the claims of the 2011 Class, albeit indirectly) confirms that these policies are standard form contracts, the language of which can be interpreted once and applied to all. *See* Ex. G (2/8/2011 Letter from Phoenix to NYSID, at PLIC 000940, 946 n.9, 951) (informing NYSID that the increase "applied consistently to all Subject Policies," providing only illustrations of those policies, and arguing that the language in the policy form "expressly permitted" the action as to all individual policies). Therefore, the predominant questions in the

27

case are "subject to generalized proof, and thus applicable to the class as a whole." *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F. 3d 124, 136 (2d Cir. 2001).

The case for class certification is especially strong when, as here, the alleged breach involves a single decision by Phoenix to take action with respect to all class members. When a defendant makes a class-wide decision, the proof of whether the decision was lawful will be based on evidence that applies equally to the Class as a whole. For example, in *Board of Trustees of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, the court certified a Rule 23(b)(3) class of account holders suing a bank for breach of fiduciary duty for deciding to purchase a particular security for their accounts. 269 F.R.D. 340 (S.D.N.Y. 2010). In holding that the plaintiff satisfied the predominance requirement, the court emphasized that the defendant bank made the decision "on behalf of *all* class members," and that its treatment of and communication with all class members was the same. *Id.* at 349–50 (emphasis in original); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003) ("Because all of the dealer agreements were materially similar and [defendant] purported to reduce the price of wholesale gas for all dealers, … [w]hether it breached that obligation was a question common to the class and the issue of liability was appropriately determined on a class-wide basis."); *In re Risk Mgmt. Alts.*, 208 F.R.D. at 505 (predominance requirement satisfied for FDCPA suit when claims of all class members were based on same language communicated by defendant to each class member). With the 2011 rate hike, Phoenix is alleged to have illegally changed the formula for raising COI applicable to the entire Class (defined as policyholders who experienced an increase in their COI rates), so the predominance requirement is easily satisfied.

As compared to the common issues that are central to this case, there are few individual questions that will require significant additional proof. By definition, all class members are

28

policyholders who received notice that they were being subjected to an increase in their cost of insurance from Phoenix. Compl. ¶¶ 36-37 (defining classes). These policyholders can be easily identified from Phoenix's records. Through its notice to the Class members, Phoenix itself asserted its contractual right to payment from them, so there can be no reasonable dispute about the existence of a contractual relationship between Phoenix and each Class member. Further, the breach of contract claims do not depend on oral communications between Phoenix and any individual policyholder, but depend on the written terms of the policies and Phoenix's class-wide decision to adjust rates. *See Conseco II*, 270 F.R.D. at 530 (certifying class in part because "as long as plaintiffs are willing to attempt to prove their claims based solely on the policy documents, and not on any oral representations made by sales agents, the Court does not believe that a significant amount of individualized proof will be required); *cf. Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002) (noting that class certification for fraud claim is warranted when all class members received "standardized" communications, but not when there are "material variations" in the defendant's communications with each class member).

Finally, the damages suffered by each plaintiff can be readily ascertained. Although not every plaintiff has suffered the same amount of damages, the damages vary primarily based on the size of each affected policy and the amount of additional payment Phoenix demanded from each policyholder. Most if not all of the evidence needed to determine damages can be obtained from Phoenix's own records of each policyholder's cost of insurance and accumulated policy value over time.

Even if some individualized fact-finding to determine damages is necessary, this would not be a sufficient reason to defeat class certification. "[I]t is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class

29

certification." *Seijas v. Republic of Arg.*, 606 F.3d 53, 58 (2d Cir. 2010); *Flores*, 284 F.R.D. at 126-27 ("The differences among the Plaintiffs as to the number of hours worked, the precise work they did, and the amount of pay they received concern the amount of damages to which any individual Plaintiff might be entitled if and when liability is found, not the amenability of the plaintiffs' claims to the class action form." (quotation marks and citations omitted)).

Phoenix argues that individualized affirmative defenses defeat predominance, but it has not made a compelling case in that regard.

There is no persuasive argument based on affirmative defenses – indeed, no argument at all – where the 2010 Class is concerned, because there is no individualized affirmative defense. Either all the class members got the correct amount of interest or they all got the wrong amount of interest – or they all have no claim for interest because they accepted Phoenix's settlement.

The principal individualized affirmative defense cited by Phoenix in connection with the 2011 Class is "voluntary payment" – defendant alleges that some policyholders voluntarily elected to pay the adjusted rate with full knowledge that Phoenix had breached the insurance contract when it adjusted the COI rate. But plaintiffs intend to argue that the defense is inapplicable as a matter of law, because Phoenix gave false, not true, information about the basis for the rate hikes to all class members. *Samuel v. Time Warner, Inc.*, 809 N.Y.S.2d 408, 418 (Sup. Ct. N.Y. Co. 2005). Since the record at present does not suggest that individual policyholders were given different reasons for making the rate adjustment, the common question of whether Phoenix misrepresented its reasoning to its policyholders as a group predominates.

Similarly, while waiver and ratification might otherwise render some policyholders' claims inappropriate for class treatment, plaintiffs will offer common proof to demonstrate that those doctrines, too, are inapplicable, due to Phoenix's failure to disclose all material facts. *LNC*

30

*Invs. V. First Fidelity Bank, N.A. N.J.*, 173 F. 3d 454, 463 (2d Cir. 1999). Since common evidence will establish whether Phoenix's COI disclosure, made to all class members alike, were or were not accurate, potential defenses to liability – to the extent they are viable at all – can largely be resolved through generalized proof. *Pub Emps. Ret. Sys. Of Mississippi v. Merrill Lynch & Co.*, 277 F.R.D. 97, 101 (S.D.N.Y. 2011).

### B. Superiority

The final question presented by this motion is whether a class action is a superior method for adjudicating the issues presented.

For the 2010 Class; the question again answers itself. Not only does class treatment provide a single forum to adjudicate the rights of approximately sixty policyholders, owning over 100 policies, concerning the interest they received in connection with the COI settlement – a single and singular issue – but it affords an efficient way to resolve an issue that would not likely be litigated by every class member individually, because the amount in controversy for each class member (the difference between 4 and 9 percent interest for a relatively short period of time on a settlement amount already tendered) is too small to warrant individual lawsuits – even from relatively wealthy policy holders who can afford to hire lawyers to pursue such relatively small claims. For this class, Phoenix's suggestion of individual actions fails because the individual amounts in controversy could easily be dwarfed by the cost of litigation – even with a sharing of resources.

I am advised that Lima Acquisition, on whose behalf two of the other three actions that are pending before this court against Phoenix-related entities (but not the defendant in this case), is a member of the proposed 2010 Class, as it owns four policies that were subject to the 2010 COI increase. Lima has not brought an action against the Phoenix Life Insurance Company, the

31

defendant in this case, which issued those four policies. Therefore, there is no other action pending in respect of these four policies as to which Lima would have an independent interest in controlling the litigation; given the ridiculously small amount ostensibly in controversy, since the 2010 COI was rescinded, U.S. Bank's declination to pursue relief on its own nickel is entirely understandable.

The crux of Phoenix's argument as applied to the proposed 2011 Class is this: class actions are designed to give small claimants a method of obtaining redress for claims that would otherwise be too small to warrant individual litigation (citing *Eisen v. Carlisle & Jacquelin*, 391 F. 2d 555, 560 (2d Cir. 1968). Here, the putative class members are high net worth individuals and entities, owning million dollar life insurance policies on which they are capable of paying large premiums, who can well afford to bring individual lawsuits if they choose to pursue the matter. Damages measured in the amount of the 2011 COI increase (as opposed simply to a portion of interest on the rescinded 2010 COI increase) are likely to be in the five or six figures, making the claims worth pursuing on an individual basis if there are policyholders who care to pursue them. "Where the size of each claim is significant, and each proposed class member therefore possesses the ability to assert an individual claim, the goal of obtaining redress can be accomplished without the use of the class action device." *Stoudt v. E.F. Hutton & Co.*, 121 F.R.D. 36, 38 (S.D.N.Y. 1988).

Whether the Second Circuit's famous formulation in *Eisen* would be written today is questionable. After all, small consumer class actions are presently under attack, *see, e.g.*, *Am. Exp. Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2308 (2013), *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1430 (2013), while the Private Securities Litigation Reform Act not only encourages class actions by large institutional holders of securities, but expressly makes them the statutorily-

preferred class action plaintiffs. Not surprisingly, the cases cited by Phoenix in support of this argument are, for the most part, older cases, decided at a time when claims for $60,000 (*Stoudt*) – or even $5,000 (*Steinmetz v. Bache & Co*. 71 F.R.D. 202 (S.D.N.Y. 1975) – were actually deemed large enough to incentivize individual suits! That is a silly argument in today's world.

But it is equally silly for the Trustees to suggest that Phoenix's argument should be rejected because the absent class members (whose identities have not yet been revealed by Phoenix) might turn out not to be high net worth entities. As I understand matters, the absent class members of the 2011 COI Class all own policies with face values of $1 million or more insuring the lives of people older than 65 – a relatively high mortality risk group, which means rather high premiums as premiums go. The court can infer from this fact that the absent class members in this case do not look a whole lot like the absent class members in a typical consumer fraud class action.

Silly arguments from either side are not likely to catch this court's fancy. Rule 23(b)(3) lists four factors in determining whether a class action is a superior method of adjudication: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

All four factors unambiguously favor certification of the proposed 2011 class.

First, contrary to Phoenix's assertion, members of the class defined by plaintiffs (not redefined by Phoenix) have no overwhelming interest in proceeding individually rather than collectively. All class members share an interest in having their contractual rights protected, and

33

the classes therefore have a "high degree of cohesion." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 617 (1997) (quoting Adv. Comm. Notes to Rule 23). But because understanding and proving the methodology by which an insurance company changes its rates likely involves expert testimony, even class members with a claim of, say, $100,000 have little incentive to seek legal redress on their own – especially against a defendant with extensive resources to litigate and a proven track record (as seen in this very action) of employing them liberally. As plaintiffs point out, the scope of discovery (which has proceeded apace in this court) is vast – nearly 700,000 pages of electronic discovery have already been produced, and an actuarial expert is required to make sense of them. The cost of litigating individually undoubtedly exceeds the potential for recovery for most class members, making this the classic "negative value" action.

Furthermore, the fact that some of the policyholders' damages are likely large enough to provide an incentive for individual suit does not bar class certification. "[T]he existence of large individual claims that are sufficient for individual suits is no bar to a class when the advantages of unitary adjudication exist to determine the defendant's liability." *Board of Trustees of the AFTRA Ret. Fund*, 269 F.R.D. at 355 (quoting 2 Newberg on Class Actions, § 4.29 at 260 (4th ed. 2010)); *see also Amchem Prods. Inc.*, 521 U.S. at 617 (noting "Rule 23(b)(3) does not exclude from certification cases in which individual damages run high" and that Rule 23's "opt out" provision for (b)(3) classes provides protection for class members who desire to control their own actions); *Pub. Emps.*, 277 F.R.D. at 120 (certifying class that included institutional investors with large claims and noting that even if some class members would have the incentive to sue individually, "proceeding as a class would still be superior to over 1,600 individual actions").

34

The third and fourth factors further bolster the case for class certification. Phoenix can hardly argue that it is undesirable to concentrate this litigation in a single forum, because it has done everything in its power to make sure that cases brought elsewhere end up here. As Phoenix itself has argued, being in a single forum has "a number of benefits, including eliminating the risk of inconsistent adjudications and promoting the fair and efficient use of the judicial system." *Id.* at 121 (quoting *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 Civ. 8144, 2009 WL 5178456, at *12 (S.D.N.Y. Dec. 23, 2009)). It would be a waste of resources for the parties and the judicial system if each plaintiff were required to institute an individual action to determine simultaneously whether Phoenix's COI rate increases were lawful – especially given that the critical evidence about the basis for Phoenix's conduct would be identical in each case. *Jermyn*, 256 F.R.D. at 436–37 ("From the standpoint of judicial economy, the only rational way to proceed is to concentrate the class' claims in a single action, rather than have numerous separate trials on the same issue, based on the same evidence."). And while an individual action that led to a judgment against Phoenix would be collateral estoppel in subsequent individual actions, no individual with a claim under New York law has taken up that cudgel.

There are no inherent difficulties to the maintenance of this case as a class action, and in fact this case will be far more manageable than many class actions that are regularly certified. Unlike many consumer class actions, for example, the identity of each class member is readily ascertainable, based on Phoenix's own records of who was subjected to the rate increases. Indeed, when the court asked counsel a question about whether the plaintiffs in the other three actions pending before this court were putative class members in this action, Phoenix was first out of the gate with the correct answer – culled from its records. All members can be readily notified that a class has been certified and will have the opportunity to opt out if they prefer, for

whatever reason, not to be bound by the judgment in this case. The case can be managed efficiently and is being managed efficiently, by an excellent Magistrate Judge who has merits discovery well in hand. As already discussed, the common questions predominate and only minimal individualized determinations, if any, will be necessary.

This leaves the second factor. As has been mentioned several times, there are presently three other actions, brought by two different parties, in this court challenging Phoenix's COI increases, *Tiger Capital, LLC v. PHL Variable Insurance Co.*, No. 12 Civ. 2939 (S.D.N.Y.), *U.S. Bank National Association, as securities intermediary for Lima Acquisition LP v. PHL Variable Insurance Co.*, No. 12 Civ. 6811 (S.D.N.Y.), and *U.S. Bank National Association as securities intermediary for Lima Acquisition LP v. PHL Variable Insurances Co.*, No. 13 Civ. 1580 (S.D.N.Y.). All three actions allege breach of contract in connection with the 2011 COI. However, all three actions are brought against a different defendant than the defendant in this action. I am apprised by class counsel that the defendant in the other three actions is not even licensed to do business in New York, and so cannot have issued policies encompassed within the class. Both Phoenix and U.S. Bank National Association indicate that Lima Acquisition is a member of the 2010 Class but not the 2011 Class. All parties agree that Tiger is not a member of either class.

Because no other actions have been brought by holders of policies within the 2011 Class, the pendency of other actions pending before me is no barrier to class certification. Indeed, the fact that there are no other cases suggests that, whatever Phoenix may argue, the other class members have little or no interest in controlling their own litigation fortunes.

Plaintiffs have apprised the court of a fourth action, *PHL Variable Ins. Co. v. The Helene Small Ins. Trust*, No. 1:12-CV-00312 (D. Del.). I know nothing about this case. However, it is

36

brought by a Phoenix affiliate, not by defendant, and that affiliate is not licensed to do business in New York State. The pendency of that lawsuit is thus of no relevance to the certification calculus.

## CONCLUSION

For the foregoing reasons, the motion to certify two separate classes is granted. The court hereby certifies a 2010 Class seeking the interest differential on sums already repaid to class members who were adversely affected by the 2010 COI increase, and a separate 2011 Class of policyholders who experienced the 2011 COI rate increase (not decrease). Both classes are limited to holders of policies issued in New York by Phoenix Life Insurance Company, and subject to New York law.

This constitutes the decision and order of the court. The Clerk of the Court is directed to remove the motion at Docket # 81 from the court's list of pending motions.

Dated: July 12, 2013

_____

U.S.D.J.