# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARTIN FLEISHER, AS TRUSTEE OF THE MICHAEL MOSS IRREVOCABLE LIFE INSURANCE TRUST II and JONATHAN BERCK, AS TRUSTEE OF THE JOHN L. LOEB, JR. INSURANCE TRUST, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) |
| | ) |
| Plaintiffs, | ) ) |
| | ) |
| vs. | ) ) |
| | ) |
| PHOENIX LIFE INSURANCE COMPANY, | ) ) |
| | ) |
| Defendant. | ) ) |
| | ) ) |

Civil Action No. 11-cv-8405(CM)

**PLAINTIFF JONATHAN BERCK'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND FOR PARTIAL SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ..................................................................................................1

II.    STANDARD OF REVIEW ....................................................................................3

    A.     RULE 12(b)(1) ............................................................................................3

    B.     RULE 56 .....................................................................................................4

III.   LEGAL ARGUMENT ...........................................................................................4

    A.     ARTICLE III STANDING IS SATISFIED ...............................................4

    B.     BERCK IS ENTITLED TO BREACH OF CONTRACT DAMAGES. .................5

        1.     Berck was injured by Phoenix's breach of contract....................................5

        2.     The doctrine of anticipatory breach does not govern this dispute. ...........................................................................................................7

    C.     BERCK IS ENTITLED TO PREJUDGMENT INTEREST AT THE 9% STATUTORY RATE. ...........................................................................8

        1.     Prejudgment interest is mandatory for breach of contract actions. .......................................................................................................8

        2.     Berck is entitled to the statutory rate of 9 percent. .....................................9

IV.    CONCLUSION.....................................................................................................11

i

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ................................................................................................................ 8

*Bennett v. Spear,*
    520 U.S. 154 (1997) ................................................................................................................ 7

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ................................................................................................................ 8

*Contemporary Mission, Inc. v. Famous Music Corp.,*
    557 F.2d 918 (2d Cir. 1977) ................................................................................................ 10

*Golden v. Zwickler,*
    394 U.S. 103 (1969) ................................................................................................................ 5

*Gussack Realty Co. v. Xerox Corp.,*
    224 F.3d 85 (2d Cir. 2000) .................................................................................................. 12

*Long Island R. Co. v. Northville Industries Corp.,*
    41 N.Y.2d 455 (1977) ........................................................................................................ 6, 11

*Lujan v. Defenders of Wildlife,*
    504 U.S 555 (1992) ................................................................................................................ 8

*NML Capital v. Republic of Argentina,*
    17 N.Y.3d 250 (2011) ...................................................................................................... 13, 14

*Searight v. Doherty Enterprises, Inc.,*
    02-CV-0604(SJF)(JO), 2005 WL 2413590, *1 (E.D.N.Y. Sept. 29, 2005) ........................ 5

*Spodek v. Park Property Development Assoc.,*
    96 N.Y.2d 577 (2001) .......................................................................................................... 12

*Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.,*
    554 U.S. 269 (2008) ................................................................................................................ 7

*Williamson & Co., Inc. v. Colby Engraving & Rubber Plate Corp.,*
    413 N.Y.S.2d 580 (N.Y. Sup. Ct. 1979) ......................................................................... 7, 14

**Statutes**

N.Y. C.P.L.R. § 5001 ................................................................................................................ 12

N.Y. C.P.L.R. § 5004 ................................................................................................................ 12

## I.   __INTRODUCTION__

On August 16, 2013, Defendant Phoenix Life Insurance Company ("Phoenix") filed a partial motion to dismiss for lack of subject-matter jurisdiction and for partial summary judgment, which sought dismissal of the claims of all of the members of the 2010 Class for whom Plaintiff John Berck, trustee for the John L. Loeb, Jr. Insurance Trust ("Loeb Trust" or "Berck") sought certification.   Phoenix, however, failed to file a separate statement of material facts as required by Local Rule 56.1.   This procedural error is, by itself, sufficient grounds to deny Phoenix's motion.   *See*, *e.g.*, *Searight v. Doherty Enterprises, Inc.*, 02-CV-0604(SJF)(JO), 2005 WL 2413590, *1 (E.D.N.Y. Sept. 29, 2005) ("Since Defendant has failed to submit the required 56.1 statement, the Court is unable to adequately assess whether there exist any genuine issues of material fact. . . . Defendants' motion for summary judgment is DENIED without prejudice.").

Ten days later, this Court decertified the 2010 Class, re-affirmed certification of the 2011 Class, and ordered that, with regard to the 2010 COI increase, the Loeb Trust could individually proceed with his claims against Phoenix.   Dkt. No. 149 (August 26, 2013 Order). This memorandum therefore only opposes the arguments that apply to the Loeb Trust because all other arguments advanced by Phoenix about the 2010 "impact" and "lapse" classes, as Phoenix improperly spins it in its favor (despite being the summary judgment movant), are not presently at issue and should be denied as moot and not ripe. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969) ("[T]he federal courts established pursuant to Article III of the Constitution do not render advisory opinions.").

Phoenix has utterly failed to contest *liability* in its motion and admits for purposes of the motion that Berck was *forced* to pay Phoenix $700,000 extra as a result of Phoenix's breach of

1

contract.  Motion at 11.[1]  Instead, Phoenix attacks a strawman and invokes the doctrine of anticipatory breach – a doctrine that Berck's individual claim does not rely upon – to contend that his "damages theory" is "wrong." The anticipatory repudiation doctrine functions as a *defense to non-performance* for the victim-plaintiff.  *See, e.g., Long Island R. Co. v. Northville Industries Corp.*, 41 N.Y.2d 455, 464 (1977).  But that doctrine has no application to Berck because Phoenix does *not* contend in its motion, nor could it, that Berck failed to perform under the contract, and he is obviously entitled to sue for and did sue for ordinary ***breach of contract***.

And the damage to Berck is clear.  For example, Phoenix (i) has *not* returned to Berck his $700,000 forced-payment, and (ii) *paid itself from the $700,000 forced payment a commission* of approximately 5%, which is known in insurance-parlance as a "sales charge," which obviously did not inure to Berck's benefit.  *See* Dkt. 84, January 11, 2013 Berck Declaration ("Berck Decl."), Ex. A (Loeb Policy) at Schedule Page 2 ("Policy Charges, Sales Charge, "5% of all premiums paid in policy years 2+") (bates JB511).  The contract, in fact, imposes *substantial fees and penalties* on Berck were he to have tried to withdraw the $700,000 that Phoenix unlawfully forced him to pay and has retained to this date, fees and penalties that likely *exceed* the $700,000 at issue.[2]  It also borders on the frivolous for Phoenix to somehow try to persuade this Court that Berck is not damaged by the sales charge it imposed—Phoenix paid itself and retained at least $35,000 (= 5% x $700,000) as a sales charge on Berck's $700,000 forced-payment that would

---

1 Expert testimony may reveal that the forced-loan amount may in fact be more than $700,000, but for purposes of opposing this motion, the exact figure is irrelevant. Expert reports are not due under the scheduling order under September 16, 2013.

2 The surrender charge and withdrawal fees required by the contract are both applicable if money is withdrawn from the policy.  The surrender charge is $585,000 and the withdrawal fee is $25.  The policy also requires a corresponding *decrease* in the face value of the policy of the amount withdrawn.  *See,* Berck Decl., Ex. A. at Schedule Page 2 (withdrawal fee), 3 (surrender charge fee) and 12 (partial withdrawal fees are on schedule pages and penalty includes decreasing the face amount of the policy by the withdrawal amount) (bates JB 512, 521, 528)

2

not have been paid but-for Phoenix's breach of contract.  Notably, Phoenix's motion *completely omits* addressing this category of damages, which is discussed in Berck's Rule 26 disclosures served long ago.  August 30, 2013, Declaration of Steven G. Sklaver ("Sklaver Decl."), Ex. 1 (November 19, 2012 Rule 26 disclosures) at 4 (damages include "related sales charges paid by the Loeb Trust.").  While Phoenix may argue that some of the $700,000 in forcibly-extracted premium payments over time has been used to pay the policy's COI, that is simply an issue that goes to the *amount* of damages, not the *fact* of damages.

Phoenix's alternative argument that only 4% interest is owed rather than 9% as a result of its breach of contract is also wrong.  It is bedrock New York law that the contractual interest rate is used in lieu of the statutory 9% interest rate only in cases where the parties specify a post-breach interest rate.  *See*, *e.g.*, *Williamson & Co.*, *Inc. v. Colby Engraving & Rubber Plate Corp.*, 413 N.Y.S.2d 580, 581 (N.Y. Sup. Ct. 1979).  The insurance policy at issue here says no such thing, and Phoenix does not cite to any contract language that states otherwise.

For all of these reasons, Berck respectfully requests that the Court deny Phoenix's partial motions.

## II.   STANDARD OF REVIEW

### A.   RULE 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may raise as a defense that the plaintiff "lack[s] subject matter jurisdiction."  For a federal court to have jurisdiction over a dispute, the plaintiff must have standing under Article III of the U.S. Constitution.  *Sprint Commc'ns Co.*, *L.P. v. APCC Servs.*, *Inc.*, 554 U.S. 269, 273 (2008).  "And in order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.*, a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.*, a 'fairly ... trace[able]' connection between the alleged injury in fact and the alleged conduct of the

3

defendant); and (3) redressability (i.e., it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit). *Id.* at 273–74 (quotation marks omitted). The plaintiff bears the burden to show that it meets each element required for Article III standing. *Bennett v. Spear*, 520 U.S. 154, 167–68 (1997).

### B. RULE 56

On a motion for summary judgment under Federal Rule of Civil Procedure 56(c), all credible inferences must be drawn in favor of the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court can only grant summary judgment in the narrow circumstance where "no genuine issue as to any material fact" exists between the parties and the remaining undisputed facts entitle the moving party to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Here, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine dispute of material fact." *Id.* at 323.

## III. LEGAL ARGUMENT

Phoenix does not contest or dispute for purposes of its motion the fact that (1) Phoenix breached its contractual obligations owed to Berck, (2) as a result of the breach, Berck was forcibly required to pay Phoenix an extra $700,000 than he otherwise would not have had to pay had there been no breach, and (3) Phoenix has not returned that $700,000 to Berck. As a result of this misconduct, Berck has alleged a claim for breach of contract and asks for his money back as a result of Phoenix's breach plus mandatory prejudgment interest.

### A. ARTICLE III STANDING IS SATISFIED

Phoenix's argument that this Court does not have subject matter jurisdiction over Berck's

4

claim because he allegedly suffered no damages is obviously wrong.  Berck suffered an injury-in-fact because Phoenix "inva[ded] a legally protected interest" by breaching the terms of its contract. *Lujan v. Defenders of Wildlife*, 504 U.S 555, 560 (1992); *see Erwin Chemerinsky*, Federal Jurisdiction 69 (5th ed. 2007 ("Injury to rights recognized at common law-property, contracts, and torts-are sufficient for standing purposes."). In the Second Circuit, a plaintiff need not "establish specific financial harm" to have standing, because such a requirement "conflates a defense to the merits of the [claim] with the requirement to make a threshold jurisdictional showing." *Central States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 243 (2d. Cir. 2007). The fact that Berck was "involved in a contractual relationship with [Defendant]" is enough "so as to give [it] standing." *Id.*  For this reason alone, Phoenix's partial motion to dismiss for lack of subject-matter jurisdiction should be denied.

In any event, the entire premise of the motion is wrong because, for the reasons explained next, Berck *has* been financially damaged by Phoenix's breach of contract, Phoenix's retention of the forced-loan payments to this day, and Phoenix's 5% sales charge tax on the funds unlawfully extracted from Berck due to Phoenix's breach of contract.

## B.    <u>BERCK IS ENTITLED TO BREACH OF CONTRACT DAMAGES.</u>

### 1.    <u>Berck was injured by Phoenix's breach of contract.</u>

When Phoenix announced the 2010 COI rate increase, it warned Berck that his policy "will be subject to this rate increase on your next policy anniversary . . . unless your accumulated policy value is maintained at a sufficient level." Berck Decl., Ex. B. Requiring Berck to pay more funds into his accumulated policy value to avoid a COI rate hike breached the terms of his contract, an issue not disputed for purposes of Phoenix's motion.  That breach of contract caused Berck to pay nearly $700,000 "to avoid the impact of the First COI Rate Increase to which it was subjected." Berck Decl. ¶¶ 5-6; *see also* Dkt. 108, Mills Decl. ¶ 28 ("it would be unreasonable to

conclude that the Loeb Trust was not harmed by the First COI Rate Increase.").

By raising COI rates in 2010, Phoenix breached its contractual obligation to Berck. *See also* Dkt. 86 (Stern Declaration) at ¶¶ 36-40. Under New York contract law, when a party has exchanged valuable consideration for the promise of a performance, it is entitled to compensation for damages that foreseeably result from deprivation of that performance. *See, e.g., Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 926 (2d Cir. 1977) ("under the long-standing New York rule, when the existence of damage is certain, and the only uncertainty is as to its amount, the plaintiff will not be denied a recovery of substantial damages."). Phoenix has assumed in its motion that it breached its contract with Berck and also assumed that the COI rate increase directly resulted in Berck involuntarily being required to pay Phoenix approximately $700,000 more in premiums than he otherwise would have. Berck Decl. ¶¶ 5-6; *see also* Dkt. 108, Mills Decl. ¶¶ 28-32 (section heading "Damages Related to Forced Loans"). In fact, Phoenix *paid itself the equivalent of a commission* of approximately 5% from this forced-loan, which is known as a "sales charge." Berck Decl., Ex. A ("Policy Charges, Sales Charge, "5% of all premiums paid in policy years 2+").[3]

Defendant fundamentally misstates, or misunderstands, Berck's breach of contract claim when it states that he claims injury from Phoenix "*announcing* the 2010 COI rate adjustment." Motion at 10. Berck, in fact, claims injury from being forced to do what the contract did not permit: pay Phoenix several hundreds of thousands of dollars in premiums to increase his accumulated policy value or else suffer a COI rate increase. The only way for Berck to avoid the illicit COI rate increase was to contribute more to the accumulated policy value, which is a

---

[3] The "sales charge" tax that Phoenix charged Berck is also apparent on the Loeb Policy's Annual Statement which reflects in September 2010 a "premium payment" of $875,000 but only a "Net Premium Paid" credited to Berck of $831,250. Sklaver Decl., Ex. 2. The difference between those two amounts is, of course, the 5% sales charge.

classic "forced-loan."[4]   Phoenix's motion essentially contends that any defendant can breach a contract with a plaintiff, forcibly extract hundreds of thousands of dollars from that plaintiff, hold on to that money for years, return the principal (even though it has not done so to Berck), and yet *never* be required to pay New York's mandatory 9% statutory interest rate because in such a situation the plaintiff is "not seeking damages" and "only prejudgment interest."  Motion at 13.  Just to state this absurd position is to defeat it, and Phoenix cites no caselaw supporting this argument.

2.   The doctrine of anticipatory breach does not govern this dispute.

The entire premise of Phoenix's motion hinges on the applicability of the doctrine of anticipatory breach, which does not govern Berck's individual claim.  By failing to perform its end of the bargain—and raising COI rates unless a substantial premium "dump in" was made—Phoenix committed *actual* breach.  To mitigate the effects of Phoenix's breach, Berck was unlawfully forced to pay excess premiums.

Anticipatory repudiation doctrine functions as a defense to performance for the aggrieved party—that is, it allows the aggrieved party to sue prior to its performance.  *See*, *e.g.*, *Long Island R. Co. v. Northville Industries Corp.*, 41 N.Y.2d 455, 464 (1977).  But, while a party that has fully performed arguably may not sue under anticipatory repudiation, none of the cases that Phoenix cites conclude that a party that fully performs may not sue for *actual breach*.  Here, Phoenix actually breached its obligations in forcing Berck to contribute excess premiums in order to avoid the illegal rate increase.

---

[4] In its order decertifying the 2010 Class, the Court called victims of this breach the "Get Out From Under" Subclass so as to avoid "being judgmental about the merits."  August 26, 2013 Order at 2.  Here, however, Phoenix has filed a motion for summary judgment asking for a ruling on the merits, and Berck is the non-movant, entitled to all inferences in his favor, and accordingly it is reasonable for the parties to call the damage here a "forced-loan," which is exactly how it would be argued before the jury.

## C.     BERCK IS ENTITLED TO PREJUDGMENT INTEREST AT THE 9% STATUTORY RATE.

### 1.     Prejudgment interest is mandatory for breach of contract actions.

Defendant Phoenix breached its contract with Berck, and as a result, illegally enjoyed the use of Berck's money. Phoenix had *not* returned any of the forced-loaned premiums to Berck, has imposed substantial fees and penalties on Berck were he to withdraw that money, and, to add insult to injury, paid itself a 5% sales charge from the extra premiums paid so that Berck's account value was not credited with the full amount of premiums he was forced to pay. *See supra* notes 2-3; *see also* Sklaver Decl., Ex. 2 at 1 ("Surrender Charge" to withdraw forced-loan payments is $585,000). N.Y. C.P.L.R. provides that the 9-percent statutory interest rate "*shall* be recovered upon a sum awarded because of a breach of performance of a contract." N.Y. C.P.L.R. § 5001(a) (emphasis added); N.Y. C.P.L.R. § 5004 (providing for a 9-percent statutory prejudgment interest rate). New York treats prejudgment interest as a matter of right—trial courts "have no discretion not to award prejudgment interest." *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 93 (2d Cir. 2000) (awarding prejudgment interest). The purpose of § 5001 is "to make the aggrieved party whole" for the period of time that "the defendant had the benefit of the money, and the plaintiff was without it. Interest must be added if we are to make the plaintiff whole." *Spodek v. Park Property Development Assoc.*, 96 N.Y.2d 577, 581 (2001) (quoting *Prager v. New Jersey Fid. & Plate Glass Ins. Co.*¸ 345 N.Y. 1, 5–6 (1927) (Cardozo, J.)).

This is exactly the type of situation that § 5001 intends to remedy. Here, Phoenix benefited from access to $700,000 of money extracted from Berck at his expense which it has not returned to Berck. For the time period that Phoenix had access to Mr. Berck's excess premiums, Phoenix could use those funds as wanted; at the same time, Mr. Berck was without the benefit of his own money. Thus, to make Mr. Berck whole, New York provides a *mandatory*

remedy: the statutory 9-percent prejudgment interest rate should be applied for the time during which Phoenix unlawfully retained Berck's funds, in breach of Phoenix's contractual obligations.

Phoenix contends that, because there has not yet been any "sum awarded" to Berck, he lacks standing to bring a suit for only prejudgment interest.  Motion at 7–8.  This argument makes no sense.  Berck is *asking* for a sum awarded in this action and does not seek an independent remedy under the § 5001 prejudgment interest statute.  Instead, Berck seeks adjudication on the merits of his breach of contract claim and asks that the damages awarded for unlawfully taking away his $700,000 *include* prejudgment interest at a rate of 9 percent per year, as is his statutory right.  Thus, the "sum awarded" should be the sum owed to Berck as a result of Phoenix's breach.

2. <u>Berck is entitled to the statutory rate of 9 percent.</u>

Phoenix argues that PAUL policy at issue specified a 4-percent interest rate and, thus, a 4-percent interest rate is sufficient, rather than 9-percent interest as required under New York statutory law.  Motion at 8.  In support of this argument, Defendant asserts that, under New York law, an interest rate specified in the contract should be used instead of the statutory rate when calculating prejudgment interest.  But there is no interest rate specified in the Loeb policy that governs the breach of contract at issue here due to Phoenix's unlawful COI hike, and as a result, New York's mandatory 9% interest rate applies.

The very case that Phoenix cites demonstrate why the 4-percent rate applied to the forced-loan that Berck had to pay Phoenix is inapplicable here.  In *NML Capital v. Republic of Argentina*¸ 17 N.Y.3d 250 (2011), cited by Phoenix on page 8 of its brief, the New York Court of Appeals made clear that only *applicable* contractual interest rates determine the prejudgment

interest rate. *Id.* at 261.   In that case, the court noted that the contractual interest rate applies where the parties have specified an interest rate to apply after a loan's maturity or in the event of a debtor's default.   *Id.* at 258.   The *NML Capital* court determined that the language of the contract provided for a floating interest rate to apply "until the principal hereof is paid," which applies equally before and after default. *Id.* at 259.   But the court was clear in determining that, "[i]f the parties failed to include a provision in the contract addressing the interest rate that governs after principal is due *or in the event of breach*, New York's statutory rate will be applied as the default rate." *Id.* at 258 (emphasis added).   Indeed, New York courts have only applied the contractual interest rate in lieu of the statutory interest rate in cases where the parties specify a post-maturity or post-breach interest rate.   *See*, *e.g.*, *Williamson & Co.*, *Inc. v. Colby Engraving & Rubber Plate Corp.*, 413 N.Y.S.2d 580, 581 (N.Y. Sup. Ct. 1979) ("Ordinarily . . . damages for breach of the contract . . . after maturity (or default that accelerates maturity) the rate of interest is to be computed at the rate then prescribed by statute. But when the contract provides that interest shall be paid at a specified rate until the principal shall be paid, the contract rate governs until payment of the principal, or until the contract is merged in a judgment.") (citations omitted).

As *NML Capital* illustrates, the 4-percent interest rate for excess premiums is wholly inapplicable as a measure for prejudgment interest in this case.   Here, the contract at issue *did not specify an interest rate **in the event of breach*** of the PAUL policy as a result of the COI hike.   Berck Decl., Ex. A.   The 4-percent interest rate provided for in the policy is *not* a predetermined penalty intended to govern in the event of breach; instead, it is the guaranteed "*minimum*" interest rate a policyholder will receive for *voluntarily* contributing money to his PAUL policy in excess of the premium owed. Berck Decl., Ex. B at Schedule Page 2

("GUARANTEED MINIMUM INTEREST RATE: 4%") (bates JB511); *id.* at 9 ("We will, from time to time, determine the interest rate used *in the calculation of the Policy Value . . .*") (emphasis added) (bates JB525). The contract, however, is completely silent on the interest rate owed for a *breach of contract* for unlawfully raising the COI and forcibly extracting an unlawful payment of money from the policy owner. The cases that Defendant cites do not stand for the proposition that any interest rate specified anywhere in a contract *supersedes* the 9-percent statutory rate. Only an applicable interest rate—that is, an agreement by the parties upon an interest rate to govern post-maturity or in the event of breach—can trump the statutory rate, and no such applicable interest rate exists in this case.

## IV.   **CONCLUSION**

For the foregoing reasons, Phoenix's partial motion to dismiss for lack of subject-matter jurisdiction and for partial summary judgment should be denied.


Dated: August 30, 2013

<div style="margin-left:40%">

/s/ Steven G. Sklaver
Jacob W. Buchdahl
Shawn J. Rabin
Seth Ard
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, NY  10022
Tel.:   212-336-8330
Fax:    212-336-8340
jbuchdahl@susmangodfrey.com
srabin@susmangodfrey.com
sard@susmangodfrey.com

Steven G. Sklaver (*pro hac vice*)
Francis S. Lewis
SUSMAN GODFREY LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029

</div>

Tel:    310-789-3100
Fax:    310-789-3150
ssklaver@susmangodfrey.com
flewis@susmangodfrey.com

*Attorneys for Plaintiffs and Classes*