# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

MARTIN FLEISHER, AS TRUSTEE OF THE
MICHAEL MOSS IRREVOCABLE LIFE
INSURANCE TRUST II and JONATHAN
BERCK, AS TRUSTEE OF THE JOHN L. LOEB,
JR. INSURANCE TRUST, on behalf of
themselves and all others similarly situated,

        Plaintiff,

    vs.

PHOENIX LIFE INSURANCE COMPANY,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 11-cv-8405(CM)

SPRR LLC, on behalf of itself and all others
similarly situated,

        Plaintiff,

    vs.

PHL VARIABLE INSURANCE CO.,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 14-cv-8714 (CM)

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................3

       A.     The Litigation...........................................................................................3

              1.     *Fleisher* Litigation ........................................................................3

              2.     *SPRR* Litigation ...........................................................................4

       B.     Settlement Negotiations ...........................................................................4

       C.     The Settlement Agreement .......................................................................6

              1.     Consideration and Settlement Class...............................................6

              2.     Release, Payments, and Opt-Outs..................................................7

              3.     Costs and Fees...............................................................................8

              4.     Distribution Plan ...........................................................................8

III.   ARGUMENT .........................................................................................................9

       A.     The Proposed Settlement Warrants Preliminary Approval.....................9

              1.     Legal Standard Governing Preliminary Approval ........................9

              2.     The Proposed Settlement is Procedurally Fair............................10

              3.     The Proposed Settlement is Substantively Fair .........................12

       B.     The Proposed Settlement Class Should Be Certified.............................15

              1.     The Settlement Class Meets the Requirements of Rule 23(a) ..................16

                     a.     Numerosity........................................................................16

                     b.     Commonality......................................................................16

                     c.     Typicality ..........................................................................17

                     d.     Adequacy ..........................................................................17

              2.     The Settlement Class Meets the Requirements of Rule 23(b)(3) ..............19

                     a.     Predominance....................................................................19

i

b.      A Class Action is Superior ................................................................ 20

3.      Proposed Class Counsel Satisfy Rule 23(g) and the Class Representatives Are Proper .......................................................... 21

C.      Notice to the Class ................................................................................. 21

D.      The Proposed Distribution Plan is Reasonable .................................... 23

E.      Proposed Schedule ................................................................................. 25

IV.      CONCLUSION ................................................................................................ 25

3725693v1/012746

Cases

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ........................................................................................ 16, 19, 22

*Cagan v. Anchor Sav. Bank FSB,*
    No. 88-cv-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ......................................... 12

*Charron v. Pinnacle Grp. N.Y. LLC,*
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ....................................................................... 13, 21

*Charron v. Wiener,*
    731 F.3d 241 (2d Cir. 2013) .......................................................................................... 14

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974) ..................................................................................... 12, 15

*Clark v. Ecolab, Inc.,*
    Nos. 07-cv-8623, 2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ...................................... 9

*Clem v. Keybank,*
    No. 13-cv-789, 2014 WL 1265909 (S.D.N.Y. Mar. 27, 2014) ......................................... 9

*D'Alauro v. GC Servs. Ltd. P'ship,*
    168 F.R.D. 451 (E.D.N.Y. 1996) .................................................................................. 20

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001) ........................................................................................... 11

*Danieli v. IBM,*
    No. 08-cv-3688, 2009 WL 6583144 –5 (S.D.N.Y. Nov. 16, 2009) ................................... 9

*Flores v. Anjost Corp.,*
    284 F.R.D. 112 (S.D.N.Y. 2012) .................................................................................. 15

*Ge Dandong v. Pinnacle Performance Ltd.,*
    No. 10-cv-8086, 2013 WL 5658790 (S.D.N.Y. 2013) .................................................. 17

*In re Am. Bank Note Holographics, Inc.,*
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ........................................................................... 24

*In re Am. Int'l Grp., Inc. Sec. Litig.,*
    689 F.3d 229 (2d Cir. 2012) ..................................................................................... 19, 20

*In re Buspirone Patent Litig.,*
    210 F.R.D 43 (S.D.N.Y. 2002) ..................................................................................... 21

3725693v1/012746

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) .................................................................... 14

*In re Drexel Burnham Lambert Grp., Inc.*,
    960 F.2d 285 (2d Cir. 1992)........................................................................... 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009).............................................................................. 18

*In re Global Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................ 10, 14, 18

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    No. 12-cv-8557-CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .............. 11

*In re Indep. Energy Holdings*,
    210 F.R.D. 476 (S.D.N.Y. 2002) .................................................................... 16

*In re Initial Pub. Offering Sec. Litig.*,
    226 F.R.D. 186 (S.D.N.Y. 2005) .................................................................... 20

*In re Lloyds' Am. Trust Fund Litig.*,
    No. 96-CV-1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002).................. 24

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
    No. 04-cv-8144-CM, 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .............. 23

*In re Merrill Lynch Tyco Research Sec. Litig.*
    249 F.R.D. 124 (S.D.N.Y. 2008) .................................................................... 23

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99, 102 (S.D.N.Y. 1997) .............................................................. 12

*In re NASDAQ Market-Makers Antitrust Litig.*,
    176 F.R.D. 99 (S.D.N.Y. 1997) ...................................................................... 10

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................... 12

*In re Nigeria Charter Flights Contract Litig.*,
    233 F.R.D. 297 (E.D.N.Y. 2006) .................................................................... 20

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) .............................................................. 23, 24

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
    163 F.R.D. 200 (S.D.N.Y. 1995) ........................................................ 10, 14, 15

3725693v1/012746

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001)................................................................. 18

*In re Vitamins Antitrust Litig.*,
    No. 99-CV-197, 2000 WL 1737867  (D.D.C. Mar. 31, 2000) ......................................... 24

*Johnson v. Brennan*,
    No. 10-cv-4712-CM, 2011 WL 1872405 (S.D.N.Y. May 17, 2011)........................ passim

*Kelen v. World Fin. Network Nat. Bank*,
    302 F.R.D. 56 (S.D.N.Y. 2014) .................................................................. 11

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................... 23

*Maywalt v. Parker & Parsley Petroleum Co.*,
    67 F.3d 1072 (2d Cir. 1998)..................................................................... 10

*McReynolds v. Richards–Cantave*,
    588 F.3d 790 (2d Cir. 2009)..................................................................... 11

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)..................................................................... 17

*Rowe v. E.I. du Pont de Nemours & Co.*,
    No. 06-cv-1810, 2011 WL 3837106 (D.N.J. Aug. 26, 2011) ........................................ 23

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) .................................................................. 19

*Strougo v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................... 13

*United States v. New York*,
    No. 13-cv-4165, 2014 WL 1028982 (E.D.N.Y. Mar. 17, 2014)..................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)......................................................................... 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................... 10, 21

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)..................................................................... 16

Statutes

New York General Business Law § 349 ............................................................. 3

3725693v1/012746

Rules

Fed. R. Civ. P. 23(a)(3) ............................................................................... 17

Fed. R. Civ. P. 23(e)(1) ............................................................................... 22

Fed. R. Civ. P. Rule 23 ..................................................................... 1, 15, 21

Fed. R. Civ. P. Rule 23(a) ..................................................................... 16, 17

Fed. R. Civ. P. Rule 23(b) .......................................................................... 16

Fed. R. Civ. P. Rule 23(b)(3) ................................................................ 16, 19

Other Authorities

1 Newberg on Class Actions § 11.53 (5th ed. 2013) ................................... 22

1 Newberg on Class Actions § 3:58 (5th ed. 2013) .................................... 18

3725693v1/012746

Plaintiffs Martin Fleisher, as Trustee of the Michael Moss Irrevocable Life Insurance Trust II, Jonathan Berck, as Trustee of the John L. Loeb, Jr. Insurance Trust, and SPRR LLC (collectively "Class Plaintiffs" or "Plaintiffs"), individually and on behalf of the class of policy owners proposed to be certified for purposes of settlement (the "Settlement Class" or "Class"), have entered into a settlement agreement (the "Settlement") with Defendants Phoenix Life Insurance Company and PHL Variable Insurance Company (collectively, "Phoenix" or "Defendants").[1] Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs respectfully move the Court for an order:

- Preliminarily approving the Settlement and distribution plan and scheduling a final approval hearing at which the Court will consider final approval of the Settlement, final approval of the distribution plan, and Class Counsel's motion for fees and costs;

- Certifying the Settlement Class, appointing Plaintiffs as Class representatives and Susman Godfrey L.L.P. as Class Counsel for purposes of the Settlement; and

- Approving the form and manner of notice to the Settlement Class.

The Settlement, if approved, will conclude this class litigation in its entirety.

## I. <u>INTRODUCTION</u>

The Settlement gives the following main benefits to the Class:

- A $42.5 million cash payment, reduced for opt-outs. This is not a claims-made settlement; checks will be mailed directly to Class members who do not opt-out without requiring them to submit proofs of claim, based on Defendants' records, and settlement funds do not revert to Phoenix.

- A total and complete freeze on any new cost of insurance ("COI") increase through December 31, 2020. Thus, even if Phoenix has a future change in expectations that would otherwise permit a COI rate increase under the terms of the policies, Phoenix will not increase COI rates for 5 years. Policyholders now have the ability to predict, with certainty, what their COI obligations will be for a

---

[1] Unless otherwise noted, all Capitalized Terms mean the same as in the Settlement Agreement.

substantial period of time.

- As part of the Settlement, Phoenix has agreed not to challenge the validity and enforceability of any eligible policies owned by participating Class members on the grounds of lack of an insurable interest or misrepresentations in the application for such policies.

The Settlement represents an outstanding result for the Class. On preliminary approval, the question is whether the Settlement's substantive terms fall within the range of "possible" approval, such that notice should be sent to the Class and a full fairness hearing should be held. The substantial recovery obtained for the Class in light of the risks of continued litigation easily meets that test. The Settlement is also the result of a procedurally fair process. It comes after all pretrial filings were complete, on the eve of trial after almost four years of litigation, and resulted from an extensive, arms-length negotiation. The litigation was expansive and hard-fought: Plaintiffs obtained and analyzed more than 1.2 million pages of documents in discovery, worked extensively with liability and damages experts, briefed numerous motions, and took and defended twenty depositions. The Settlement negotiations were also extensive: the parties attended three separate in-person mediation sessions conducted by a highly experienced and respected mediator. The support of its terms by Plaintiffs, Class Counsel and the mediator is further testimony to the fairness of the Settlement.

The proposed Settlement, if approved, will enable the Class to recover a very significant sum, and additional non-monetary relief that could not even be obtained even if Plaintiffs were victorious at trial, while eliminating the risk that Defendants would prevail at trial, succeed in decertifying the Class, or prevail in subsequent appeals. Of course, the Court is very familiar with the issues raised in this litigation and the claims and defenses of the Parties. At the final approval hearing, the Court will have before it more extensive submissions in support of the Settlement and will be asked to make a determination as to whether the Settlement is fair,

reasonable, and adequate in light of all of the relevant factors. At this time, Plaintiffs request only that the Court grant preliminary approval of the Settlement so that Class members can receive notice of the Settlement and the final approval hearing.

## II.    BACKGROUND

### A.    The Litigation

#### 1.    *Fleisher* Litigation

On two separate occasions in 2010 and 2011, Phoenix announced that it was raising the cost of insurance rates for more than a thousand policies held by policy owners throughout the country. On November 18, 2011, plaintiffs challenged both rate hikes in a putative class action brought against Phoenix Life Insurance Company ("*Fleisher* Action"), Case No. 11-cv-8405-CM. The complaint in the *Fleisher* Action alleged four claims for relief: breach of contract, breach of the implied covenant of good faith and fair dealing, violation of New York General Business Law § 349, and declaratory judgment. On May 2, 2012, the Court dismissed three of these four claims for relief, but left pending the plaintiffs' breach of contract claim. Dkt. 29.

Merits discovery began in December 2011. *See* Dkt. 43 at 1. Plaintiffs filed two motions to compel in November 2012, both of which were granted the following month and reaffirmed. Dkt. 72 & 77; Dkts. 93, 101, 112, 113, 115, 117, 123, 124, 140. During discovery, Class Counsel analyzed over a million pages of documents including extensive actuarial tables, took and defended over 20 days of depositions of 17 witnesses, and issued numerous subpoenas to Defendants' reinsurers and actuarial and financial advisors. Sklaver Decl. ¶ 10. Class Counsel took the depositions Defendants' current and former employees, officers, and corporate designee as well as Defendants' outside actuarial consulting firm, Towers Watson. *Id.* Class Counsel also defended the depositions of Mr. Fleisher and Mr. Berck, named Plaintiffs, as well as Plaintiffs' actuarial expert, Larry N. Stern, and Plaintiffs' economic expert, Robert Mills, among others. *Id.*

On January 11, 2013, Plaintiffs moved to certify the 2010 and 2011 classes. Dkt. 81. The Court initially certified both classes. Dkt 135. The Court subsequently decertified the 2010 class, but denied two motions to decertify the 2011 class. However, the Court allowed Phoenix to seek reconsideration of certain decertification issues after trial. Dkt. 149, 230. On December 6, 2013, both parties filed motions for summary judgment, supported by extensive expert reports, exhibits and declarations. Dkt. 184, 190. The Court denied Plaintiffs' motion and granted Phoenix's motion in part. Dkt. 235. The Court also denied a second motion to dismiss and a motion for partial summary judgment of Mr. Berck's 2010 claim. Dkt. 231. On March 13, 2015, the parties filed a joint pre-trial order totaling over a 100 pages on the liability phase alone. Dkt. 262. The parties also proposed jury instructions, verdict forms and voir dire questions. Dkt. 263, 265. On April 7, 2015, the parties filed 10 motions *in limine*. Dkt. 268, 273. Those motions were fully briefed, and the Settlement was reached in principle the day before the pre-trial conference.

### 2. *SPRR* Litigation

On October 31, 2014, Class Counsel filed a complaint against PHL Variable Insurance Co. challenging the same 2011 COI increase on behalf of a putative national class ("*SPRR* Action"), Case No. 14-cv-8714-CM. The complaint asserted a single claim for breach of contract. *Id.* Because discovery overlapped with the *Fleisher* Action, and the same issues and counsel were involved, the parties agreed to deem discovery taken in the *Fleisher* Action to be treated as if it had been conducted in the *SPRR* Action. The parties also postponed several deadlines until after the conclusion of the *Fleisher* trial, because knowledge of the resolution of the *Fleisher* Action would greatly assist the potential resolution of the *SPRR* Action. Dkt. 30. This Court assigned the *SPRR* Action to itself on April 30, 2015. Dkt. Entry 4/30/15.

### B. Settlement Negotiations

The Settlement Agreement is the result of extensive and protracted negotiations between

the parties with the assistance of an experienced mediator, Professor Eric D. Green of Resolutions LLC. Prof. Green is a principal and co-founder of Resolutions LLC, and he is a full-time professional mediator. Green Decl. ¶ 2. Prof. Green co-founded JAMS, was a co-author of the first legal textbook on ADR, and has successfully mediated many high stakes cases, including many complex class actions. *Id.*

The mediation process began in April 2014 and lasted over a year. Sklaver Decl. ¶¶ 5-6; Green Decl. ¶¶ 7-11. The parties conducted three full-day, in-person mediation sessions with Professor Green in his offices on April 1, 2014, May 9, 2014, and June 25, 2014, and submitted mediation briefing. Sklaver Decl. ¶ 6-8; Green Decl. ¶ 7-9. All three mediation sessions were attended by counsel for Phoenix, counsel for Plaintiffs, as well as Mr. Fleisher. Sklaver Decl. ¶ 6; Green Decl. ¶ 6-9. The parties were scheduled to participate in a fourth in-person mediation session with Professor Green on September 17, 2014, but the session was canceled because the parties' lacked common ground between their respective positions. The terms of the Settlement were also negotiated during extensive teleconference and email discussions. Sklaver Decl. ¶ 8. A memorandum of understanding was negotiated in-person at Susman Godfrey's offices in New York City on April 30, 2015. Sklaver Decl. ¶ 7. The meeting was attended by Class Counsel and counsel for Phoenix. Professor Green participated by phone. Sklaver Decl. ¶ 7; Green Decl. ¶ 11. A long-form settlement agreement was heavily negotiated and agreed to thereafter.

Throughout the process, the Settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length. Sklaver Decl. ¶ 8; Green Decl. ¶ 12, 15. In addition to the substantial evidentiary materials produced by Phoenix in discovery, Phoenix provided financial and other information to Class Counsel as part of the Settlement negotiations. Sklaver Decl. ¶ 8. Mr. Green believes that the proposed Settlement is fair and reasonable, and is

a highly successful result for members of the proposed Class. Green Decl. ¶ 6, 15. Plaintiffs'
attorneys were well informed of material facts and the negotiations were hard-fought and non-
collusive. Sklaver Decl. ¶ 8-11; Green Decl. ¶ 12-15. Class Counsel analyzed all of the contested
legal and factual issues in both lawsuits to thoroughly evaluate Defendants' contentions,
advocate in the settlement negotiation process for a fair and reasonable settlement that serves the
best interests of the Class, and make fair and reasonable settlement demands of Defendants. *Id.*

### C. The Settlement Agreement

#### 1. Consideration and Settlement Class

The Settlement gives the following main benefits to the Class:

- A $42.5 million cash payment, reduced for opt-outs. This is not a claims-
  made settlement; checks will be mailed directly to Class members who do
  not opt-out without requiring them to submit proofs of claim, based on
  Defendants' records, and settlement funds do not revert to Phoenix.

- A total and complete freeze on any new cost of insurance ("COI") increase
  through December 31, 2020. Thus, even if Phoenix has a future change in
  expectations that would otherwise permit a COI rate increase under the
  terms of the policies, Phoenix will not increase COI rates for 5 years.
  Policyholders now have the ability to predict, with certainty, what their
  COI obligations will be for a substantial period of time.

- As part of the Settlement, Phoenix has agreed not to challenge the validity
  and enforceability of any eligible policies owned by participating Class
  members on the grounds of lack of an insurable interest or
  misrepresentations in the application for such policies regarding
  ownership.

Sklaver Decl., Ex. B. No unclaimed funds will revert to Phoenix. *Id.* ¶ 51-52.

The Settlement defines the Class as:

> "Class" or "Settlement Class" means the Owners of PAUL Policies for
> which Phoenix sent notice that the Policy was subject to the 2010
> Adjustment or 2011 Adjustment (the "Class Policies").

*Id.* ¶ 14. Excluded from the Class are (1) any officers, directors, or employees of any Defendant;

the affiliates, legal representatives, attorneys, successors, or assigns of any Defendant; attorneys,

successors, or assigns of any Defendant; Class Counsel and their employees; and any judge, justice, or judicial official presiding over the Actions and the staff and immediate family of any such judge, justice, or judicial official; (2) Owners of Policies that received a decrease in their COI rates or whose COI rates were unchanged as part of the 2011 Adjustment; (3) Owners of confidentially identified Policies for which Phoenix covenants that a prior settlement bars claims; and (4) Owners of two designated Policies that are the subject of pre-existing litigation. *Id.*

### 2. Release, Payments, and Opt-Outs

Class members will have 30 days after notice is sent to exclude themselves from the Class by sending a letter to the Settlement Administrator. The Settlement Fund will be reduced proportionally if there are any opt-outs, based on the amount of COI overcharges paid by the opt-outs compared to the rest of the Class. "COI overcharge" means the amount a Class member paid in COI charges in excess of what the Class member would have paid had the 2010 and 2011 increases not been implemented. Upon final approval, the Settlement Administrator will distribute the net amount of the Settlement Fund to eligible Class Members, net of costs, fees, opt-out reductions and incentive awards. The checks will be sent *automatically* to Class members using Phoenix's database of their addresses without requiring claim members to submit claim forms. The Settlement Administrator will also conduct individual address searches, using their own databases and other sources, to confirm the address for owners of terminated policies. Janowicz Decl. ¶ 8. This is not a claims-made settlement so none of the settlement funds, aside for the reductions for opt-outs, will revert to Phoenix.

Upon final approval, Plaintiffs and Class members (other than those who timely and validly request exclusion) will also release any and all claims, causes of action, debts, liabilities, damages, restitution, equitable, legal and administrative relief, known and unknown, at law or in equity, whether brought directly or indirectly, including any further claim to recovery or relief as

a result of actions by any state or federal government agencies, arising out of or relating to any and all matters concerning the COI rates and COI charges assessed in the past or in the future by Defendants as a result of the 2010 or 2011 COI rate adjustments. The release includes both known and unknown claims related to the 2010 and 2011 COI rate adjustments.

### 3. Costs and Fees

The Settlement Agreement provides that a portion of the Settlement amount may be used for Notice and Administration costs of the Settlement. *Id.* ¶ 96. The Settlement Agreement also provides that Phoenix will pay $6 million in attorneys' fees over and above the Settlement Fund for, amongst other things, the non-monetary relief obtained for the Class, and that Class Counsel may seek reimbursement of expenses and an award up to one-third of the $42.5 million cash payment also conferred by the Settlement, after adjusting for any opt-out reductions. The Settlement also provides that Class Counsel may request incentive awards of up to $25,000 to Martin Fleisher and up to $5,000 each to Jonathan Berck and SPRR, LLC to be paid from the Settlement Fund for their services as representatives on behalf of the Class. Class Counsel will file a motion seeking reimbursement of their costs, counsel fees, and incentive awards, which will be scheduled to be heard at the same time as the final approval hearing. Class members will be given an opportunity to object to that application prior to the final approval hearing. No such costs, fees, or awards will be distributed without Court order.

### 4. Distribution Plan

The Distribution Plan, as set forth in the notice papers, will allocate funds to Class members on a *pro rata* basis. The cash payment will be allocated as follows: (1) $2 million will be distributed to those whose policies lapsed after receiving notice of a COI increase but before ever paying an overcharge, and (2) the remainder, after reduction for fees, costs, incentive awards, and opt-outs, will be distributed among those who paid a COI overcharge. Each set of

8

funds will be distributed to Class members on a *pro rata* basis. Eligible lapsed policyholders will be paid in proportion to the premiums each paid before termination, relative to the premiums paid by all such policyholders. Eligible COI overcharge policyholders will be paid in proportion to their share of the overall COI overcharges paid by Class members through March 2015. After expiration of any returned or uncashed check (including the time to request reissuance for a lost check), an escheatment process will follow consistent with applicable law. All in-force policies will also benefit from the guarantee of policy validity and the COI freeze through December 31, 2020.

## III. ARGUMENT

### A. The Proposed Settlement Warrants Preliminary Approval

#### 1. Legal Standard Governing Preliminary Approval

Preliminary approval of a Settlement is appropriate if "the proposed Settlement Agreement is within the range of possible settlement approval, such that notice to the Class is appropriate." *Johnson v. Brennan*, 10-cv-4712-CM, 2011 WL 1872405, at *1 (S.D.N.Y. May 17, 2011) (McMahon, J.). Preliminary approval "simply allows notice to issue to the class and for Class Members to object to or opt-out of the settlement." *Clem v. Keybank*, No. 13-cv-789, 2014 WL 1265909, at *1 (S.D.N.Y. Mar. 27, 2014). "After the notice period, the Court will be able to evaluate the settlement with the benefit of the Class Members' input." *Id.* Preliminary approval "requires only an 'initial evaluation' of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Id.* (quoting *Clark v. Ecolab, Inc.,* Nos. 07-cv-8623, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009)). Preliminary approval is granted where the settlement "has no obvious defects" and the allocation plan is "rationally related to the relative strengths and weaknesses of the respective claims asserted." *Danieli v. IBM*, No. 08-cv-3688, 2009 WL 6583144, at *4–5 (S.D.N.Y. Nov. 16, 2009).

9

In conducting a preliminary approval inquiry, a court considers both the negotiating process for the settlement (procedural fairness) and the settlement's substantive terms (substantive fairness). *See In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 455 (S.D.N.Y. 2004) (citations omitted). A settlement process is procedurally fair where "the Settlement Agreement is the result of extensive, arm's length negotiations by counsel well-versed in the prosecution of [the asserted type of] actions." *Johnson*, 2011 WL 1872405, at *1. "A settlement is substantively fair for purposes of preliminary approval so long as the terms of the settlement are within the "range of possible approval." *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("*NASDAQ II*"). The approval of a proposed class action settlement is a matter of discretion for the trial court. *See Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1079 (2d Cir. 1998).

The settlement of complex class action litigation is strongly favored. The Second Circuit is "mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (internal quotation marks and citation omitted); *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995) ("It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions.").

### 2. The Proposed Settlement is Procedurally Fair

The Settlement was the result of extensive, arm's length negotiations by counsel well-versed in the prosecution of contract and insurance litigation (including life settlement litigation), and was reached just before trial. *See* Green Decl. ¶ 10-12. The terms of the Settlement were negotiated over the course of more than a year, and included three mediation sessions in Boston, all attended by Plaintiff Martin Fleisher, Class Counsel, defense counsel, and several

10

representatives of defendants, numerous telephone calls, emails and in-person meetings. Sklaver Decl. ¶¶ 6-8; Green Decl. ¶¶ 7-11. The discussions culminated in a MOU the day of the pre-trial hearing only after Class Counsel had conducted jury testing, reviewed millions of pages of documents, conducted a substantial number of depositions, and briefed motions to dismiss, motions to compel, class certification, summary judgment, and motions *in limine*. All this makes the Settlement procedurally fair, and clearly so. *See McReynolds v. Richards–Cantave,* 588 F.3d 790, 803 (2d Cir. 2009) (There is a "presumption of fairness, reasonableness, and adequacy as to the settlement where a class settlement is reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery" (alteration and internal quotation marks omitted)); *Kelen v. World Fin. Network Nat. Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014). The extensive participation of an experienced mediator "reinforces that the Settlement Agreement is non-collusive." *Johnson*, 2011 WL 1872405, at *1; *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) ("[A] mediator's involvement . . . helps to ensure that the proceedings were free of collusion and undue pressure.").

Further, it is the opinion of Class Counsel and an experienced mediator that this settlement is fair, reasonable, and adequate. Sklaver Decl. ¶ 4, 14; Green Decl. ¶ 6, 15. Courts give counsel's opinion considerable weight because they are closest to the facts and risks associated with the litigation. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557-CM, 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) (McMahon, J.) ("[Lead Counsel's] opinion is entitled to great weight." (quotation marks and citations omitted)). The Plaintiffs, who are sophisticated parties, also approve the Settlement, which further supports its fairness. Sklaver Decl. ¶ 4. *See Hi-Crush*, 2014 WL 7323417, at *5 ("[T]he recommendation of Lead Plaintiffs, which are sophisticated institutional investors, also supports the fairness of the Settlement.").

11

### 3. The Proposed Settlement is Substantively Fair

The proposed settlement falls within the "range of possible settlement approval," which is sufficient for preliminary approval. *Johnson*, 2011 WL 1872405, at *1. Where, as here, counsel for the parties engaged in diligent arm's-length negotiations, a settlement is generally entitled to a presumption of fairness. *See In re NASDAQ Mkt. Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) ("*NASDAQ III*"). The Settlement provides for a substantial monetary benefit—$42.5 million in cash—as well as two critical guarantees by Phoenix: not to raise COI rates again through December 31, 2020 and not to challenge any eligible policy owned by participating Class members on the grounds of lack of insurable interest or misrepresentations. Sklaver Decl., Ex. B (Settlement Agreement, ¶ 51). These are exceptional results.

First, the $42.5 million payment, when compared to the damages at issue in the litigation, is a remarkable recovery. Through March 2015, Class members nationwide paid approximately $61 million more than they would have had the 2010 and 2011 COI increases not been implemented. Sklaver Decl. ¶ 13. The $42.5 million recovery, which represents 70% of that overcharge to date, is far greater than what is needed to justify *final* approval. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n. 2 (2d Cir. 1974) (in theory, a fraction of one percent of the overall damages could be a reasonable and fair settlement); *Cagan v. Anchor Sav. Bank FSB,* No. 88-cv-3024, 1990 WL 73423, at *12 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). The Settlement is clearly within the "range of *possible* approval," which is all that preliminary approval requires. *See Johnson* , 2011 WL 1872405, at *1.

Second, the freeze on COI increases through 2020 has substantial value. Policyholders now can predict with certainty what their COI obligations will be for a substantial period of time. This is an important feature of the Settlement given that COI charges are the largest charges on

these policies. Third, the promise of policy validity provides substantial benefit to the Class. Phoenix is giving up its right to challenge the validity of policies for misrepresentations or alleged lack of insurable interest (what is commonly known as the "stranger-originated life insurance" or STOLI defense), thereby helping ensure that the death benefits otherwise owed to members of the Class upon the occurrence of a maturity event will be paid.

The combined value of the $42.5 million payment, the COI freeze through 2020, and policy validity, is extraordinary. Other terms of the Settlement provide further benefits to the Class, including Phoenix's agreement to pay $6 million in attorneys' fees over and above the Settlement Fund. Most important, aside for opt-out reductions, no funds will revert to Phoenix, and checks will be automatically mailed to Class members who do not opt-out, using Phoenix's database of Class member addresses. That further supports the reasonableness of the Settlement. *See Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) (McMahon, J.) (If a settlement "assures immediate payment of substantial amounts to Class Members," that is a factor supporting *final* approval of the settlement, "even if it means sacrificing speculative payment of a hypothetically larger amount years down the road" (quotation marks omitted)).

While there is no need on preliminary approval to consider the *Grinnell* factors, the *Grinnell* factors suggest that the Settlement warrants final approval; *a fortiori*, the Settlement is well within the "range of possible approval" sufficient to warrant preliminary approval. First, the litigation was complex, as attested by the parties' extensive pretrial order and the summary judgment records. The Settlement also ends future litigation and uncertainty. A two week trial was scheduled for June 2015, which would have required substantial effort by the Court and the parties. Post-verdict and appellate litigation may have lasted for years. *See Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) ("[t]he potential for this litigation to result in great

expense and to continue for a long time suggest that settlement is in the best interests of the Class"); *Prudential*, 163 F.R.D. at 210 ("[I]t may be preferable to take the bird in the hand instead of the prospective flock in the bush." (internal quotation marks omitted)).

The second *Grinnell* factor is premature. The third factor, which is designed to "assure the Court that counsel for the plaintiffs have weighed their position based on a full consideration of the possibilities facing them," strongly favors final approval given the stage of the proceedings. *Global Crossing*, 225 F.R.D. at 458. The *Fleisher* matter was ready for trial. The parties submitted a voluminous pre-trial order, briefed over 10 motions *in limine*, and settled on the eve of the pre-trial conference. This followed voluminous summary judgment briefing and extensive briefing on class certification and other topics. Counsel had a full record against which to measure the adequacy of the settlement.

Regarding factors 4, 5 and 6, "the complexity of Plaintiffs' claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009). The Court is well aware of the challenges that Plaintiffs would face at trial. Defendants laid out their contentions for the liability phase of the trial in 38 detailed paragraphs of the pre-trial order. Case No. 11-cv-8405, Dkt. 262, ¶¶ 89-126. Even if plaintiffs won the liability phase, they still had to prove damages in a separate damages phase. The Settlement removes substantial uncertainties about Plaintiffs' chances of success or potential decertification. *Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) ("[T]he litigation risks attendant to these possibilities [like decertification] weighed heavily in favor of the fairness of a settlement."). Regarding factor 7, even if Defendants could withstand a greater judgment, this does not undermine the fairness of the Settlement even for final approval. *Global Crossing*, 225 F.R.D. at 460 ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that

14

the settlement is unreasonable or inadequate.")

For factors 8 and 9, considering just the $42.5 million cash payment by Phoenix, this represents a significant recovery in light of the total estimated damages and the risks of litigation. *See Grinnell Corp.*, 495 F.2d at 455 & n. 2. The settlement is even more outstanding when the benefits of the COI freeze, policy validity, and the risks of litigation are factored in.

### B.    The Proposed Settlement Class Should Be Certified

The Court has already granted class certification of the New York class subject to the 2011 increase, and initially granted certification of the 2010 New York class. Case No. 11-cv-8405, Dkt. 135.[2] The 2010 and 2011 COI increases were implemented for the same reasons on all nationwide policies and certification of a nationwide class is warranted for largely the same reasons as the initial classes were certified.

"The Second Circuit has emphasized that Rule 23 should be given liberal rather than restrictive construction, and it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Flores v. Anjost Corp.*, 284 F.R.D. 112, 122 (S.D.N.Y. 2012) (McMahon, J.) (internal quotation marks omitted). Certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Prudential*, 163 F.R.D. at 205. Conditional certification for settlement purposes facilitates notice of a preliminarily approved settlement. *See, e.g.*, *Johnson*, 2011 WL 1872405, at *1 (granting preliminary approval and conditionally certifying a settlement class).

A court may grant certification where, as here, the proposed Settlement Class satisfies the

---

[2] Mr. Fleisher was appointed the class representative for the following class: "All owners of Phoenix Accumulator Universal Life insurance policies issued by Phoenix Life Insurance Company that were subjected to a cost of insurance rate increase announced by Phoenix to go into effect on a policy's next anniversary date on or after November 1, 2011."

four requirements of Rule 23(a) and at least one subsection of Rule 23(b). *See Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982). Manageability under Rule 23(b)(3) is not at issue. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested . . . .").

### 1. The Settlement Class Meets the Requirements of Rule 23(a)

#### a. <u>Numerosity</u>

The Second Circuit generally "find[s] a class sufficiently numerous when it comprises forty or more members." *In re Indep. Energy Holdings*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). There are over a thousand policies subject to the nationwide increases. Considering the New York part alone, the Court has ruled that "[n]umerosity is out of the case." *See, e.g.*, Ex. T to Motion for Class Certification, Hearing Transcript, Dec. 14, 2012 ("Hr'g Tr."), at 17-18.

#### b. <u>Commonality</u>

Second, commonality requires identifying a common contention "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). This "does not require that all class members' claims or circumstances be identical, so long as class members share a *single* question of law or fact in common." *See* Dkt. 135 at 17 (emphasis added).

The only cause of action in this case is for breach of contract. The Court already held that the question of whether Phoenix breached the form contract "raises a question common to all [2011] class members" to which there a "common answer." *See* Dkt. 135 at 16; *see also id.* at 27 ("The lawfulness of Phoenix's actions as to each member of the Classes will not depend on issues specific to that individual, but will instead depend on the common answer to the common

contention that Phoenix used an impermissible basis to increase the COI for a large group of policyholders in one fell swoop."). The same is true for those subjected to the 2010 increase. Because Phoenix imposed the increases on all nationwide policyholders for the same reasons, the lawfulness of those increases is a common question for the Settlement Class. *See Ge Dandong v. Pinnacle Performance Ltd.*, No. 10-cv-8086, 2013 WL 5658790 *4 (S.D.N.Y. 2013) ("The test for commonality . . . is not demanding and is met so long as there is at least one issue common to the class." (quotation marks omitted)).

c.    <u>Typicality</u>

Third, Rule 23(a) requires that claims of Class Plaintiffs be typical of the claims of other Class Members. *See* Fed. R. Civ. P. 23(a)(3). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993). The Court has already held that typicality is met here for the class for which Mr. Fleisher serves as the class representative. Dkt. 135 at 21-22 ("For the 2011 Class, the claim of the named plaintiff (Fleisher) is also typical, in that all members of the class were allegedly subjected to a COI increase in violation of the terms of their policies" and "Plaintiffs allege that all members of each class have been damaged by a single act by Phoenix"). Typicality is present for the nationwide Class for the same reasons. Class Plaintiffs' claims are typical of the entire Class: they each allege that they suffered an injury from either the 2010 COI Increase (Plaintiff Berck) or the 2011 COI increase (Plaintiffs Fleisher and SPRR LLC), just as the rest of the Class alleges.

d.    <u>Adequacy</u>

Adequacy of representation is measured by two standards: "First, class counsel must be 'qualified, experienced and generally able' to conduct the litigation. Second, the class members

17

must not have interests that are 'antagonistic' to one another." *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 142 (2d Cir. 2001). "In order to defeat a motion for certification … the conflict must be fundamental." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (quotations omitted).

The Settlement Class satisfies both requirements. The Court previously found that Class Counsel have the requisite qualifications and experience to represent the proposed Class, Dkt. 135 at 25, and Class Counsel prosecuted the case vigorously, conducting a thorough examination of the merits before reaching this hard-fought, arm's-length Settlement. Sklaver Decl. ¶¶ 5-11. Nor are there are any conflicts between or among the named Plaintiffs and other Class Members. The Court already held that Mr. "Fleisher [does not have] any conflicts of interest with other members of the Class or potential interests that are antagonistic to the Class that would preclude [him] from representing the Class as a whole." *Id.* at 23. The same is true for the other representatives of the Settlement Class: Mr. Berck was subject to the 2010 increase by Phoenix Life and SPRR was subject to the 2011 increase imposed by PHL.

Proceeds will be distributed equally on a *pro rata* basis, no matter whether the claimant was subject to the 2010 or 2011 increase, and no matter whether the claimant had a Phoenix Life or PHL policy. All Class Members share an overriding interest in obtaining the largest monetary recovery possible from Phoenix. *See Global Crossing*, 225 F.R.D. at 453 (certifying settlement class and finding that "[t]here is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *see also* 1 Newberg on Class Actions § 3:58 (5th ed. 2013) ("Adequacy does not require complete identity of claims or interests between the proposed representative and the class. All that is required—as the phrase

'absence of conflict' suggests—is sufficient similarity of interest such that there is no affirmative antagonism between the representative and the class." (citations omitted)).

### 2. The Settlement Class Meets the Requirements of Rule 23(b)(3)

Certification of a class for settlement purposes requires a showing that "questions of law or fact predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Manageability is not at issue. *Amchem Prods.*, 521 U.S. at 615.

#### a. Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623-24. The predominance requirement is relaxed for a settlement class because "with a settlement class, the manageability concerns posed by numerous individual questions of reliance disappear." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 241 (2d Cir. 2012).

This Court previously found that common issues predominate for the 2011 New York class for reasons that apply equally to all those subject to the 2010 and 2011 increase. Dkt. 135 at 30 ("[T]he common question of whether Phoenix misrepresented its reasoning to its policyholders as a group predominates."). As this Court explained, "[a]n overwhelming number of courts have held that claims arising out of form contracts are particularly appropriate for class action." *Id.* at 26. In accordance with those cases, this Court found that predominance is easily met here. *Id.* ("Because the 2011 class alleges breach of contract case arising out of standardized insurance policy forms, the common questions of law and fact predominate over any individual questions."); *id.* at 27 ("The lawfulness of Phoenix's actions as to each member of the Classes will not depend on issues specific to that individual, but will instead depend on the common answer to the common contention that Phoenix used an impermissible basis to increase the COI for a large group of policyholders in one fell swoop."); *see also Steinberg v. Nationwide Mut.*

*Ins. Co.*, 224 F.R.D. 67, 80 (E.D.N.Y. 2004) (insurance "policies are substantially uniform and adjudication of the putative class' breach of contract claim would not invoke predomination of individual issues of fact").

Although the proposed Settlement Class is slightly broader than the litigation classes alleged in the Complaints in that it includes non-New York policyholders subject to the 2010 Adjustment, this is no impediment to certification for settlement purposes. "[B]ecause manageability of the class action at trial is not considered when approving a settlement class, a court may approve a settlement class broader than a litigation class that has already been certified." *In re Initial Pub. Offering Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) (granting preliminary approval and certifying settlement class that was broader than the class certified in litigation). Here, the proposed Class includes all those that were injured by the same conduct—either the 2010 or 2011 COI Increase—and the Settlement affords all Class members the same relief: a proportional share of their damages. *Id.* While the Court decertified the 2010 Class largely because of potential differences in damages issues, the Settlement Class can still be certified. *In re Am. Int'l Grp.*, 689 F.3d at 241 (holding that lead plaintiffs were not required to demonstrate that fraud-on-the-market presumption applied in order to satisfy predominance requirement for certification of settlement class, even if that is a requirement for litigation class.)

b.      A Class Action is Superior

Finally, the Court must balance, in terms of fairness and efficiency, the advantages of class action treatment against alternative available methods of adjudication. *In re Nigeria Charter Flights Contract Litig.*, 233 F.R.D. 297, 301 (E.D.N.Y. 2006). The Court needs to consider "the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudications." *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 458 (E.D.N.Y. 1996). Here,

20

any interests of Class Members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. *See In re Buspirone Patent Litig.,* 210 F.R.D 43, 58 (S.D.N.Y. 2002) ("The numerous common issues of fact and law and the difficulty of numerous individual lawsuits indicates that a class action is superior to other methods for a fair and efficient adjudication of the controversy.").

### 3. Proposed Class Counsel Satisfy Rule 23(g) and the Class Representatives Are Proper

Rule 23(g) governs appointment of counsel for the Class. Here, Class Counsel has vigorously prosecuted this case and also spent tireless hours achieving this highly favorable Settlement for the Class. Sklaver Decl. ¶ 9-11. Susman Godfrey L.L.P. has significant experience in both prosecuting and defending class actions, which makes the firm particularly well-suited to serve as Settlement Class Counsel. *Id.* ¶ 2-3. The Court previously found that Plaintiffs' counsel is "more than capable" of representing the 2010 and 2011 classes. Dkt. 135 at 25. Regarding the Class representatives, for the reasons explained above, the three proposed Class representatives have claims that are typical and adequate for the Settlement Class, and should be appointed representatives of the Settlement Class.

### C. Notice to the Class

There are two requirements for notice. First, "Courts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally and informs the Class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Charron,* 874 F. Supp. 2d at 191; *accord Wal-Mart Stores, Inc.,* 396 F.3d at 113-14 ("There are no rigid rules . . . ; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the

proceedings." (internal quotations omitted)). Second, the manner of sending notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617.

The form of notice here satisfies due process because it informs Class members of the terms of the settlement and the options open to them in plain language. *See Newberg* § 11.53 (the form of notice is "adequate if it may be understood by the average class member"). The notice, which is attached to the Settlement, Sklaver Decl., Ex. B (at Ex. A), communicates in plain language the essential elements of the Settlement and the options available to Class Members in connection with the Settlement, including the various benefits to the Class, the fact that Class Counsel may request up to $6 million for the non-monetary relief and up to one third of the cash amount of $42.5 million (less any reduction for opt-outs), and will provide specific information regarding the date, time and place of final approval. *Id.*

The manner of sending notice, which relies on direct mailing to individual Class members using Phoenix's address database, is the best notice practicable here. Direct notice will be sent by first-class mail to all Class members using their last known address. This is a particularly effective method because in-force policyholders are expected to maintain their current addresses with Phoenix. In cases where the policy is no-longer in force, Rust will use its own extensive database of addresses to confirm the address on file, to ensure that all notices are going directly to Class members. This is particularly feasible in this case because there are only approximately 757 unique policy owners and addresses in the nationwide Class. Janowicz Decl. ¶ 6. A website will also be maintained so that anyone can read about the settlement and easily find all documents pertinent to the settlement. *Id.* at ¶ 9. The Settlement Administrator will also research and attempt re-delivery of any Notices returned as undeliverable. *Id.* at ¶ 12.

Courts routinely recognize that direct mailings to class members, using known addresses maintained by defendants or other sources, are the best possible form of notice. *See, e.g.*, *United States v. New York*, No. 13-cv-4165, 2014 WL 1028982, at *5 (E.D.N.Y. Mar. 17, 2014) (where class notice was mailed directly to 3,876 class members "who were identified by Defendants," the "simple and direct notice was 'the best notice practicable under the circumstances'" (quoting *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 133 (S.D.N.Y. 2008). The notice plan gives Class members 30 days to opt-out, which is particularly appropriate given that notice will be sent directly to Class members using known addresses. Courts regularly approve opt-out periods of similar length, even where unsophisticated class members must make decisions regarding complex issues of law or fact. *See, e.g., In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04-cv-8144-CM, 2009 WL 5178546, at *13 (S.D.N.Y. Dec. 23, 2009) (approving a pre-certification settlement with a 30–day opt-out period in a complex securities fraud class action case); *Rowe v. E.I. du Pont de Nemours & Co.*, No. 06-cv-1810, 2011 WL 3837106, at *7 (D.N.J. Aug. 26, 2011) (approving thirty-five day opt-out period for class action settlement over the objection of intervenors who claimed that longer notice was required because the "issues involved in the settlement are complex, thereby demanding highly specialized, scientific knowledge").

### D. The Proposed Distribution Plan is Reasonable

A distribution plan is fair and reasonable as long as it has a "reasonable, rational basis." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Because mathematical precision is impossible in calculating claims for a large class, courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

Here, as explained in the notice, the cash distribution will be made as follows. Sklaver Decl. ¶ 14 & Ex. B (at Ex. A). The vast majority of Class members paid a higher COI charge than they would have absent the COI increase. They will receive all the distributed settlement funds (net of fees, costs, incentive awards, and opt-out reductions), with the follow exception: a small proportion of Class members (around 10%) lapsed after receiving notice but before ever paying an overcharge, and Phoenix will pay $2,000,000 for distribution to these Class members. All such funds will be distributed to Class members on a *pro rata* basis. Class members who paid a COI overcharge will be paid in proportion to their share of the overall COI overcharges paid through March 2015. Lapsed policyholders who paid no COI overcharge will be paid in proportion to the amount of premiums they paid as compared to other similarly situated Class members. All in-force policies will also benefit from the guarantee of policy validity and the COI freeze through 2020. For uncashed or returned checks, after the time to request reissuance for any lost checks expires, an escheatment process will follow consistent with applicable state law.

This type of distribution, where funds are distributed on a *pro rata* basis, has frequently been determined to be fair, adequate, and reasonable. *See In re Vitamins Antitrust Litig.*, No. 99-CV-197, 2000 WL 1737867 at *6 (D.D.C. Mar. 31, 2000) ("Settlement distributions, such as this one, that apportions funds according to the relative amount of damages suffered by class members, have repeatedly been deemed fair and reasonable."); *In re Lloyds' Am. Trust Fund Litig.*, No. 96-CV-1262, 2002 WL 31663577 at *19 (S.D.N.Y. Nov. 26, 2002) ("*pro rata* allocations provided in the Stipulation are not only reasonable and rational, but appear to the fairest method of allocating the settlement benefits."); *PaineWebber*, 171 F.R.D. at 135 (approving *pro rata* distribution). Counsel's conclusion that the distribution plan is fair, adequate, and reasonable, Sklaver Decl. ¶ 14, is entitled to great weight. *See In re Am. Bank Note*

*Holographics, Inc.* 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (approving allocation plan and according counsel's opinion "considerable weight"). Accordingly, the distribution plan is fair and reasonable, and should be preliminarily approved.

### E.    Proposed Schedule

Class Plaintiffs proposes the following dates for the deadlines for the notice plan and for the final fairness hearing, subject to the convenience of the Court:

| EVENT | DAYS FROM PRELIMINARY APPROVAL | PROPOSED DATE/DEADLINE (if Preliminary Approval Granted June 1, 2015) |
|---|---|---|
| Send notice to Class members | 4 Days | June 5, 2015 |
| Class Counsel to file proof of mailing of notice | 21 Days | June 26, 2015 |
| Deadline to request exclusion from the Class | 34 Days | July 9, 2015 |
| Deadline for objections to the Settlement | 34 Days | July 9, 2015 |
| Class Counsel to move for final approval | 38 Days | July 13, 2015 |
| Class Counsel to file motion for award of attorneys' fees and expenses | 45 Days | July 20, 2015 |
| Final Approval Hearing | 66 Days | August 10, 2015 |

## IV.    CONCLUSION

For the foregoing reasons, Class Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement as within the range of fairness, reasonableness and adequacy; (ii) certify the Settlement Class, appoint Plaintiffs as Class representatives and Susman Godfrey L.L.P. as Class Counsel for Settlement purposes; (iii) approve the proposed form and manner of notice to the Settlement Class; and (iv) schedule a date and time for a hearing to consider final approval of the Settlement and related matters.

3725693v1/012746

DATED: May 29, 2015

Respectfully submitted,

_____

Steven G. Sklaver (*pro hac vice*)
Frances S. Lewis
SUSMAN GODFREY LLP
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Phone:  310-789-3100
Fax:  310-789-3150
Email:  ssklaver@susmangodfrey.com
flewis@susmangodfrey.com

Seth Ard
SUSMAN GODFREY LLP
560 Lexington Avenue, 15th Floor
New York, New York  10022-6828
Phone:  (212) 336-8330
Fax:  (212) 336-8340
Email: sard@susmangodfrey.com

*Attorneys for Plaintiffs and the Class*